Dana M. Johnson, Idaho Bar #8359
Wilderness Watch
P.O. Box 9623
Moscow, Idaho 83843
Tel: (208) 310-7003
danajohnson@wildernesswatch.org

Matthew K. Bishop, *pro hac vice*
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59603
Tel: 406-324-8011
bishop@westernlaw.org

Peter M.K. Frost, *pro hac vice*
Western Environmental Law Center
120 Shelton McMurphey Blvd., Suite 310
Eugene, Oregon 97401
Tel: 541-359-3238
frost@westernlaw.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, et al., | Case No. 1:19-cv-00203-CWD |
| Plaintiffs, | **AMENDED COMPLAINT** |
| v. | |
| U.S. FOREST SERVICE, et al., | |
| Defendants. | |

1. Plaintiffs WildEarth Guardians et al. ("Guardians") hereby respectfully file this civil suit seeking declaratory and injunctive relief. Defendant U.S. Forest Service ("Forest Service") and Defendant U.S. Fish and Wildlife Service ("Fish and Wildlife") have violated and continue to violate Section 7 of the Endangered Species Act ("ESA") by failing to reinitiate and complete consultation to ensure the Forest Service does not jeopardize the continued existence of grizzly bears related to the use of bait to hunt black bears in national forests in Idaho and Wyoming. The Forest Service has also violated and continues to violate Section 7 by making irreversible or irretrievable commitment of resources that have the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate Section 7. The Forest Service has also violated and continues to violate Section 7 by issuing food closure orders that exempt bear baiting in certain national forests. The Forest Service has also violated Section 7 by issuing special use authorizations that allow bear baiting in certain national forests. The Forest Service has also violated the National Environmental Policy Act ("NEPA") by failing to prepare a supplemental analysis of the environmental effects of its decision to authorize states to regulate the use of bait to hunt black bears in national forests.

Jurisdiction and Venue.

2. The Court has jurisdiction over certain claims pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(c) & (d), and over other claims because they involve a federal question. 28 U.S.C. § 1331. On December 19, 2018, Guardians served the Forest Service and Fish and Wildlife with requisite notice of intent to sue under Section 11 of the ESA for failing to reinitiate consultation under Section 7. More than 60 days have elapsed since the Forest Service and Fish and Wildlife received notice. Subsequently, on April 3, 2019, Guardians served the Forest Service and Fish and Wildlife with supplementary notice of intent to sue under Section 11 of the ESA, detailing additional reasons why reinitiation of consultation is required, and notifying them of other potential claims. More than 60 days have elapsed since the Forest Service and Fish and Wildlife received supplementary notice. The relief Guardians seeks is authorized by the ESA, the

Declaratory Judgment Act, and the Administrative Procedure Act ("APA"). 16 U.S.C. § 1540; 28 U.S.C. §§ 2201 & 2202; 5 U.S.C. § 706(2)(A) & (D).

3. Venue is proper in this Court pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e), and acts complained of herein occurred in this district.

4. Final agency action that is subject to judicial review exists under the APA. 5 U.S.C. § 704; 5 U.S.C. § 551(13).

## Parties.

5. Plaintiff WildEarth Guardians is non-profit conservation group with offices in Santa Fe, New Mexico; Denver, Colorado; Missoula, Montana; Portland, Oregon; and Tucson, Arizona. Guardians' mission is to protect and restore wildlife, wild places, and wild rivers in the West. Its mission encompasses ensuring the long-term survival and recovery of grizzlies bears in the contiguous United States, including in Idaho and Wyoming. Guardians has over 4,500 members. Many of Guardians' members live in or visit Idaho, or live in or visit Wyoming. Some of Guardians' members are hunters. Guardians' members have been, and continue to be, injured by the Forest Service's allowance of black bear baiting on national forests in Idaho and Wyoming, by the Forest Service's and Fish and Wildlife's failure to reinitiate and complete consultation as to the effects on grizzly bears of black bear baiting, and by the Forest Service's failure to prepare a supplemental environmental analysis of those effects. Guardians' members' injuries are based on professional, educational, inspirational, personal, aesthetic, and recreational interests. The Forest Service and Fish and Wildlife have caused these injuries, and the Court can redress them.

