Paul A. Turcke, ISB No. 4759
MSBT LAW, CHARTERED
7699 West Riverside Drive
Boise, ID 83714
Tel: 208-331-1800
Fax: 208-331-1202
pat@msbtlaw.com

*Attorney for Defendant-Intervenor Applicant*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| WILDEARTH GUARDIANS, WESTERN WATERSHEDS PROJECT, and WILDERNESS WATCH, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. FOREST SERVICE and U.S. FISH AND WILDLIFE SERVICE, <br><br> Defendants, <br><br> SAFARI CLUB INTERNATIONAL, <br><br> Defendant-Intervenor-Applicant. | Case No. 19-cv-00203-CWD <br><br><br> **MEMORANDUM IN SUPPORT OF SAFARI CLUB INTERNATIONAL'S MOTION TO INTERVENE** |

## I.    INTRODUCTION

Defendant-Intervenor-Applicant Safari Club International ("Safari Club") is an organization that promotes and supports hunting and sustainable use conservation. Safari Club seeks to intervene in this case to defend the use of bait for black bear hunting on National Forest lands in Idaho and Wyoming. Safari Club also seeks to defend the

Endangered Species Act ("ESA") compliance of the U.S. Forest Service and the U.S. Fish and Wildlife Service (collectively "Federal Defendants") and the National Environmental Policy Act ("NEPA") compliance of the U.S. Forest Service associated with the use of bait for black bear hunting on National Forest lands in Idaho and Wyoming. For the reasons described below, Safari Club is entitled to intervene as of right in this case.

Plaintiffs WildEarth Guardians, Western Watersheds Project, and Wilderness Watch (collectively "Plaintiffs") filed this litigation in an attempt to force Federal Defendants to prohibit the use of bait for black bear hunting within National Forest lands in Idaho and Wyoming. Plaintiffs seek to prevent a practice used by many hunters, including Safari Club members, to harvest black bears. As explained in the attached declarations submitted by Safari Club members, baiting is an important tool to enable hunters to carefully assess the size, age, and sex of a bear before it is harvested. In their Amended Complaint, Plaintiffs erroneously claim that hunting black bears over bait increases the risk of hunters accidentally pursuing grizzly bears, but as explained by the Safari Club members who hunt black bears over bait, the opposite is true. The use of bait enables hunters to distinguish a black bear from a grizzly bear and to prevent the accidental harvest of a member of the wrong bear species.

Hunting of predator species like black bears is an important management tool. Wildlife managers rely on hunters to help keep the predator and prey populations in balance and reduce depredation on prey species like elk and deer. As explained by Safari Club members in the attached declarations, the hunting of black bears over bait is a

2

regulated activity that contributes to the management and conservation of many wildlife species on National Forest lands.

Safari Club seeks to join this action to protect Safari Club members' hunting practices, success, and participation in the sustainable-use management of wildlife. Safari Club also seeks to intervene to represent the interests of its members in the outcome of this case and to assist Federal Defendants in demonstrating the legality and conservation benefits of black bear hunting over bait. If Plaintiffs succeed in this litigation, Safari Club and its members will be irreparably harmed by a loss of opportunities to hunt, guide, and enjoy outdoor activities. They will be harmed in their efforts to support the sustainable use management and conservation of bears and other wildlife in Idaho and Wyoming.

Safari Club should be allowed to intervene as of right because (1) its motion is timely; (2) it has significant interests in the wildlife and hunting opportunities at risk in this case; (3) the outcome of this case could impair the interests of Safari Club and its members in enjoying and pursuing black bear hunting on National Forest lands in Idaho and Wyoming, promoting the sustainable use of wildlife, and managing and conserving black bears, grizzly bears, and prey species; and 4) Federal Defendants do not necessarily share Safari Club's interests and cannot adequately represent these interests in this litigation.

Should this Court, for any reason, deem that Safari Club is not entitled to intervene as of right, Safari Club should then be granted permissive intervention. Safari Club's proposed defense of this case and the claims in Plaintiffs' Amended Complaint share

questions of law and fact, and Safari Club's participation will not unduly delay this case or prejudice any party.

Finally, if the court should decide not to grant intervention as of right or by permission on any claim or part of this litigation, Safari Club seeks amicus status to participate in that part of this suit.

