LAWRENCE G. WASDEN
ATTORNEY GENERAL
STATE OF IDAHO
DARRELL G. EARLY
Chief, Natural Resources Division
KATHLEEN E. TREVER
OWEN H. MORONEY
Deputy Attorneys General
600 S. WALNUT STREET
P.O. BOX 25
BOISE, ID 83707
TELEPHONE: (208) 334-3715
FAX: (208) 334-4885
E-Mail:   kathleen.trever@idfg.idaho.gov
          owen.moroney@idafg.idaho.gov

*Attorneys for Idaho Fish and Game Commission*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. FOREST SERVICE, et al.,<br><br>Defendants. | Case No. 1:19-cv-00203-CWD<br><br>IDAHO FISH AND GAME COMMISSION'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANT |

## INTRODUCTION

This memorandum is filed in support of the Idaho Fish and Game Commission's (Commission) application to intervene as a defendant in litigation where, WildEarth Guardians, Western Watersheds Project, and Wilderness Watch (collectively, "Plaintiffs") allege the U.S. Forest Service (Forest Service) and the U.S. Fish and Wildlife Service (USFWS) have violated the Endangered Species Act (ESA) and the National Environmental Policy Act (NEPA). The

alleged violations concern a Forest Service policy implemented in 1995 that relies on states, including Idaho, to regulate black bear baiting on national forest lands. Because the Commission is the on-the-ground regulator of black bear hunting in Idaho, the Commission has a unique perspective on many of the issues presented in the Complaint and would be significantly affected by the results of this litigation.

## BACKGROUND

The current Forest Service policy for "Use of Bait in Hunting" was adopted in 1995. The policy is in Forest Service Manual 2643.12, published with comments at 60 Fed. Reg. 14720-02 (1995). Prior to instituting the policy, the Forest Service prepared an environmental analysis, issued a decision notice and finding of no significant impact, and consulted with the USFWS under the ESA. *Fund for Animals, Inc. v. Thomas*, 127 F.3d 80, 82 (D.C. Cir. 1997). The USFWS ultimately determined that the policy was unlikely to "jeopardize the continued existence of any endangered or threatened species." *Id.* The policy retained the long-standing Forest Service policy of generally relying on states to regulate the baiting of game animals. 60 Fed. Reg. 14722. The policy at issue in this litigation was upheld in 1995 after a similar legal challenge was heard by the D.C. Circuit in 1997. *Fund for Animals, Inc.*, 127 F.3d at 84.

In Idaho, the Commission and the Idaho Department of Fish and Game (IDFG) regulate back bear hunting, including baiting. The Commission has promulgated rules and proclamations[1] that extensively regulate the use of bait in black bear hunting in Idaho. *See generally* Idaho

---

[1] In Idaho, "proclamations" have the force and effect of law and are created under a streamlined process that gives the Commission flexibility to quickly respond to changing biological conditions in setting harvest seasons and limits. *See* I.C. § 36-105. The Commission also promulgates administrative rules with the force and effect of law for requirements of longer duration pursuant to the Idaho Administrative Procedure Act; these rules are published in the Idaho Administrative Code. Proclamations for seasons and limits, along with a summary of administrative rules, are available in brochure form, commonly referred to as "hunting regulations."

Administrative Code (IDAPA) 13.01.17.100 and 200; 2019 to 2021 Idaho Black Bear Hunting Seasons.[2] The Commission has a permit requirement for placement of black bear bait in addition to the requirements for hunting license and black bear tag. Among other things, bear baits have requirements regarding the time period in which bait can be placed, types of baits and containers, used, and minimum distances bait must be placed from areas occupied by humans, such as roads, campgrounds or dwellings. IDAPA 13.01.17.100 and 200. The Commission has a long-standing prohibition on the use of bait in Game Management Units 1, 61 (In Fremont County and East of Howard Creek in Clark County), 62, and 62A, which are geographically within the Greater Yellowstone, Selkirk, and Cabinet-Yaak Recovery Grizzly Bear Areas.[3]

The single known mortality of a grizzly bear at a bait site on nation forest lands in Idaho occurred in 2007 because of misidentification by an out-of-state hunter (from Tennessee) unfamiliar with grizzly bears in an area that had no known grizzly bear presence in several preceding decades. The Commission and IDFG integrated their response to the 2007 incident into ongoing educational efforts related to avoiding misidentification mortality and promoting awareness about potential sporadic grizzly bear occurrence outside of existing populations in federally designated recovery areas.

