LAWRENCE G. WASDEN
ATTORNEY GENERAL
STATE OF IDAHO
DARRELL G. EARLY
Chief, Natural Resources Division
KATHLEEN E. TREVER
OWEN H. MORONEY
Deputy Attorneys General
600 S. WALNUT STREET
P.O. BOX 25
BOISE, ID 83707
TELEPHONE: (208) 334-3715
FAX: (208) 334-4885
E-Mail:    kathleen.trever@idfg.idaho.gov
           owen.moroney@idafg.idaho.gov

*Attorneys for Idaho Fish and Game Commission*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. FOREST SERVICE, et al.,<br><br>Defendants. | Case No. 1:19-cv-00203-CWD<br><br>IDAHO FISH AND GAME COMMISSION'S [PROPOSED] ANSWER |

Using the same headings and numbering of paragraphs as WildEarth Guardians, Western Watersheds Project, and Wilderness Watch's (collectively, "Plaintiffs") Amended Complaint (Complaint), Defendant-Intervenor Idaho Fish and Game Commission answers the Complaint as follows:

1.       The allegations in paragraph one purport to characterize Plaintiffs' case and contain legal conclusions. Accordingly, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph one.

Jurisdiction and Venue.

2.       The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph two and for this reason denies them. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations of paragraph two.

3.       The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph three and for this reason denies them. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph three.

4.       To the extent that paragraph four states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph four.

Parties.

5.       The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph five and for this reason denies them. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph five.

6.       The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph six and for this reason denies them. To

the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph six.

7.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph seven and for this reason denies them. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph seven.

8.     The Commission admits that the U.S. Forest Service is a federal agency within the U.S. Department of Agriculture. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph eight.

9.     The Commission admits that the U.S Fish and Wildlife Service is a federal agency within the U.S. Department of the Interior. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph nine.

Facts.

10.    The Commission admits that grizzly bears are native to places in the United States, including Idaho. Plaintiffs appear to be citing facts that can be found in a U.S. Fish and Wildlife Service Greater Yellowstone Ecosystem delisting rule from June 30, 2017 (GYE Delisting Rule). *See* 82 FR 30502-01. The the extent that the Plaintiffs' allegations in paragraph ten reference this rule, the Commission admits that the rule includes those facts. The rule, however, speaks for itself and is the best evidence of its own content. To the extent that any further response is required, the Commission denies the allegations in paragraph ten.

11. To the extent that the allegations in paragraph eleven refer to or quote federal register notices, those notices speak for themselves and are the best evidence of their own content. To the extent that the allegations in paragraph eleven mischaracterize or misquote the contents of the federal register, the Commission denies these allegations. To the extent that a further response is required, the Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph eleven and for this reason denies them.

12. The Commission admits that the 1993 federal recovery plan delineates these six ecosystems but that the recovery plan identifies the Selkirk ecosystem as roughly half in the contiguous US and has in adjacent area of Canada. The Commission admits that the population estimates in paragraph twelve are at or close to population estimates that have applied to these areas recently but that the estimate for the Greater Yellowstone Ecosystem is likely a considerable underestimated because of the conservatism of the population estimator used. To the extent that any further response is required, the Commission denies the allegations in paragraph twelve.

13. The Commission admits that the 1993 federal recovery plan identifies the Selway-Bitterroot ecosystem to include two wilderness areas. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the rest of the factual allegations in paragraph thirteen and for this reason denies them.

14. The Commission admits that grizzly bear populations and ranges are increasing in size. The Commission admits that population estimates, as published by the Interagency Grizzly Bear Study Team with an identified conservatism of the primary population estimator, are accurate. The Commission lacks sufficient factual knowledge to as to the truth or accuracy of the specific

IDAHO FISH AND GAME COMMISSION'S [PROPOSED] ANSWER        Page 4

factual information in paragraph fourteen other than that facts contained in the GYE Delisting Rule and for those reasons denies any remaining factual allegations not contained in that rule.

15. The Commission admits that Idaho and Wyoming have regulations that authorize the use of bait for black bear hunting. The Commission admits that grizzly bears and black bears occur in the overlapping areas on some national forests in Idaho and Wyoming. To the extent that paragraph fifteen states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph fifteen.

