JEAN E. WILLIAMS
Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
ROBERT P. WILLIAMS
Sr. Trial Attorney (D.C. Bar No. 474730)
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-0206
Facsimile: (202) 305-0275
Email: robert.p.williams@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| WILDEARTH GUARDIANS, WESTERN WATERSHEDS PROJECT, and WILDERNESS WATCH, | ) ) ) ) | **Case No. 1:19-cv-00203-CWD** |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | **MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS** |
| UNITED STATES FOREST SERVICE and UNITED STATES FISH & WILDLIFE SERVICE, | ) ) ) ) | |
| Defendants. | ) ) | |

## TABLE OF CONTENTS

PAGE

INTRODUCTION ........................................................................................................... 1

LEGAL BACKGROUND ............................................................................................... 1

    I.    Endangered Species Act ............................................................................... 1

    II.   National Environmental Policy Act ............................................................ 2

FACTUAL BACKGROUND .......................................................................................... 4

    I.    Game Baiting On National Forest System Lands ...................................... 4

    II.   Prior Litigation ............................................................................................ 6

STANDARD OF REVIEW FOR MOTION TO DISMISS ........................................... 6

ARGUMENT ................................................................................................................... 7

    I.    Count I Fails to State an Actionable Claim for Relief Against FWS ................. 7

        A.  The legal authority to reinitiate consultation lies solely with the action agency .......... 9

        B.  The consulting agency's duty to complete consultation can arise only if, and when, the action agency elects to begin reinitiated consultation ................................................. 12

        C.  Dismissal of FWS from this Case is Consistent with Ninth Circuit Authority .......... 13

    II.   Count II Should Be Dismissed Because There Is No "Major Federal Action" ................ 16

CONCLUSION ............................................................................................................. 200

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                              <u>PAGE</u>

*Alaska v. Andrus*, 591 F.2d 537 (9th Cir. 1979) ............................................................. 17, 19, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 6, 7

*City of Santa Clarita v. U.S. Dep't of Interior*, No. CV02-00697 DT, 2006 WL 4743970 (C.D. Cal. Jan. 30, 2006) ................................................................................................................ 8

*Cold Mountain v. Garber*, 375 F.3d 884 (9th Cir. 2004) ............................................................ 18

*Ctr. for Biol. Div. v. Salazar*, No. CV–09–8207–PCT–DGC, 2010 WL 2493988 (D. Ariz. June 17, 2010) ............................................................................................................................ 18, 19

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101 (9th Cir. 2012).. 9, 13

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. 09–CV–8011–PCT–PGR, 2011 WL 4551175 (D. Ariz. Sept. 30, 2011) ................................................................................ 20

*Ctr. for Biological Diversity v. Vilsack*, 276 F. Supp. 3d 1015 (D. Nev. 2017) .......................... 18

*Defs. of Wildlife v. Flowers*, 414 F.3d 1066 (9th Cir. 2005) ...................................................... 9, 13

*Defs. of Wildlife v. Zinke*, 856 F.3d 1248 (9th Cir. 2017) .......................................................... 9, 13

*Env'tl Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073 (9th Cir. 2001) ............... 13, 14, 15

*Epstein v. Wash. Energy Co.*, 83 F.3d 1136 (9th Cir. 1996) ....................................................... 7, 8

*Fund for Animals v. Thomas*, 127 F.3d 80 (D.C. Cir. 1997) ................................................. passim

*Fund for Animals v. Thomas*, 932 F.Supp. 368 (D.D.C. 1996) ..................................................... 6

*Gifford Pinchot Task Force v. FWS*, 378 F.3d 1059 (9th Cir. 2004) ........................................... 15

*Greenpeace Found. v. Mineta*, 122 F. Supp. 2d 1123 (D. Haw. 2000) ........................................ 9

*Hoopa Valley Tribe v. NMFS*, 230 F. Supp. 3d 1106 (N.D. Cal. 2017) ...................................... 14

*Idaho Sporting Cong. v. Thomas*, 137 F.3d 1146 (9th Cir. 1998) ................................................. 3

*In re Mont. Wilderness Ass'n*, No. CV–09–95–GF–SEH, 2010 WL 11470325 (D. Mont. Dec. 6, 2010) ...................................................................................................................................... 18

*Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006 (9th Cir. 2012) .............................. 10, 13

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ...................................................................................... 12

*Marsh v. Or. Nat. Res. Council*, 490 U.S. 360 (1989) .............................................................. 3, 16

*Maughan v. Vilsack*, No. 4:14–CV–0007–EJL, 2014 WL 201702 (D. Idaho Jan. 17, 2014) ...... 19

*McCarthy v. United States*, 850 F.2d 558 (9th Cir. 1988) ............................................................. 6

*Moapa Band of Paiutes v. U.S. BLM*, No. 2:10–CV–02021–KJD–LRL, 2011 WL 4738120 (D. Nev. Oct. 2, 2011) ................................................................................................................ 18, 19

*Native Fish Soc'y v. NMFS*, 992 F. Supp. 2d 1095 (D. Or. 2014) ................................................. 9

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004) ............................................... 3, 12, 16, 17

*Oceana v. BOEM*, 37 F. Supp. 3d 147 (D.D.C. 2014) ................................................................. 14

*Or. Nat. Res. Council v. Allen*, 476 F.3d 1031 (9th Cir. 2007) ........................................... 9, 10, 13

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, 606 F. Supp. 2d 1122 (E.D. Cal. 2008).. 10

*Pacificans for a Scenic Coast v. Cal. DOT*, 204 F. Supp. 3d 1075 (N.D. Cal. 2016) .................. 14

*Price Rd. Neighborhood Ass'n v. U.S. DOT*, 113 F.3d 1505 (9th Cir. 1997)................................. 3

*Prot. Lake Pleasant v. Connor*, No. CIV 07–0454–PHX–RCB, 2010 WL 5638735 (D. Ariz. July 30, 2010)........................................................................................................................... 19

*Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410 (9th Cir. 1990)..... 10

*Rattlesnake Coal. v. EPA*, 509 F.3d 1095 (9th Cir. 2007)...................................................... 19, 20

*Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989)............................................ 2

*Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346 (9th Cir. 1994) ........................... 2

*Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220 (9th Cir. 2008)................... 13, 15

*Sierra Club. v. Penfold*, 857 F.2d 1307 (9th Cir. 1988) ............................................................. 19

*St. Clair v. City of Chico*, 880 F.2d 199 (9th Cir. 1989)............................................................... 6

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)....................................................... 13

*Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730 (9th Cir. 1979)............................ 6

*United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483 (2001)................................... 13

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*, 435 U.S. 519 (1978) ...................... 2

*W. Watersheds Project v. U.S. Bureau of Land Mgmt.*, 971 F. Supp. 2d 957 (E.D. Cal. 2013).... 18

*WildEarth Guardians v. U.S. Forest Serv.*, No. 4:14-cv-00488-REB, 2017 WL 1217099 (D. Idaho Mar. 31, 2017)........................................................................................................... 20

## STATUTES

5 U.S.C. § 706(1) ....................................................................................................................... 14

16 U.S.C. § 1536(a)(2)............................................................................................................ 1, 10

42 U.S.C. § 4332(C) ..................................................................................................................... 2

## FEDERAL REGULATIONS

36 C.F.R. § 251.50(c)................................................................................................................... 4

40 C.F.R. § 1501.3(b) ................................................................................................................. 17

40 C.F.R. § 1501.4(b) ................................................................................................................... 3

40 C.F.R. § 1508.9 ....................................................................................................................... 3

40 C.F.R. § 1508.13 ..................................................................................................................... 3

40 C.F.R. § 1502.9(c)(1)......................................................................................................... 18, 19

50 C.F.R. § 402.14(a) ................................................................................................................. 10

50 C.F.R. § 402.14(a)-(b)............................................................................................................. 2

50 C.F.R. § 402.14(a)-(f) ............................................................................................................ 12

50 C.F.R. § 402.14(g)-(h) ............................................................................................................ 2

50 C.F.R. § 402.14(i)(v)(4)........................................................................................................... 9

50 C.F.R. § 402.14(m)................................................................................................................ 12

50 C.F.R. § 402.16 ............................................................................................................. 2, 9, 14

50 C.F.R. § 402.16(a) ................................................................................................................. 11

50 C.F.R. § 402.13(a)................................................................................................................... 2

51 Fed. Reg. 19,926 (June 3, 1986) .................................................................... 9, 11

51 Fed. Reg. 19,928 ................................................................................................ 11

51 Fed. Reg. 19,953 ................................................................................................ 11

51 Fed. Reg. 19,954 .................................................................................................. 9

51 Fed. Reg. 19,956 (June 3, 1986) .................................................................... 9, 11

59 Fed. Reg. 11,765 (Mar. 14, 1994) ..................................................................... 5

59 Fed. Reg. 17,758 (Apr. 14, 1994) ...................................................................... 5

60 Fed. Reg. 14,720 (Mar. 20, 1995) ........................................................... 4, 5, 19

60 Fed. Reg. 14,722 ................................................................................................ 17

64 Fed. Reg. 31,285 (June 10, 1999) ..................................................................... 12

84 Fed. Reg. 44,976, 44,980 (Aug. 27, 2019) ....................................................... 11

The above-captioned complaint seeks to compel supplemental processes under the Endangered Species Act ("ESA") and the National Environmental Policy Act ("NEPA") with regard to a 1995 U.S. Forest Service ("Forest Service") policy that reaffirms the agency's longstanding policy of leaving the regulation of baiting – whether to prohibit such baiting or regulate it as a hunting activity – to the states in which National Forest System lands are located.

Count I alleges a "failure to reinitiate" consultation under the ESA and is pled against not only the Forest Service, the promulgator of the 1995 policy, but also against the expert wildlife agency with whom the Forest Service would consult under the ESA, the U.S. Fish & Wildlife Service ("FWS").  Count I fails to state a prima facie claim for relief against FWS (as the consulting agency) because it presumes FWS has failed to exercise authority it does not possess.

Count II alleges a failure to supplement the Forest Service's prior NEPA analysis, but does not, and cannot, identify a "major federal action" necessary to trigger any duty to supplement NEPA analysis.  Indeed, the D.C. Circuit addressed this very same Forest Service policy 22 years ago and concluded that the requirements of NEPA were not triggered because the policy was not a "major federal action."  *Fund for Animals v. Thomas*, 127 F.3d 80, 83-84 (D.C. Cir. 1997).  The result here should be the same.  There was no "major federal action" in the first instance and no "major federal action" remains to occur.

## LEGAL BACKGROUND

## I.      Endangered Species Act

Section 7(a)(2) of the ESA requires federal agencies proposing to take an action ("action agencies") to ensure that any action they authorize, fund, or carry out "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of designated critical habitat.  16 U.S.C. § 1536(a)(2).  To ensure compliance with those mandates, the ESA's implementing regulations outline a detailed

1

process whereby federal action agencies consult with the appropriate expert "consulting agency" (here, FWS) to, among other things, analyze the potential impacts of a proposed action on listed species and their critical habitat.

The action agency must engage in consultation (either "informal" or "formal," as appropriate) if its proposed action "may affect" a listed species or critical habitat. Formal consultation is required where the action agency or the consulting agency determines that the action is "likely to adversely affect" listed species or designated critical habitat. 50 C.F.R. §§ 402.13(a), 402.14(a)–(b). Formal consultation leads to the issuance of a written biological opinion ("BiOp") by the consulting agency that assesses the likelihood of "jeopardy" to the species and "destruction or adverse modification" of its critical habitat. *Id*. § 402.14(g)-(h). Reinitiation of consultation may be required under certain enumerated circumstances. 50 C.F.R. § 402.16. While the consulting agency can request that the action agency reinitiate consultation, the authority to reinitiate rests solely with the action agency, as the obligation to avoid jeopardy and adverse modification of critical habitat is borne solely by the action agency.

