


*File Copy Do Not Remove*  *Bear Baiting 5/93*

# United States Department of the Interior
## FISH AND WILDLIFE SERVICE
Ecological Services
2617 East Lincolnway, Suite A
Cheyenne, Wyoming 82001

IN REPLY REFER TO:

FWE/61411
W.19(fsbb.bo)

April 14, 1993

Elizabeth Estill
Rocky Mountain Region
USDA Forest Service
11177 W. 8th Avenue
Box 25127
Lakewood, Colorado 80225-0127

Dear Ms. Estill:

This is the Fish & Wildlife Service's (Service) biological opinion on Forest Service (FS) administration of the placement of baits on FS lands in Wyoming for the purpose of black bear (Ursus americanus) hunting. Our examination of this project has been in accordance with the Endangered Species Act of 1973, as amended, (Act) section 7 Interagency Cooperation Regulations (50 CFR 402, 43 FR 870), and addresses only the potential impacts to threatened and endangered species. While the opinion concludes that the none of the alternatives analyzed are likely to jeopardize the continued existence of any endangered or threatened species, there are important terms and conditions included in the incidental take statement that must be complied with to minimize the potential for take of grizzly bears.

## Consultation History

This opinion is in response to your letter of April 6, 1993, to Regoinal Director Ralph Morganweck, requesting formal consultation under section 7 of the Act. Informal consultation meetings were held on February 12 and March 19, 1993, with the Service's Wyoming State Office, Wyoming Game and Fish Department (WGFD) and FS. The issue has also been discussed via telephone between FS and members of my staff on several occasions, including conversations on December 9, 1992, and January 14, 1993. An Environmental Assessment (EA) (USFS 1993) and Biological Evaluation (BE) (Hinschberger 1993) describe the proposed action and several alternatives, and the anticipated impacts of those alternatives.

The BE concluded that neither the proposed action nor any of the alternatives would affect the endangered black-footed ferret (Mustela nigripes), peregrine falcon (Falco peregrinus), Colorado squawfish (Ptychocheilus lucius), humpback chub (Gila cypha), bonytail chub (Gila elegans), razorback sucker (Xyrauchen texanus), Kendall Warm Springs dace (Rhinichthys

Plaintiffs' Ex. 2, Case No. 1:19-cv-00203-CWD

Plaintiffs' Ex. 2, Case No. 1:19-cv-00203-CWD

osculus thermalis), or the whooping crane (Grus americana). The proposed action and the various alternatives were determined to be not likely to adversely affect the endangered gray wolf (Canis lupus) or bald eagle (Haliaeetus leucocephalus). Because of the potential for take, the FS determined that the proposed action may adversely affect the threatened grizzly bear (Ursus arctos horribilis). The alternatives considered were determined to have no affect on, or be unlikely to adversely affect, a number of candidate and sensitive species. Formal consultation was requested to address the potential to affect grizzly bear.

I concur that the alternatives analyzed would have no effect on any of the species for which the FS made such a determination. I further concur that none of the alternatives are likely to adversely affect the gray wolf or the bald eagle. Closing the proposed grizzly bear recovery zone and all areas covered by a special order prohibiting improper storage of food in grizzly bear habitat (mitigation measures common to all alternative) will have a beneficial affect on grizzly bears. Closure of all designated wilderness lands (as proposed) will further reduce threats to grizzly bears in some areas. The Service recognizes the potential for a grizzly bear to be taken following implementation of any of the alternatives. Therefore, this biological opinion will address anticipated impacts to grizzly bears associated with the alternatives advanced in the above-named documents.

Proposed Action

The FS proposes to modify its administration of black bear baiting on National Forest System lands in Wyoming through implementation of one of the following alternatives, which are more fully described in the EA and BE:

1. Issue special use authorizations for noncommercial bear baits placed on National Forest System lands in Wyoming (no action).

2. Issue special use authorizations for noncommercial bear baits placed on National Forest System lands in Wyoming and restrict baiting methods and bait amounts used in designated Wilderness.

3. Through a Memorandum of Understanding (MOU) with the Wyoming Game and Fish Commission, regulate noncommercial bear baiting on National Forest System lands through State Game Regulations.

