UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, et. al., | Case No. 1:19-cv-00203-CWD |
| Plaintiffs, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| U.S. FOREST SERVICE, et. al., | |
| Defendants. | |

## INTRODUCTION

The Court has before it Defendants' Partial Motion to Dismiss. (Dkt. 28.) The matter has been fully briefed and is ripe for the Court's consideration. All parties have consented to the jurisdiction of a magistrate judge to conduct all proceedings in this matter. (Dkt. 13.) Having reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, the motion will be decided on the record without oral argument. Dist. Idaho L. Rule 7.1(d).

## BACKGROUND

This matter concerns the effect on grizzly bears of the use of bait to hunt black bears in national forests in Idaho and Wyoming. "Baiting" entails placing food, salt, or manufactured scents in a fixed location to attract the wildlife to the hunter, rather than to

have the hunter travel through the environment searching for the wildlife. 60 Fed. Reg.

14,720 (Mar. 20, 1995).  Prior to 1995, some forest service units issued "special use

permits . . . to regulate baiting" in certain National Forests, even though the United States

Forest Service ("USFS") determined that "the issuance of special use permits [was] not

appropriate" to regulate baiting. *Id*.; *see also* Am. Compl. ¶ 17 (ECF No. 12); 36 C.F.R. §

251.50(c) (exempting "hunting" from the requirements for a special use authorization).

In 1994, the USFS proposed a national policy to allow states to decide whether

bait can be used in national forests. *See* 59 Fed. Reg. 11,765 (Mar. 14, 1994); 59 Fed.

Reg. 17,758 (Apr. 14, 1994). The USFS acknowledged the proposal would likely affect

grizzly bears, which were and remain listed as threatened with extinction under the

Endangered Species Act ("ESA"). To evaluate the effect of the proposal, the USFS

prepared an Environmental Assessment ("EA") pursuant to the National Environmental

Policy Act ("NEPA"), and informally consulted with the United States Fish and Wildlife

Service ("FWS") under Section 7 of the ESA to determine whether the proposal would

jeopardize listed species, including grizzly bears.

FWS issued a Biological Opinion ("BiOp") in which it found there is a "remote"

possibility that a grizzly bear will be taken due to black bear baiting in national forests,

and FWS issued an incidental take statement that requires two things: the USFS "has a

continuing duty to regulate" black bear baiting in national forests, and "no incidental

take" of grizzly bears due to black bear baiting is allowed. If "any" single take occurs, the

USFS must reinitiate formal consultation with the FWS.

**MEMORANDUM DECISION AND ORDER  - 2**

On March 15, 1995, the USFS issued a "Decision Notice and Finding of No Significant Impact" ("FONSI"), in which it adopted the proposed policy and determined that no EIS was needed because the proposed policy was "not a major Federal action" and it would "not significantly affect the quality of the human environment." *See Fund for Animals*, 127 F.3d at 82. The final national policy was published on March 20, 1995. *See* 60 Fed. Reg. at 14,720. The national policy states, "[w]here State law and regulation permit baiting[,] the practice is permitted on National Forest System lands unless the authorized officer determines on a site specific basis that the practice conflicts with Federal laws or regulations, or forest plan direction, or would adversely affect other forest uses or users." *Id*. at 14,722.

After publication of the final national policy, on June 21, 1995, several environmental groups challenged the policy, claiming that the USFS: (1) violated the ESA by failing to formally consult with FWS regarding the policy; and (2) violated NEPA by failing to first prepare an EIS. *See Fund for Animals v. Thomas*, 932 F. Supp. 368, 370 (D.D.C. 1996), *aff'd* 127 F.3d 80. On August 8, 1996, the district court granted summary judgment to the USFS, rejecting both claims. *Id*. at 371. The plaintiffs appealed the decision. On October 17, 1997, the United States Court of Appeals for the D.C. Circuit affirmed the district court's judgment. The court held that, "[t]o the extent that there was an ESA consultation obligation, the Forest Service and FWS fulfilled it by engaging in 'informal consultation.'" *Fund for Animals*, 127 F.3d at 84. The court also found that the national policy was "not a major federal action" for NEPA purposes, such that the Forest Service had "no EIS obligation." *Id*. at 83.

