JEAN E. WILLIAMS
Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
ROBERT P. WILLIAMS
Sr. Trial Attorney (D.C. Bar No. 474730)
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-0206
Facsimile: (202) 305-0275
Email: robert.p.williams@usdoj.gov

***Attorneys for Defendants***

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| WILDEARTH GUARDIANS, WESTERN WATERSHEDS PROJECT, and WILDERNESS WATCH, | ) ) ) | **Case No. 1:19-cv-00203-CWD** |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COUNT I** |
| UNITED STATES FOREST SERVICE and UNITED STATES FISH & WILDLIFE SERVICE, | ) ) ) | |
| Defendants. | ) ) | |

# **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ................................................................................................................1

LEGAL BACKGROUND .....................................................................................................2

FACTUAL AND PROCEDURAL BACKGROUND ..........................................................4

    I.    Game Baiting On National Forest System Lands ......................................................4

    II.   Prior Litigation Over the Forest Service's Policy Statements: *Fund for Animals* ..........6

    III.  Present Litigation Over the Forest Service's Policy Statements ....................................7

    IV.  Rescission of the 1993 and 1995 Consultations ...........................................................7

STANDARD OF REVIEW FOR MOTION TO DISMISS .................................................9

ARGUMENT.......................................................................................................................10

    I.    The Court Lacks Subject Matter Jurisdiction to Adjudicate Count I .......................10

         A.    Count I is Jurisdictionally Moot.......................................................................10

         B.    No Exception to the Mootness Doctrine Applies.............................................14

    II.   Count I Fails for Lack of Statutory Standing.............................................................19

CONCLUSION...................................................................................................................20

## TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE**

*Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176 (9th Cir. 2010) .......................................13

*Armstrong v. FAA*, 515 F.3d 1294 (D.C. Cir. 2008)........................................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................................9

*Bennett v. Spear*, 520 U.S. 154 (1997) ....................................................................................3, 19, 20

*Burke v. Barnes*, 479 U.S. 361 (1987) ..............................................................................................11

*Cal. Sportfishing Prot. All. v. FERC*, 472 F.3d 593 (9th Cir. 2006) ...............................................19

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ...........................................................................14

*Conyers v. Reagan*, 765 F.2d 1124 (D.C. Cir. 1985)........................................................................11

*Diffenderfer v. Cent. Baptist Church of Miami, Fla.*, 404 U.S. 412, (1972) .............................10, 11

*Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789 (9th Cir. 1999).....................................................10

*English v. Arizona*, 520 U.S. 43 (1997) ...........................................................................................10

*Epstein v. Wash. Energy Co.*, 83 F.3d 1136 (9th Cir. 1996) .............................................................10

*Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167 (2000)...............................................16

*Fund for Animals v. Thomas*, 127 F.3d 80 (D.C. Cir. 1997)......................................................passim

*Fund for Animals v. Thomas*, 932 F. Supp. 368 (D.D.C. 1996) ..................................................6, 7

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) ......................................................................14

*Heckler v. Chaney*, 470 U.S. 821 (1985) .........................................................................................12

*League of Wild. Defs. v. Connaughton*, 752 F.3d 755 (9th Cir. 2014) ............................................13

*Lone Rock Timber Co. v. DOI*, 842 F. Supp. 433 (D. Or. 1994)......................................................12

*Los Angeles Cty. v. Davis*, 440 U.S. 625 (1979) ..............................................................................13

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ..............................................................................14

*McCarthy v. United States*, 850 F.2d 558 (9th Cir. 1988) .................................................................9

*Mills v. Green*, 159 U.S. 651 (1895) ..............................................................................................10

*Murphy v. Hunt*, 455 U.S. 478 (1982)..............................................................................................14

*Nat'l Ass'n of Home Builders v. Def. of Wildlife*, 551 U.S. 644, (2007) .........................................16

*Nat'l Ass'n of Home Builders v. Salazar*, 827 F. Supp. 2d 1 (D.D.C. 2011) .................................10

*Neitzke v. Williams*, 490 U.S. 319 (1989) .........................................................................................9

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004).............................................................12, 20

*Or. Nat. Res. Council v. Allen*, 476 F.3d 1031 (9th Cir. 2007) .........................................................3

*Orantes–Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990) .................................................12

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004).......................................................9

*San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581 (9th Cir. 2014) ..........................11

*Save Our Springs All. v. Texas Dep't of Transp.*,
   2020 WL 3490383 (W.D. Tex. June 26, 2020) .......................................................................11

*Save the Yaak Comm. v. Block*, 840 F.2d 714 (9th Cir. 1988)..........................................................12

*Sierra Club v. Babbitt*, 65 F.3d 1502 (9th Cir. 1995) ........................................................................19

*Spencer v. Kemna*, 523 U.S. 1 (1998) ...............................................................................................11

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)...............................................................9

*Sw. Ctr. for Biol. Dvty. v. U.S. Bur. Recl.*, 143 F.3d 515 (9th Cir. 1998) ........................................12

*Thornhill Pub. v. Gen. Tel. & Elecs.*, 594 F.2d 730 (9th Cir. 1979)...................................................9

*U.S. Fish & Wildlife Serv.*, 807 F.3d 1031 (9th Cir. 2015) ...............................................................11

*United States v. Chem. Found.*, 272 U.S. 1 (1926) ...........................................................................12

*Western Watersheds Project v. Matejko*, 468 F.3d 1099 (9th Cir. 2006) ...................................passim

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ....................................................................................15

*WildEarth Guardians v. U.S. Forest Serv.*, 2020 WL 2239975 (D. Idaho May 7, 2020) ....................passim

## STATUTES

5 U.S.C. § 551(13) .............................................................................................................................20

5 U.S.C. § 701(2) ...............................................................................................................................20

5 U.S.C. § 702 ....................................................................................................................................20

5 U.S.C. § 704 ....................................................................................................................................20

16 U.S.C. § 480 ....................................................................................................................................4

16 U.S.C. § 528 ....................................................................................................................................4

16 U.S.C. § 670h ..................................................................................................................................4

16 U.S.C. § 1532(19) ...................................................................................................................3, 8, 19

16 U.S.C. § 1533(d) .....................................................................................................................3, 8, 19

16 U.S.C. § 1536(a)(2) ...............................................................................................................2, 8, 18

