# EXHIBIT 1



| United States Department of Agriculture | Forest Service | Washington Office | 1400 Independence Avenue, SW Washington, D.C. 20250 |

---

**File Code:** 2600
**Date:** June 26, 2020

Mr. Gary Frazier
Assistant Director, Ecological Services
U.S. Fish and Wildlife Service
1849 C. Street, NW
Washington, D.C.  20240

Dear Mr. Frazier:

As you are aware, over the past year our staff has had several communications with U.S. Department of the Interior's, Fish and Wildlife Service (FWS) staff regarding two consultations conducted in the mid-1990s under Section 7 of the Endangered Species Act (ESA) regarding our longstanding practice of deferring to State regulation of fish and wildlife populations, including fishing and hunting practices, on National Forest System (NFS) lands, with respect to the grizzly bear (*Ursus arctos horribilis*), an ESA-listed species.  Specifically, our Agencies completed a formal consultation in 1993 concerning a proposed Region 2 policy to reaffirm the U.S. Department of Agriculture's Forest Service's longstanding practice of deferring to the State of Wyoming to regulate black bear hunting on NFS lands within its borders, including with the use of bait.  The Forest Service Decision Notice & Finding of No Significant Impact, April 1993.  Dating back to 1941, the Federal land management statutes have acknowledged the States' traditional role in managing fish and wildlife within their respective borders.  National Forest System Organic Administration Act, 16 U.S.C. § 480; Multiple Use-Sustained Yield Act, 16 U.S.C. § 528; Sikes Act, 16 U.S.C. § 670h; Federal Land Policy and Management Act, 43 U.S.C. 1732; 36 C.F.R §§ 241, 261.8, & 251.50(c).  Region 2's proposed policy statement was prompted by the fact that, contrary to longstanding practices of deferral to State regulation, some Forest Service units in the Region had (prior to 1993) begun requiring special use permits for baiting in certain National Forests, even though the Forest Service had determined that "the issuance of special use permits [was] not appropriate" to regulate baiting.  Use of Bait in Hunting, 60 Fed. Reg. 14,720-02 (March 20, 1995); 36 CFR 251.50(c) (exempting "hunting" from the requirements for a special use authorization).  The consultation on Region 2's proposed policy concluded with an April 14, 1993 Biological Opinion (BiOp) from FWS in which FWS concluded that deferring to the State of Wyoming in this regard was not likely to jeopardize the continued existence of the grizzly bear.  Along with the BiOp, FWS provided us with an incidental take statement (ITS) stating the proposed policy of deferring to the State of Wyoming in this regard was not expected to cause any incidental take of grizzly bears.

As we have discussed, the proposed Region 2 policy was never effectuated, but rather was rescinded in 1993 shortly after it was proposed and consulted on.  Instead of effectuating the policy, the Forest Service began an approach on a similar national policy statement that reiterates Federal deference to State hunting laws on NFS lands nationwide.  This nationwide policy is contained in Forest Service Manual 2643.12.  *See also* 60 Fed. Reg. 14,720-02.  This nationwide policy statement sought to clarify the roles of the Forest Service and the States with regard to



Caring for the Land and Serving People



Printed on Recycled Paper

regulating hunting, and baiting as a hunting practice and, thus, to provide a consistent approach to the regulation of baiting resident game on NFS lands. The policy reaffirmed Forest Service's longstanding practice of deferring to State governments to regulate wildlife management on NFS lands within their borders. To that end, our national policy makes it clear that the practice of placing bait is a hunting activity subject to State laws and regulations. For purposes of the ESA, we determined at the time that the policy statement of continued deference to the States was not likely to adversely affect any ESA-listed species, including the grizzly bear, or their critical habitats, and we requested FWS' concurrence in that determination. On March 14, 1995, FWS provided us with a letter concurring in our determination of not likely to adversely affect (letter of concurrence (LOC)), thereby concluding informal consultation pursuant to Section 7 of the ESA.

As explained below, based on our review of the circumstances here and subsequent legal rulings, the Forest Service is requesting that the 1993 BiOp and its associated ITS on the Region 2 policy and the 1995 LOC on the national policy be withdrawn, for two main reasons. First, the ESA does not require a BiOp and ITS on a defunct Agency action, and here the Region never implemented the Region 2 policy that is the subject of the BiOp and ITS. Rather, the Forest Service rescinded the policy in 1993, shortly after it was proposed. *See* Use of Bait in Hunting, 59 Fed. Reg. 11765-01 (March 14, 1994). Second, Section 7(a)(2) of the ESA requires consultation only where a federal agency authorize[s], fund[s], or carrie[s] out" an action (16 U.S.C. § 1536(a)(2); 50 CFR 402.02 (definition of agency "action" for purposes of ESA as including "all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies in the United States")), and here there is no such Federal agency action, as the Court of Appeals for the District of Columbia Circuit suggested in *Fund for Animals, Inc. v. Thomas*, 127 F.3d 80 (1997). In that case, the Court suggested that the "Forest Service's decision to refrain from future regulation of baiting may not constitute 'action' at all," (*id*. at n.3), and went on to note that, "[i]f promulgation of the policy constituted 'inaction,' . . . there most probably would have been no 'agency action' to trigger the ESA consultation requirement," *id*. n.6. Ultimately, the Court rejected a claim that the Forest Service was required to complete formal ESA consultation on the national policy statement.