6. Plaintiff Western Watersheds Project ("Western Watersheds") is a non-profit conservation group headquartered in Idaho, with offices and staff in Idaho, Arizona, California, Montana, Oregon, Wyoming, and Utah. Western Watersheds is dedicated to protecting and conserving the public lands and natural resources of watersheds in the American West. Western Watersheds has over 1,200 members. Some of the Western Watersheds' members are hunters. Western Watersheds' staff and members use grizzly habitat in Idaho and in Wyoming for

recreation, scientific study, and aesthetic purposes, and will continue to do so in the future. Western Watersheds' members have been, and continue to be, injured by the Forest Service's allowance of black bear baiting on national forests in Idaho and Wyoming, by the Forest Service's and Fish and Wildlife's failure to reinitiate and complete consultation as to the effects on grizzly bears of black bear baiting, and by the Forest Service's failure to prepare a supplemental environmental analysis of those effects. Western Watersheds' members' injuries are based on professional, educational, inspirational, personal, aesthetic, and recreational interests. The Forest Service and Fish and Wildlife have caused these injuries, and the Court can redress them.

7. Plaintiff Wilderness Watch is a non-profit conservation organization headquartered in Missoula, Montana with offices in Idaho and Minnesota. Wilderness Watch's mission is the preservation and proper stewardship of lands and rivers in the National Wilderness Preservation System and the National Wild and Scenic Rivers System, including protecting wildlife and ecosystems in their natural, untrammeled state. Wilderness Watch has a long history of advocacy to preserve the wilderness character of wilderness areas within Idaho and Wyoming, including advocating to ensure wilderness-compatible hunting practices, protecting grizzly bear populations, and re-establishing grizzly bears in the Selway-Bitterroot Wilderness and Bitterroot grizzly ecosystem. Wilderness Watch has over 2,000 members, some of whom are hunters, and many of whom live in or visit Idaho and Wyoming. Wilderness Watch's staff and members frequent grizzly habitat in Idaho and in Wyoming for recreation, scientific study, and aesthetic purposes, and will continue to do so in the future. Wilderness Watch's members have been, and continue to be, injured by the Forest Service's allowance of black bear baiting on national forests in Idaho and Wyoming, by the Forest Service's and Fish and Wildlife's failure to reinitiate and complete consultation as to the effects on grizzly bears of black bear baiting, and by the Forest Service's failure to prepare a supplemental environmental analysis of those effects. Wilderness Watch's members' injuries are based on professional, educational, inspirational, personal,

aesthetic, and recreational interests. The Forest Service and Fish and Wildlife have caused these injuries, and the Court can redress them.

8.     Defendant U.S. Forest Service is a federal agency within the U.S. Department of Agriculture. It is required to comply with all federal laws that relate to the national forest system.

9.     Defendant U.S Fish and Wildlife Service is a federal agency within the U.S. Department of the Interior. It is required to comply with the ESA.

Facts.

10.    The grizzly bear (*Ursus arctos horribilis*) is native to the contiguous United States. In the early 1800s, an estimated 50,000 grizzly bears existed in the contiguous United States. In 1922, thirty-seven separate grizzly bear populations existed in the contiguous United States. By 1975, thirty-one of the thirty-seven populations in the contiguous United States had been extirpated.

11.    In 1975, Fish and Wildlife listed the grizzly bear in the contiguous United States as threatened with extinction under the ESA. 40 Fed. Reg. 31,734 *et seq*. (July 28, 1975). In its listing decision, Fish and Wildlife found that by 1975, grizzly bears in the contiguous United States were then "confined to isolated regions" in Montana, Idaho, and Wyoming. In its listing decision, Fish and Wildlife found that the building of new roads and trails into formerly inaccessible grizzly habitat resulted in making grizzlies "more accessible to legal hunters, illegal poachers, human-bear conflicts, and livestock-bear conflicts."