## II. BACKGROUND

### A. Procedural History and Plaintiffs' Claims

Plaintiffs filed their Complaint on June 5, 2019 (Dkt. 1) and their Amended Complaint on July 19, 2019 (Dkt. 12), seeking declaratory and injunctive relief. On July 26, 2019, the Court entered an order approving Plaintiffs' and Federal Defendants' stipulation to extend the time for Federal Defendants to respond to the Amended Complaint until September 9, 2019. (Dkt. 15). The parties consented to proceed with this case before a Magistrate Judge on July 23, 2019. (Dkt. 13).

### B. Safari Club International

Safari Club supports and advocates sustainable use conservation and management of wildlife. Declaration of Rew Goodenow ("Goodenow Decl."), attached as Ex. A, ¶ 5. Members of Safari Club hunt black bears and other wildlife on National Forest lands in Idaho and Wyoming, and other members depend on hunting for their livelihoods. As explained in the attached declarations, black bear hunting over bait increases the likelihood of success for Safari Club members and their ability to determine the size, age, sex, and species of the bear they plan to hunt. Loss of the ability to hunt black bears over bait will diminish their hunting opportunities, enjoyment, and success. The loss of

4

baiting as a component of black bear hunting will make it more difficult for these hunters to discern between black bears and grizzly bears in the field and will undermine their ability to assist the Idaho and Wyoming game authorities in their management of black bears and other wildlife species through regulated sustainable use.

For example, Safari Club member Brent McFarland hunts black bears with his son over bait in the Targhee and Caribou-Targhee National Forests and has been doing so for over ten years. He first chose to use bait for black bear hunting because "it provided the most controlled environment and form of hunting for my son and offered the greatest chance of a successful and ethical harvest." Declaration of Brent Avery McFarland ("McFarland Decl."), attached as Ex. B, ¶ 9. He continues to use bait because it reduces the risk of accidentally taking a grizzly bear instead of a black bear. *Id.* ¶ 17. Mr. McFarland has encountered grizzly bears at his bait station on more than one occasion. On both occasions, the opportunity to carefully examine the bear has enabled Mr. McFarland to identify the bear as a grizzly, rather than a black bear, and to avoid taking the bear:

> On one occasion, I had a juvenile grizzly bear come in on the bait. The young bear was large enough to strongly resemble an adult black bear, but it had yet to develop the characteristic silver tipped hair, humped shoulder or dished face of a grizzly bear. I observed the bear at 30 yards for over 20 minutes. It wasn't until I looked through my binoculars and noticed the bear's claws that I was able to determine that it was actually a young grizzly bear. Had I observed this bear from a reasonable rifle range – say spot and stalk – I don't know that I would have been able to correctly identify the bear as a grizzly. The ability given by the bait to allow me to take the time to carefully examine the bear over bait was the key element that helped me to determine that it was a grizzly and not a black bear.

*Id.* at ¶ 11. Mr. McFarland has definite plans to hunt black bears over bait on National Forest lands in the future. *Id.* at ¶ 15. His opportunities, success, and enjoyment with hunting black bears will be diminished if he cannot use baiting as part of his hunting strategy to carefully distinguish black bears from grizzly bears. *Id.* at ¶¶ 16-17.

Safari Club member John Malison has hunted black bears over bait on National Forest lands in Idaho in Units 4a and 4 for about 18 years. Declaration of John Malison ("Malison Decl."), attached as Ex. C, ¶ 7. He hunts from ground blinds, and the use of bait helps him and those with whom he hunts to "watch the bears and observe the sows and cubs, size, color and species of the bears that visit the baits." *Id*. at ¶ 13. He also explains that "[h]unting over bait allows [him] to see the bears, estimate size and sex, and make sure that [he has] a good and accurate shot." *Id*. at ¶ 15. Mr. Malison encountered a grizzly bear while hunting black bears over bait and explained that "[b]y hunting over bait, I had adequate time to determine that the bear was a grizzly and not a bear that I would want to harvest." *Id*. at ¶ 17. According to Mr. Malison, the use of bait is helpful in differentiating between species of bears because of the diversity of bears in the area:

> In Northern Idaho we have bears of many different colors and at a quick glance, it is not always easy to determine the species of a bear, based on its color. We have black bears that are colored cinnamon, blonde, brown, and black as well as some two-tone specimens. We know that we can encounter grizzly bears as well, and that by baiting we have an opportunity to examine the bear and make certain that it is a black bear we are shooting.