Over the years, the Commission and IDFG have engaged in a great deal of public education aimed at reducing the risk of black bear hunters mistakenly take a grizzly bear. The Commission includes educational materials on grizzly bear versus black bear identification in its proclamations.[4] As an educational measure, the Commission's black bear hunting proclamations

---

[2] *Available at* https://idfg.idaho.gov/sites/default/files/seasons-rules-big-game-2019-2020-black-bear.pdf.
[3] 2019 to 2021 Idaho Black Bear Hunting Seasons, pages 70-72, *available at* https://idfg.idaho.gov/sites/default/files/seasons-rules-big-game-2019-2020-black-bear.pdf.
[4] *Id.* at 74.

have included advisory language ("**Caution:** grizzly bears may be encountered") for certain game management units even though these areas do not have known resident grizzly bear populations.[5] IDFG publicized the 2007 incident to promote grizzly bear awareness.[6] IDFG has continued to update and distribute materials to prevent mortality from misidentification of grizzly bears during black bear hunting. To promote awareness, IDFG has issued media statements where a grizzly bear appears at a new or sporadic location. Recent examples of such releases are located at the following links:

- https://idfg.idaho.gov/press/black-bear-hunters-urged-use-increased-caution-after-grizzly-spotted-unit-10 (describing wandering of grizzly bear into Selway-Bitterroot recovery area in Idaho in June 2019 after being transplanted to the Cabinet-Yaak Recovery Area in Montana from elsewhere in Montana)

- https://idfg.idaho.gov/press/collared-grizzly-bear-coeur-dalene-national-forest-reminder-be-bear-aware

The Commission and IDFG have educational information and a companion on-line bear identification test exam to help hunters and others distinguish grizzly bear and black bear in the field.[7] Idaho has a mandatory hunter education requirement for all hunters born after January 1, 1975, and information regarding grizzly bear/black bear identification is included in hunter education classes with an emphasis based on geography. IDFG also has other materials, such as "How to Hunt Safely in Grizzly Bear Country."[8]

IDFG participates in the Interagency Grizzly Bear Committee (IGBC), where IDFG has worked actively for decades through the IGBC, its subcommittees (e.g., individual ecosystems and information & education), and the Interagency Grizzly Bear Study Team to support grizzly bear recovery and conservation. In addition to USFS, other federal agencies are well-represented

---

[5] *Id.* at 70-72.
[6] *Available at* https://idfg.idaho.gov/press/grizzly-killed-bitterroots-came-selkirks.
[7] *Available at* https://idfg.idaho.gov/hunt/bear-info/overview.
[8] *Available at* https://idfg.idaho.gov/sites/default/files/brochure-2018-hunting-in-grizzly-bear-country.pdf.

on the IGBC, along with sister states, Canadian provincial authorities, and other entities. The IGBC and its member entities have supported a broad suite of land management, wildlife management, and public education efforts to reduce the potential for grizzly bear mortality. These include educational outreach to hunters and other outdoor recreationists, local governments, rural communities, and private landowners.[9]

## ARGUMENT

**1.     The Commission is entitled to intervene as a matter of right.**

Federal Rule of Civil Procedure 24(a)(2) provides for intervention as a matter of right when a movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." This Court applies a four part test when deciding if intervention as a matter of right is merited:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478, 1481 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).