16. The Commission admits that some black bear hunters who hunt in national forests in both Idaho and Wyoming use bait to hunt black bears and that these baits in Idaho may include the baits that the Plaintiffs mention. The Commission adds that while the allegations in paragraph sixteen may be true at some times and in some places, the Commission regulates such activities.

17. To the extent that the allegations in paragraph seventeen refer to and describe a closure order and related documents, those documents speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the Commission denies the allegations in paragraph seventeen.

18. To the extent that the allegations in paragraph eighteen refer to and describe an Environmental Assessment and biological opinion, those documents speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the Commission denies the allegations in paragraph eighteen.

19. To the extent that the allegations in paragraph nineteen refer to and describe an Environmental Assessment and biological opinion, those documents speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the Commission denies the allegations in paragraph nineteen.

20. To the extent that the allegations in paragraph twenty refer to and describe a biological opinion, that document speaks for itself and is the best evidence of its own content. To the extent that any further response is required, the Commission denies the allegations in paragraph twenty.

21. To the extent that the allegations in paragraph twenty-one refer to and describe a biological opinion and an incidental take statement, those documents speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the Commission denies the allegations in paragraph twenty-one.

22. To the extent that the allegations in paragraph twenty-two refer to and describe a decision notice, that document speak for itself and is the best evidence of its own content. To the extent that any further response is required, the Commission denies the allegations in paragraph twenty-two.

23. To the extent that the allegations in paragraph twenty-three refer to and describe the recession of a decision notice, documents related to that rescission speak for themselves and are best evidence of their own content. To the extent that any further response is required, the Commission denies the allegations in paragraph twenty-three.

24. To the extent that the allegations in paragraph twenty-four refer to and describe an Environmental Assessment and national policy, those documents speak for themselves and are best evidence of their own content. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph twenty-four.

25. To the extent that the allegations in paragraph twenty-five refer to and describe an Environmental Assessment, that document speaks for itself and is the best evidence of its own

content. To the extent that any further response is required, the Commission denies the allegations in paragraph twenty-five.

26. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph twenty-six and for this reason denies them.

27. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph twenty-seven and for this reason denies them.

28. The Commission admits that it prohibits the use of bait to hunt black bears in certain game management units where grizzly bears are present or may be present. The Commission admits that it does not prohibit the use of bait to hunt black bears in some game management units where there have been a few documented grizzly locations. The Commission admits that it does not prohibit the use of bait to hunt black bears in reference to wilderness designation and that the use of bait to hunt black bears occurs in designated wilderness in Idaho. To the extent that the allegations in paragraph twenty-eight refer to and describe applicable Idaho rules and proclamations, those documents speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the Commission denies the allegations in paragraph twenty-eight.

29. To the extent that the allegations in paragraph twenty-nine refer to and describe applicable Idaho rules and proclamations, those documents speak for themselves and are the best evidence of their own content. The Commission does not interpret the area between the National Continental Divide ecosystem and the Bitterroot ecosystem delineated in the 1993 recovery plan to include any portion of Idaho and denies allegations as to the use of bait in Idaho on that basis.

To the extent that any further response is required, the Commission denies the allegations in paragraph twenty-nine.

30.	To the extent that the allegations in paragraph thirty refer to and describe a food closure order, that document speaks for itself and is the best evidence of its own content. To the extent that any further response is required, the Commission denies the allegations in paragraph thirty.

31.	To the extent that the allegations in paragraph thirty-one refer to and describe a food closure order, that document speaks for itself and is the best evidence of its own content. The Commission denies the Panhandle National Forest is between the Northern Continental Divide Ecosystem and Selway-Bitterroot ecosystem. To the extent that any further response is required, the Commission denies the allegations in paragraph thirty-one.

32.	To the extent that the allegations in paragraph thirty-two refer to and describe a food closure order, that document speaks for itself and is the best evidence of its own content. To the extent that any further response is required, the Commission denies the allegations in paragraph thirty-two.