## II.    National Environmental Policy Act

NEPA requires a federal agency to weigh the "environmental consequences of a proposed project" in advance of a final decision to ensure that "important effects will not be overlooked or underestimated." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989); *see also Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*, 435 U.S. 519, 558 (1978). NEPA imposes only procedural requirements, and it does not dictate a substantive environmental result. *See Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1356 (9th Cir. 1994). If an action is subject to NEPA, and the proposed action may "significantly affect[] the quality of the human environment," NEPA generally requires the agency to prepare a "detailed statement," known as an environmental impact statement ("EIS"). 42 U.S.C. § 4332(C). To assess whether

an action is likely to have a significant impact on the human environment, and therefore whether

an EIS is needed, NEPA regulations allow agencies to first prepare an environmental assessment

("EA").  *See* 40 C.F.R. § 1501.4(b).  An EA is a concise public document that briefly describes

the proposed action, examines alternatives, considers environmental impacts, and provides a list

of the individuals and agencies consulted.  *See id*. § 1508.9.  If a finding of no significant impact

("FONSI") is reached after an agency analyzes its proposed action's potential impacts in an EA,

NEPA does not require the agency to prepare an EIS.  *See id*. § 1508.13.

If a proposed action is not yet complete, an agency has a duty to supplement its draft or

final EISs if there "are significant new circumstances or information relevant to environmental

concerns and bearing on the proposed action or its impacts."  *Marsh v. Or. Nat. Res. Council*,

490 U.S. 360, 372 (1989) (quoting 40 C.F.R. § 1502.9(c)).  The same duty to supplement applies

to EAs.  *See Idaho Sporting Cong. v. Thomas*, 137 F.3d 1146, 1152 (9th Cir. 1998) (noting that

an EA must be supplemented in the same manner as an EIS).  However, there are limits to an

agency's duty to supplement its prior NEPA analyses.  *See Marsh*, 490 U.S. at 373 (finding no

need to supplement "every time new information comes to light after the [prior analysis] is

finalized" because such a requirement "would render agency decisionmaking intractable, always

awaiting updated information only to find the new information outdated by the time a decision is

made"); *Price Rd. Neighborhood Ass'n v. U.S. DOT*, 113 F.3d 1505, 1509 (9th Cir. 1997)

(noting that "an agency need not start the environmental assessment process anew with every

change in a project") (citation omitted).  As relevant here, "supplementation is necessary only if

'there remains 'major Federal actio[n]' to occur.'"  *Norton v. S. Utah Wilderness All.*, 542 U.S.

55, 73 (2004) (citation omitted); *see also id.* (finding "no ongoing 'major Federal action' that

could require supplementation" because the "action is completed when the plan is approved").

## FACTUAL BACKGROUND

### I.   Game Baiting On National Forest System Lands

"Baiting," when used in reference to the hunting for wildlife, means placing some form

of attractant – generally items such as food, salt, or manufactured scents – in a particular location

in an effort to attract the wildlife to the hunter, rather than to have the hunter travel through the

environment searching for the wildlife.  60 Fed. Reg. 14,720 (Mar. 20, 1995).  Consistent with

"the States' traditional role in managing fish and wildlife," the practice of baiting has been

generally "subject to State law and regulations."  *Id*.  However, at least "some Forest Service

units" had (prior to 1995) issued "special use permits . . . to regulate baiting" in certain National

Forests, even though the Forest Service determined that "the issuance of special use permits

[was] not appropriate" to regulate baiting.  *Id*.; *see also* Am. Compl. ¶ 17 (ECF No. 12); 36

C.F.R. § 251.50(c) (exempting "hunting" from the requirements for a special use authorization).

In February 1993, pursuant to a settlement agreement resolving a previous lawsuit, the

Foresters for Regions 1 and 4 completed an EA considering options for regulating baiting on

National Forest System lands in Wyoming.  *Fund for Animals*, 127 F.3d at 81.  In April 1993,

the Forest Service issued a "Decision Notice and Finding of No Significant Impact," announcing

its decision to defer to the State of Wyoming to regulate baiting.  *Id*.  As relevant here, the Forest

Service concluded that deferring to state regulation in Wyoming was "not a major federal action"

and would "not significantly affect the quality of the human environment."  *Id*. at 81-82.

On April 14, 1993, in response to the Forest Service's request for consultation, FWS

provided its BiOp, finding that none of the alternatives considered by the Forest Service was

likely to jeopardize any listed species, including grizzly bears.  *Id*. at 82.  However, to address

the "remote possibility that a grizzly bear may be taken as a result of black bear baiting," FWS'

BiOp also included specific non-discretionary conditions and discretionary conservation

recommendations.  *Id*.  On July 29, 1993 the Forest Service's decision notice for Wyoming was withdrawn, pending the development of a national policy.  *Id.*

In March 1994, the Forest Service issued an interim national policy proposing to defer to the states in the regulation of baiting, 59 Fed. Reg. 11,765 (Mar. 14, 1994), but withdrew it and republished it as a proposed national policy on April 14, 1994, 59 Fed. Reg. 17,758 (Apr. 14, 1994).  The purpose of the proposed policy was to "clarify the agency's role in relation to the role of the States and . . . provide a consistent approach to the regulation of baiting resident game."  *Id*.  In connection with the proposed policy, the Forest Service completed a biological evaluation in February 1995, finding, *inter alia*, that it was not likely to adversely affect the grizzly bear on National Forest System lands.  *See Fund for Animals*, 127 F.3d at 82.  In response to the Forest Service's request to review this biological evaluation, FWS issued a letter in February 1995, finding that the proposed policy appeared consistent with FWS's earlier BiOp (dated April 14, 1993).  *Id*.  Following additional discussions with the Forest Service, FWS then issued a second letter on March 14, 1995, concurring with the Forest Service's determination of "not likely to adversely affect."  *Id*.  The Forest Service subsequently completed a second EA, finding that any environmental consequences of the proposed policy would be negligible.  *Id*.

On March 15, 1995, the Forest Service issued another "Decision Notice and Finding of No Significant Impact," in which it adopted the proposed policy and also determined, *inter alia*, that no EIS was needed because the proposed policy was "not a major Federal action" and would "not significantly affect the quality of the human environment."  *Id*.  The final national policy was published on March 20, 1995.  *See* 60 Fed. Reg. at 14,720.  As relevant here, the national policy clarifies, "[w]here State law and regulation permit baiting[,] the practice is permitted on National Forest System lands unless the authorized officer determines on a site specific basis that

the practice conflicts with Federal laws or regulations, or forest plan direction, or would adversely affect other forest uses or users." *Id*. at 14,722.