4. Through an MOU with the Wyoming Game and Fish Commission, regulate noncommercial bear baiting on National Forest System lands through State Game Regulations and close all designated Wilderness to bear baiting.

5. Eliminate bear baiting from National Forest System lands in Wyoming.

On April 1, 1993, and April 2, 1993, representatives from the Rocky Mountain and Intermountain Regions of the FS signed a Decision Notice and Finding of No Significant

2

Plaintiffs' Ex. 2, Case No. 1:19-cv-00203-CWD

Impact, implementing a modified version of Alternative 4. Modifications included provisions to (1) limit bear bait densities to one per square-mile section through an MOU with WGFD, (2) establish additional special food storage orders where appropriate to protect grizzly bears, (3) consider, with WGFD, redefining bait types to eliminate the use of garbage or processed foods as bait in grizzly habitat, and (4) require hunters or outfitters to remove baits and discontinue baiting at locations where a grizzly bear comes to a black bear bait.

Because this opinion or other future actions may affect implementation of this decision, and recognizing that impacts to grizzly bears do not vary greatly among the alternatives considered, this opinion will address all five of the alternatives advanced in the original EA.

Mitigation measures common to all alternatives (except where otherwise indicated), which would be implemented by the FS until they become State regulations include:

> No black bear baiting for sport hunting purposes would be allowed in the grizzly bear recovery zone proposed by the Interagency Grizzly Bear Committee's Yellowstone Ecosystem Subcommittee (Management Situations 1, 2, and 3), nor in areas that have a special order prohibiting improper storage of food in grizzly bear habitat.

> Bait locations on National Forest System lands must be registered with the local FS District Ranger under current State regulations. At the time of registration, those hunters desiring to place baits in areas where regular grizzly bear use occurs outside the areas described above, hunters will be administered a "self-learning grizzly bear/black bear identification program," and will be encouraged to "bait with only natural substances that could be found in the area naturally, such as meat carcasses (livestock, etc.)," and will be discouraged from using "donuts, breads, fruits, vegetables, molasses, lard, grease, or other garbage and processed food as bait." These measures do not apply to Alternative 5. These hunters will also be provided information on grizzly bear status and identification at trailheads and other locations.

The proposed MOU would address establishment of special orders on food storage for areas used by grizzly bears but not currently covered by such orders, and address the need for redefining legal baits in areas used by grizzly bears.

Current Status of the Grizzly Bear

In 1975 the grizzly bear was listed as a threatened species under the Act. South of Canada, the species exists in six small populations totaling 800-1,000 individuals (USFWS 1992).

In Wyoming the species is restricted to the northwest portion of the State, within Yellowstone and Grand Teton National Parks, the Bridger-Teton, Shoshone, and Targhee National Forests, adjacent private and State lands, and lands managed by the Bureau of Land Management. The Yellowstone Grizzly Bear Recovery Zone includes primarily National Park Service and FS lands. Some grizzly bears use areas outside the Recovery Zone,

3

Plaintiffs' Ex. 2, Case No. 1:19-cv-00203-CWD

however. The Interagency Grizzly Bear Study Team estimates the grizzly bear population in the Greater Yellowstone Ecosystem in 1991 at a minimum of 228 bears (USFWS 1992).

Revised population goals for the Yellowstone Grizzly Bear Recovery Zone, according to the agency draft revised Grizzly Bear Recovery Plan (USFWS 1992) are:

1. 15 females with cubs of the year (unduplicated sightings) over a running 6-year average;

2. 16 of the 18 identified Bear Management Units (BMU) occupied by females with young from a running 6-year sum of verified observations, and no two adjacent BMUs unoccupied;

3. known, human-caused mortality not to exceed four percent of the current population estimate (based on the most recent three-year average of females with young);

4. no more than 30 percent of the known, human-caused mortality shall be females; and

5. demonstration of the existence of adequate regulatory mechanisms for population and habitat management through the development of a conservation strategy.