MEMORANDUM DECISION AND ORDER  - 3

In this action, WildEarth Guardians, Western Watersheds Project, and Wilderness Watch (collectively, "WEG") filed a complaint on June 5, 2019, against USFS and FWS. WEG alleges that numerous grizzly bears have been taken due to hunting black bear using bait in national forests in Idaho and Wyoming, exceeding the level of permissible incidental take and triggering the duty to reinitiate consultation. WEG alleges also that the EA is outdated, and significant new information exists requiring its supplementation. The complaint therefore seeks to compel supplemental processes under the ESA and NEPA regarding the 1995 USFS policy. In its two-count complaint, WEG contends: (1) both the USFS and FWS have failed to reinitiate consultation under the ESA; and (2) the USFS has failed to supplement its prior NEPA analysis.

Defendants contend Count I fails to state a prima facie claim for relief against FWS, because FWS does not have the authority to reinitiate consultation under the ESA.[1] The USFS asserts Count II must be dismissed pursuant to *Fund for Animals v. Thomas*, 127 F.3d 80, 83-84 (D.C. Cir. 1997), which adjudicated the USFS policy when it was enacted and determined it was not a major federal action triggering a duty under NEPA. Thus, the USFS contends there is no major federal action remaining to occur, and it has no duty to supplement the EA under NEPA.

---

[1] Count I is alleged against both the USFS and FWS for failure to reinitiate consultation under the ESA. The USFS does not contest that Count I is properly brought against it.

**MEMORANDUM DECISION AND ORDER - 4**

## LEGAL STANDARDS

Defendants move to dismiss Count I against FWS pursuant to Fed. R. Civ. P. 12(b)(1), which authorizes the Court to dismiss claims over which it lacks subject matter jurisdiction. The plaintiffs bear the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citations omitted). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. Here, the jurisdictional attack is facial because FWS asserts that the allegations contained in the complaint are insufficient to invoke federal jurisdiction.

In a facial attack, the Court accepts as true all factual allegations in the complaint. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005). To survive a Rule 12(b)(1) motion, a plaintiff must allege a plausible set of facts that establish subject-matter jurisdiction. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (*Twombly/Iqbal* applies to facial attacks on subject matter jurisdiction).

The USFS moves to dismiss Count II pursuant to Rule 12(b)(6) for failure to state a claim. "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). A complaint "does not need detailed factual allegations," but it must set forth

"more than labels and conclusions, and a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id*. at 570.  Finally, in considering a Rule 12(b)(6) motion, the Court must view the "complaint in the light most favorable to" the claimant and "accept[ ] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

## ANALYSIS

1.   **Count I - Endangered Species Act**

The Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544, evidences a congressional intent to afford endangered species the highest of priorities. *TVA v. Hill*, 437 U.S. 153, 194 (1978). "The plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost." *Id*. at 184. To accomplish this goal, the ESA sets forth a comprehensive program to limit harm to endangered species within the United States. Section 9 of the ESA establishes a blanket prohibition on the taking[2] of any member of a listed endangered species. 16 U.S.C. § 1538(a)(1)(B). Section 7 affirmatively commands each federal agency to "insure that any action authorized, funded, or carried out" by the agency "is not likely to jeopardize the

---

[2] The ESA defines the term "take" as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). "Harm," in this context, is "an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3; *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 691 (1995).

continued existence of any endangered species...or result in the destruction or adverse modification of habitat of such species." 16 U.S.C. § 1536(a)(2). However, Section 7 carves out limited exceptions for federal agencies and certain statutorily defined "applicants," allowing those contemplating action that may harm endangered species to obtain a limited exemption from penalties under certain circumstances. 16 U.S.C. § 1536(a)–(c), (o); 50 C.F.R. § 402.02.