16 U.S.C. § 1536(b)(4)(C)(i) ................................................................................................................3

16 U.S.C. § 1536(b)(4)(C)(ii) ...............................................................................................................3

16 U.S.C. § 1536(o)(2) .........................................................................................................................3

16 U.S.C. § 1538(a)(1)(B) ...........................................................................................................3, 8, 19

16 U.S.C. § 1538(a)(1)(C) ...........................................................................................................3, 8, 19

16 U.S.C. § 1538(a)(1)(G) ...........................................................................................................3, 8, 19

16 U.S.C. § 1540(g)(1)(C) ..................................................................................................................19

16 U.S.C. § 1540(g)(2)(A) ..................................................................................................................12

43 U.S.C. § 1732 ..................................................................................................................................4


36 C.F.R § 241 ....................................................................................................................................4

36 C.F.R § 251.50(c) ...........................................................................................................................4

36 C.F.R § 261.8..................................................................................................................................4

50 C.F.R. § 402.02 ......................................................................................................................2, 8, 18

50 C.F.R. § 402.13(a) ...........................................................................................................................3

50 C.F.R. § 402.14(a) ..................................................................................................................2, 3, 16

50 C.F.R. § 402.14(b) ...........................................................................................................................3

50 C.F.R. § 402.14(g) ...........................................................................................................................3

50 C.F.R. § 402.14(h) ...........................................................................................................................3

50 C.F.R. § 402.14(i) ............................................................................................................................3

50 C.F.R. § 402.14(i)(5) .......................................................................................................................3

50 C.F.R. § 402.14(m)(2)............................................................................................................3, 8, 16

50 C.F.R. § 402.14(m)(3) .................................................................................................... 3, 16
50 C.F.R. § 402.16 ................................................................................................................ 19
50 C.F.R. § 402.16(a) ............................................................................................................. 3
50 C.F.R. § 402.16(a)(1) .................................................................................................. 11, 12
50 C.F.R. § 402.16(a)(2) .................................................................................................. 11, 12

## **FEDERAL REGULATIONS**

59 FED. REG. 11,765 (MAR. 14, 1994) .............................................................................. 5, 8
59 FED. REG. 17,758-02 (APR. 14, 1994) .............................................................................. 5
60 FED. REG. 14,720 (MAR. 20, 1995) ................................................................... 4, 6, 8, 15, 17

# INTRODUCTION

As the Court is aware, the above-captioned complaint contends that supplemental analysis of

a 1995 U.S. Forest Service ("USFS") policy statement is required under the National Environmental

Policy Act ("NEPA") and Endangered Species Act ("ESA").  The statement reaffirmed USFS'

longstanding policy of leaving the regulation of hunting with bait on National Forest System

("NFS") lands to the states in which the lands are located.  The crux of the complaint is that the

statement is causing ESA-listed grizzly bears to be taken by black bear hunters who hunt with bait.

As this Court has ruled, however, there is "no ongoing or proposed federal action" that could

necessitate supplemental analysis under NEPA as alleged in Count II.  *WildEarth Guardians v. U.S.*

*Forest Serv.*, No. 1:19-cv-00203-CWD, 2020 WL 2239975, at *7 (D. Idaho May 7, 2020).

Plaintiffs' remaining ESA "failure to reinitiate" claim (Count I) should now be dismissed as

moot.  Specifically, on June 26, 2020, USFS withdrew its requests for consultation on the 1995

policy statement as well as on the 1993 USFS Region 2 policy statement, which were the subjects of

the U.S. Fish & Wildlife Service's ("FWS") 1995 letter of concurrence ("LOC") and 1993 biological

opinion ("BiOp") and incidental take statement ("ITS"), respectively.  In response, FWS has

withdrawn the LOC, BiOp, and ITS.  These actions were taken to account for the fact that USFS

never implemented its Region 2 policy, and that subsequent legal precedent establishes that neither

policy statement was a federal "action" that required ESA consultation.  In particular, in *Fund for*

*Animals v. Thomas*, 127 F.3d 80 (D.C. Cir. 1997), the D.C. Circuit rejected a claim that formal

consultation was required on the 1995 policy statement.  The Court's assessment was that the

"Forest Service's decision to refrain from future regulation of baiting may not constitute 'action' at

all," in which case "there most probably would have been no 'agency action' to trigger the ESA

consultation requirement."  *Id.* at n.3, n.6.  Not finding that any consultation obligation existed at all,

the Court ruled that, to the extent any consultation obligation existed, USFS had met it by

consulting informally.  In addition, rescinding the consultations is consistent with the Ninth Circuit's

decision in *Western Watersheds Project v. Matejko*, 468 F.3d 1099 (9th Cir. 2006), a leading case that

arose out of this District and made it clear that a federal agency's decision not to exercise its

discretion to regulate the conduct of third parties is not agency action that requires ESA

consultation.

In sum, Plaintiffs' "failure to reinitiate" claim is moot.  The underlying consultations are

inoperative and thus cannot be reinitiated.  Count I therefore should be dismissed for lack of

jurisdiction and Article III standing.  Fed. R. Civ. P. 12(b)(1).  For the same reasons, Count I also

fails for lack of statutory standing.  Fed. R. Civ. P. 12(b)(6).

## LEGAL BACKGROUND

Section 7(a)(2) of the ESA requires federal agencies ("action agencies") to ensure that any

action they authorize, fund, or carry out is not "likely to jeopardize the continued existence" of any

listed species or result in the destruction or adverse modification" of designated critical habitat.  16

U.S.C. § 1536(a)(2).  The ESA's implementing regulations define federal agency "action" as "all

activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal

agencies in the United States or upon the high seas."  50 C.F.R. § 402.02.  Examples of agency

action include, but are not limited to, actions intended to conserve listed species or their habitat, the

promulgation of regulations, granting of licenses, contracts, leases, easements, rights-of-way,

permits, or grants-in-aid, or actions directly or indirectly causing modifications to the land, water, or

air.  *Id.*  Where there is no federal action, the requirements of Section 7 do not apply.