The Forest Service agrees with the District of Columbia Circuit Court of Appeals' assessment. Our policy statements reinforcing the longstanding Forest Service practice of deferring to States to regulate hunting and hunting practices on NFS lands were never, in fact, Agency actions that triggered the consultation requirement of the ESA. The policy statements do not affirmatively authorize, fund, or carry out any activity. Rather, they merely restate and clarify Forest Service's recognition of the States' traditional role in managing fish and wildlife populations, including the practice of hunting with bait, and deference to the States to regulate such activities on NFS lands. Where the practice of bear baiting currently occurs on NFS lands, it is authorized by the States of Idaho and Wyoming, and regulated by the Idaho Fish & Game Commission and Wyoming Game & Fish Department, respectively, pursuant to their own State regulations. *See* Idaho Administrative Code (IDAPA) 13.01.17.100 & 200; 2019 to 2021 Idaho Black Bear Hunting Seasons; Wyoming Black Bear Management Plan (July 20, 2007); Wyoming Game and Fish Department Rules, Black Bear Hunting Seasons, ch. 3 (March 22, 2017). Neither Region 2 policy nor the national policy authorize any hunting or any take of ESA listed species, which remains subject to the ESA section 9 prohibition.

Therefore, for purposes of ESA Section 7, our policy statements constituted Agency inaction (unexercised discretion), as the District of Columbia Circuit Court of Appeals suggested, that did not require ESA consultation.  In addition to *Fund for Animals*, this conclusion is supported by a 2006 ruling by the United States Court of Appeals for the Ninth Circuit in *Western Watershed Projects v. Matejko*, 468 F.3d 1099, 1108 (9th Cir. 2006).  The Ninth Circuit made it clear in *Matejko* that "Ninth Circuit cases have emphasized that section 7(a)(2) consultation stems only from 'affirmative actions.'"  *Id*. at 1108.  In the *Matejko* case, the Ninth Circuit ruled that the Bureau of Land Management's decision not to exercise its discretion to regulate certain water diversion facilities located on Federal land did not constitute Agency action that required ESA consultation.  We think the factual scenario here is analogous to the one in *Matejko*.  Though the Forest Service could choose to regulate hunting and hunting practices where appropriate in coordination with the States, the mere existence of our authority, without an affirmative action, does not trigger a duty to consult under Section 7 of the ESA, as the Ninth Circuit has explained. In addition, we have not proposed to take any Federal action in this regard, as the United States District Court for the District of Idaho recently recognized in ruling that supplemental analysis on the national policy under NEPA was not required.  *WildEarth Guardians v. U.S. Forest Serv*., No. 1:19-CV-00203-CWD, 2020 WL 2239975, at *7 (D. Idaho May 7, 2020).  We are generally reluctant to override State fish and wildlife regulation unless Federal interests—such as protection of forest land, resources, and users— indicate that Federal intervention is required, or a State requests our assistance.

Though there does not appear to be any impediment to Forest Service exceeding the requirements of the ESA by conferring or consulting with FWS even where the statute does not require it to utilize FWS' knowledge, expertise, and data regarding listed and proposed species and their habitat, the Region 2 policy is not in effect, and perpetuating a voluntary consultation on the national policy would create the potential for confusion as to our role in the management of hunting practices and our legal obligations in that regard.  For instance, the inoperative 1993 BiOp and ITS have resulted in a lawsuit being filed against Forest Service and FWS alleging that we must reinitiate consultation on the Region 2 policy under 50 CFR 402.16 because the amount of incidental take anticipated in the ITS has been exceeded.  As we have explained above, reinitiation of consultation is not required because the Region 2 policy has been rescinded and neither it nor the national policy are affirmative Federal agency actions that require either consultation in the first instance or reinitiation of consultation.  Withdrawing our requests for consultation on the Region 2 and national policies and the resulting 1993 BiOp and ITS, and 1995 LOC ensures that the record is clear and that there is no confusion with regard to the legal obligation to reinitiate consultation.

In sum, the Forest Service has determined that consultation on the 1993 Region 2 policy and on the 1995 national policy statement is not necessary because the Region 2 policy was rescinded more than 25 years ago and, for purposes of ESA section 7, both it and the national policy constituted inaction (unexercised discretion).  Agency inaction is not a basis for ESA consultation in the first instance, or for reinitiation of consultation.  For clarity of the record, and in accordance with the ESA, we therefore withdraw our requests for consultation on the Region 2 policy and the national policy, and request that FWS withdraw the 1993 BiOp and ITS, and the 1995 LOC, in accordance with our determinations set forth herein.  We also have

Mr. Gary Frazier                                                                                                 4

determined that reinitiation of Section 7 consultation is not required on either the Region 2 policy or the national policy.

We appreciate FWS' continued coordination on these matters.  Should we decide in the future to exercise our discretion to authorize, fund, or carry out an action in this regard that may affect listed species or critical habitat, we stand ready to engage in any required ESA Section 7 consultation with our partners at FWS.

Sincerely,


X _____

Signed by: ALLEN ROWLEY
ALLEN ROWLEY
Associate Deputy Chief, National Forest System

cc:  Chris French, Ron Mulach, Alan Groesbeck