12.    Currently, grizzly bears in the contiguous United States are categorized as part of six ecosystems. These include the Bitterroot ecosystem, the Cabinet-Yaak ecosystem, the Northern Cascades ecosystem, the Northern Continental Divide ecosystem, the Selkirk ecosystem, and the Greater Yellowstone ecosystem. The estimated population of grizzlies in each ecosystem varies. Currently, an estimated 50 grizzly bears exist in the Cabinet-Yaak ecosystem. Currently, an estimated 80 grizzlies exist in the Selkirk ecosystem. Currently, an estimated 717 grizzlies exist in the Greater Yellowstone ecosystem.

13.     The Bitterroot ecosystem in Idaho is one of the largest contiguous blocks of federal land in the contiguous United States. The core of the Bitterroot ecosystem includes two wilderness areas. Until recently, no grizzlies were known to inhabit in the Bitterroot ecosystem. The Bitterroot ecosystem could support more than 300 grizzly bears. Establishing a population of grizzly bears in the Bitterroot ecosystem would contribute significantly to long-term conservation and recovery of the grizzly bear in the contiguous United States. A natural pathway to establishing grizzly bears in the Bitterroot ecosystem is grizzly bears dispersing from the Northern Continental Divide ecosystem. A natural pathway to establishing grizzly bears in the Bitterroot ecosystem is grizzly bears dispersing from the Greater Yellowstone ecosystem.

14.     Currently, grizzly bears occupy larger areas in the contiguous United States than they did when listed under the ESA in 1975. From 2004 to 2010, the estimated population of grizzly bears in the Greater Yellowstone ecosystem increased 38 percent. From 2014 to 2016, the estimated population of grizzly bears in the Greater Yellowstone ecosystem increased an additional 11 percent.

15.     Within the range of grizzly bears in the contiguous United States, two states allow hunters to use bait to hunt black bears: Idaho and Wyoming. Grizzly bears and black bears share habitat in national forests in Idaho and Wyoming. The Forest Service has discretion whether to allow use of bait to hunt black bears in national forests, including in Idaho and Wyoming. The Forest Service has discretion whether to prohibit use of bait to hunt black bears in national forests, including in Idaho and Wyoming.

16.     Some black bear hunters who hunt in national forests in both Idaho and Wyoming use bait to hunt black bears. Some black bear hunters use bait including breads, doughnuts, or dog food mixed with syrup. Some black bear hunters place bait in perforated barrels. Some black bear hunters who use bait pour grease on the ground around the bait site, so black bears will step in the grease and leave scent trails for other black bears to cross and follow to the bait site.

17. Until 1992, the Forest Service required a hunter or outfitter to obtain a special use permit to use black bear bait in national forests. In March, 1992, the Regional Foresters for the Intermountain Region and the Rocky Mountain Region issued a joint closure order related to black bear baiting in national forests in Wyoming. The joint closure order prohibited black bear baiting in national forests in Wyoming unless baiting complied with the requirements of the closure order related to placement and disposal of bait. Subsequently, the Regional Foresters rescinded the closure order, and resumed requiring special use permits for black bear baiting in national forests in Wyoming.

18. In 1993, the Forest Service prepared an Environmental Assessment ("EA") under NEPA to evaluate its black bear baiting policies in Wyoming. In 1993, the Forest Service prepared a Biological Evaluation under the ESA to evaluate whether its black bear baiting policies in Wyoming would jeopardize the continued existence of grizzly bears.

19. In 1993, Fish and Wildlife issued a Biological Opinion as to the effects on grizzly bears of the black bear baiting alternatives in the 1993 EA. In the Biological Opinion, Fish and Wildlife found that none of the black bear baiting alternatives would jeopardize the continued existence of grizzly bears. In the Biological Opinion, Fish and Wildlife found there is a "remote possibility" that a grizzly bear may be taken as a result of black bear baiting in Wyoming.

20. In the Biological Opinion, Fish and Wildlife specified conservation recommendations to minimize or avoid adverse effects of the proposed action on grizzly bears. Fish and Wildlife recommended that the Forest Service consider "closing all areas known to be used regularly by grizzly bears to all black bear baiting." Fish and Wildlife also recommended that the Forest Service use "emergency closure orders to close smaller, more specific areas to baiting when a grizzly bear has been verified in an area otherwise open for baiting."