*Id.* at ¶ 18. Mr. Malison also explained how hunters who bait for black bears help participate in the sustainable use management of Idaho's wildlife:

> Black bear hunting over bait helps us manage Idaho's black bear population. Without baiting and hunting, the bear population is likely to

> grow. Our game populations are dealing with multiple predators including wolves, grizzlies, lions and black bear. Proper management of our black bear population, through hunting, prevents big game depredation problems and unwanted human/bear contact issues. Baiting is an excellent way for hunters to help the Idaho Department of Fish and Game keep the black bear population in check.

*Id*. at ¶ 22. Mr. Malison has definite plans to hunt black bear over bait in the upcoming bear season. *Id.* at ¶ 21. If hunting over bait was prohibited on National Forest land, it would hurt his ability to hunt black bears in Idaho, conserve grizzly bears, participate in sustainable use management of black bears, and help conserve Idaho's other game species. *Id*. at ¶ 24.

Similarly, Safari Club member Travis Bullock hunts and guides for black bear hunts on National Forest lands in north/central Idaho. Declaration of Travis Barton Bullock ("Bullock Decl."), attached as Ex. D, ¶ 6. Baiting helps Mr. Bullock and his clients hunt older male bears and allows them to ensure they are not taking sows or cubs. *Id*. at ¶ 7. Baiting also helps them "to participate in Idaho Department of Fish and Game's management of [the state's] black bear populations." *Id*. at ¶ 10. Mr. Bullock has definite plans to hunt black bears over bait on National Forest lands in the future. *Id*. at ¶ 9. A prohibition against baiting for black bears would harm his hunting and the hunts of all those he guides as well as his "ability to help with the management of black bears and the conservation of Idaho's ungulate populations." *Id*. at ¶ 14.

These declarants describe the importance of baiting to their hunting practices and their ability to selectively hunt black bears and avoid the accidental pursuit of grizzly bears. The declarations also demonstrate how hunting black bears over bait enables these

Safari Club members participate in the sustainable use management of black bears and the wildlife species on which black bears prey.  Unless they are able to continue baiting for black bears, these Safari Club members and Safari Club as an organization will be harmed in their support for sustainable use management and conservation of wildlife.

## III. ARGUMENT

### A. Safari Club Should be Granted Intervention as of Right Under Federal Rule of Civil Procedure 24(a)

Safari Club should be entitled to intervene as a matter of right based on Safari Club's and its members' significant interests at risk in this lawsuit and Federal Defendants' inability to adequately represent those interests.  The Federal Rules of Civil Procedure state that the court ***must*** permit anyone to intervene that "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).

The Ninth Circuit has provided a four criteria test for evaluating an applicant's entitlement to intervention as of right:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (citation omitted).  The Court should "construe Rule 24(a) liberally in favor of potential

intervenors." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006). Recently, in *Maughan v. Vilsack*, an Idaho federal district court granted a similar motion from Safari Club[1] to intervene as of right to defend its interest in hunting in a case that challenged wolf removal from National Forest lands. No. 4:14-cv-00007-EJL, 2014 WL 12605649, *2 (D. Idaho July 25, 2014). Just as in *Maughan v. Vilsack*, Safari Club meets all four criteria for intervention as of right under Rule 24(a), and its motion to intervene as of right should be granted.

### 1. The Motion to Intervene Is Timely

As this lawsuit is in the earliest stages, and Federal Defendants have not yet filed their response to the Amended Complaint, this motion is clearly timely. "Timeliness is to be determined from all the circumstances," *NAACP v. New York*, 413 U.S. 345, 366 (1973), and is within the sound discretion of the Court.

### 2. Safari Club Has Significant Protectable Interests in the Subject Matter of this Action

Safari Club meets the second criteria for intervention of right by claiming a significantly protectable interest in the subject of this action which is the hunting of black bears over bait. "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). An applicant satisfies this test by demonstrating an "interest protected by some

---

[1] Safari Club was joined by Rocky Mountain Elk Foundation in its motion to intervene in that case.

law and related to the plaintiff's claim." *Ctr. for Biological Diversity v. Kelly*, No. 1:13-cv-00427-EJL, 2014 WL 4104166, *5 (D. Idaho Aug. 15, 2014) (adopting report and recommendation) (finding that association demonstrated sufficient interest in its members' continued access to National Forest for recreational activities, which would likely be reduced if the plaintiffs succeeded, and county sufficiently demonstrated economic interest in users' access to National Forest lands). "A putative intervenor will generally demonstrate a sufficient interest for intervention of right in a NEPA action, as in all cases, if 'it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y*, 630 F.3d at 1179-80 (quoting *California ex rel. Lockyer*, 450 F.3d at 441).