Rule 24 "is construed broadly in favor of the applicants." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995). The Court must "take all well-pleaded,

---

[9] Information generally available at http://igbconline.org/ including http://igbconline.org/bear-safety/.

nonconclusory allegations in the motion to intervene . . . as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

    **A.**    **The Commission's motion to intervene is timely.**

In determining whether a motion to intervene is timely, courts weigh three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). Here, the Commission became aware of this case when the Plaintiffs filed their Complaint on June 5, 2019. (Dkt. No. 1). The Commission weighed its options and voted to seek intervention at a meeting held on August 22, 2019. At the time of this filing, the federal Defendants have not yet answered the Complaint or filed an administrative record. Additionally, the Court has not set a briefing schedule. Given the early stage of this litigation, the Commission's intervention will not prejudice any party or disrupt the proceedings.

    **B.**    **The Commission has a significant protectable interest.**

To qualify as significantly protectable "[i]t is generally enough that [1] the interest is protectable under some law, and [2] that there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc.*, 630 F.3d at 1179 (quoting *Sierra Club*, 995 F.2d at 1484). Rule 24(a)(2) does not require a specific legal or equitable interest: the test "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.*

It is indisputable that the Commission has significant and protectable interest in the management of black bear hunting in Idaho. The Commission is established pursuant to law and has supervision, management, and control power over IDFG, the State of Idaho's wildlife agency. Idaho Code § 36-102. IDFG is an executive agency of the State of Idaho established in

accordance with Section 20, Article IV of the Constitution of the State of Idaho. I.C. § 36-101. Idaho's constitution mandates that the right to hunt "by the use of traditional methods" is "a valued part of the heritage of the State of Idaho and shall forever be preserved for the people and managed through the laws, rules and proclamations that preserve the future of hunting, fishing and trapping." Idaho Const. art. I, § 23. The constitution further provides that: "Public hunting, fishing and trapping of wildlife shall be a preferred means of managing wildlife." *Id.*

The Commission is charged with administering State of Idaho wildlife policy and resources through a flexible and fact-based, scientific approach to wildlife management. I.C. § 36-103(b). The Commission has various powers to implement its charge. These include the power to make administrative rules specifying allowable methods for hunting black bear, requiring a black bear baiting permit, and regulating the use and location of bait. I.C. §§ 36-409, 36-1101; IDAPA 13.01.17.100 and 200. Pursuant to I.C. § 36-105(3), the Commission has issued a proclamation for 2019-2021 hunting seasons and limits for Idaho big game, which includes provisions for hunting black bears and further regulates the use of bait in black bear hunting.[10] IDFG actively educates the public on interacting with grizzly bears. Additionally, IDFG investigates any incident where grizzly bears are shot and seeks prosecution if the circumstances of a case indicate a crime took place.

The Commission also has a financial stake in this matter as IDFG is funded through license and tag sales. The Commission has the authority to charge a $13.75 resident fee and a $30.00 nonresident fee for a bear bait permit, and these fees are in addition to the license, tag, and permit fees that are also required for black bear hunting. *See* I.C. § 36-416(2). These fees provide a valuable source of funds for implementing the Commission's mission.

---

[10] 2019 to 2021 Idaho Black Bear Hunting Seasons, *available at* https://idfg.idaho.gov/sites/default/files/seasons-rules-big-game-2019-2020-black-bear.pdf.

Federal courts have recognized a state's authority over wildlife management. *Lacoste v. Dep't of Conservation of State of Louisiana*, 263 U.S. 545, 549 (1924) ("The wild animals within its borders are, so far as capable of ownership, owned by the state in its sovereign capacity for the common benefit of all of its people."). Federal courts have recognized a state's interest in wildlife management as a basis for intervention. *See United States v. State of Or.*, 745 F.2d 550, 553 (9th Cir. 1984) (citing Idaho's legitimate interest in the anadromous fish runs as a basis for intervention). The broad trustee power that states possess to manage fish and wildlife is recognized in 16 U.S.C. 528, applying to federal lands when there is not federal preemption. Here, the Forest Service has expressly relied on Idaho law to regulate bear baiting on national forest lands. 60 FR 14720-02.