33.	The Commission admits that from 2006 through 2018 statewide reported harvest was 32,343 black bears in Idaho, of which 13,292 were harvested at bait sites, but states these are statewide figures including a broad area in which there is no known grizzly bear occurrence and outside and identified grizzly bear recovery area. The Commission admits hunters take black bears off of bait in the Panhandle and Caribou-Targhee National Forests but states the Commission has closed portions of these forests in identified grizzly bear recovery areas to black bear baiting. In the Idaho Panhandle National Forests, the Commission has closed Game Management Unit 1 (the area north of the Pend Oreille and Clark Fork Rivers) to baiting for black bears as this area encompasses the Selkirk and Cabinet-Yaak Recovery Areas. This closure

is approximately 2,500 square miles. In the Caribou-Targhee and Targhee National Forests the Commission prohibits the use of bait in black bear hunting in the roughly 1,000 square-mile area (Game management Unit (GMU) 61 east of Howard Creek, and all of GMUs 62 and 62A) encompassing all of the bear management units in the Greater Yellowstone Recovery Area in Idaho.

34. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph thirty-four and for this reason denies them.

35. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph thirty-five and for this reason denies them.

36. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph thirty-six and for this reason denies them.

37. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph thirty-seven and for this reason denies them.

38. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph thirty-eight and for this reason denies them.

39. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph thirty-nine and for this reason denies them.

40. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph forty and for this reason denies them.

41. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph forty-one and for this reason denies them.

42. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph forty-two and for this reason denies them.

43. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph forty-three and for this reason denies them.

44. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph forty-four and for this reason denies them.

45. The Commission admits that on or about September 3, 2007, a licensed nonresident guided hunter (from Tennessee) shot and killed a grizzly bear over bait in what was then the Clearwater National Forest in Idaho. The hunter shot the bear near the South Fork of Kelly Creek a short ways above the mouth of Williams Creek. The location is in the Bitterroot Mountains but outside and on the other side of Highway 12 from the federally identified Bitterroot Grizzly Bear Recovery Area. 65 FR 69644-01. The Commission admits that this was the first grizzly bear verified since 1946 in the Bitterroot ecosystem. To the extent that any allegations in paragraph forty-five conflict with the above information, the Commission denies those allegations.

46. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph forty-six and for this reason denies them.

47. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph forty-seven and for this reason denies them.

48. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph forty-eight and for this reason denies them.

49. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph forty-nine and for this reason denies them.

50. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty and for this reason denies them.

51. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty-one and for this reason denies them.

52. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty-two and for this reason denies them.

53. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty-three and for this reason denies them.

54. The Commission admits that a licensed hunter shot and killed a grizzly bear on May 7, 2014, off the Cave Falls Road in the Caribou-Targhee National Forest in Idaho. To avoid misinterpretation of these facts, the Commission states that the bear was <u>not shot over bait</u> and the state of Idaho successfully prosecuted the shooter for unlawful take of grizzly bear under state law. The Commission also states that it has prohibited the use of bait in this area, Game Management Unit 62, since before the 1993 grizzly bear recovery plan. The Commission prohibits the use of bait in black bear hunting in the roughly 1,000 square-mile area (GMU 61 east of Howard Creek, and all of GMUs 62 and 62A) encompassing all of the bear management units in the Greater Yellowstone Recovery Area in Idaho. To the extent that any allegations in paragraph fifty-four conflict with the above information, the Commission denies those allegations.

55. The Commission admits that on or about September 30, 2015, a licensed hunter shot a grizzly bear near a black bear bait site on private land north of Wallace, Idaho. To avoid misinterpretation, the Commission states that the shooter did not have the appropriate tag to hunt black bear, and that the bait site was not legal under Idaho law on the basis it was within 500 yards from one residence and a half mile of several residences. *See* IDAPA 13.01.17.100.02.c (prohibiting bait sites within one-half (1/2) mile of any dwelling). IDFG cited two individuals for violations of state law related to this mortality; one was a juvenile and related legal proceedings are sealed. The involved adult pled guilty to unlawful placement of bait because of the site's proximity to homes.