## II.     Prior Litigation

Three months later, on June 21, 1995, several environmental groups brought a challenge to the national policy, alleging that the Forest Service: (1) violated the ESA by failing to formally consult with FWS regarding the policy; and (2) violated NEPA by failing to first prepare an EIS. *See Fund for Animals v. Thomas*, 932 F. Supp. 368, 370 (D.D.C. 1996), *aff'd* 127 F.3d 80. On August 8, 1996, the district court granted summary judgment to the Forest Service, rejecting both claims. *Id*. at 371. The plaintiffs appealed the decision. On October 17, 1997, the D.C. Circuit affirmed the district court's judgment. As discussed *infra*, the D.C. Circuit held that, "[t]o the extent that there was an ESA consultation obligation, the Forest Service and FWS fulfilled it by engaging in 'informal consultation.'" *Fund for Animals*, 127 F.3d at 84. The D.C. Circuit also found that the national policy was "not a major federal action" for NEPA purposes, such that the Forest Service had "no EIS obligation." *Id*. at 83.

### STANDARD OF REVIEW FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) authorizes federal courts to dismiss claims over which they lack subject matter jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). A plaintiff's allegations do not enjoy a presumption of truthfulness, and disputes as to material facts should not prevent the court from determining the merits of a jurisdictional claim. *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp*., 594 F.2d 730, 733 (9th Cir. 1979). Federal Rule of Civil Procedure 12(b)(6) addresses the legal sufficiency of a complaint, such that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants have committed the violation alleged.  While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation," *id*., so a "formulaic recitation of the elements of a cause of action" is not enough.  *Twombly*, 550 U.S. at 555.  Similarly, "conclusory allegations of law and unwarranted inferences" are also "insufficient to defeat a motion to dismiss for failure to state a claim."  *Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

## ARGUMENT

### I.      Count I Fails to State an Actionable Claim for Relief Against FWS

Count I of the complaint alleges a breach of the duty to "reinitiate and complete" consultation on the Forest Service's 1995 policy.  Am. Compl., Relief Sought ¶ 4, ¶ 76.  While this may be an actionable claim for relief against the Forest Service, as the agency alleged to have taken the action (the "action agency"), and the claim could, if successful against the Forest Service, provide Plaintiffs with full relief,[1] Plaintiffs have not limited their claim to just the Forest Service.  Plaintiffs also have brought the consulting wildlife agency, here FWS, into the case as a Defendant to Count I.  Count I alleges that FWS, too, has failed to "reinitiate and complete" consultation on the Forest Service's policy.  *Id*.

Count I does not state an actionable claim against FWS.  For FWS to have breached a duty to "reinitiate and complete" consultation, it would have to possess the legal authority to

---

[1] This is not to suggest that there is a federal action in this case by the Forest Service that is subject to the consultation requirements of Section 7, or that warrants reinitiation of consultation. The question of whether the Forest Service has a duty to reinitiate consultation is beyond the scope of this motion.  The point here is that raising the question of whether the Forest Service has a duty to reinitiate cannot provide a legal basis to sue FWS.

either "reinitiate and complete" consultation on its own accord, or to compel the Forest Service to "reinitiate and complete" consultation with it. FWS can do neither. The ESA places the authority and, hence, any duty to reinitiate consultation solely on the action agency. This is not to say that FWS has no duties with respect to completing reinitiated consultation, however its "duty to reinitiate," so to speak, arises *only if*, and when, the action agency elects to reinitiate. FWS' duty to complete consultation must not be confused with the action agency's "duty to reinitiate," which is to decide whether to engage in the process of reinitiated consultation as a threshold matter. Thus, as is relevant here, FWS could have a duty to complete reinitiated consultation as alleged in Count I *only if* the Forest Service had decided to reinitiate.

Plaintiffs do not allege, however, that the Forest Service has decided to reinitiate. Just the opposite. Plaintiffs allege that the Forest Service has *not* reinitiated. *Id.* In so alleging, Plaintiffs fail to allege the predicate necessary to state a prima facie claim for relief against FWS for "failure to reinitiate" consultation. In the absence of an actionable claim against it, FWS must be dismissed from this case. *See City of Santa Clarita v. U.S. Dep't of Interior*, No. CV02-00697 DT, 2006 WL 4743970, at *15 (C.D. Cal. Jan. 30, 2006) (holding that, "[t]o the extent that Plaintiffs' failure to reinitiate claims are directed at Defendant Service, they must be dismissed" because "[u]nder the ESA, the 'action agency' in an ESA consultation process 'has the primary responsibility for implementing section 7's substantive commands'" and "the Service lacks any authority to require an action agency to reinitiate consultation") (citation omitted), *aff'd*, 226 F. App'x 748 (9th Cir. 2007), *opinion withdrawn and superseded/aff'd on denial of reh'g*, 249 F. App'x 502 (9th Cir. 2007).

Whether FWS can be sued here due to the Forest Service's alleged "failure to reinitiate" consultation has important implications for FWS because Count I is the only reason FWS is a participant in this litigation. But for Count I, FWS would not be required to divert its limited

resources away from its primary mission of conserving listed species and habitat to time-intensive litigation-related activities such as preparing an administrative record.