With respect to these goals, the most recent data show: 1) an average of over 20 females with cubs for the period 1987-1992; 2) 16 of the 18 BMUs occupied by females with cubs during 1988-1991; 3) known, human-caused mortality averaging less than one percent of the current population estimate (<2 bears annually, 1986-1991, from a 1991 minimum population of 228 bears); and 4) less than 30 percent of known, human-caused mortality on females (Knight 1993). Development of a conservation strategy to demonstrate the existence of adequate regulatory mechanisms for population and habitat management is not complete.

Effects of the Proposed Action and Alternatives

Where baiting for black bears occurs within the range of the grizzly bear, baits may be visited by grizzly bears. Direct mortality of a grizzly bear at a black bear bait can occur if the animal is mistaken for a black bear, if the bear attempts to defend the food source from what it perceives as a competitor, or if the hunter otherwise perceives the bear as a threat to his or her personal safety.

Where human or livestock foods are used for bait in areas used by grizzly bears, individual grizzly bears may become conditioned to these foods and seek them elsewhere (e.g., in camps and other human developments), thereby exposing the bears to further risks and creating "problem" bears requiring management actions. If human odors are associated with these baits, habituation may occur, whereby human odors are not avoided and may be sought

4

out as potential sources of food. Again, a "problem" bear requiring management action may result.

Baiting for black bears is currently allowed on National Forest System lands within the Grizzly Bear Recovery Zone in portions of the Targhee, Bridger-Teton, and Shoshone National Forests in Wyoming. Approximately half of the FS land within the Grizzly Bear Recovery Zone in Wyoming is closed to baiting by State regulations (that portion north of the Greybull River). All alternatives would eliminate baiting within the Recovery Zone (Management Situations 1, 2, and 3), and within areas under special food storage orders, roughly doubling the size of the closed area, thereby providing a beneficial effect to grizzly bears.

The BE indicates that grizzly bears use an estimated 519,600 acres (210,438 hectares) outside the area covered by the currently defined Recovery Zone and food storage orders (nine percent of grizzly bear distribution in the Greater Yellowstone Ecosystem). Also eliminating baiting in designated wilderness areas (alternative 4) would leave only 365,800 acres (148,149 ha) of regularly used grizzly bear habitat open to baiting (six percent of the grizzly bear distribution in the Greater Yellowstone Ecosystem). Alternative 5 would eliminate all bear baiting on National Forest System lands in Wyoming.

Grizzly bears are known to travel widely, and may visit black bear baits well outside the currently known range of the species. Under alternatives 1-4, hunters or outfitters would be required to report any grizzly bears visiting an black bear bait. The FS proposes to evaluate such situations with the WGFD on a case-by-case basis to reduce human/grizzly bear conflicts and potential food conditioning. The hunter or outfitter would be required to remove the bait, and would be required to discontinue baiting at that site for the remainder of the season. The two agencies would determine if additional area besides that bait location would need to be closed to bear baiting under an emergency special closure. No time frames for these actions are specified. In removing the bait, there is risk of forcing a confrontation with a grizzly bear, which could result in harm to either the bear or the hunter.

Five grizzly bears have been reported shot over black bear baits in Wyoming since 1967. Four of these incidents occurred in 1982, and one occurred in 1985. These and all other reported human-caused mortalities of grizzly bears since 1982 have been investigated by Service Law Enforcement personnel. The Service has no reason to believe that any of the other reported mortalities were related to black bear baiting (Klett 1993).

The Service has reviewed the materials that have been used in recent years to educate bear hunters on grizzly bear/black bear identification, which the FS proposes to use in a "self-learning grizzly bear/black bear identification program" to be administered by the FS at the time the hunter provides a written description of his or her bait location. Clarification of the "self-learning" process indicates that the material will be reviewed by the hunter, each animal depicted will be identified, and a level of confidence in each identification will be assigned ("Is this a black bear or a grizzly bear?", and "Are you sure enough to shoot?"). The

Plaintiffs' Ex. 2, Case No. 1:19-cv-00203-CWD

education program will be mandatory, and will be supervised. This material was developed in Montana for hunter education purposes, and has since been used in Washington and Wyoming. The material is sound, and may help reduce the potential for accidental take of grizzly bears.