Under Section 7, if any listed (or proposed listed) species may be present in the area of the proposed action, the federal agency (the "action agency") must conduct a biological assessment to determine the likely effect of its proposed action on the species. 16 U.S.C. § 1536(c)(1); *see also* 50 C.F.R. § 402.02. If the action agency concludes that its proposed action may affect listed species or critical habitat, it must initiate formal consultation with the FWS. *See* 50 C.F.R. § 402.14.

If formal consultation is necessary, FWS will issue a Biological Opinion (BiOp), summarizing the relevant findings and determining whether the proposed action is likely to jeopardize the continued existence of the species. 16 U.S.C. § 1536(b). If so, the BiOp must list any "reasonable and prudent alternatives" that, if followed, would not jeopardize the continued existence of the species. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14.

Additionally, FWS must specify whether any "incidental taking" of protected species will occur, specifically "any taking otherwise prohibited, if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." 16 U.S.C. § 1536(b)(4); 50 C.F.R. § 17.3. FWS's determination that an incidental taking will

result leads to the publication of the "Incidental Take Statement" ("ITS"), identifying areas where members of the particular species are at risk.

The ITS functions as a safe harbor provision immunizing persons from liability under Section 9 of the ESA, and from the imposition of penalties for takings committed during activities that are otherwise lawful and in compliance with its terms and conditions. 16 U.S.C. § 1536(o). Any incidental taking "shall not be considered to be a prohibited taking of the species concerned." *Id*. Although the action agency is "technically free to disregard the Biological Opinion and proceed with its proposed action...it does so at its own peril." *Bennett v. Spear*, 520 U.S. 154, 170 (1997). Consequently, if the terms and conditions of the ITS are disregarded and a taking does occur, the action agency or the applicant may be subject to potentially severe civil and criminal penalties under Section 9 of the ESA.

Thus, the ITS "set[s] forth a 'trigger' that, when reached, results in an unacceptable level of incidental take, invalidating the safe harbor provision [of the ESA], and requiring the parties to re-initiate consultation." *Arizona Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*, 273 F.3d 1229, 1249 (9th Cir. 2001); *Oregon Nat. Res. Council v. Allen*, 476 F.3d 1031, 1038 (9th Cir. 2007). Ideally, the trigger should be a specific number. *See, e.g., Mausolf v. Babbitt*, 125 F.3d 661 (8th Cir. 1997) (snowmobiling activity may take no more than two wolves). Here, the ITS in the final national policy is zero.

Contrary to the zero take statement, WEG alleges numerous grizzly bears have been taken due to black bear hunting using bait in national forests in Idaho and

Wyoming, triggering the requirement to reinitiate consultation. WEG alleges both the USFS and FWS must reinitiate consultation because the amount of take in the ITS has been exceeded, and new information reveals effects of the action not previously considered.

While the USFS does not dispute it is a proper defendant in Count I, FWS argues it is not, urging dismissal because FWS lacks the legal authority to reinitiate consultation, and claiming the authority to do so lies solely with the action agency – the USFS. The Court finds these arguments without merit, however, pursuant to statutory and regulatory authority, and the interpretation of the plain language of that authority, by the United States Court of Appeals for the Ninth Circuit.

The regulation applicable to reinitiation of consultation, by its plain language, applies equally to the USFS and FWS. It states that:

> Reinitiation of formal consultation is required and shall be requested by the Federal agency *or by the Service*, where discretionary Federal involvement or control over the action has been retained or is authorized by law and:
> (a) If the amount or extent of taking specified in the incidental take statement is exceeded; [or]
> (b) If new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered….

50 C.F.R. § 402.16(a), (b) (emphasis added).[3] FWS's own regulations "mandate the reinitiation of consultation if circumstances change or new facts are discovered."

---

[3] Whether the USFS retained discretionary involvement or control over the action is not before the Court. The Court therefore assumes that it did.