However, where there is a proposed federal action that "may affect" listed species or

designated critical habitat, Section 7 requires the action agency to consult with the appropriate

"consulting agency" (here, FWS) to, among other things, analyze the potential impacts of the action

on listed species and any designated critical habitat.  *Id.* at § 402.14(a).  The consultation may be

"informal" if the action agency determines, with the written concurrence of the consulting agency (in the form of an LOC), that its action is not "likely to adversely affect" listed species or any designated critical habitat. *Id.* at §§ 402.13(a), 402.14(a)–(b). Formal consultation concludes with the issuance of a written BiOp by the consulting agency that assesses the likelihood of "jeopardy" to the species and "destruction or adverse modification" of critical habitat. *Id.* at § 402.14(g)-(h).

If a consulting agency's BiOp concludes that the proposed action is not likely to cause jeopardy but is reasonably certain to result in "take" of a listed species,[1] the consulting agency issues an ITS to the action agency that specifies the amount or extent of the anticipated take and any reasonable and prudent measures it "considers necessary or appropriate" to minimize the impact of the take. 16 U.S.C. § 1536(b)(4)(C)(i)-(ii); 50 C.F.R. § 402.14(i). The ESA states that "any taking that is in compliance with the terms and conditions specified in [the ITS] . . . shall not be considered to be a prohibited taking of the species concerned." 16 U.S.C. § 1536(o)(2); *see also* 50 C.F.R. § 402.14(i)(5); *Bennett v. Spear*, 520 U.S. 154, 170 (1997) (the ITS "constitutes a permit authorizing the action agency to 'take' the endangered or threatened species so long as it respects the Service's 'terms and conditions'"); *Or. Nat. Res. Council v. Allen*, 476 F.3d 1031, 1034 (9th Cir. 2007). Where "discretionary Federal involvement or control over the action has been retained or is authorized by law," a consultation must be reinitiated in certain prescribed circumstances. 50 C.F.R. § 402.16(a).

The ESA's consultation regulations provide that, "[i]f during any stage of consultation a Federal agency determines that its proposed action is not likely to occur, the consultation may be terminated by written notice to the Service." *Id.* at § 402.14(m)(2). Similarly, consultation may be terminated at "any stage" with written notice to the consulting agency if the action agency determines, with the concurrence of the consultation agency, that its proposed action is not likely to adversely affect any listed species or critical habitat. *Id.* at § 402.14(m)(3).

---

[1] Section 9 of the ESA prohibits "take" of members of a listed species without authorization. 16 U.S.C. §§ 1538(a)(1)(B)-(C), (G); 1532(19); 1533(d).

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Game Baiting On National Forest System Lands

Since their enactment decades ago, the federal land management statutes have acknowledged the states' traditional role in managing fish and wildlife within their respective borders, including hunting practices on NFS lands.  National Forest System Organic Administration Act, 16 U.S.C. § 480; Multiple Use-Sustained Yield Act, 16 U.S.C. § 528; Sikes Act, 16 U.S.C. § 670h; Federal Land Policy and Management Act, 43 U.S.C. 1732; 36 C.F.R §§ 241, 261.8, & 251.50(c).  Relevant here, "baiting," when used in reference to the hunting of wildlife, means placing some form of attractant – generally items such as food, salt, or manufactured scents – in a particular location in an effort to attract the wildlife to the hunter, rather than to have the hunter travel through the environment searching for the wildlife.  60 Fed. Reg. 14,720 (Mar. 20, 1995).  Consistent with "the States' traditional role in managing fish and wildlife," managers within the NFS have considered the hunting of animals with the use of bait to be a hunting practice that is "subject to State law and regulations."  *Id.*  However, at various points in time prior to 1993, "some Forest Service units" had required "special use permits . . . to regulate baiting" on NFS lands, even though Forest Service regulations have, since at least 1980, exempted "hunting" from the requirements for a special use authorization, and USFS determined that "the issuance of special use permits [was] not appropriate" to regulate baiting.  *Id.* at 14,721; 36 C.F.R. § 251.50(c); *see also* Am. Compl. ¶ 17 (ECF 12).

In March 1992, USFS decided to issue a closure order prohibiting bear baiting in Wyoming's National Forests unless in compliance with the requirements of the order, and Fund for Animals brought suit, claiming that analysis of the decision under NEPA was required.  To settle the suit, in February 1993, Regional Foresters agreed to complete an environmental assessment ("EA") considering options for regulating baiting on NFS lands in Wyoming, and to request that FWS complete formal consultation under the ESA.  *Fund for Animals*, 127 F.3d at 81.  As requested, FWS

4

provided USFS with a BiOp on April 14, 1993, which concluded that none of the alternatives being considered was likely to jeopardize the continued existence of any listed species, including the grizzly bear.[2]  *Id.* at 82.  Also in April 1993, USFS issued a "Decision Notice and Finding of No Significant Impact" that selected the alternative of deferring to the State of Wyoming to regulate baiting on NFS lands within its borders ("Region 2 statement"), consistent with USFS' longstanding practice of deferring to state regulation of hunting practices.  *Id.*  USFS concluded that an environmental impact statement ("EIS") was not required because the policy statement was "not a major federal action" and would "not significantly affect the quality of the human environment."  *Id.* at 81-82.

However, USFS never implemented its proposed Region 2 policy.  In response to continued controversy, USFS rescinded the Decision Notice on July 29, 1993 pending the development of a national policy statement with regard to baiting on NFS lands nationwide.  *Id.*  In March 1994, USFS issued an interim national policy statement of deference to the states in the regulation of baiting, (59 Fed. Reg. 11,765 (Mar. 14, 1994)), which – to resolve a second lawsuit by Fund for Animals – USFS agreed to rescind and republish for public comment as a proposed national policy on April 14, 1994, (59 Fed. Reg. 17,758-02 (Apr. 14, 1994)).  The purpose of the proposed national policy was to "clarify the agency's role in relation to the role of the States and . . . provide a consistent approach to the regulation of baiting resident game."  *Id.*  Because the policy statement amounted to little more than a clarification of existing policy, USFS concluded in an EA that it would have no significant impact on the human environment for purposes of NEPA.  USFS also prepared a biological evaluation ("BE") pursuant to the ESA in February 1995 that found the proposed policy statement was not likely to adversely affect any ESA-listed species, on the grounds that it merely maintained the status quo.  *See Fund for Animals*, 127 F.3d at 82.  USFS requested that FWS review its BE, and FWS concluded that the effects of the proposed policy statement would be consistent with FWS's

---

[2] No critical habitat has been designated for the grizzly bear pursuant to ESA Section 4.

earlier "no jeopardy" BiOp on the Region 2 policy statement. *Id.* Following additional discussions

with USFS, FWS issued the March 14, 1995 LOC concurring in USFS' determination that the

national policy statement was "not likely to adversely affect" any listed species or designated critical

habitat, thereby concluding informal ESA consultation. *Id.* USFS subsequently completed a second

EA that again found any environmental effects of the proposed national policy would be negligible.