21. The Biological Opinion is accompanied by an Incidental Take Statement. The Incidental Take Statement establishes an amount or extent of authorized incidental take. The Incidental Take Statement provides that "no incidental take is authorized. Should any take occur the [Forest

Service] must reinitiate consultation with the [Fish and Wildlife] Service and provide the circumstances surrounding the take."

22. In 1993, the Forest Service issued a Decision Notice selecting the preferred alternative from the 1993 EA, which was to transfer regulation of baiting to the State of Wyoming.

23. In May, 1993, the Forest Service rescinded the 1993 Decision Notice.

24. In 1995, the Forest Service prepared another EA, this time to evaluate a proposed national policy and three other alternatives related to use of bait for hunting in national forests. The national policy states that the use of bait for taking resident game in national forests is a hunting practice. The national policy generally allows states to determine whether bait can be used in hunting in national forests. The national policy discontinues the use of special use permits to regulate the use of bait to hunt black bears in national forests. The national policy allows the Forest Service to determine, on a site-specific basis, that a restriction or prohibition on the use of bait for black bear hunting is appropriate. Among the factors to determine whether a restriction or prohibition on use of bait is appropriate is a conflict with federal law, such as the ESA. The mechanism for the Forest Service to restrict or prohibit use of bait is a closure order.

25. The 1995 EA states that "the effects of baiting are most significant for grizzly bears, which are listed as a threatened species." The 1995 EA states that "baiting for black bears is prohibited in nearly all occupied grizzly habitat" in the contiguous United States. The 1995 EA states that "[t]he vast majority of occupied grizzly bear habitat is closed to baiting in Wyoming, Washington, and Idaho." The 1995 EA states that "[t]he Forest Service and the States share the concern about baiting for black bears in grizzly habitat. Nearly all of the occupied grizzly habitat has been closed to bear baiting and the small portion that has not has special requirements and education programs for hunters." The 1995 EA concludes that the new national baiting policy "provides for the protection of all threatened and endangered species," including grizzly bears.

26. When the Forest Service issued the 1995 EA, the State of Wyoming prohibited using baits to hunt black bears in the designated recovery area for grizzly bears in the state. When the

Forest Service issued the 1995 EA, the State of Wyoming prohibited using baits to hunt black bears in management area 25 (North Absaroka) and management area 26 (South Absaroka).

27.     Currently, the State of Wyoming prohibits the use of bait to hunt black bears in wilderness areas in national forests. Currently, the State of Wyoming prohibits the use of bait to hunt black bears in the primary conservation area for grizzly bears. The primary conservation area for grizzly bears is equivalent to the recovery area for grizzly bears. Currently, the State of Wyoming prohibits the use of bait in certain black bear hunt areas. Currently, the State of Wyoming does not prohibit the use of bait to hunt black bears in all parts of national forests in Wyoming that grizzlies inhabit. Currently, the State of Wyoming does not prohibit the use of bait to hunt black bears in all parts of national forests in Wyoming where grizzlies may be present. Currently, the State of Wyoming authorizes the use of bait to hunt black bears in parts of the demographic monitoring area for grizzly bears.

28.     Currently, the State of Idaho prohibits the use of bait to hunt black bears in certain game management units that grizzly bears inhabit. Currently, the State of Idaho prohibits the use of bait to hunt black bears in certain game management units where grizzly bears may be present. Currently, the State of Idaho does not prohibit the use of bait to hunt black bears in certain game management units or other areas that grizzly bears inhabit. Currently, the State of Idaho does not prohibit the use of bait to hunt black bears in certain game management units or other areas where grizzly bears may be present. Currently, the State of Idaho does not prohibit the use of bait to hunt black bears in designated wilderness. The use of bait to hunt black bears occurs in designated wilderness in the State of Idaho.

29.     The State of Idaho authorizes the use of bait to hunt black bears in potential grizzly bear habitat in national forests between the Greater Yellowstone ecosystem and the Bitterroot ecosystem. The State of Idaho authorizes the use of bait to hunt black bears in grizzly bear habitat in national forests between the Northern Continental Divide ecosystem and the Bitterroot ecosystem.