### 3. Safari Club Is So Situated that Disposition of this Proceeding May, as a Practical Matter, Impair or Impede the Ability to Protect its Interests

Any success by Plaintiffs in this case will, as a practical matter, impair or impede Safari Club's ability to protect its interests. "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *California ex rel. Lockyer*, 450 F.3d at 442 (quoting Fed. R. Civ. P. 24, advisory comm. note to 1966 amendment). If Plaintiffs prevail here, Safari Club members will not be able to hunt black bears over bait on National Forest lands in Idaho and Wyoming. These members will lose the opportunities on which they currently rely to carefully examine the age, size, sex, and species of bear before harvest, and their ability to take significant periods of time to distinguish black bears from grizzly bears. They will lose an important means of participating in the

10

sustainable use management of black bears and the conservation of other wildlife—particularly wildlife that are prey to black bears. Safari Club, as an organization, will lose an important sustainable use strategy that it supports for the management of black bears in general, and on National Forest lands in Idaho and Wyoming specifically. Safari Club has demonstrated that its "interests are situated such that the disposition of this action may, as a practical matter, impair or impede [its] ability to protect [those] interests." *Maughan v. Vilsack*, 2014 WL 12605649, *2; *Ctr. for Biological Diversity*, 2014 WL 4104166, *5,*7 (concluding that applicants demonstrated impairment because additional environmental assessments and potential changes to ESA critical habitat designations would affect their use of land and impose potential economic costs).

### 4. The Existing Parties Do Not Adequately Represent the Interests of Safari Club

As the regulatory authority responsible for balancing the disparate public positions on natural resource use, Federal Defendants cannot adequately represent Safari Club's interests in this litigation. Safari Club's burden to show inadequate representation is "minimal." *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (an applicant need only show "that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal"). Three factors bear on whether an existing party will adequately represent an applicant's interests: (1) "whether [a present party] will undoubtedly make all of the intervenor's arguments"; (2) "whether [a present party] is capable of and willing to make such arguments"; and (3) "whether the intervenor offers a necessary element to the proceedings that would be neglected." *Prete*

11

*v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) (quoting *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)). The inadequate representation test is typically met when the existing defendant is a federal agency and the applicant is a private party asserting its personal interests in the action. *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) ("Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public."), *abrogated on other grounds*, *Wilderness Soc'y*, 630 F.3d at 1180.

Here, Safari Club and its members possess specific interests in hunting black bears over bait. They are the very members of the public who engage in the conduct that the Plaintiffs are attempting to prohibit. The public at large does not uniformly share the interests of Safari Club and its members.

Federal Defendants[2] will not and cannot make the same arguments as Safari Club. Despite their obligation to defend their actions or inactions challenged in this case, Federal Defendants must approach this task with the perspective of government regulators who manage National Forest lands and who respond to a constituency composed of those who agree and disagree with the concept of using bait to hunt black bears. Their primary roles are to represent the federal government and the public at large,

---

[2] As of the date that Safari Club is filing this motion, neither the state of Idaho nor the state of Wyoming has yet intervened. Even if they do intervene to represent their own interests as regulators of the hunting activities at issue, they would not be able to adequately represent the interests of those whose activities are regulated. Like Federal Defendants, the state agencies represent a diverse constituency composed of those who support and others who oppose the use of baiting and hunting generally.

some of whom are obviously hostile to the very idea that hunters use bait to improve their accuracy, success, and ability to determine which bear to harvest.

In contrast, Safari Club represents wildlife conservationists and hunters who personally enjoy hunting for black bears and who prefer to use bait to improve their black bear hunting experiences and success. They are business owners whose livelihoods depend on successful and accurate black bear hunting. Safari Club offers a different perspective to this litigation that would not be present absent their participation. It is doubtful that Federal Defendants would be capable of and willing to make all the same arguments that Safari Club will make in this matter, due to their differing perspectives and mandates.