In sum, the Commission clearly has a significantly protectable interest as this suit. As the entity with the legal authority to regulate black bear hunting in Idaho, the Commission meets the interest element for intervention.

> **C. As a practical matter, the Commission's interests could be impaired by the disposition of this litigation.**

A prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Soc.*, 630 F.3d at 1179 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir.2006)). "[C]ases recognize that the interest of a prospective defendant-intervenor may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised rule or plan." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010).

Here, granting Plaintiffs' request to mandate the Forest Service to issue closure orders to black bear baiting would have the practical effect of preempting state regulation of bait for black bear hunting on vast tracts of national forest lands contained in the state. It would also have the practical effect of eliminating one of the Commission's chose tools for managing black bear populations.[11] It would inhibit Idaho's ability to enforce its legal codes. *See Maine v. Taylor*, 477 U.S. 131, 13 7 (1986) ("a State clearly has a legitimate interest in the continued enforceability of its own statutes"). Setting aside the Forest Service policy on baiting would effectively preempt the Commission's rules and proclamations on black bear baiting.

Moreover, granting Plaintiffs mandatory relief would also have significant practical effects as these lands comprise a significant portion of the state's black bear habitat and the the total geographic area of the state. About 75% of black bear habitat in Idaho is national forest land.[12] Forest Service lands make up approximately 38% of the total acreage of the State of Idaho.[13]

Granting Plaintiffs' relief would practically impair the Commission's interests as the state authority vested with navigating the complex, ongoing social debates that surround methods for managing fish and wildlife resources, including specific hunting, fishing, and trapping methods, such as black bear baiting, in Idaho.[14]

---

[11] Idaho Black Bear Management Plan, Idaho Department of Fish and Game, page 13 *available at* https://idfg.idaho.gov/old-web/docs/wildlife/planBlackBear.pdf.
[12] Idaho Black Bear Management Plan, Idaho Department of Fish and Game, page 2 *available at* https://idfg.idaho.gov/old-web/docs/wildlife/planBlackBear.pdf.
[13] A Profile of Idaho Land Use, Idaho Parks and Recreation *available at* https://parksandrecreation.idaho.gov/sites/default/files/uploads/documents/SCORTP/Update/4.%20Profile%20of%20Idaho%20Land%20Use.pdf.
[14] Idaho Black Bear Management Plan, Idaho Department of Fish and Game, page 1 *available at* https://idfg.idaho.gov/old-web/docs/wildlife/planBlackBear.pdf (describing how although baiting has "significant potential for influencing the general public's perception of the acceptability of hunting, in most cases [it only has] minimal biological impact on black bear populations. Habitat fragmentation and loss is far more important to the long-term survival of black bear populations and is, unfortunately, often lost in the debate over hunting methods.").

In sum, the Commission has a legal interest in managing, preserving, and regulating the wildlife within Idaho's boarders that could be practically impaired by the disposition of this litigation.

### D. The Commission's interests are not adequately represented by the other parties.

"[T]he inadequate representation element of Rule 24(a)(2) also presents a minimal burden." *WildEarth Guardians*, 604 F.3d at 1200. "The movant must show only the possibility that representation may be inadequate." *Id.* "The possibility that the interests of the applicant and the parties may diverge need not be great in order to satisfy this minimal burden." *Id.* Courts have "repeatedly recognized that it is 'on its face impossible' for a government agency to carry the task of protecting the public's interests and the private interests of a prospective intervenor." *Id.*