The Commission also states that applying the term "inholding" to the 2015 mortality location leaves an incorrect impression. Although adjacent to national forest lands (Coeur d'Alene portion of the Panhandle National Forest), this shooting occurred on a private parcel on

one of several connected, miles-long strands of small acreages with rural housing north of the city of Wallace. These private lands lie along various rivers/creeks patented during bygone mining eras and are accessed by longstanding roads. The Commission also states the bear was not transplanted into the area from the Cabinet-Yaak. Instead, the bear involved in the 2015 mortality was a transplant to the Cabinet-Yaak Ecosystem in Montana from elsewhere in Montana eight weeks before the shooting. The transplanted bear did not stay in the Cabinet-Yaak and wandered south outside the designated recovery area. To the extent that any allegations in paragraph fifty-five conflict with the above information, the Commission denies those allegations.

56. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty-six and for this reason denies them.

57. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty-seven and for this reason denies them.

58. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the speculative and vague factual allegations in paragraph fifty-eight and for this reason denies them.

59. The Commission admits that in June of 2019 Augmentation Bear 927 was discovered in in Kelly Creek in the Clearwater National Forest in Idaho by a licensed hunter who was stocking a black bear site with food. The Commission admits that as a result, IDFG urged black bear hunters to use increased caution in the area. The Commission states this is a young male grizzly bear (radio collared and identified as Augmentation Bear 927) that was transplanted in 2018

from the Northern Continental Divide Ecosystem to Spar Lake in the Cabinet Mountains in Montana, which was captured and re-released after occurring in rural residential areas near Clark Fork on the Idaho-Montana border. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the statement that the bear visited at least three black bear baiting sites. To the extent that any allegations in paragraph fifty-nine conflict with the above information, the Commission denies those allegations.

60. The Commission admits that on July of 2019 Augmentation Bear 927 traveled into the Selway-Bitterroot Wilderness and since that time Augmentation Bear 927's telemetry collar has located the bear in both Montana and Idaho adjacent to Lolo Pass in and out of the fringes of the Selway-Bitterroot Wilderness. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the statement that this bear was seen heading south in the Cayuse Creek Drainage, which is a drainage outside of the Selway-Bitterroot Wilderness, north of Highway 12. To the extent that any allegations in paragraph sixty conflict with the above information, the Commission denies those allegations.

61. The allegation in paragraph sixty-one purport to describe unidentified documents. To the extent that the allegations in paragraph sixty-one refer to and describe these unidentified documents, that documents should speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the Commission denies the allegations in sixty-one.

62. The Commission also believes that this paragraph refers to the 2018 activities of Augmentation Bear 927 (described above in paragraph 59). The Commission denies that Augmentation Bear 927 was from the Cabinet Mountains because the bear was a transplanted augmentation bear from the Northern Continental Divide Ecosystem in Montana. The

transplanted bear did not remain in the Cabinet Mountains and travelled south across the Clark Fork River in 2018 and was reported at a bait site on private land in Idaho. The private parcel where the bait was located was completely surrounded by private land in a rural residential area located southwest of the town of Clark Fork. IDFG and USFWS promptly removed the bear from the area of the bait site, and it was returned to the Cabinet Mountains and re-released. The Commission admits that the Augmentation Bear 927 returned to the rural residential area southwest of Clark Fork but lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the statement that the bear returned to the bait site for a second time. To the extent that any further response is required or that the allegations in paragraph sixty-two conflict with the above facts, the Commission denies the allegations in sixty-two.

63. The Commission admits that IDFG removed two bears in eastern Idaho in 2018, sending one to a zoo in Texas and lethally removing another. The Commission is unaware of any evidence that either bear frequented a bait site; both bears were documented to having obtained human food around residences or other sources unrelated to bait for black bear hunting. To the extent that any further response is required, the Commission denies the allegations in sixty-three.

64. The Commission denies the allegations in paragraph sixty-four.

65. The Commission denies the allegations in paragraph sixty-five.

66. The Commission denies the allegations in paragraph sixty-six.

67. The Commission denies the allegations in paragraph sixty-seven.

68. The Commission denies the allegations in paragraph sixty-eight.

69. The Commission denies the allegations in paragraph sixty-nine.

70. The Commission denies the allegations in paragraph seventy.

71. The Commission denies the allegations in paragraph seventy-one.

72. The Commission avers that the allegation that theobromine may be toxic to bears may be true but states that there has not been documentation of such toxicity occurring at a bear bait site in Idaho. Otherwise, the Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph seventy-two and for this reason denies them.