A.     **The legal authority to reinitiate consultation lies solely with the action agency**

As the Ninth Circuit has acknowledged, a consulting wildlife agency (here, FWS) "lacks the authority to require the initiation of consultation" under the ESA.  *Defs. of Wildlife v. Flowers*, 414 F.3d 1066, 1070 (9th Cir. 2005) (citation omitted).  This is true with regard to initiating consultation in the first instance as well as reinitiating a prior consultation.  *See* 51 Fed. Reg. 19,926, 19,956 (June 3, 1986) (preamble to the reinitiation of consultation regulation, 50 C.F.R. § 402.16, stating that consulting agencies lack the "authority to require Federal agencies to reinitiate consultation if they choose not to do so").  Indeed, consistent with the plain language of the reinitiation regulation, the Ninth Circuit has noted that "[t]he ESA's implementing regulations require *an action agency* to reinitiate formal consultation with the consulting agency" when the enumerated triggers are met.  *Defs. of Wildlife v. Zinke*, 856 F.3d 1248, 1264 (9th Cir. 2017) (construing 50 C.F.R. § 402.16(b) (emphasis added)); *see also Or. Nat. Res. Council v. Allen*, 476 F.3d 1031, 1040 (9th Cir. 2007) (noting that "*the action agency* must reinitiate consultation with the FWS") (emphasis added); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1108 (9th Cir. 2012) (observing that, pursuant to 50 C.F.R. § 402.16(a) and (c), "*the action agency* must . . . reinitiate consultation") (emphasis added); *accord Native Fish Soc'y v. NMFS*, 992 F. Supp. 2d 1095, 1103 (D. Or. 2014) (same); *Greenpeace Found. v. Mineta*, 122 F. Supp. 2d 1123, 1130 (D. Haw. 2000) (same); 50 C.F.R. § 402.14(i)(v)(4) (ESA consultation regulation stating that, "[i]f during the course of the action the amount or extent of incidental taking . . . is exceeded, the Federal [action] agency must reinitiate consultation immediately"); 51 Fed. Reg. at 19,954 (explaining that "Paragraph (i)(4) requires the Federal [action] agency or the applicant to immediately request reinitiation of formal

consultation if the specified amount or extent of incidental take is exceeded").  Congress itself

has stated that the action agency bears any duty to reinitiate consultation. H.R. Rep. No. 97-567,

at 27 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2807, 2827 ("If the specified impact on the species

is exceeded, the Committee expects that the Federal [action] agency or permittee or licensee will

immediately reinitiate consultation . . .").

 That the authority and, hence, any duty to reinitiate consultation lies solely with the

action agency reflects the basic scheme that Congress created in Section 7 of the ESA.  Section 7

places the duty to avoid jeopardizing listed species, and to consult, on the agency that is

authorizing, funding, or carrying out an action.  16 U.S.C. § 1536(a)(2) ("Each Federal [action]

agency shall, in consultation with and with the assistance of the Secretary, insure that any action

authorized, funded, or carried out by such agency . . . is not likely to jeopardize" any listed

species or destroy or adversely modify critical habitat); 50 C.F.R. § 402.14(a) ("Each *Federal*

*[action] agency shall* review its actions . . . to *determine* whether any action may affect listed

species or critical habitat. If such a determination is made, formal consultation is required . . .")

(emphasis added); *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410,

1415-16 (9th Cir. 1990) (noting action agencies are responsible for meeting the substantive

requirements of ESA Section 7(a)(2)); *Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, 606

F. Supp. 2d 1122, 1188-89 (E.D. Cal. 2008) ("the ultimate responsibility for compliance with the

ESA falls on the action agency") (citations omitted); *Allen*, 476 F.3d at 1033 ("If the action

agency concludes that its proposed action may affect listed species or critical habitat, it must

initiate consultation with the FWS . . ."); *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d

1006, 1020 (9th Cir. 2012) ("Section 7 imposes on all [action] agencies a duty to consult with []

the Fish and Wildlife Service. . .").  The basic purpose of consultation is to "assist Federal

[action] agencies in complying with the requirements of section 7 and provide[] such agencies

with advice and guidance from the Secretary [i.e., FWS] on whether an action complies with the substantive requirements of section 7."  51 Fed. Reg. at 19,926; *see also id.* at 19,928, 19,953.

 The plain language of the longstanding reinitiation regulation makes it clear that the consulting agency's only legal authority with regard to reinitiating consultation is to make a *request* to the action agency to commence reinitiation if one or more of the enumerated triggers have been met.  50 C.F.R. § 402.16(a) ("Reinitiation of consultation is required and *shall be requested* by the Federal agency or *by the Service*, where discretionary Federal involvement or control over the action has been retained or is authorized by law . . .") (emphasis added).  As the Services recently explained, the reference to "the Service" in the foregoing phrase:

> does not impose an affirmative obligation on the Service to reinitiate consultation if any of the criteria have been met. Rather, the reference here has always been interpreted by the Services to allow us to recommend reinitiation of consultation to the relevant Federal action agency if we have information that indicates reinitiation is warranted.
>
> It is ultimately the responsibility of the Federal action agency to reinitiate consultation with the relevant Service when warranted. The same holds true for initiation of consultation in the first instance. While the Services may recommend consultation, it is the Federal agency that must request initiation of consultation.

84 Fed. Reg. 44,976, 44,980 (Aug. 27, 2019); *accord* 51 Fed. Reg. at 19,956 (1986 preamble noting that the consulting agencies lack the authority to compel reinitiation of consultation and are limited to "request[ing] reinitiation when [they] believe[] that any condition described in this section applies").  The Services' 1998 Endangered Species Act Section 7 Consultation Handbook similarly makes it clear that "the Services' can not [sic] require Federal agencies to reinitiate consultation if they choose not to do so."  Endangered Species Consultation Handbook, Procedures for Conducting Consultation and Conference Activities Under Section 7 of the Endangered Species Act at 2-11; *see also id.* at 2-5 ("[t]he action agency is responsible for reinitiating consultation should their actions result in exceeding the level of incidental take");

*accord id.* at 4-64 ("When the action agency determines that one or more of the four conditions requiring reinitiation of formal consultation has occurred, consultation must be reinitiated. Similarly, if the Services recognize that any of these conditions have occurred, written advice is provided to the action agency of the need to reinitiate consultation").[2]

### B. The consulting agency's duty to complete consultation can arise only if, and when, the action agency elects to begin reinitiated consultation