Cumulative Effects

Cumulative effects include the effects of future State, local or private actions that are reasonably certain to occur in the area considered in this biological opinion. Future Federal actions that are unrelated to the proposed action are not considered in this section if they require separate consultation pursuant to section 7 of the Act.

State actions that are reasonably likely to occur include cooperation with the FS in developing an MOU to address grizzly bear and other concerns associated with bear baiting, and perhaps regulation of State lands in occupied grizzly bear habitat to further regulate black bear baiting.

Cumulative effects of private actions in the analysis area include the potential for increased bear baiting on adjacent State and private lands, so long as these lands have less restrictive regulation than do FS lands (e.g. baiting allowed in grizzly bear habitat, etc.). Because Wyoming is one of the few remaining States in the Rocky Mountain region to allow bear baiting, increased demand for hunting over baits may occur. This will likely be balanced somewhat by increasingly negative public perceptions of baiting, which may reduce demand.

Local actions to reduce or eliminate bear baiting on some private lands will likely be balanced by increased baiting on other private lands, stimulated by higher prices paid for an increasingly scarce opportunity (e.g., through leases of private land). Private lands with suitable black bear or grizzly bear habitat are very limited in Wyoming.

Biological Opinion

After reviewing the current status of the grizzly bear, the environmental baseline for the action area, the effects of the proposed modifications in administration of black bear baiting, and the cumulative effects, it is the Service's biological opinion that none of the alternatives considered are likely to jeopardize the continued existence of the grizzly bear. No critical habitat has been designated for this species, therefore, none will be affected.

Because of the remaining potential for incidental take of grizzly bears following implementation of the alternatives considered, however, the conditions contained in the following Incidental Take statement are critical to fulfillment of FS's responsibilities under the Act.

Plaintiffs' Ex. 2, Case No. 1:19-cv-00203-CWD

## Incidental Take

Sections 4(d) and 9 of the Act, as amended, prohibit taking (harass, harm, pursue, hunt, shoot, wound, kill, trap, capture or collect, or attempt to engage in any such conduct) of listed species of fish or wildlife without a permit. Harm is further defined to include significant habitat modification or degradation that results in death or injury to listed species by significantly impairing behavioral patterns such as breeding, feeding, or sheltering. Harass is defined as actions that create the likelihood of injury to listed species to such an extent as to significantly disrupt normal behavior patterns which include, but are not limited to, breeding, feeding or sheltering. Under terms of section 7(b)(4), taking that is incidental to and not intended as part of the agency action is not considered a prohibited taking provided that such taking is in compliance with the terms and conditions of this incidental take statement. The measures described below are non-discretionary, and must be implemented by the agency so that they become binding conditions of any grant, permit or program, as appropriate, in order for the exemption in section 7(b)(4) to apply.

The FS has a continuing duty to regulate the activity covered by this incidental take statement. If FS fails to adhere to the terms and conditions of the incidental take statement through enforceable terms that are incorporated into the administration of its programs or any resulting MOU, the protective coverage of section 7(b)(4) may lapse.

Although there remains a remote possibility that a grizzly bear may be taken as a result of black bear baiting on FS lands in Wyoming, the Service does not anticipate that such take will occur. Therefore, no incidental take is authorized. Should any take occur, the FS must reinitiate formal consultation with the Service and provide the circumstances surrounding the take.

Because of the remote possibility of incidental take, the Service believes the following reasonable and prudent measures, and terms and conditions, are necessary and appropriate to further minimize the potential for take:

1. Eliminate the use of processed human, livestock or pet foods, and fruits or vegetables produced for human consumption, as bear baits in any areas regularly used by grizzly bears; and

2. Eliminate the requirement that hunters, outfitters or guides who report a grizzly bear on a legally placed bait remove the bait. Removal of the bait, if deemed appropriate by the FS in consultation with the WGFD and the Service, should be accomplished by individuals experienced with grizzly bear behavior. Removal of the bait container shall become the responsibility of the land manager.

The illegal killing of grizzly bears, be it through poaching or "mistaken identity," is a violation of both State and Federal law and may be prosecuted. All taking of grizzly bears must be done in compliance with 50 CFR s178.40(b) and applicable State laws.