**MEMORANDUM DECISION AND ORDER  - 9**

*Arizona Cattle Growers' Ass'n*, 273 F.3d at 1245 (citing 50 C.F.R. § 402.16). *See also*, *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1229 (9th Cir. 2008) ("The duty to reinitiate consultation lies with both the action agency and the consulting agency," citing 50 C.F.R. § 402.16); *Envtl. Prot. Info. Ctr. v. Simpson Timber Co*., 255 F.3d 1073, 1076 (9th Cir. 2001) ("The duty to reinitiate consultation lies with both the action agency and the consultation agency," citing 50 C.F.R. § 402.16).

Referring to the above authorities, the United States District Court for the Northern District of California recently recognized that the duty to reinitiate consultation lies "with both the action agency and the consulting agency." *Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv*., 230 F. Supp. 3d 1106, 1122 (N.D. Cal. 2017). There, the court found that 16 U.S.C. § 1540(g)(1) requires an action agency and a consulting agency (here, the USFS and FWS, respectively) to "reinitiate formal consultation if 'the amount or extent of taking specified in the incidental take statement is exceeded….'" *Hoopa Valley Tribe*, 230 F.Supp.3d at 1130. Upon summary judgment, the court found the facts undisputed that both the Bureau of Reclamation (the action agency) and the National Marine Fisheries Service (the consulting agency) were "obligated to reinitiate formal consultation" after the incidental take number was exceeded. *Id.*

More recently, the United States District Court for the District of Montana rejected FWS's claim that the plaintiffs in *All. for Wild Rockies v. Probert*, 412 F. Supp. 3d 1188, 1201 (D. Mont. 2019), could not maintain a reinitiation claim against FWS because FWS

lacks the authority to require an action agency to reinitiate consultation.[4] The court found

FWS's argument "inconsistent with the Ninth Circuit's view of consultation duties,"

citing *Salmon Spawning*, 545 F.3d at 1229, *Hoopa Valley Tribe,* 230 F.Supp. 3d at 1116,

and *Wild Fish Conservancy v. United States Envtl. Prot. Agency*, 331 F. Supp. 3d 1210,

1226 (W.D. Wash. 2018) (collecting cases).

The court in *Alliance for Wild Rockies* explained that the regulatory language

differs between initial consultation, set forth in 50 C.F.R. § 402.14(a), and reinitiation of

consultation, set forth in 50 C.F.R. § 402.16. 412 F.Supp. 3d at 1201. "Reinitiation under

§ 402.16…obligates either the action agency or the Fish and Wildlife Service to act." *Id.*

The court expressly rejected defendants' reliance on *Defenders of Wildlife v. Flowers*,

414 F.3d 1066, 1069–70 (9th Cir. 2005), because the case addresses initial consultation

under § 402.14. *Id.* (citing *Pacificans for a Scenic Coast v. Cal. Dep't of Trans*., 204 F.

Supp. 3d 1075, 1093 (N.D. Cal. 2016), rejecting FWS's argument that it had no duty to

reinitiate consultation because the duty lies solely with the action agency. *Pacificans*

explained that is true of the duty to initiate formal consultation, but not of the duty to

reinitiate consultation)). The court therefore held that Alliance's reinitiation claims

against FWS could proceed. *Id.*

---

[4] The Court notes Defendants have appealed the court's decision on cross-motions for summary judgment in *Alliance for Wild Rockies.* The court granted plaintiffs' motion and denied defendants' motion, resulting in a remand to the agencies to reinitiate consultation for the Access Amendments and the Pilgrim Project and prepare a supplemental EIS for the Pilgrim Project. *Id.* at 1208. These projects involved the impact of ineffective road closures upon grizzly bears.