*Id.*

On March 15, 1995, USFS issued another "Decision Notice and Finding of No Significant

Impact," in which it adopted the proposed national policy statement and also determined, *inter alia*,

that no further analysis under NEPA was needed because the proposed policy was "not a major

Federal action" and would "not significantly affect the quality of the human environment." *Id.* The

final national policy statement was published on March 20, 1995. *See* 60 Fed. Reg. at 14,720.

Relevant here, the statement clarifies that, "[w]here State law and regulation permit baiting[,] the

practice is permitted on National Forest System lands unless the authorized officer determines on a

site specific basis that the practice conflicts with Federal laws or regulations, or forest plan direction,

or would adversely affect other forest uses or users." *Id.* at 14,722.

## II.     Prior Litigation Over the Forest Service's Policy Statements: *Fund for Animals*

Three months after finalizing the national policy, Fund for Animals and several other groups

filed a third suit on June 21, 1995, alleging that USFS: (1) violated the ESA by completing informal,

rather than formal consultation; and (2) violated NEPA by not preparing an EIS. *Fund for Animals v.*

*Thomas*, 932 F. Supp. 368, 370 (D.D.C. 1996), *aff'd* 127 F.3d 80. On August 8, 1996, the district

court rejected both claims and granted summary judgment to USFS. *Id.* at 371. The plaintiffs

appealed. On October 17, 1997, the D.C. Circuit affirmed. The Court found that the national

policy was "not a major federal action" for NEPA purposes, such that USFS had "no EIS

obligation." *Fund for Animals,* 127 F3.d at 83. The D.C. Circuit also ruled there was no formal

consultation obligation and, suggesting there was no consultation obligation at all, held that, "*[t]o the extent that there was an ESA consultation obligation*, USFS and FWS fulfilled it by engaging in 'informal consultation.'" *Id.* at 84 (emphasis added).

## III.   Present Litigation Over the Forest Service's Policy Statements

Notwithstanding the D.C. Circuit's ruling in *Fund for Animals*, Plaintiffs filed the present suit in June 2019, contending that USFS is required to complete supplemental analysis of the national policy statement under NEPA and a reinitiated consultation under the ESA.  ECF 12 ¶¶ 74-77 (Count I), 78-79 (Count II).  In November 2019, USFS and FWS moved to dismiss Count II in its entirety and Count I only as asserted against FWS.  ECF 28.  On May 7, 2020, this Court granted dismissal of Count II, but found that Count I could proceed against FWS.  *WildEarth Guardians*, 2020 WL 2239975.  In dismissing Count II, the Court found that:

> [T]he USFS's final federal rule of deferring to states on game-baiting black bears was challenged in *Fund for Animals v. Thomas*, 932 F. Supp. 368, 370 (D.D.C. 1996), *aff'd* 127 F.3d 80. On appeal, the D.C. Circuit held the USFS complied with NEPA, finding the consultation process the USFS undertook under the ESA was adequate. The rule was approved. There is therefore no ongoing or proposed federal action that requires supplementation.

*Id.* (citations omitted).

Federal Defendants' partial motion to dismiss reserved the question of whether Count I asserted an actionable claim against USFS under the ESA (ECF 28-1 at 7 n.1) and, accordingly, the Court did not decide that issue.  *WildEarth Guardians,* 2020 WL 2239975 at *2 n.1, *4 n.3.

## IV.   Rescission of the 1993 and 1995 Consultations

In light of the unique circumstances surrounding the 1993 and 1995 consultations and the subsequent factual and legal developments, on June 26, 2020, USFS decided to withdraw its requests for the consultations.  *See* 6/26/20 letter from Allen Rowley to Gary Frazer (copy attached hereto as Ex. 1).  USFS determined that the consultations were

unnecessary for two primary reasons.  First, USFS never effectuated its proposed Region 2 policy, but rather rescinded it in 1993 shortly after having consulted on it.  59 Fed. Reg. 11,765; 60 Fed. Reg. 14,720; *accord* 50 C.F.R. § 402.14(m)(2).  Second, USFS determined that neither the 1993 Region 2 statement nor the 1995 statement were federal actions that required consultation in the first instance.  Rather, the statements constituted federal inaction for purposes of Section 7 of the ESA.  *See* 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.02; *Fund for Animals*, 127 F.3d at n.3, n.6; *Matejko*, 468 F.3d at 1108.

USFS' withdrawal letter explains that the policy statements do not authorize, fund, or carry out any activity, much less any hunting or "take" of grizzly bears, which is prohibited under ESA Section 9.  16 U.S.C. §§ 1538(a)(1)(B)-(C), (G); 1532(19); 1533(d).  Rather, the statements restate and clarify USFS' recognition of the States' traditional role in managing fish and wildlife populations, including the practice of hunting with bait, and deference to the States to regulate such activities on NFS lands.  As the USFS notes, where the practice of bear baiting currently occurs on NFS lands, it is authorized by the States of Idaho and Wyoming, and regulated by the Idaho Fish & Game Commission and Wyoming Game & Fish Department, respectively, pursuant to their own State regulations.[3]  Given the lack of a requisite federal action and that the 1993 and/or 1995 consultations are inoperative, USFS concluded that there is no duty to reinitiate consultation.

In response, FWS agreed to withdraw the BiOp, ITS, and LOC.  *See* 6/26/20 letter from Gary Frazer to Allen Rowley (copy attached hereto as Ex. 2).  FWS states that, given the unique circumstances in this matter, including the fact that the Region 2 policy was

---

[3] *See* Idaho Administrative Code (IDAPA) 13.01.17.100 & 200; 2019 to 2021 Idaho Black Bear Hunting Seasons; Wyoming Black Bear Management Plan (July 20, 2007); Wyoming Game and Fish Department Rules, Black Bear Hunting Seasons, ch. 3 (March 22, 2017).

rescinded and that USFS has determined that neither the Region 2 policy statement nor the

national policy statement constituted affirmative agency action that required Section 7

consultation in the first instance, the 1993 BiOp and ITS are not operative and without

effect and should, along with the LOC on the national policy, be withdrawn.  Given this,

FWS concurred that there is no need to reinitiate consultation.