30. In January, 2010, the Caribou-Targhee National Forest in Idaho and Wyoming, adjoining Yellowstone and Grand Teton National Parks to the south and west, issued a food closure order for certain areas of the Forest from March 1 to December 1, annually. The food closure order generally prohibits "[p]ossessing or storing any food or refuse, except as specified in this Order." The food closure order exempts "[p]ersons in the act of placing black bear baits for the lawful purpose of hunting black bears under state law and regulation."

31. In September, 2011, the Idaho Panhandle National Forest in Idaho, between the Northern Continental Divide ecosystem and the Selway-Bitterroot ecosystem issued a food closure order for certain areas in the forest. The food closure order provides that no person shall provide food of any kind to any wildlife species. The food closure order provides that "[p]ersons with a permit specifically authorizing the otherwise prohibited act or omission" are exempt from the order.

32. In June, 2016, the Bridger-Teton National Forest in Wyoming, bordering Grand Teton National Park to the southeast, and the Shoshone National Forest, bordering Grand Teton and Yellowstone National Parks to the east, in Wyoming issued a food closure order. The food closure order provides that "[a]ll food and refuse must be acceptably stored or acceptably possessed during daylight hours." The food closure order exempts from its provisions "[p]ersons in the act of placing black bear baits for the lawful purpose of hunting black bears under state law and regulation."

33. Since 2006, hunters have killed approximately 25,700 black bears in Idaho. Approximately 10,050 of these black bears were killed at bait sites. Hunters used bait to take black bears on the Idaho Panhandle National Forest in Idaho. Hunters used bait to take black bears on the Caribou-Targhee National Forest in Idaho.

34. In 2017, hunters killed 467 black bears in Wyoming. The State of Wyoming allows black bears to be hunted in a fall season. The State of Wyoming allows black bears to be hunted in a spring season. Approximately 24% of the black bears taken during the fall black bear hunting season in Wyoming were taken using bait. Approximately 80% of the black bears taken during

the spring hunting season are taken using bait. Black bears emerging from hibernation are attracted to bait. Hunters have taken black bears using bait in the Shoshone National Forest in Wyoming. Hunters have taken black bears using bait in the Bridger-Teton National Forest in Wyoming.

35. On May 5, 1996, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear in the Shoshone National Forest near Dubois, Wyoming.

36. On May 6, 2000, a licensed hunter seeking black bears shot and killed a grizzly bear near Deer Creek in the Shoshone National Forest in Wyoming.

37. On May 8, 2000, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear near Owl Creek in the Shoshone National Forest.

38. On April 24, 2001, a licensed bow hunter seeking black bears and using bait shot and killed a grizzly bear in Rock Springs Canyon in Wyoming.

39. On June 9, 2002, a licensed hunter seeking black bears shot and killed a grizzly bear in the Leidy Creek drainage in the Bridger-Teton National Forest in Wyoming.

40. On May 26, 2003, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear near Middle Fork Owl Creek in the Shoshone National Forest in Wyoming.

41. On May 1, 2004, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear on state lands near Grass Creek in Wyoming.

42. On May 10, 2004, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear near Sweeney Creek in Elkheart Park on Bureau of Land Management lands in Wyoming.

43. On May 4, 2006, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear near the South Fork of Owl Creek on private land in Wyoming.

44. On May 28, 2007, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear on Dutch Joe Creek in the Bridger-Teton National Forest in Wyoming.

45. On September 3, 2007, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear in the North Fork Clearwater River watershed in the Nez Perce-Clearwater National Forests in Idaho. This was the first grizzly bear that had been verified since 1946 in the Bitterroot ecosystem.

46. On May 7, 2008, a licensed hunter seeking black bears shot and killed a grizzly bear in the North Fork Shoshone drainage in the Shoshone National Forest in Wyoming.

47. On May 25, 2008, a licensed hunter seeking black bears shot and killed a grizzly bear near Cliff Creek in the Bridger-Teton National Forest in Wyoming.