Many courts, including Idaho district courts, have recognized that the interests of government agencies and private parties are not necessarily coterminous, and that private parties frequently bring a perspective to the litigation that government agencies do not share, even if the agencies and private parties share the same goal of defending an agency decision. Agencies must represent the interests of all citizens when involved in litigation and/or decision-making. *See*, *e.g., Forest Conservation Council,* 66 F.3d at 1499; *Maughan v. Vilsack*, 2014 WL 12605649, *3 (finding that the Federal and State governments could not adequately represent Safari Club's interests even though both parties sought to defend government action). While Federal Defendants are likely to defend their decisions, actions, or inactions that have been challenged in this litigation, they will continue in their regulatory function regardless of the outcome of this lawsuit. Safari Club and its members, however, will not get off so lightly as their continued on-

the-ground hunting of black bears over bait will forever be impacted if Plaintiffs succeed in their underlying attack on baiting as a hunting practice. Safari Club therefore possesses significant interests that will not be heard absent its participation and satisfies the "minimal" burden of demonstrating inadequate participation.

B.      **Safari Club Also Satisfies Rule 24(b) Permissive Intervention Criteria**

In the alternative, Safari Club requests permissive intervention under Rule 24(b):

> On timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. Pro. 24(b).[3] Here, permissive intervention is appropriate, even if the Court denies the motion to intervene as of right. As discussed above at Argument Parts III.A.1 and III.A.2, Safari Club's motion to intervene is timely, and it has a significant protectable interest in the subject matter of this action. Furthermore, intervention will not unfairly prejudice the parties (*e.g.,* Safari Club will abide by all briefing schedules), and the severity of potential impacts upon Safari Club weighs strongly in favor of allowing its participation as a party. Safari Club's defenses for the Federal Defendant's actions have multiple questions of law and fact in common with the main action. Safari Club expects to argue, *inter alia*, that Federal Defendants complied with NEPA and the ESA. Safari Club will challenge the Plaintiffs' assertions that baiting of black bears increases the risk

---

[3] Permissive intervention is not a substitute for intervention as of right. If the party qualifies for intervention under Rule 24(a), the Court must grant that status. Fed. R. Civ. P. 24(a).

14

to grizzly bears and will support the Federal Defendants' position that baiting enhances grizzly bear conservation efforts. These are likely to be the major issues between Plaintiffs and Federal Defendants. Intervenors in the Ninth Circuit satisfy the commonality standard by "assert[ing] defenses of the [challenged agency action] directly responsive to the claims of injunction asserted by plaintiffs." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002), *abrogated on other grounds*, *Wilderness Soc'y*, 630 F.3d at 1180.

As the declarations of Safari Club's leadership and members demonstrate, Plaintiffs' success will impair or impede Safari Club's ability to support sustainable use conservation and management, and its members' abilities to continue to enjoy hunting and derive recreational and financial benefit from these outdoor recreational activities on National Forest lands in Idaho and Wyoming. Accordingly, the Court should exercise its discretion to grant permissive intervention to the extent that it denies intervention of right.

### C. Amicus Status

If, for any reason, this Court chooses not to grant Safari Club intervenor status for any portion, stage, or claim of this litigation, Safari Club requests that it be granted amicus status for that portion of the case, with the ability to submit amici arguments at each stage of the litigation.

### IV. CONCLUSION

Safari Club meets all criteria for intervention as of right, and the Court should grant intervention as of right. Safari Club also has demonstrated grounds for permissive

intervention, and the Court should grant permissive intervention for any aspect of this case for which it does not grant intervention as of right. For any portion of the case that the Court finds that it cannot grant intervenor status, Safari Club seeks to participate as an amicus. For the reasons set forth above, Safari Club respectfully requests that the Court grant their motion to intervene.

DATED this 23rd day of August, 2019.

Respectfully Submitted,

/s/ Paul A. Turcke
Paul A. Turcke, ISB No. 4759
MSBT LAW, CHARTERED
7699 West Riverside Drive
Boise, ID 83714
Tel: 208-331-1800
Fax: 208-331-1202
pat@msbtlaw.com

*Attorney for Defendant-Intervenor Applicant*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of August, 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic filing:

Matthew K. Bishop
Western Environmental Law Center
bishop@westernlaw.org

Peter Frost
Western Environmental Law Center
frost@westernlaw.org

Dana Johnson
Danajohnsonecf@gmail.com

Robert P. Williams
U.S. Department of Justice
Robert.p.williams@doj.gov

/s/ Paul A. Turcke
Paul A. Turcke, ISB #4759
MSBT Law, Chartered
7699 West Riverside Drive
Boise, Idaho 83714
Telephone: 208-331-1800
Facsimile: 208-331-1202
pat@msbtlaw.com