Here, the Commission's interest in protecting the integrity of state sovereign interests and defending the adequacy of the regulatory mechanisms that it has put in place to manage black bear baiting are not adequately represented by the Forest Service, USFWS, or other parties. While the Commission always seeks to work cooperatively with federal agencies and sister states, it cannot be said those agency and state interests are so aligned with the Commission's interest to make the Commission's participation unnecessary. Tension among federal and state interests is inherent in our system of government, and the federal government or a sister state cannot be expected to zealously defend the Commission's interests. Inherent state sovereign powers are not dependent upon the federal statutes that will be the focus of the federal government's defense in this action. The Commission's participation is necessary to ensure that consideration of remedies sought by the Plaintiffs take into account its interests in protecting the integrity of Idaho's police powers, statutes, and regulations. Moreover, the Commission is in a

unique position to explain to the Court both its rationale for its regulation of black bear hunting and the facts surrounding the allegations contained in the Complaint.

Therefore, the inadequate representation element has been met.

**2.      Alternatively, the Court should grant the Commission permission to intervene pursuant to F.R.C.P. 24(b).**

If the Court determines the Commission does not meet the requirements for intervention as a matter of right, then the Court should grant the Commission permission to intervene. Permissive intervention may be granted on a timely motion when the movant "has a claim or defense that shares with the main action a common question of law or fact." F.R.C.P. 24(b)(1)(B). Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (quoting *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940)). Thus, close scrutiny of the applicant's interests is "inappropriate;" the only question to be resolved is "whether the applicants to intervene assert a claim or defense in common with the main action." *Kootenai Tribe of Idaho*, 313 F.3d at 1109-10.

Here, the Commission asserts defenses that directly respond to the Plaintiffs' claims that regulatory mechanisms will not adequately address human caused mortality of grizzly bears. The Commission has spent years educating the public and developing mechanisms to prevent take of grizzly bears during black bear hunting seasons. The use of bait is both a social and a management choice, with restrictions based on population objectives and potential conflicts.

Because the Commission is the on-the-ground regulator of black bear hunting in Idaho, including educational outreach, the Commission has a unique perspective on many of the issues

presented in the Complaint and will be uniquely affected by the results of this litigation. By presenting defenses responsive to the allegations and claims in the Complaint, Idaho has fulfilled the requirements of Rule 24(b), and permissive intervention is warranted.

Further, Rule 24(b)(2) provides that "the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." As previously described, the Commission is the Idaho agency charged under state law with regulating black bear baiting in Idaho. Granting Plaintiffs' requested relief would have the practical effect of preempting state regulation of baiting in black bear hunting in a sizable part of Idaho. Pursuant to Rule 24(b)(2), the Commission is entitled to permissive intervention in this action .

Permissive intervention at this stage will not delay the action or prejudice the adjudication of the rights of the original parties. No substantive orders or rulings have been issued by the Court, the Commission does not seek to expand the scope of issues to be resolved by the Court, and the Commission agrees to abide by whatever briefing or other schedules are established by this Court.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court grant its motion to intervene.

Respectfully submitted this 4th day of September 2019.

        HON. LAWRENCE G. WASDEN
        Attorney General

        DARRELL EARLY
        Chief of Natural Resources Division

                                                KATHLEEN E. TREVER
                                              Lead Deputy Attorney General

                                              */s/ Owen Moroney*
                                              OWEN MORONEY (ISB # 9553)
                                              Deputy Attorney General
                                              600 S. Walnut Street
                                              P.O. Box 25
                                              Boise, ID 83707
                                              owen.moroney@idfg.idaho.gov

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 4th day of September, 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic filing:

Matthew K. Bishop
Western Environmental Law Center
bishop@westernlaw.org

Peter Frost
Western Environmental Law Center
frost@westernlaw.org

Dana Johnson
Danajohnsonecf@gmail.com

Robert P. Williams
U.S. Department of Justice
Robert.p.williams@doj.gov

                                        */s/ Owen Moroney*
                                        OWEN MORONEY (ISB # 9553)
                                        Deputy Attorney General
                                        600 S. Walnut Street
                                        P.O. Box 25
                                        Boise, ID 83707
                                        owen.moroney@idfg.idaho.gov