73. The Commission denies the allegations in the first sentence of paragraph seventy-three as the term "demographic monitoring area" is used by the Interagency Grizzly Bear Study Team and individual state and federal agencies participating in grizzly bear recovery as specific to the Greater Yellowstone grizzly population. The Commission admits the allegations in the second sentence of paragraph seventy-three.

Claims for Relief.

Claim One: Endangered Species Act.

74. This allegation incorporates by reference all previous paragraphs and, therefore, no further response is required. To the extent that a response is required, the Commission denies the allegations in paragraph seventy-four.

75. To the extent that the allegations in paragraph seventy-five state conclusions of law, no response is required. To the extent that the allegations in paragraph seventy-five summarize various laws, a biological opinion, and studies, these documents speak for themselves and are the best evidence of their own content. To the extent that a response is required, the Commission denies the allegations in paragraph seventy-five.

76. To the extent that the allegations in paragraph seventy-six state conclusions of law, no response is required. To the extent that the allegations in paragraph seventy-six summarize various laws and an incidental take statement, these documents speak for themselves and are the

best evidence of their own content. To the extent that a response is required, the Commission denies the allegations in paragraph seventy-six.

77. To the extent that the allegations in paragraph seventy-seven state conclusions of law, no response is required. To the extent that the allegations in paragraph seventy-seven summarize various laws, these laws speak for themselves and are the best evidence of their own content. To the extent that a response is required, the Commission denies the allegations in paragraph seventy-seven.

Claim Two: National Environmental Policy Act.

78. This allegation incorporates by reference all previous paragraphs and, therefore, no response is required. To the extent that a response is required, the Commission denies the allegations in paragraph seventy-eight.

79. To the extent that the allegations in paragraph seventy-nine state conclusions of law, no response is required. To the extent that the allegations in paragraph seventy-nine summarize various laws, Environmental Assessments, and policy, these documents speak for themselves and are the best evidence of their own content. To the extent that a response is required, the Commission denies the allegations in paragraph seventy-nine.

Relief Sought.

The final six paragraphs of the Complaint constitute Plaintiffs' request for relief, to which no response is required. To the extent that a response is required, the Commission denies that the Plaintiffs are entitled to any relief.

**General Denial**

Each and every allegation in the Complaint that is not specifically admitted is hereby denied.

**Affirmative Defenses**

The Commission reserves the right to assert additional affirmative defenses at a later date. The Commission asserts that the following defense bar some or all of Plaintiffs' claims:

1. Plaintiffs fail to state a claim for which relief may be granted.

2. Plaintiffs fail to demonstrate standing to assert some or all of their claims.

3. This Court lacks jurisdiction over some or all of Plaintiffs' claims.

4. Some or all of Plaintiffs' claims are barred by the applicable statute of limitations.

Respectfully submitted this 4th day of September 2019.

HON. LAWRENCE G. WASDEN
Attorney General

DARRELL EARLY
Chief of Natural Resources Division
KATHLEEN E. TREVER

*/s/ Owen Moroney*
OWEN MORONEY (ISB # 9553)
Deputy Attorney General
600 S. Walnut Street
P.O. Box 25
Boise, ID 83707
owen.moroney@idfg.idaho.gov

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 4th day of September, 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic filing:

Matthew K. Bishop
Western Environmental Law Center
bishop@westernlaw.org

Peter Frost
Western Environmental Law Center
frost@westernlaw.org

Dana Johnson
Danajohnsonecf@gmail.com

Robert P. Williams
U.S. Department of Justice
Robert.p.williams@doj.gov

                                   */s/ Owen Moroney*
                                   OWEN MORONEY (ISB # 9553)
                                   Deputy Attorney General
                                   600 S. Walnut Street
                                   P.O. Box 25
                                   Boise, ID 83707
                                   owen.moroney@idfg.idaho.gov