While a consulting agency plainly has a duty to participate in, and complete, consultation once it has begun (subject to the terminating criteria listed in 50 C.F.R. § 402.14(m)), as explained above that duty can be triggered only after the action agency has elected to reinitiate consultation in the first instance. *Compare* 50 C.F.R. § 402.14(a)-(f) (setting forth the action agency's responsibilities for commencing consultation) *with id.* at § 402.14(g) (setting forth the consulting agency's responsibilities *after* formal consultation has begun). Here, the complaint does not allege that the Forest Service has attempted to reinitiate consultation with FWS. Just the opposite. Plaintiffs allege that the Forest Service has *failed* to reinitiate consultation. Am. Compl. ¶¶ 75-76. In the absence of the necessary predicate to trigger any duty FWS could have to complete reinitiated consultation, Plaintiffs fail, as a matter of law, to demonstrate that FWS has breached any legal duty to act. *Supra*, § I.A. It is well-settled that, to state a claim for relief, a plaintiff must identify a "*discrete* agency action that [the agency] is required to take." *Norton*, 542 U.S. at 64. As explained above, the ESA, its implementing regulations, and the Consultation Handbook make it abundantly clear that the consulting agency lacks the legal authority and, hence, any duty to independently commence or complete reinitiated consultation. As such, the

---

[2] The Services' interpretations of their consultation regulations in the Handbook are entitled to deference because they: (1) represent the agencies' official position, given that they were published in the Federal Register after providing an opportunity for public comment (64 Fed. Reg. 31,285 (June 10, 1999)); (2) implicate the Services' substantive expertise; and (3) reflect the Services' fair and considered judgment. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2416-17 (2019).

order that Plaintiffs request from this Court directing FWS to "reinitiate and complete" consultation would not be appropriate and would not redress the injury that Plaintiffs complain of (*i.e.*, the lack of reinitiated consultation). *Compare* Am. Compl., Relief Sought ¶ 4 *with United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497-98 (2001) ("Courts of equity cannot, in their discretion, reject the balance that Congress has struck in a statute") (citation omitted); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court").

**C.    Dismissal of FWS from this Case is Consistent with Ninth Circuit Authority**

Plaintiffs may argue that Count I does, in fact, state a claim for relief against FWS because the Ninth Circuit has ruled that the "duty to reinitiate consultation lies with both the action agency and the consulting agency." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1229 (9th Cir. 2008); *Env'tl Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1076 (9th Cir. 2001) (stating same).  That would be mistaken.  As the Ninth Circuit has acknowledged, a consulting agency lacks the authority to compel consultation.  *Flowers*, 414 F.3d at 1070; *Zinke*, 856 F.3d at 1264; *Allen*, 476 F.3d at 1040, *Ctr. for Biological Diversity*, 698 F.3d at 1108; *Karuk Tribe*, 681 F.3d at 1020.  Given this lack of authority, the Ninth Circuit's references in *Salmon Spawning* and *Simpson Timber* to a consulting agency's "duty to reinitiate consultation" can only be reconciled as references to the duty to *complete* reinitiated consultation *after* the action agency has elected to pursue it.  The Ninth Circuit's statements from these cases cannot be viewed as granting a consulting agency authority it does not possess, either to compel an action agency to reinitiate consultation in the first instance, or to complete consultation independently of the action agency.[3]  The distinction between an action agency's "duty to

---

[3] District court decisions purporting to follow these Ninth Circuit decisions have failed to recognize the fundamental distinction between an action agency's duty to reinitiate in the first

reinitiate consultation" as a threshold matter (*i.e.*, to embark on the process of reinitiated consultation) and a consulting agency's duty to complete reinitiated consultation once it has been requested, is a crucial one. While a consulting agency's alleged failure to complete consultation that has been requested by the action agency could provide grounds for a claim for relief against the consulting agency for agency action "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), a consulting agency's alleged failure to reinitiate consultation in the absence of such a request cannot.

Indeed, there is no indication the Ninth Circuit has considered on the merits, much less resolved, a claim that a consulting agency must either compel an action agency to reinitiate or complete consultation on its own. The statements that the "duty to reinitiate consultation lies with both the action agency and the consulting agency" in *Salmon Spawning* and *Simpson Timber* appear gratuitously, without discussion, as part of cursory mentions of 50 C.F.R. § 402.16. *Compare* 545 F.3d at 1229 & 255 F.3d at 1076; *with Oceana v. BOEM*, 37 F. Supp. 3d 147, 175 n.26 (D.D.C. 2014) (finding statements "not persuasive" where they "appear in dicta and the relevant quotes are dropped in the legal standard section[] with no explanation or citation whatsoever"). *Salmon Spawning* was a standing opinion, considering the plaintiffs' standing to bring a "failure to reinitiate" claim against *any* agency given that the agency action at issue was an international treaty that could not be enjoined by the Court. *Id*. *Simpson Timber*, 255 F.3d 1073, involved a unique situation in which FWS was both the action agency (*i.e.*, issuing an ESA Section 10 incidental take permit) and the consulting agency. FWS had consulted with itself on the effects of its permit issuance. The issue litigated was whether FWS, in its capacity as the

---

instance and the consulting agency's duty to participate in, and complete, consultation, which can arise only after it has been reinitiated by the action agency. *See, e.g.*, *Hoopa Valley Tribe v. NMFS*, 230 F. Supp. 3d 1106, 1117 (N.D. Cal. 2017); *Pacificans for a Scenic Coast v. Cal. DOT*, 204 F. Supp. 3d 1075, 1093 (N.D. Cal. 2016).

action agency, retained sufficient discretionary Federal involvement or control over the permit it was issuing to make the permit an action that is subject to reinitiation at all.  *See id.* at 1076-78, 1080-82.  The Court held that FWS, as the action agency, was not, in fact, required to reinitiate consultation (with itself).  *Id.* at 1079.

In *Gifford Pinchot Task Force v. FWS*, 378 F.3d 1059 (9th Cir. 2004), the Ninth Circuit considered whether FWS could unilaterally amend its BiOp to incorporate new data after it had provided the BiOp to the action agency.  378 F.3d at 1076-77.  The Court ruled that FWS could not do so, stating that "[i]f the data [wa]s new and the new data may affect the jeopardy or critical habitat analysis, then the FWS was obligated to reinitiate consultation . . . [but] [i]f the data was preexisting, then the FWS is to be faulted for not generating the information in time for the initial BiOp."  *Id.*  Again, the Court's reference to FWS being "obligated to reinitiate consultation" could be true only if the action agency decided to reinitiate consultation with FWS.  Moreover, the reference was not a ruling on a claim that had been litigated.  Rather, the statement was made gratuitously in the course of ruling that FWS could not unilaterally amend its BiOp.  *Id.*  If anything, the Court's ruling that FWS lacked the authority to unilaterally amend the BiOp is consistent with the fact that, in this case, FWS lacks the authority to reinitiate consultation unilaterally or to force the Forest Service to reinitiate consultation.