7

Should an incidental take occur as a result of bear baiting on FS lands, the FS shall immediately notify the Wyoming State Office of the Service (phone: 307-772-2374), provide details on the circumstances of the take, and request reinitiation of formal consultation. Such an incidental take would represent new information requiring review of the terms and conditions provided. The FS must provide an explanation of the causes of the taking and review with the Service the need for possible modification of the terms and conditions. The FS shall also immediately notify the Service Law Enforcement Office in Lander (phone: 307-332-7607).

Conservation Recommendations

Section 7(a)(1) of the Act directs Federal agencies to utilize their authorities to further the purposes of the Act by carrying out conservation programs for the benefit of endangered and threatened species. Conservation recommendations are discretionary agency activities to minimize or avoid adverse effects of a proposed action on listed species or critical habitat, help implement recovery plans, or develop information.

The Service has developed the following recommendations to help promote grizzly bear recovery and clarify the intent of FS actions concerning bear baiting:

1. Consider closing all areas known to be used regularly by grizzly bears to all black bear baiting.

2. Use emergency closure orders to close smaller, more specific areas to bear baiting when a grizzly bear has been verified in an area otherwise open for baiting.

3. In cooperation with WGFD, consider shortening shooting hours in those areas open to baiting but used regularly by grizzly bears, to minimize identification problems encountered in twilight conditions.

4. Eliminate the reference to a "self-learning program," instead calling it an "education program" or something similar, perhaps with a specific, identifying program name.

5. Update the education program annually with new photographs of bears in various settings to maintain challenge and stimulate interest in those hunters and outfitters involved in the program over several years.

In order for the Service to be kept informed of actions that either minimize or avoid adverse effect or that benefit listed species or their habitats, the Service requests notification of the implementation of any conservation recommendations.

Plaintiffs' Ex. 2, Case No. 1:19-cv-00203-CWD

## Conclusion

This concludes formal consultation on the actions outlined in the EA. As required by 50 CFR 402.16, reinitiation of formal consultation is required if: (1) the amount or extent of incidental take is exceeded; (2) new information reveals effects of the agency action that may affect listed species or critical habitat in a manner or to an extent not considered in this opinion; (3) the agency action is subsequently modified in a manner that causes an adverse effect to the listed species or critical habitat that was not considered in this opinion; or (4) a new species is listed or critical habitat designated that may be affected by the action. In instances where the amount or extent of incidental take is exceeded, any operations causing such take must cease pending reinitiation.

Sincerely,

Charles P. Davis
State Supervisor
Wyoming State Office

Enclosure: Literature Cited

cc: Assistant Regional Director, FWE, Denver, CO (FWE-60120)
Field Supervisor, MT/WY, FWE, Helena, MT (FWE-61130)
Director, WGFD, Cheyenne, WY
Nongame Supervisor, WGFD, Lander, WY

Plaintiffs' Ex. 2, Case No. 1:19-cv-00203-CWD

## Literature Cited

Hinschberger, M. 1993. Biological Evaluation for regulating black bear baiting on National Forest System lands in Wyoming through State Game and Fish Regulations and a Memorandum of Understanding with the Wyoming Game and Fish Commission. U.S.D.A. Forest Service, Shoshone Nat. Forest. March 25. 29 pp.

Klett, J. 1993. Pers. Comm., U.S. Fish & Wildl. Serv., Special Agent, Lander, WY. April 13

Knight, R. 1993. Pers. Comm., Nat. Park Serv., Interagency Grizzly Bear Study Team. Bozeman, MT. April 13.

U.S. Fish & Wildlife Service. 1992. Draft revised grizzly bear recovery plan. U.S. Fish and Wildl. Serv., Denver, CO. 200 pp.

U.S. Forest Service. 1993. Environmental assessment - black bear baiting on National Forest System lands in Wyoming. Rocky Mountain Region, U.S.D.A. Forest Service and Intermountain Region, U.S.D.A. Forest Service, Denver, CO and Ogden, UT. 29 pp.

Plaintiffs' Ex. 2, Case No. 1:19-cv-00203-CWD