MEMORANDUM DECISION AND ORDER  - 11

The regulation concerning reinitiation of consultation describes FWS's obligation in the same terms as the action agency's obligation: "Reinitiation of formal consultation...shall be requested by the Federal agency or by the Service." 50 C.F.R. § 402.16. Consistent with the plain text of the regulation, and the authorities from the Ninth Circuit, the Court here will deny FWS's motion to dismiss. *See, e.g., Pacificans for a Scenic Coast v. California Dep't of Transp.,* 204 F. Supp. 3d 1075, 1093 (N.D. Cal. 2016) (holding defendants' argument that a reinitiation claim is not cognizable against the NMFS as the consulting agency fails); *All. for Wild Rockies v. Probert*, 412 F. Supp. 3d 1188, 1201 (D. Mont. 2019); *Wild Fish Conservancy v. U.S. Envtl. Prot. Agency*, 331 F. Supp. 3d 1210, 1226 (W.D. Wash. 2018) (finding question "amply settled in this Circuit" that the plain language of 50 C.F.R. § 402.16 applies equally to the action agency and the service). *See also Hoopa Valley Tribe*, 230 F.Supp.3d at 1116–17 ("While the federal agencies' arguments might be compelling if this was an issue of first impression, the Ninth Circuit has already addressed this precise issue multiple times and confirmed that both the action agency and the consulting agency have a duty to reinitiate consultation," citing *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1229 (9th Cir. 2008) ("The duty to reinitiate consultation lies with both the action agency and the consulting agency."); *Gifford Pinchot Task Force v. USFWS*, 378 F.3d 1059, 1076–77 (9th Cir. 2004) (holding that discovery of new facts "mandates reinitiating formal consultations" and that "[the consulting agency] was obligated to reinitiate consultation"); *EPIC v. Simpson Timber Co.*, 255 F.3d 1073, 1076 (9th Cir. 2001) ("The

**MEMORANDUM DECISION AND ORDER  - 12**

duty to reinitiate consultation lies with both the action agency and the consultation agency.").[5]

Whether these statements by the Ninth Circuit are dicta, as FWS claims, "the overwhelming weight of authority is that the consulting agency's duty to reinitiate consultation is coterminous with that of the action agency, and Defendants have not cited a single case holding to the contrary," nor attempted to persuasively distinguish the district court cases following *Salmon Spawning*, *Simpson Timber*, and *Arizona Cattle Growers*. *Wild Fish Conservancy v. United States Envtl. Prot. Agency*, 331 F. Supp. 3d 1210, 1226–27 (W.D. Wash. 2018).

The Court will deny FWS's motion to dismiss Count I as plead against it.

## 2.    Count II - National Environmental Policy Act

The purpose of NEPA is to foster better decision making and informed public participation for actions that affect the environment. 42 U.S.C. § 4321; 40 C.F.R. § 1501.1(c). NEPA requires federal agencies to involve the public, consider alternatives, and disclose the impacts of a proposed action and alternatives to it before making a decision. 42 U.S.C. § 4332(2)(C). This requirement ensures that "the agency, in reaching its decision, will have available, and will carefully consider, detailed information

---

[5] The Court rejects Defendants' argument that there is a distinction between a request to reinitiate, versus the authority to actually do so. Defendants argue that, while FWS can request reinitiation, only USFS can reinitiate consultation, and can ignore FWS's request to do so. Conversely, Defendants claim USFS can both request and authorize action. However, Defendants' interpretation distorts the plain meaning of the regulation. 50 C.F.R. § 402.16 indicates reinitiation is "required," and "shall be requested by" either the Service or the Agency. Thus, once a request is made, reinitiation of consultation must ensue, otherwise the language that "reinitiation is required" is superfluous.

**MEMORANDUM DECISION AND ORDER  - 13**

concerning significant environmental impacts; it also guarantees that the relevant

information will be made available to the larger audience that may also play a role in both

the decision making process and the implementation of that decision." *Friends of the*

*Clearwater v. Dombeck*, 222 F.3d 552, 557 (9th Cir.2000) (quoting *Robertson v. Methow*

*Valley Citizens Council*, 490 U.S. 332, 349 (1989)). NEPA does not guarantee

substantive results but sets forth procedural mechanisms to ensure proper consideration

of environmental concerns. *Carmel–by–the–Sea v. United States Dep't. of*

*Transportation*, 123 F.3d 1142, 1150 (9th Cir. 1997).