### STANDARD OF REVIEW FOR MOTION TO DISMISS

Jurisdiction must be established as a threshold matter by the party asserting it, and a case

may not proceed until the court has determined that it possesses jurisdiction.  *Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 94-95 (1998).  Fed. Rule Civ. P. 12(b)(1) authorizes federal courts to dismiss

claims over which they lack subject matter jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560

(9th Cir. 1988).  As this Court has noted, a "Rule 12(b)(1) jurisdictional attack may be facial or

factual."  *WildEarth Guardians*, 2020 WL 2239975 at *2 (citing *Safe Air for Everyone v. Meyer*, 373 F.3d

1035, 1039 (9th Cir. 2004)).  "In a facial attack, the challenger asserts that the allegations contained in

a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual

attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise

invoke federal jurisdiction." *Id.*  In a factual attack, a plaintiff's allegations do not enjoy a

presumption of truthfulness.  *Thornhill Pub. v. Gen. Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979).

Fed. Rule Civ. P. 12(b)(6) addresses the legal sufficiency of a complaint, and "authorizes a

court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319,

326 (1989) (citations omitted).  While a court "must take all of the factual allegations in the

complaint as true" in deciding such a motion, it is "not bound to accept as true a legal conclusion

couched as a factual allegation," so a "formulaic recitation of the elements of a cause of action" is

not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007)).  Similarly, "conclusory allegations of law and unwarranted inferences" are also

"insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

## ARGUMENT

### I.    The Court Lacks Subject Matter Jurisdiction to Adjudicate Count I

### A.    Count I is Jurisdictionally Moot

As the Supreme Court has explained, "[t]he duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills v. Green*, 159 U.S. 651, 653 (1895). That is because Article III limits a federal court's jurisdiction to "cases or controversies." *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 797 (9th Cir. 1999). To that end, a plaintiff must maintain a live case throughout litigation to preserve federal jurisdiction. *Id.* A case is moot when the issues no longer involve a live case or controversy with respect to which the court can appropriately provide meaningful relief. *Arizonans for Offic. English v. Arizona*, 520 U.S. 43, 72 (1997).

Here, Count I does not present a live controversy, and no relief is available for the claim. *Diffenderfer v. Cent. Baptist Church of Miami, Fla.*, 404 U.S. 412, 414–15, (1972); *Nat'l Ass'n of Home Builders v. Salazar*, 827 F. Supp. 2d 1, 7 (D.D.C. 2011) ("Ample precedent demonstrates that a lawsuit seeking declaratory and injunctive relief is moot when the challenged policy is withdrawn"). Count I alleges that USFS and FWS "have unlawfully failed to reinitiate and complete consultation" and seeks, as relief, a declaration that the agencies "have violated and continue to violate Section 7 of the ESA as alleged" and an injunction "to reinitiate and complete consultation under Section 7 of the ESA" and to "issue closure orders for black bear baiting in areas of national forests in Idaho and Wyoming where grizzly bears may be present." ECF 12 ¶ 75, Rel. Req. ¶¶ 1, 4, 5.

A declaration from this Court regarding whether there was a failure to reinitiate consultation(s) that have been rescinded, and are inoperative, would be purely advisory, and therefore inappropriate. *See Spencer v. Kemna*, 523 U.S. 1, 18 (1998) ("[Federal courts] are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong"). Indeed, the Article III case or controversy requirement applies to declaratory judgments, and the fact that a plaintiff "also seek[s] declaratory relief does not affect [the Court's] mootness determination." *Conyers v. Reagan*, 765 F.2d 1124, 1127 (D.C. Cir. 1985). A court may grant declaratory relief only in the case of a "live controversy." *Burke v. Barnes*, 479 U.S. 361, 364 (1987).

Nor is any injunctive relief available on Count I. Because the underlying consultations are inoperative, the requested injunction to reinitiate those consultations is not available as relief. And because there will be no reinitiated consultation, Plaintiffs cannot be entitled to a closure order as interim relief pending completion of reinitiated consultation. *Diffenderfer*, 404 U.S. at 414–15 (issuing a declaratory judgment that a repealed statute is unconstitutional and an injunction against its application would "of course [be] inappropriate now that the statute has been repealed"). It must be recognized that Count I, as pled, seeks only to remedy an alleged procedural violation: the failure to commence and complete the procedure of reinitiated consultation. *Save Our Springs All. v. Texas Dep't of Transp.*, No. 1:19-CV-762-RP, 2020 WL 3490383, at *2 (W.D. Tex. June 26, 2020) (noting that "[c]ourts that consider many ESA cases regularly discuss the ESA's procedural and substantive provisions as separate and discrete obligations, viewing procedural violations as existing independently of substantive violations and vice versa") (collecting cases including, *inter alia, Ctr. for Biol. Div'ty. v. U.S. Fish & Wildlife Serv.*, 807 F.3d 1031, 1036 (9th Cir. 2015) and *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 596 (9th Cir. 2014)). Specifically, Count I alleges that USFS and FWS "unlawfully failed to reinitiate and complete consultation" because two triggers for reinitiating ("new information" and "take exceedance") were met. ECF 12 ¶¶ 75-76; 50 C.F.R. §

11

402.16(a)(1) & (2)).  The rescission of the underlying consultations has permanently eliminated that alleged procedural violation.

Though the procedural consultation requirement of ESA Section 7 is intended to ensure compliance with Section 7's substantive requirements, Count I, as it is pled, does not present a substantive challenge to the conclusion in FWS' 1993 BiOp of "no jeopardy" to listed species or its conclusion in the 1995 LOC that adverse effects were not likely.[4]  Nor do Plaintiffs contend (and could not state a claim) that USFS has failed to regulate baiting or take enforcement action.  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *Heckler v. Chaney*, 470 U.S. 821, 832 (1985).  There also is no claim before the Court that USFS must start a brand new consultation on the policies.[5]  Thus, the Court does not need to decide whether the statements are (or were) actions within the meaning of ESA Section 7.  The only issue before the Court is whether the "failure to reinitiate" claim pled in Count I has been mooted by the rescission of the consultations, which it has, as explained above.  Plaintiffs cannot avoid mootness of this claim by arguing that injunctive relief is available based on any of the above theories, as no such claims are before the Court.  Plaintiffs are not entitled to injunctive relief on claims they have not pled, or on the "failure to reinitiate" claim that they have pled, which is moot.  *Orantes–Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990) (an injunction "must be narrowly tailored to give only the relief to which plaintiffs are

---

[4] These findings are entitled to a presumption of regularity.  *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926) ("presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties") (citations omitted).