48. On May 27, 2008, a licensed hunter seeking black bears shot and killed a grizzly bear near the Clarks Fork River in the Shoshone National Forest in Wyoming.

49. On May 25, 2008, a licensed hunter seeking black bears shot and killed a grizzly bear near Cliff Creek in the Bridger-Teton National Forest in Wyoming.

50. On May 24, 2009, a licensed hunter seeking black bears shot and killed a grizzly bear near Newton Creek in the Shoshone National Forest in Wyoming.

51. On June 14, 2008, a licensed hunter seeking black bears shot and killed a grizzly bear near Reef Creek in the Shoshone National Forest in Wyoming.

52. On August 26, 2009, a licensed hunter seeking black bears shot and killed a grizzly bear in the Deadman Creek drainage in the Bridger-Teton National Forest in Wyoming.

53. On May 13, 2010, a licensed hunter seeking black bears shot and killed a grizzly bear on state lands near Grass Creek in Wyoming.

54. On May 7, 2014, a licensed hunter seeking black bears shot and killed a grizzly bear just off Cave Falls Road in the Caribou-Targhee National Forest in Idaho.

55. On September 30, 2015, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear on a private land inholding in the Idaho Panhandle National Forest in Idaho. The grizzly bear was radio-collared. The grizzly bear had been reintroduced into the area from the Cabinet-Yaak subpopulation in northwestern Montana.

56. On May 5, 2016, a licensed hunter seeking black bears shot and killed a grizzly bear along Timber Creek in the Caribou-Targhee National Forest in Wyoming.

57. On September 9, 2016, a licensed hunter using a bow and seeking black bears shot and killed a grizzly bear along the Wind River in the Shoshone National Forest in Wyoming.

58. These incidents are under-inclusive of grizzly bears shot and killed over black bear bait in national forests in Idaho and Wyoming, because some deaths are not reported.

59. In June, 2019, a grizzly bear was discovered in the Kelly Creek drainage in the Nez Perce-Clearwater National Forests in Idaho. The grizzly bear was seen by a licensed hunter who was stocking a black bear bait site with food. The grizzly bear visited at least three black bear baiting sites. The State of Idaho urged licensed black bear hunters to use caution when selecting targets in the area.

60. In July, 2019, the grizzly bear that was discovered in the Kelly Creek drainage migrated into the Selway-Bitterroot Wilderness. The bear was seen heading south in the Cayuse Creek drainage. This area is a part of the Bitterroot ecosystem.

61. Readily available federal and state public records of grizzly bear mortalities due to black bear hunting do not always identify precise locations of mortalities. Readily available federal and state public records of grizzly bear mortalities due to black bear hunting do not always identify whether each black bear hunter used bait.

62. In 2018, a grizzly bear from the Cabinet Mountains in Montana crossed the Clark Fork River. On September 9, 2018, this grizzly bear was reported at a black bear baiting site in Idaho. Fish and Wildlife removed the grizzly bear. The grizzly bear later returned to the same black bear baiting site. It was reported at the site on September 13, 2018. The grizzly bear then returned to Montana.

63. In 2018, Idaho Fish and Game killed two grizzly bears in eastern Idaho that had become attracted to or dependent on human food sources.

64. Since 1995, significant new information demonstrates potential adverse impacts on grizzly bears and black bears associated with the use of bait to hunt black bears. The best available commercial and scientific data demonstrate that baiting for black bears can concentrate wildlife, which can spread disease and result in intra- and inter-specific aggression.

65. Baiting for black bears can change grizzly movement and travel patterns.

66. Baiting for black bears can influence grizzly denning behavior.

67. Baiting for black bears can undermine grizzly habitat security.

68. Baiting for black bears can result in a higher number of female grizzly bear mortality.

69. Baiting for black bears can negatively affect non-target wildlife species.

70. Baiting for black bears can create food conditioning in grizzly bears.

71. Baiting for black bears can habituate grizzly bears to human sources of food and lack of fear of humans, elevating the risk of human-bear conflict.

72. Black bear bait is or can become potentially toxic to grizzly bears. Some black bear bait candy contains Theobromine, which is toxic to bears, or becomes toxic with spoilage.