In sum, dismissing FWS from this case is entirely consistent with Ninth Circuit authority.  The Ninth Circuit has recognized that a consulting agency lacks the authority to compel consultation, and *Salmon Spawning*, 545 F.3d 1220, *Gifford Pinchot*, 378 F.3d 1059, and *Simpson Timber*, 255 F.3d 1073, are not to the contrary.  The latter three opinions do not stand for the proposition that FWS can be sued *even if* the action agency has not decided to reinitiate consultation.  At most, the latter three decisions stand for the proposition that FWS could have a duty to complete reinitiated consultation with the Forest Service *if the Forest Service is required*

15

*to reinitiate as a threshold matter.*  However, whether the Forest Service is required to reinitiate is a question for another day.  As is relevant here, FWS cannot have a duty to complete reinitiated consultation with the Forest Service unless and until the Forest Service reinitiates voluntarily or this Court rules that the Forest Service is required to reinitiate.  And FWS cannot be made a defendant to this litigation simply because the Forest Service's duty to reinitiate consultation has been questioned.  Count I fails to articulate a prima facie claim for breach of a discrete legal duty by FWS, and FWS must be dismissed from this case.

## II.     Count II Should Be Dismissed Because There Is No "Major Federal Action"

Plaintiffs also fault the Forest Service for "fail[ing] to prepare a supplemental analysis of its decisions to adopt the national policy related to black bear baiting," asserting that the agency was required to supplement its prior EAs to account for "significant new information" since the adoption of the national policy.  Am. Compl. ¶79.  But, as the Supreme Court has emphasized, "supplementation [of prior NEPA analyses] is necessary *only* if 'there remains 'major Federal actio[n]' to occur.'"  *Norton*, 542 U.S. at 73 (quoting *Marsh*, 490 U.S. at 374) (emphasis added).  Significantly, no such action is presented here.

At bottom, Plaintiffs' argument runs headlong into the D.C. Circuit's holding in *Fund for Animals*, 127 F.3d 80, which found that the national policy "*cannot* be characterized as a 'major federal action' under NEPA."  *Id*. at 84 (emphasis added) (citations omitted).  The D.C. Circuit's reasoning on this point was two-fold.  First, the court held that the national policy was not a "major" action because it only "maintained the substantive *status quo*" regarding the regulation of baiting.  *Id.* at 84; *see also id*. at 83 (noting that the "shift . . . from federal to state regulation had no effect outside Wyoming" and that state's regulations "var[ied] only insignificantly from those of the federal special use permit conditions they replaced"); *cf*. 60 Fed. Reg. at 14,722 (noting that the national policy reflects "long-standing reliance on State regulation of baiting

resident game"). Second, the court expressed skepticism as to whether adoption of the "existing federal policy of leaving baiting regulation to individual states" constituted any "'action' at all," drawing comparisons between the agency's "decision to refrain from future regulation of baiting" and cases involving agency inaction. *Id.* at 83 & n.3 (citations omitted). Taken together, *Fund for Animals* thus confirmed that neither inaction nor action that does no more than preserve the status quo equates to "major federal action" – and that no NEPA requirements are triggered in either instance. *Id.* at 83 (finding that "the Forest Service has no EIS obligation" since "the national baiting policy is not a major federal action"). Further, this holding is consistent with the longstanding view of the Ninth Circuit, which "has not been receptive to arguments that impact statements must accompany inaction, or actions that are only marginally federal." *Alaska v. Andrus*, 591 F.2d 537, 541 (9th Cir. 1979); *see also id.* at 541-52 (concluding that the agency's decision to "stay [its] hand and allow the State of Alaska to manage its own wildlife" through a state wolf-kill program did not trigger NEPA requirements). Accordingly, because there was no "major federal action" that triggered NEPA in the first place, Plaintiffs' claim for supplementation should be rejected on these grounds alone.[4]

Even if the D.C. Circuit had held otherwise in *Fund for Animals* – and found instead that the Forest Service had been obligated to undertake a NEPA analysis when it adopted the national policy in 1995 – supplementation still would not be required because there is no "major federal action" that "<u>remains</u> . . . to occur.'" *Norton*, 542 U.S. at 73 (citation omitted) (emphasis added). Stated differently, if "there is no ongoing 'major Federal action,'" then no "supplemental NEPA analysis" is required. *Cold Mountain v. Garber*, 375 F.3d 884, 894 (9th Cir. 2004). Thus, courts

---

[4] That the agency previously prepared EAs does not indicate NEPA was required. *See* 40 C.F.R. § 1501.3(b) (encouraging agencies to prepare "an environmental assessment on any action at any time in order to assist agency planning and decisionmaking," even if not required under NEPA).

in this Circuit have consistently rejected efforts to infer a duty to supplement in the absence of a

remaining or ongoing "major federal action."  *See, e.g.*, *id.* (holding that the agency's "obligation

under NEPA [was] fulfilled" by its approval and issuance of a permit, so there was "no ongoing

'major Federal action' requiring supplementation"); *Ctr. for Biological Diversity v. Vilsack*, 276

F. Supp. 3d 1015, 1035 (D. Nev. 2017) (concluding agency "did not need to supplement its

NEPA documents because there was no ongoing major federal action" based on previous EAs);

*W. Watersheds Project v. U.S. Bureau of Land Mgmt.*, 971 F. Supp. 2d 957, 977 (E.D. Cal. 2013)

(finding "no major federal action remained" such that the agency's "NEPA obligations . . . were

discharged" where the permits were issued "several months before the new information . . . was

available"); *Moapa Band of Paiutes v. U.S. BLM*, No. 2:10–CV–02021–KJD–LRL, 2011 WL

4738120, at *12 (D. Nev. Oct. 2, 2011) (upholding agency's decision to "not supplement its EA

because it determined that no major federal action was left to occur" after it had granted the right

of way); *In re Mont. Wilderness Ass'n*, No. CV–09–95–GF–SEH, 2010 WL 11470325, at *2 (D.