NEPA regulations require an agency to consider whether an action falls within a

class of actions that normally require an Environmental Impact Statement ("EIS"), or

whether an action falls within a class of actions requiring no environmental evaluation

("Categorical Exclusion"). 40 C.F.R. § 1501.4(a). If a proposed action is neither a

categorical exclusion nor the type normally requiring an EIS, then the agency is directed

to prepare an Environmental Assessment ("EA") to determine whether to prepare an EIS.

40 C.F.R. § 1501.4(a)-(c).

An EIS is not required for every action. NEPA directs federal agencies to prepare

an EIS only for proposed "major federal actions significantly affecting the quality of the

human environment." 42 U.S.C. § 4332(2)(C). The preparation of an EA will either lead

to a finding that an EIS must be prepared because of potentially significant environmental

impacts resulting from the proposed action, or to a Finding of No Significant Impact

("FONSI"), which means that an EIS is not required. 40 C.F.R. § § 1501.4(c)-(e),

1508.13.

**MEMORANDUM DECISION AND ORDER  - 14**

Agencies are required to prepare supplements to an EIS if there are "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c). The regulations do not address an agency's obligation to supplement an EA, but the United States Court of Appeals for the Ninth Circuit has held that supplementation of an EA may be required when, like with the standard for supplementing an EIS, there have been significant changes in the proposed action. *See, e.g., Idaho Sporting Congress v. Thomas*, 137 F.3d 1146, 1152 (9th Cir. 1998).

After an agency has prepared an EA and issued a FONSI, as the USFS has done here, an agency must supplement its EA analysis if there are "significant new circumstances or information relevant to environmental concerns and bearing on the *proposed* action or its impacts." 40 C.F.R. § 1502.9(c)(1)(h) (emphasis added); *Idaho Sporting Congress v. Thomas*, 137 F.3d 1146, 1152 (9th Cir. 1998) (holding that an EA must be supplemented in the same manner as an EIS). "There is an obligation to supplement an EA if there remains major federal action to occur and the new information shows that the remaining action will affect the quality of the human environment in a significant manner or to a significant extent not already considered." *Or. Nat. Res. Council Action v. U.S. Forest Serv*., 445 F.Supp.2d 1211, 1219 (D. Or. 2006) (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 374 (1989)). *Marsh* contemplates, however, that there must be federal action remaining to occur. 490 U.S. at 374.

There is no ongoing major federal action requiring supplemental NEPA analysis if the federal agency action being challenged has been undertaken and completed pursuant

to an adequate or unchallenged NEPA process. *Oregon Nat. Res. Council Action v. U.S. Forest Serv.*, 445 F. Supp. 2d 1211, 1222 (D. Or. 2006) (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 73 (2004); *Cold Mountain v. Garber*, 375 F.3d 884, 894 (9th Cir. 2004); *Wyoming v. United States Dep't of Interior*, 360 F.Supp.2d 1214, 1219, 1238 (D.Wyo. 2005); *Envtl. Prot. Info. Ctr. v. United States Fish & Wildlife Serv.*, No. C 04–04647, 2005 WL 3021939, at *6 (N.D.Cal. Nov. 10, 2005)).

In this case, the USFS's final federal rule of deferring to states on game-baiting black bears was challenged in *Fund for Animals v. Thomas*, 932 F. Supp. 368, 370 (D.D.C. 1996), *aff'd* 127 F.3d 80. On appeal, the D.C. Circuit held the USFS complied with NEPA, finding the consultation process the USFS undertook under the ESA was adequate. The rule was approved. There is therefore no ongoing or proposed federal action that requires supplementation. *Norton*, 542 U.S. at 73; *Wyoming*, 360 F.Supp.2d at 1219 (after the rule was promulgated, no more major federal action remained to take place).

Count II will therefore be dismissed.

## CONCLUSION

Based upon the Court's analysis, Count I will be allowed to proceed against FWS and the USFS, while Count II will be dismissed in its entirety.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss (Dkt. 28) is **GRANTED IN PART AND DENIED IN PART**.

2. The Court will conduct a telephonic scheduling conference with the parties. A separate notice is forthcoming.

DATED: May 7, 2020

Honorable Candy W. Dale
United States Magistrate Judge