[5] No such claim could be brought in this case, as no notice of such claim was provided prior to suit as the ESA requires, 16 U.S.C. § 1540(g)(2)(A).  ECF 12 ¶ 2 (alleging notice provided of intent to sue "for failing to reinitiate consultation").  The ESA's notice requirement is a jurisdictional prerequisite to the exercise of a court's subject matter jurisdiction, and requires a litigation-free window.  *Sw. Ctr. for Biol. Dvty. v. U.S. Bur. Recl.*, 143 F.3d 515, 520-22 (9th Cir. 1998); *Save the Yaak Comm. v. Block*, 840 F.2d 714, 721 (9th Cir. 1988); *Lone Rock Timber Co. v. DOI*, 842 F. Supp. 433, 440 n.3 (D. Or. 1994).

entitled"); *League of Wild. Defs. v. Connaughton*, 752 F.3d 755, 767 (9th Cir. 2014) (an overbroad injunction that is not tailored to remedy the specific harm alleged is an abuse of discretion).

Rescinding the underlying consultations has "'completely and irrevocably eradicated the effects of the alleged violation.'" *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1179 (9th Cir. 2010) (quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979)). Plaintiffs' allegations of harm are formulaic, conclusory, and otherwise implausible. Plaintiffs allege that their members are injured "by the Forest Service's allowance of black bear baiting on national forests in Idaho and Wyoming" (ECF 12 ¶¶ 5-7), but this alleged injury is not fairly traceable to the conduct complained of (failing to reinitiate consultation under the ESA). In fact, the allegation is factually and legally erroneous, as the policy statements do not "allow" black bear baiting, but rather *refrain* from regulating the practice at all, as this Court has recognized. *WildEarth Guardians*, 2020 WL 2239975, at *1 (noting that the "national policy [] *allow[s] states to decide* whether bait can be used in national forests") (emphasis added); *see also Fund for Animals,* 127 F.3d at 83, n.3. Plaintiffs implicitly concede this point later in their complaint, where they allege that "*two states allow* hunters to use bait to hunt black bears: Idaho and Wyoming." ECF 12 ¶ 15 (emphasis added); *see also id.* ¶¶ 27-29 (allegations regarding what particular baiting practices the States of Idaho and Wyoming "do" or "do[] not prohibit").[6]

The complaint further alleges – in conclusory fashion – that Plaintiffs' members are injured by the "failure to reinitiate and complete consultation as to the effects on grizzly bears of black bear baiting," offering no plausible explanation of how the alleged failure to complete this procedure is causing a concrete, particularized, and imminent harm to Plaintiffs' individual members. ECF 12 ¶¶

---

[6] Under Plaintiffs' (mistaken) theory of causation, it is equally true that the national policy statement "prohibits" bear baiting on NFS lands in every state except Idaho and Wyoming. Regardless, the fallacy of Plaintiffs' claim of injury is that it stems from the decision *whether* to allow hunting in the National Forests, when USFS' policy statements merely concern *who* should regulate it. As noted above, individual states determine whether to allow the practice, not USFS. Wyoming and Idaho have decided to allow it, while the remaining states have decided not to. *Supra* at 8. At bottom, USFS' policy statements do not cause bear baiting or Plaintiffs' alleged injury, nor are Plaintiffs' injuries caused by the alleged failure to reinitiate ESA consultation on the statements.

5-7.  The most the complaint offers is a vague reference to injuries "based on professional, educational, inspirational, personal, aesthetic, and recreational interests," paired with a formulaic allegation that "the Court can redress" those injuries.  *Id.*  While these might be legally protectable interests in certain circumstances, the formulaic allegations of injury and causation here are not a plausible basis for finding that Plaintiffs' "failure to reinitiate" claim presents a live controversy or that injunctive relief is available on Count I.[7]  Count I should be dismissed as moot.

## B.      No Exception to the Mootness Doctrine Applies

There is no exception to the mootness doctrine that should allow Plaintiffs to continue to press their "failure to reinitiate" claim.  This is not one of the "exceptional situations," *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), where Plaintiffs could "demonstrate that '(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.'"  *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (citation omitted); *see also Armstrong v. FAA*, 515 F.3d 1294, 1296 (D.C. Cir. 2008) (requiring a "reasonable showing that [plaintiffs] will again be subjected to the alleged illegality" (citation omitted)).  To the contrary, the consultations that Plaintiffs allege were not reinitiated have been rescinded permanently based on a determination that no consultation – past or future – is needed, and because the 1993 Region 2 policy statement was

---

[7] Because Article III standing cannot be "inferred argumentatively from averments in the pleadings" but rather must instead be set forth "affirmatively" and "clearly," Plaintiffs failed to satisfy their burden with respect to injury and causation even before the consultations were rescinded.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).  Now that the consultations have been rescinded, Plaintiffs' task of showing the "irreducible constitutional minimum" elements of constitutional standing to press their "failure to reinitiate" claim has become impossible.  Plaintiffs must show: (1) an injury in fact (*i.e.*, one that is sufficiently concrete and particularized and actual or imminent, not conjectural or hypothetical); (2) a causal connection between the alleged injury and the defendant's challenged action; and (3) that the injury is "likely" to be "redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation omitted).  Injury-in-fact cannot simply be the alleged failure to complete a procedure itself (here, reinitiated consultation).  *Id.* at 572 n.7.  Rather, a plaintiff must show that the procedural violation injures its members' separate, concrete interests.  Here, there is no operative consultation that could cause or redress any alleged injury to Plaintiffs or their members or, hence, provide Plaintiffs with a basis for Article III standing.

never effectuated.  Exs. 1 & 2; *White v. Lee*, 227 F.3d 1214, 1243-44 (9th Cir. 2000) (permanent

change in way agency conducted business, not merely a temporary policy, established that the

challenged conduct could not reasonably be expected to recur).  Plainly, there is no reasonable

expectation here that the conduct complained of is capable of repeating and evading judicial review.