73. The grizzly bear demographic monitoring area for grizzly bears in the contiguous United States is larger geographically than the grizzly bear recovery area. Grizzly bears in the contiguous United States are found on national forest lands in Idaho and Wyoming outside of the grizzly bear demographic monitoring area.

Claims for Relief.

Claim One: Endangered Species Act.

74. Guardians realleges all previous paragraphs.

75. To comply with Section 7(a)(2) of the ESA, the Forest Service and Fish and Wildlife must reinitiate and complete consultation where discretionary federal involvement or control over the action has been retained or is authorized by law and new information reveals effects of the action that may affect listed species in a manner or to an extent not previously considered. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.16(b). This requirement applies to both formal and

informal consultation. *Forest Guardians v. Johanns*, 450 F.3d 455, 458 (9th Cir. 2006). New information exists that reveals effects of the action that may affect grizzly bears in a manner and to an extent not previously considered in the Biological Opinion or the concurrence letter. Among other things, studies published after the Biological Opinion and concurrence show that black bear baiting can cause many harmful effects on grizzly bears. The Forest Service and Fish and Wildlife have unlawfully failed to reinitiate and complete consultation based on this and other new information.

76. To comply with Section 7(a)(2) of the ESA, the Forest Service and Fish and Wildlife must reinitiate and complete consultation where discretionary federal involvement or control over the action has been retained or is authorized by law and the amount or extent of taking specified in the incidental take statement is exceeded. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.16(a). *Forest Guardians v. Johanns*, 450 F.3d 455, 458 (9th Cir. 2006). The amount and extent of take of grizzly bears specified in the Incidental Take Statement for black bear hunting using bait in national forests has been exceeded. The Forest Service and Fish and Wildlife have unlawfully failed to reinitiate and complete consultation on this basis.

77. To comply with Section 7(d) of the ESA, after reinitiating consultation under Section 7(a)(2), the Forest Service shall make no irreversible or irretrievable commitment of resources with respect to the agency action that has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternatives that would avoid violating Section 7(a)(2). 16 U.S.C. § 1536(d). This prohibition is in force during the consultation process and continues until the requirements of Section 7(a)(2) are satisfied. 50 C.F.R. § 402.09. The Forest Service has unlawfully violated Section 7(d) by making irreversible or irretrievable commitments of resources related to black bear baiting that has the effect of foreclosing formulation and implementation of reasonable and prudent alternatives, in the period before the Forest Service and Fish and Wildlife have completed consultation.

Claim Two: National Environmental Policy Act.

78. Guardians realleges all previous paragraphs.

79. To comply with NEPA, the Forest Service must be alert to new information that may alter the results of its original environmental analyses, and continue to take a hard look at the environmental effects of its actions, even after a proposal has received initial approval. Since the Forest Service issued EAs in 1993 and 1995, significant new information related to the effects of black bear baiting on grizzly bears has arisen that is relevant to environmental concerns and the proposed action and its impacts. 40 C.F.R. § 1502.9(c)(1)(i). The Forest Service has unlawfully failed to prepare a supplemental analysis of its decisions to adopt the national policy related to black bear baiting, and to issue certain closure orders.

Relief Sought.

1. Declare that the Forest Service and Fish and Wildlife have violated and continue to violate Section 7 of the ESA as alleged;

2. Declare that the Forest Service has violated and continues to violate Section 7 of the ESA as alleged;

3. Declare that the Forest Service has violated NEPA as alleged;

4. Order the Forest Service and Fish and Wildlife to reinitiate and complete consultation under Section 7 of the ESA;

5. Enjoin the Forest Service to issue closure orders for black bear baiting in areas of national forests in Idaho and Wyoming where grizzly bears may be present.

6. Grant such other relief that Plaintiffs may subsequently request and that this Court deems just and appropriate.

Date: July 19, 2019.

Respectfully submitted,

/s/ Peter M.K. Frost
Peter M.K. Frost, *pro hac vice*
Dana M. Johnson, ISB #8359
Matthew K. Bishop, *pro hac vice*

Attorneys for Plaintiffs