Mont. Dec. 6, 2010) (finding that plaintiffs "fail[ed] to state a viable NEPA supplementation

claim because no major federal action remains to be taken" after approval of the plan and

permit); *Ctr. for Biol. Div. v. Salazar*, No. CV–09–8207–PCT–DGC, 2010 WL 2493988, at *8

(D. Ariz. June 17, 2010) (finding agency "was not required to supplement its previous

environmental assessment," in part, because it "approved the plan in 1988 . . . and has taken no

further major federal action").  The same reasoning – and outcome – should apply here.[5]

---

[5]  Plaintiffs' reliance on 40 C.F.R. § 1502.9(c)(1), Am. Compl. ¶ 79, is misplaced.  Where, as
here, there was no "major federal action" to begin with, and none remains to occur, a court has
"no reason to . . . consider what constitutes 'substantial changes' or 'significant new . . .
information'" within the meaning of 40 C.F.R. § 1502.9(c)(1).  *Prot. Lake Pleasant v. Connor*,
No. CIV 07–0454–PHX–RCB, 2010 WL 5638735, at *23 (D. Ariz. July 30, 2010).

Moreover, Plaintiffs identify no "major federal action" undertaken by the Forest Service since the national policy was adopted that would compel a different conclusion.  Plaintiffs do not contend, for example, that the Forest Service has exercised any sort of substantive control over Wyoming's or Idaho's regulation of baiting following adoption of the national policy.  *See, e.g., Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1101-02 (9th Cir. 2007) (finding "insufficient federal control over [local wastewater plan] to make it a major federal action under NEPA" because the federal agency "must maintain decisionmaking authority over the local plan . . . for it to become a major federal action"); *Maughan v. Vilsack*, No. 4:14–CV–0007–EJL, 2014 WL 201702, at *5 (D. Idaho Jan. 17, 2014) (finding "no major federal action has occurred," in part, because the federal agency "has neither approved nor disapproved" the state agency's trapping and hunting activities).[6]  Nor is this surprising, given that the national policy was meant to memorialize the "Forest Service's decision to refrain from future regulation of baiting."  *Fund for Animals,* 127 F.3d at 83 n.3 (emphasis added).  Similarly, Plaintiffs make no allegation that the Forest Service has provided any – let alone significant – funding to support Wyoming's or Idaho's regulation of baiting.  *See, e.g., Rattlesnake Coal.*, 509 F.3d at 1102 (finding the "small proportion of federal

---

[6]  The national baiting policy provides that, "[w]here baiting is allowed by States, the practice would continue on National Forest System lands unless the authorized officer [from the Forest Service]. . . determine[s] on a site-specific basis that the use of bait conflicts with Federal laws or regulations, forest plan direction, or other uses or users."  60 Fed. Reg. at 14,720.  To the extent that Plaintiffs appear to object that the Forest Service "failed . . . to issue certain closure orders" pursuant to this provision, Am. Compl. ¶ 79, such "inaction, or actions that are only marginally federal" are not subject to the requirements of NEPA.  *State of Alaska*, 591 F.2d at 541; *see also Sierra Club. v. Penfold*, 857 F.2d 1307, 1314 (9th Cir. 1988) (finding no major federal action, even though the agency had the authority to "monitor compliance with statutory and regulatory requirements," "issue notices of noncompliance," and "commence enforcement proceedings") (citations omitted); *see also Moapa Band*, 2011 WL 4738120, at *12 (noting that the agency's "[m]ere authority to modify the terms of the [right of way] does not constitute major federal action yet to occur"); *Ctr. for Biological Diversity*, 2010 WL 2493988, at *6 (concluding that the agency's "ongoing role of overseeing the . . . mine's compliance with environmental and mining laws does not constitute a major federal action requiring NEPA supplementation").

funding currently supporting the [local] projects . . . does not federalize the[ir] implementation"). Again, this lack of involvement is entirely consistent with the underlying purpose of the national policy – to "leav[e] baiting regulation to individual states." *Fund for Animals,* 127 F.3d at 83.

In sum, Plaintiffs' argument for NEPA supplementation relies on the faulty premise that a "major federal action" exists. But for the same reasons that the D.C. Circuit concluded that the national policy was not a "major federal action" more than 22 years ago, *see id.* at 83-84, no such action should be inferred now. As the Ninth Circuit has explained in other cases involving non-federal hunting practices, "the nonexercise of power by an executive-branch officer does not call for compliance with NEPA." *Andrus*, 591 F.2d at 538; *see also WildEarth Guardians v. U.S. Forest Serv*., No. 4:14-cv-00488-REB, 2017 WL 1217099, at *7-8 (D. Idaho Mar. 31, 2017) (upholding decision to not require a special use permit for a private hunting competition, in part, because "nothing in the Forest Service's consideration and action (or inaction) upon the fact of the [hunting competition] and its actual or anticipated impact upon the Forest lands that would constitute a 'major Federal action'"); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt*., No. 09–CV–8011–PCT–PGR, 2011 WL 4551175, at *12 (D. Ariz. Sept. 30, 2011) (finding that the agency "was not required under NEPA to analyze the potential impacts of hunting using lead ammunition" because the agency "did not take any 'major federal action' with regard to hunting in the [area], and the State's regulation of this issue was distinct from any federal action"). Such is also the case here, where Plaintiffs identify no "major federal action" – either from the outset, or remaining to occur – related to the States' regulation of baiting, and thus Plaintiffs fail to state a claim for NEPA supplementation. Accordingly, Count II should be dismissed.

## CONCLUSION

For all these reasons, the Court should dismiss Count I as to FWS and Count II entirely.

Dated: November 15, 2019

/s/ *Robert P. Williams*
Robert P. Williams
Sr. Trial Attorney
U.S. Department of Justice

**Attorney for Defendants**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of November, 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Matthew Kellogg Bishop
bishop@westernlaw.org

Peter M.K. Frost
frost@westernlaw.org

Dana M. Johnson
danajohnsonecf@gmail.com

/s/ *Robert P. Williams*
Robert P. Williams
Sr. Trial Attorney
U.S. Department of Justice