       In fact, three courts – including this one – have *already reviewed* the 1995 national policy

statement and each held that USFS complied with its legal obligations.  Most recently, this Court

ruled that USFS had not violated its obligations under NEPA, *WildEarth Guardians*, 2020 WL

2239975 at *7, consistent with the prior rulings of the district court for the District of Columbia and

D.C. Circuit that the national policy "*cannot* be characterized as a 'major federal action' under

NEPA," *Friends of Animals*, 127 F.3d at 84 (emphasis added) (citations omitted).  As noted above, the

D.C. Circuit ruled in *Fund for Animals* that the national policy statement was not a "major" action in

that it only "maintained the substantive *status quo*" regarding the regulation of baiting.  *Id.* at 84; *see

also id.* at 83 (noting that the "shift . . . from federal to state regulation had no effect outside

Wyoming" and that the State's regulations "var[ied] only insignificantly from those of the federal

special use permit conditions they replaced"); *cf.* 60 Fed. Reg. at 14,722 (noting that the national

policy reflects "long-standing reliance on State regulation of baiting resident game").  In fact, the

Court expressed skepticism as to whether adoption of the "existing federal policy of leaving baiting

regulation to individual states" constituted any "'action' at all," drawing comparisons between USFS'

"decision to refrain from future regulation of baiting" and cases involving agency inaction.  127 F.3d

at 83 & n.3 (citations omitted).  At bottom, *Fund for Animals* confirmed that where the agency's

inaction or action preserves the *status quo*, it is not a "major federal action" that triggers NEPA's

requirements.  *Id.* at 83.

       Similarly, with regard to USFS' consultation obligations under the ESA, the D.C. Circuit

rejected the plaintiffs' claim that formal consultation was required.  Notwithstanding that USFS had

consulted,[8] the Court posited that the "Forest Service's decision to refrain from future regulation of baiting may not constitute 'action' at all," in which case "there most probably would have been no 'agency action' to trigger the ESA consultation requirement." *Id.* at n.3, n.6. Without finding that any consultation obligation existed at all, the Court ruled that, "*[t]o the extent that there was an ESA consultation obligation*, the Forest Service and FWS fulfilled it by engaging in 'informal consultation.'" *Id.* at 84 (emphasis added).

These prior rulings in USFS' favor should negate any contention that the voluntary cessation exception to mootness applies here. The voluntary cessation exception may apply when "a defendant voluntarily changes its *allegedly* unlawful conduct, [to] ensure[] that federal courts do not leave a wily defendant 'free to return to his old ways.'" *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (emphasis added). As noted, there already has been judicial review here and, as this Court just held, there will be no return to "old ways" after Count I is dismissed. *WildEarth Guardians*, 2020 WL 2239975 at *7 (finding "no ongoing or proposed federal action" in regards to the 1995 national policy statement). The allegation here in Count I that the 1995 policy statement is a federal action that requires USFS to reinitiate consultation, and any suggestion that the voluntary

---

[8] The D.C. Circuit's ruling refutes any suggestion that the 1993 and/or 1995 policy statements are federal actions that require consultation simply because USFS consulted on them. Indeed, an agency cannot create a legal duty where none exists, for instance by voluntarily consulting. *Nat'l Ass'n of Home Builders v. Def. of Wildlife*, 551 U.S. 644, (2007) (action agency's decision that ESA Section 7 did not apply was not rendered arbitrary because agency had initiated and completed a Section 7 consultation). In addition, that the prior consultations have no precedential value is further demonstrated by the ESA consultation regulations, which require action agencies to review their actions "at the earliest possible time" (50 C.F.R. § 402.14(a)), and expressly contemplate that consultation may be commenced and terminated at "any stage" with written notice to the consulting agency should the action agency determine that its proposed action "is not likely to occur" (*id.* at 402.14(m)(2)), or (contrary to its initial finding of effects), with the concurrence of the consulting agency, "is not likely to adversely affect any listed species or critical habitat" (*id.* at § 402.14(m)(3)). In this case, the Region 2 policy statement was never effectuated, and USFS has determined, with the concurrence of FWS, that neither policy statement constitutes federal action for purposes of the ESA. Exs. 1 & 2. As such, neither statement can affect listed species or designated critical habitat.

cessation exception should be applied to USFS' rescission of that consultation, are inconsistent with the D.C. Circuit's ruling in *Fund for Animals*.

Such contentions also are inconsistent with *Western Watersheds Project v. Matejko*, 468 F.3d 1099, where the Ninth Circuit found that the Bureau of Land Management ("BLM") and USFS had no consultation obligations under circumstances analogous to this case. Similar to hunting by private individuals on NFS lands here, *Matejko* concerned water diversions being made by private individuals on public lands. And analogous to USFS' 1995 policy statement here reaffirming its longstanding deference to state regulation of hunting, in *Matejko*, BLM had issued a policy statement in 1983 embracing "a doctrine of prior appropriation and a general policy of deference to state and local law regarding water rights." *Id.* at 1103. In *Matejko*, like here, the agencies had discretion to take enforcement action to protect the public lands under certain conditions, but were not exercising that discretion. *Compare id.* at 1105 (BLM regulations "reflect[ing] long-standing law and BLM's historical practice by clarifying that 1866 Act rights-of-way are not subject to regulation so long as a right-of-way is being operated and maintained in accordance with the scope of the original rights granted") *with* 60 Fed. Reg. at 14,720 (1995 national policy statement providing that, "[w]here baiting is allowed by States, the practice would continue on National Forest System lands unless the authorized officer [from the Forest Service]. . . determine[s] on a site-specific basis that the use of bait conflicts with Federal laws or regulations, forest plan direction, or other uses or users").

The plaintiffs in *Matejko* alleged that BLM and USFS were required to consult with FWS under ESA Section 7 on the grounds that their decisions to not exercise their discretion to control water diversions constituted agency action for purposes of Section 7. The district court agreed, finding that consultation was required based on what it viewed as BLM's "decision not to impose conditions on certain water diversions." *Matejko*, 468 F.3d at 1106. The Ninth Circuit reversed, however. The Ninth Circuit described the issue it was deciding on appeal as "whether the BLM's

failure to exercise any discretion it might have had to regulate the diversions at issue in this appeal constitutes a BLM 'action' that 'authorizes, funds, or carries out' the diversions," and "whether such a failure to exercise discretion (assuming the BLM had discretion) is an 'agency action' for purposes of section 7(a)(2), so as to require consultation." *Id.* at 1107. The Ninth Circuit concluded that the decision not to exercise discretion was not action for purposes of ESA Section 7 consultation. *Id.* The Court surveyed its prior Section 7 case law and found that "Ninth Circuit cases have emphasized that section 7(a)(2) consultation stems only from 'affirmative actions'" and that "'inaction' is not 'action' for section 7(a)(2) purposes." *Id.* at 1108. The Court noted that BLM's and USFS' conduct in *Matejko* stood "in marked contrast to cases involving truly 'affirmative' actions" where consultation was required. *Id.* at 1109. The Court concluded that "BLM did not affirmatively act and was 'not an entity responsible for [the challenged] decisionmaking.'" *Id.*

The same reasoning applies here. Analogous to *Matejko*, USFS did not take action when it issued policy statements reaffirming deference to state regulation of hunting with bait on NFS lands. The statements did not authorize, fund, or carry out bear hunting with bait. *Accord Matejko*, 468 F.3d at 1109 ("Here, the BLM did not *fund* the diversions, it did not *issue* permits, it did not *grant* contracts, it did not *build* dams, nor did it *divert* streams"); 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.02 (definition of "action"). To the contrary, as the D.C. Circuit recognized, the national policy statement was meant to memorialize the "Forest Service's decision to *refrain* from future regulation of baiting" and "leav[e] baiting regulation to individual states" without furthering whatever decision a state may choose to make. *Fund for Animals,* 127 F.3d at 83, n.3 (emphasis added). As noted above (*supra*, at 8), where the practice of bear baiting currently occurs on NFS lands, it is authorized by the States of Idaho and Wyoming, and regulated by them pursuant to their own State regulations. Thus, just as the agencies' inaction was not the cause of the water diversions in *Matejko*, USFS' inaction here is not the cause of private individuals hunting black bears with bait, much less the cause of a

18

private individual illegally taking a grizzly bear.  As noted above, no "take" of ESA listed species has been authorized here, and such take remains subject to the prohibitions of ESA Section 9.  16 U.S.C. §§ 1538(a)(1)(B)-(C), (G); 1532(19); 1533(d); *Sierra Club v. Babbitt*, 65 F.3d 1502, 1512 (9th Cir. 1995) ("Congress has therefore indicated that when a wholly private action threatens imminent harm to a listed species the appropriate safeguard is through section 9 . . ., and not section 7").  For purposes of ESA Section 7, USFS' policy statements here constituted, at most, decisions not to exercise the agency's discretion to regulate hunting practices which, under controlling Ninth Circuit authority, do not require consultation.  *Matejko*, 468 F.3d 1099; *see also Cal. Sportfishing Prot. All. v. FERC*, 472 F.3d 593 (9th Cir. 2006) (consultation not required despite discretion to reopen previously-issued license because agency was not affirmatively taking action).

In sum, the 1993 and 1995 consultations have been rescinded consistent with longstanding legal authority, which renders Count I moot.  No exception to the mootness doctrine applies, as the procedural violation that is alleged has been eviscerated, and will not recur.  USFS has not evaded review of its policy statements, but rather has appropriately revisited them in light of previous judicial review of those very statements and other subsequent factual and legal developments, and taken appropriate corrective action, in coordination with the consulting agency, FWS.

## II.     Count I Fails for Lack of Statutory Standing

The waiver of sovereign immunity and cause of action to assert Count I against USFS are provided by the ESA's citizen suit provision which, relevant here, authorizes suit against action agencies that are "alleged to be in violation of any provision of this chapter or regulation issued under" its authority.  16 U.S.C. § 1540(g)(1)(C); *Bennett*, 520 U.S. at 171; ECF 12 ¶ 2.  The regulation allegedly being violated here is 50 C.F.R. § 402.16, which requires reinitiation of consultation under enumerated circumstances.  It is axiomatic that, to state a prima facie claim for breach of the duty "to reinitiate consultation" under Section 402.16, there must be a legally operative consultation to

reinitiate.  As explained above, Count I does not, and cannot, identify such a consultation here.  As such, Count I does not state a claim for relief against USFS.

Because the Court has ruled that FWS can be sued for alleged "failure to reinitiate" consultation, Plaintiffs must state a claim for relief against FWS under the waiver of sovereign immunity and cause of action provided by the APA, 5 U.S.C. § 702.  *Bennett*, 520 U.S. 171 (ESA's citizen suit provision does not authorize suit against a consulting agency operating in that capacity, as FWS is doing here); *accord* ECF 12 ¶¶ 2, 4 (Plaintiffs seeking relief under the APA).[9]  While the APA provides for review of "final agency action," which includes the "failure to act," 5 U.S.C. §§ 704, 701(2), 551(13), "a claim under [APA] § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *S. Utah Wilderness All.*, 542 U.S. at 64.  Here, Plaintiffs do not state a claim for relief in Count I because they cannot show that FWS has failed to undertake a mandatory duty to reinitiate consultation in light of the rescission of the underlying consultations.  As such, Count I should be dismissed for failure to state a claim for relief against FWS.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss Count I in its entirety.

Dated: July 17, 2020

> /s/ *Robert P. Williams*
> Robert P. Williams
> Sr. Trial Attorney
> U.S. Department of Justice
>
> ***Attorney for Defendants***

---

[9] Federal Defendants preserve their objection to Plaintiffs' ability to state a claim for relief against FWS for failing to reinitiate consultation.  ECF 28.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 17th day of July, 2020, I filed the foregoing electronically

through the CM/ECF system, which caused the following parties or counsel to be served by

electronic means, as more fully reflected on the Notice of Electronic Filing:

Matthew Kellogg Bishop
bishop@westernlaw.org

Peter M.K. Frost
frost@westernlaw.org

Dana M. Johnson
danajohnsonecf@gmail.com

/s/ *Robert P. Williams*
Robert P. Williams
Sr. Trial Attorney
U.S. Department of Justice