**ENVIRONMENTAL ASSESSMENT**
**NATIONAL POLICY ON USE OF BAIT IN HUNTING**
**ON NATIONAL FOREST SYSTEM LANDS**

## TABLE OF CONTENTS

Introduction................................................1

Proposed Action.............................................3

Purpose and Need............................................5

Scope.......................................................6

Issues and Concerns.........................................6

Alternatives................................................7

     Alternative 1.........................................9

     Alternative 2.........................................9

     Alternative 3.........................................9

     Alternative 4........................................11

Affected Environment.......................................11

Environmental Consequences.................................12

Appendix A   Responses to Public Comments.............Attached

Appendix B   Biological Evaluation with Concurrence Letters....Attached

Appendix C   Wyoming Hunting Regulations (1994/1995)..........Attached

Appendix D   Forest Service Closure Order (March 1995).........Attached

Appendix E   Wyoming Game and Fish Commission/Forest Service
            Memorandum of Understanding......................Attached

This Environmental Assessment (EA) considers a proposed national policy regarding baiting of resident game for hunting purposes on National Forest System (NFS) lands. Resident game is defined as those wildlife for which the State has the primary management authority (as contrasted with waterfowl for which the U.S. Fish and Wildlife Service has the primary management authority).

STATE AND FEDERAL AUTHORITY

Consideration of a proposal involving a hunting practice on NFS lands requires an understanding of the respective roles of States and the Federal government in the regulation of hunting and hunting practices.

Since 1897, the general civil and criminal jurisdiction of States has extended to Federal land reserved as national forests (16 USC 480). Federal land management statutes since that time have specifically acknowledged the States' traditional role in managing fish and wildlife on Federal lands.

The Multiple-Use Sustained-Yield Act of 1960, (MUSYA) which imposed multiple use requirements on management of forest resources, reserved the States' role in managing the wildlife resources in national forests:

> "It is the policy of Congress that the national forests are established and shall be administered for [multiple uses]. . . . Nothing herein shall be construed as affecting the jurisdiction or responsibilities of the several States with respect to wildlife and fish on the national forests."

The Wilderness Act, enacted in 1964, also addressed State wildlife responsibilities, at 16 USC 1133(d)(8):

> "Nothing in this chapter shall be construed as affecting the jurisdiction or responsibilities of the several States with respect to wildlife and fish in the national forests."

The National Forest Management Act of 1976 (NFMA), which requires the development of land management plans for the national forests, expressly incorporated the Multiple-Use Sustained-Yield Act. Forest plans are to be developed and maintained "in accordance with the Multiple-Use, Sustained-Yield Act of 1960 . . . ." (16 USC 1604(e)(1)).

Congress again specifically recognized that States' existing responsibility for wildlife and hunting and fishing on national forests shall not be changed when it enacted the Federal Land Policy and Management Act of 1976, another land use planning statute affecting NFS lands and lands managed by the Department of the Interior:

> "[N]othing in the Act shall be construed as authorizing the Secretary concerned to require federal permits to hunt and fish on . . . lands in the National Forest System . . . or as enlarging or diminishing the responsibility or the authority of the States for management of fish and resident wildlife" (43 USC 1732.)

1

Case 1:19-cv-00203-CWD Document 49 Filed 08/28/20 Page 4 of 46

These statutes vested the Department with responsibilities and authorities on NFS lands, but did not make them paramount. The statutes did not change the fact that States' rights to regulate wildlife have always been subject to the Constitutional provision giving Congress the authority to "make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Constitution, Art. IV, sec. 3, cl.2. "The Power over the public land thus entrusted to Congress is without limitations." California Coastal Comm'n v. Granite Rock, 480 U.S. 572, 580 (1987) (internal quote marks and citations omitted.) Therefore, where Congress has enacted legislation respecting its lands, any conflict between such legislation and the States' rights to regulate wildlife is resolved in favor of the Federal government.

Federal law that shape the Forest Service's role in the regulation of hunting within the National Forest System started with the Organic Act:

> "The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests . . . ; and he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely to regulate their occupancy and use and to preserve the forests thereon from destruction; . . . ."(16 USC 551.)

Other statutes have application as well. The MUSYA provides that the national forests are to be administered for "multiple use," including for "recreation, . . . watershed, and wildlife and fish purposes." 16 USC 475. The NFMA provides that guidelines for forest plans shall "provide for diversity of plant and animal communities based on the suitability and capability of the specific land area in order to meet overall multiple-use objectives," 16 USC 1604 (g)(3)(B). NFMA regulations provide that "[f]ish and wildlife habitat shall be managed to maintain viable populations of existing native and desired non-native vertebrate species in the planning area."

The Endangered Species Act (ESA) requires that Federal agencies "utilize their authorities in furtherance of the [ESA] by carrying out programs for the conservation of endangered species and threatened species . . ." and ensure that any action "authorized, funded or carried out by [a Federal] agency is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species." 16 USC 1526 (a) (1), 920. Other Federal statutes, such as the Clean Water Act, may be relevant.

The State of Wyoming can be used as an example of how the proposed policy would work. Through Memorandums of Understanding with both the U.S. Fish and Wildlife Agency and the State of Wyoming Game and Fish Commission (Appendix C), the Forest Service consulted with the U.S. Fish and Wildlife Service and the Wyoming Game and Fish Commission to develop State regulations that would adequately protect threatened and endangered species, especially the grizzly bear. The Wyoming State regulations prohibit the placement of bait for the hunting of black bear in management area 25 (North Absaroka) and management area 26 (South Absaroka) to protect grizzly bears, and have prohibited the placement of baits in the designated recovery area for grizzly bears.

The statutory authority does not have to authorize specific action; see Hunt v. United States, 278 U.S. 200 (1928) (the general language of the Organic Act to

2

kill deer overbrowsing national forest vegetation, notwithstanding such action
was contrary to State game laws).

In summary, the Forest Service is not to interfere with State game regulations,
except when the exercise of the Forest Service's statutory authority to protect
forest resources and uses and to administer the national forests for multiple
uses requires State regulations to be overridden. This principle limits the
scope of the proposed action and the alternatives in this Environmental
Assessment.

## 2. PROPOSED ACTION

The proposed action is a Forest Service Manual (FSM) proposed policy on the use
of bait in hunting on NFS lands. The proposed policy is a slight modification
of the April 14, 1994 proposal and differs only for purposes of clarity and
consistency of application. The proposed policy is:

> **"2643 - APPLICABILITY OF STATE FISH AND WILDLIFE LAWS AND REGULATIONS.**
> The Forest Service actively cooperates in the development of State fish and
> wildlife laws and regulations and may assist in the enforcement of State
> fish and wildlife laws on National Forest System lands. Pursuant to FSM
> 2610, Regional Foresters shall ensure that memorandums with State fish and
> wildlife agencies recognize the role of the Forest Service in cooperating
> in the development of State fish and wildlife laws and regulations,
> especially those addressing hunting, fishing, and trapping as they would
> apply to occupancy and use of National Forest System lands.

> **"2643.1 - Hunting, Fishing, and Trapping Regulations.** Hunting, fishing,
> and trapping of fish and wildlife and associated practices on National
> Forest System lands are subject to State fish and wildlife laws and
> regulations, unless one or both of the following apply:

>> 1. State fish and wildlife laws and regulations conflict with Federal
>> laws; or

>> 2. State laws and regulations would permit activities that conflict
>> with land and resource management responsibilities of the Forest
>> Service or that are inconsistent with direction in forest plans.

> **"2643.12 - Use of Bait for Resident Game Hunting.** The use of bait for the
> purpose of taking resident game on National Forest System lands is a
> hunting practice.

> The practice is prohibited on National Forest System lands where State
> hunting regulations prohibit its use. Where States permit the use of bait
> for attracting resident game, this activity is allowed on National Forest
> System lands, subject to State hunting laws and regulation, unless the
> authorized officer determines on a site-specific basis that there is a need
> to prohibit or restrict the practice. A site-specific restriction or
> prohibition on baiting is appropriate when the authorized officer
> determines that one or more of the following circumstances exists:

3

not adequate to protect forest land, other resources, or users in a particular location. The determination of the adequacy of State laws and regulations shall be based on consideration of the likely impact of baiting on such matters as water quality, public health and safety, the potential for litter, sanitation problems, or the potential to threaten the viability of wildlife;

    b. The effects of baiting are inconsistent with direction in the applicable forest plan; or

    c. The State laws and regulations conflict with Federal law, such as the Endangered Species Act.

"Where the authorized officer determines that baiting should be restricted or prohibited, the following actions are necessary:

    a. The officer shall immediately inform the State fish and wildlife agency of the determination; and

    b. If, after consultation and coordination, the State is unable to resolve the matter with the Forest Service, the authorized officer shall close the area to baiting or otherwise restrict baiting by issuing an order pursuant to Part 261 of Title 36 of the Code of Federal Regulations (36 CFR Part 261).

    Where the hunting season is underway and it would be impracticable to issue an order to close an area to baiting, the authorized officer shall take such measures as appropriate and practicable to ensure consistency with forest plan management direction; compliance with Federal laws, orders, and regulations; and protection of forest users and resources. For example, the officer might close a road or gate to restrict access.

"Closure of an area to baiting is not the only way to address the practice of baiting. It is expected that land managers as part of their day-to-day management of National Forest System lands and resources will be cognizant of the effects of hunting activities and take such proactive measures as may be necessary to ensure resource protection. Also, hunter education programs could be implemented in consultation with the State agencies.

"The policy in this section, in and of itself, does not compel an authorized officer to undertake a specific decision to allow baiting on National Forest System lands in those States where the practice is permitted.

"Nothing in this section shall be construed to affect valid existing treaty rights of American Indian Tribes.

"For the purposes of this section and to assure consistency in coordination of national forest wildlife matters with State agencies, the authorized officer is the Regional Forester or Forest Supervisor responsible for executing memorandums of understanding with the State wildlife agency (FSM 2610)."

4

# 3. PURPOSE AND NEED

The purpose of the proposed policy is to clarify that baiting is a hunting method which is authorized by the States and regulated by the States, as well as to establish procedures that will be used by the Forest Service when State regulations conflict with Federal laws, regulations, and policies.  To the extent consistent with Federal resource protection interests, States should be unhindered in their management of wildlife.  There is a need to ensure that State regulations governing baiting protect Federal resources, and, failing sufficient State protection, that the Forest Service provide such protection.

The purpose of the proposed action is to establish one process, and one set of criteria throughout the National Forest System to determine with which the Forest Service will take action to protect Federal interests.  The proposed policy would provide the Agency with administrative procedures that can be applied consistently on a case-by-case basis when State regulations conflict with the Agency's mandate to manage NFS resources.  These procedures would apply to all baiting practices used for hunting.

The legal responsibility of the Forest Service to manage and protect natural resources on NFS lands and the States' role in regulating hunting occasionally result in situations where State hunting regulations need mitigation or clarification to protect natural resource values on NFS lands.  The fish and wildlife agencies in the States of Alaska, Idaho, Maine, Michigan, Minnesota, New Hampshire, Utah, Washington, Wisconsin, and Wyoming authorize baiting as a method of hunting black bears and have regulations controlling this practice.  In the past, the Forest Service on occasion issued special use permits, but recently has not issued special use permits to regulate baiting in these States.

In Wyoming, baiting for black bear has occurred since before national forests were established.  Until 1993, the State of Wyoming had no regulations covering the placement and removal of baits.  The Forest Service issued special use permits since the 1960's to regulate the placement and removal of baits on the following forests:  Bighorn, Bridger, Cache, Caribou, Medicine Bow, Shoshone, Targhee, Teton, and Wasatch.

The practice of issuing special use permits for bear baiting resulted in the direct Federal control of a hunting practice that now may not be appropriate given the legal responsibilities of the State of Wyoming and the fact that Wyoming now regulates baiting.  This situation in Wyoming, and in the past in other States where the Forest Service had issued special use permits, has resulted in a need to develop a consistent approach to the Forest Service role in the regulation of baiting that is sensitive to rights of States to regulate hunting.

In early 1992, the regional foresters with authority over national forests in Wyoming decided to halt the practice in that State of issuing special use permits for bear baiting.  As the State of Wyoming had no regulations at the time governing bear baiting, the regional foresters decided to issue a closure order prohibiting bear baiting except as allowed pursuant to a closure order which set conditions governing where baits could be placed.  The Friends of the Bow and the Fund for Animals sued the Forest Service over the procedures under which Forest Service regulation changed from issuing special use permits to the

Plfs.' Ex. 1, No. 1:19-cv-00203-CWD, Page 7 of 46

closure and concerns regarding the viability of black bear in Wyoming. The parties settled upon the Forest Service's decision to prepare an EA on issuing or not issuing special use permits to regulate baiting. The EA was prepared and made available for public comments in spring 1993. Following receipt of numerous comments and the threat of another suit, the Deputy Chief for the National Forest System decided that a national policy on baiting was needed. Pending issuance of such a policy, baiting was banned on NFS lands in Wyoming. That ban, documented by regional forester closure order 02-94-04/04-00-042, is still in place.

## 4. SCOPE

This EA discloses the environmental consequences of implementing the proposed action and alternatives to that action. The decision pending is whether or not to adopt the proposed policy which would eliminate special use permits for placing baits on NFS lands, and specify the conditions that area closures would be used to override State regulations to protect Federal interests. The scope of the proposed action, and the other alternatives considered, is limited by the principle that State regulation of hunting and hunting methods extends over NFS lands. It is not the intent of the Forest Service to evaluate the merits of this hunting method through this EA. The Forest Service's interest is ensuring it carries out its statutory duties. In the absence of Federal concerns, issues regarding the merits of baiting are for the States to address. Publication of a final policy would lift the current ban on bear baiting on NFS lands in Wyoming.

## 5. ISSUES AND CONCERNS

On April 14, 1994, the Forest Service published the proposed policy, with a request for public comments in the Federal Register (59 FR 17758). A summary of the comments and the Forest Service's responses to them are included in Appendix A. The Forest Service received 1,249 letters from individuals and organizations in 46 States. Eighty-six percent were from individual citizens and 29 State agencies commented.

The primary issues as identified in Appendix A are: 1) a request for an Environmental Assessment (EA) or an Environmental Impact Statement (EIS), 2) whether special use permits should be issued for bear baits, and 3) State versus Federal jurisdiction.

Regarding the issue of preparing an EA or an EIS, the Forest Service, in the April 14, 1994, Federal Register notice, had proposed that the proposed action could be categorically excluded from National Environmental Policy Act (NEPA) documentation. Based on comments received, the Agency decided to prepare an EA to analyze the environmental consequences of the proposed policy and other reasonable alternatives.

The majority of comments were outside the scope of the proposal and requested actions that are beyond the responsibilities of the Forest Service. For example, many of the comments focused on the ethics of the practice of baiting; effects on animal populations and behavior; banning bear baiting; potential conditioning of animals to human food; reducing errors in what is killed, such as not killing sows with cubs; and poaching. These topics are beyond the scope of the decision to be made. These issues are clearly within the States'

6

purview of the Forest Service's delegated authority, is in the management of NFS resources and uses.

Numerous comments were received regarding the issuance of special use permits for bear baiting. These comments, and comments that States should regulate hunting methods, are within the scope of the analysis. The majority of respondents who commented on the issuance of special use permits supported eliminating them for individual hunters using bear bait on NFS lands.

## 6. ALTERNATIVES

The alternatives address the issues of special use permits and State versus Federal jurisdiction. The issue of the need for an EA or EIS was addressed by the preparation of this Environmental Assessment. The purpose of this EA is to disclose the environmental effects of the proposed action and alternatives, and to determine whether an EIS is necessary. After the disclosure of the environmental effects in the EA, the Forest Service will have to determine if the proposed action will have significant environmental effects. If not, the Forest Service will prepare a Finding of No Significant Impact (FONSI). If so, the Forest Service will prepare an EIS if the Agency wants to continue with this course of action.

The following describes the requirements that were included in the special use permits being issued by the Forest Service in Wyoming and the requirements of State regulations that are now in place. This is to provide information on similarities and the differences of the requirements to foster better understanding of the effects of the alternatives.

Prior to the development of baiting requirements by the Forest Service Intermountain Region in 1992, the State of Wyoming did not restrict the placement of bait for hunting black bear. In the 1993/94 and 1994/95 hunting regulations, the State of Wyoming, in cooperation with the Forest Service and the U.S. Fish and Wildlife Service, incorporated baiting restrictions within the State's regulatory framework to adequately address the protection of endangered species, specifically the grizzly bear.

FOREST SERVICE SPECIAL USE PERMIT REQUIREMENTS

The terms and conditions imposed by the permits were designed to protect water quality and recreational experiences by keeping baits away from water, trails, trail heads, campgrounds, and roads. The permits also required baits to be removed to eliminate accumulations of litter or garbage. While there were some minor differences in the requirements between forests, the requirements for baits were basically as follows:

"Individual bait stations will be at least 1 mile apart and located at least 100 yards from water and 200 yards from any road or trail. (This requirement covered things like campgrounds, picnic grounds, and trailheads.)

"Each bait station must be tagged or otherwise visibly posted within 50 feet with the name and address of the permittee.

7

bait station generally he separated by more than one
bait site per square mile.

"The area must be cleaned up as required by the District Ranger within 10
days after the close of the season.

"Use of plant matter for bait is encouraged.  Bait stations shall consist
of no more than 25 pounds of animal parts.  No animal carcasses will be
used (Bridger-Teton only).

"Baiting with contagiously diseased animals is prohibited."

WYOMING STATE REGULATIONS

Bait is defined by Wyoming regulations as "a nontoxic biodegradable substance,
not to exceed 200 pounds, enclosed in a rigid container of wood, metal, or
plastic no larger than 8 cubic feet.  Holes in containers shall be smooth and
not constructed to function as a trap."

Requirements for placement of the baits are as follows:

"Identification of Baits.  The hunter's name and/or the name of the person
placing the bait and his/her address and telephone number must be legible
and permanently affixed to, or painted on, the outside of the container."

"Placement of Baits.  No baits will be placed in the hunt area more than
seven days before the opening day of the spring bear special archery season
within the hunt area in which the bait is placed.  Baits must be placed not
less than 200 yards from water, including permanent and ephemeral streams,
lakes, and permanent ponds; not less than 200 yards from roads and pack
trails; and not less than one-half mile from developed campgrounds and
picnic grounds or buildings.  Bait density shall be no more than one per
square mile.  Prior to placing baits on NFS lands, public lands
administered by the Bureau of Land Management, or lands owned by the
Wyoming Game and Fish Department, persons are required to provide a written
description of the location of the bait to the district ranger, area
manager, or district supervisor in whose jurisdiction the bait will be
placed."

"Baits shall not be placed in area 25, area 26, [management areas
designated as black bear hunting areas by the State of Wyoming] or within
the designated recovery area for grizzly bears."

"Baits placed more than seven days before the opening day of the spring
bear special archery season will be considered litter."

"Number of Bear Baits.  No hunter and/or person placing bear baits except
commercial operators shall place more than two baits during any one time
period."

"Bait Removal.  All containers and bait materials must be removed no more
than seven days after the close of the season for which the bait was
placed.  Containers and bait materials not so removed will be considered
litter.  The person who placed the bait and/or whose name appears on the

8

container will be responsible for its removal. Burial does not constitute removal."

"The person placing the bait shall immediately report use of a bait by a grizzly bear to the Wyoming Game and Fish Department or the U.S. Fish and Wildlife Service."

"**Prohibited Bait**. No big game animals, game birds, game fish, protected animals, protected birds, small game animals, or parts thereof shall be placed or utilized as bear bait. Any attractant other than that specified as bait is prohibited."

"**Other Regulations**. Violations of Forest Service and Bureau of Land Management regulations on the placement of baits and littering are violations of this Wyoming Game and Fish Commission regulation."

RANGE OF REASONABLE ALTERNATIVES

The following represents a range of reasonable alternatives to address the scope of this environmental analysis, and the issues of special use permits and State versus Federal jurisdiction.

ALTERNATIVE 1.  Issue special use permits for non-commercial hunters placing baits on NFS lands in the State of Wyoming.

Implementation of this alternative would mean that the procedure of issuing special use permits to non-commercial hunters using bait would be re-initiated in Wyoming.  These permits would be issued by the appropriate district ranger.  In other States where the Forest Service does not issue special use permits for the use of bait in hunting on NFS lands, there will be no consistent direction regarding the use of area closures, or other measures, to protect Federal resources and uses.

ALTERNATIVE 2.  Rely only on State regulations to regulate baiting on NFS lands.

No action would be needed on the part of the Forest Service to implement this alternative.

ALTERNATIVE 3.  This alternative is the proposed action.  In summary, the proposed action states that special use permits shall not be issued for placing bait on NFS lands for hunting purposes.  The States are recognized as the proper agencies to administer baiting on NFS land.  If State agency regulations on baiting are not adequate to protect national forest resources and values, and if necessary to protect Federal interests, closure orders would be issued.  This alternative is a proposed Forest Service Manual direction, which states:

"**2643 - APPLICABILITY OF STATE FISH AND WILDLIFE LAWS AND REGULATIONS**. The Forest Service actively cooperates in the development of State fish and wildlife laws and regulations and may assist in the enforcement of State fish and wildlife laws on National Forest System lands.  Pursuant to FSM 2610, Regional Foresters shall ensure that memorandums with State fish and

9

cooperating in the development of State fish and wildlife laws and regulations, especially those addressing hunting, fishing, and trapping as they would apply to occupancy and use of National Forest System lands.

"2643.1 - Hunting, Fishing, and Trapping Regulations. Hunting, fishing, and trapping of fish and wildlife and associated practices on National Forest System lands are subject to the State fish and wildlife laws and regulations, unless one or both of the following apply:

    1. State fish and wildlife laws and regulations conflict with Federal laws; or

    2. State laws and regulations would permit activities that conflict with land and resource management responsibilities of the Forest Service or that are inconsistent with forest plans.

"2643.12 - Use of Bait for Resident Game Hunting. The use of bait as a lure or attractant for the purpose of taking resident game on National Forest System lands is a hunting practice.

"The practice is prohibited on National Forest System lands where State hunting regulations prohibit its use.

"Where States permit the use of bait for attracting resident game, this activity is allowed on National Forest System lands, subject to State hunting laws and regulation, unless the authorized officer determines on a site-specific basis that there is a need to prohibit or restrict the practice. Baiting is permitted unless the authorized officer determines that one or more of the following circumstances exist:

    1. The State laws and regulations on placement of bait are not adequate to protect forest land or other resources or users in a particular location. The adequacy of State laws and regulations shall be based on consideration of the likely impact of baiting on such matters as water quality, public health and safety, the potential for litter, sanitation problems, or the potential to threaten the viability of wildlife;

    2. The effects of baiting, are inconsistent with the applicable forest plan; or

    3. The State laws and regulations conflict with Federal law, such as the Endangered Species Act.

"Where the authorized officer determines that baiting should be restricted or prohibited:

    1. The officer shall immediately inform the State fish and wildlife agency of the determination; and

    2. If, after consultation and coordination, the State is unable to resolve the matter with the Forest Service, the authorized officer shall close the area to baiting or otherwise restrict baiting by issuing an order pursuant to 36 CFR Part 261.

10

Where the hunting season is underway, and it would be impracticable to issue an order to close an area to baiting, the authorized officer shall take such measures as appropriate and practicable to ensure consistency with forest plan management direction; compliance with Federal laws, orders, and regulations; and protection of forest users and resources.  For example, the agency may close a road or gate to restrict access.

"Closure of an area to baiting is not the only way to address the practice of baiting.  It is expected that land managers, as part of their day-to-day management of National Forest System lands and resources, will be cognizant of the effects of hunting activities and take such proactive measures as may be necessary to ensure resource protection.  Programs such as hunter education could be implemented in consultation with the State agencies. "This policy, in and of itself, does not compel an authorized officer to undertake a specific decision to allow baiting on National Forest System lands in those States where the practice is permitted.

"Nothing in this provision shall be construed to affect valid existing treaty rights of American Indian Tribes.

"For the purposes of this section and to assure consistency in coordination of national forest wildlife matters with State agencies, the authorized officer is the Regional Forester or Forest Supervisor responsible for executing memorandums of understanding with the State wildlife agency."

ALTERNATIVE 4.  Do not issue a national policy on baiting.  (No Action)

 Implementation of this alternative would require the ban on bear baiting in Wyoming to remain.  This ban was implemented by regional foresters' closure order number 02-94-04/04-00-042.  The Forest Service would continue to post notices and enforce the closure. Outside Wyoming, baiting would be regulated, if at all, only by the States.

MITIGATION MEASURES THAT APPLY TO THE ALTERNATIVES

Ensure that the Federal actions in the alternatives do not adversely affect threatened or endangered species.

7.  **AFFECTED ENVIRONMENT**

The environment affected by the proposed action is NFS lands in States that permit the use of bait in the hunting of resident game.  The proposed policy will eliminate the issuance of Forest Service special use permits for the use of bait for attracting resident game, and provide site-specific safeguards to address those situations where baiting would have an adverse site-specific effect on NFS resources or uses.  The proposed policy will apply to all NFS lands in every State which allows baiting practices for numerous species.

The States that permit bear baiting on NFS lands are Alaska, Idaho, Maine, Michigan, Minnesota, New Hampshire, Utah, Washington, Wisconsin, and Wyoming. National Forest System lands in Wyoming are specifically and uniquely affected by the proposed change to eliminate the issuance of special use permits for the

11

placement of bait in hunting method. The Forests affected are the Ashley, Bighorn, Bridger, Cache, Caribou, Medicine Bow, Shoshone, Targhee, Teton and Wasatch. With regard to the criteria for using area closures and other aspects of the proposed policy, all NFS lands in States that allow the use of bait in hunting are affected.

The environmental factors that are most likely to be affected by baiting are the potential for garbage and litter; water quality; recreation experiences associated with roads; trails; campgrounds; back country dispersed recreation; threatened, endangered, and sensitive species; and economics.

GARBAGE/LITTER and WATER QUALITY: The use of baits for hunting has the potential to result in garbage and litter on NFS lands if not properly regulated. Forest Service special use permits required that baits be placed atleast 100 yards from water, and the Wyoming State regulations require baits to be atleast 200 yards from water. Both regulations reduce the potential effect that baits may have on water quality.

RECREATION: Recreational activities on national forests include hunting, fishing, camping, hiking, horseback riding, wildlife viewing, driving for pleasure, cross country skiing, snowmobiling, and backpacking. Many of these activities occur in conjunction with roads, trails, trailheads, campgrounds, and in close proximity to water. If not properly regulated, baiting could have an impact on these activities.

THREATENED, ENDANGERED, and SENSITIVE SPECIES: Threatened, endangered, and sensitive species are present within or near national forests. Of these, the effects of baiting are most significant for grizzly bears, which are listed as a threatened species.

ECONOMICS: There are numerous outfitters and guides who guide hunters on hunting trips and who generate personal income for themselves, as well as economic benefits to local communities.

## 8. ENVIRONMENTAL CONSEQUENCES

The proposed policy will have beneficial environmental consequences in every State that allows the use of bait for resident game hunting on NFS lands. The environmental consequences of the proposed policy will be that it will increase the level of environmental protection where baiting would have an adverse site-specific effect on NFS lands or resources. The policy mandates corrective action through cooperative effort with the States or through Federal action. The Forest Service is preparing a Biological Evaluation as part of an informal consultation process with the U.S. Fish and Wildlife Service on the proposed national policy.

Wyoming is the only State where special use permits have been recently used to regulate the placement of bait for hunting, and so the discussion of effects with respect to the use, or not, of special use permits is limited to Wyoming. The State of Wyoming developed baiting regulations in cooperation with the Forest Service and the U.S. Fish and Wildlife Service, to adequately protect endangered species. The current Wyoming State regulations provide an adequate umbrella to regulate the practice of baiting and to protect grizzly bear. For example, the 1995 Wyoming hunting regulations prohibit the placement of bait in

12

Case 1:19-cv-00203-CWD   Document 40-1   Filed 08/28/20   Page 15 of 46

Environmental conditions in the other States will remain unchanged unless subsequent closure orders issued pursuant to the policy are needed to protect forest resources or users. If such closures are issued, environmental effects would be eliminated.

For Alternative 1, issue the traditional Forest Service special use permits in Wyoming, but not elsewhere. Special use permits would not substitute for, but would be in addition to Wyoming State regulations. In Wyoming garbage and litter would be minimal as material has traditionally been regulated by special use permits and is now required by State regulation to be removed. Water quality is protected as baits cannot be placed within 200 yards of water by State regulations. Recreation experiences are protected by requiring baits to be placed away from trails, roads, and campgrounds. There is a chance that non-hunting recreationists could encounter a bait and be offended by the sight or smell. This is expected to happen infrequently. Because baits are widely dispersed and temporary, threatened, endangered, and sensitive species may be affected, but not adversely, nor in a way that would jeopardize them or their habitat. Protection for grizzly bears would be provided through closure orders in the recovery zone and other known grizzly habitat. There would be some economic benefits to outfitters and guides and local communities as a result of black bear hunting using baits. Traditional special use permits were issued to keep baits at least 1 mile apart. The impacts from baiting would be highly localized and minimal. Under alternative 1, therefore, cumulative impacts are expected to be minimal. In Wyoming, there may be inconsistencies among permits; in other States, State regulations must be relied upon to protect forest resources.

Under Alternatives 2 and 3, the environmental consequences of shifting from the Forest Service issuing special use permits for baiting in Wyoming to the State Game and Fish Department administering the program (under the regulations discussed in the Alternatives section) would be negligible. Baits must be in a container, thus reducing the chance of scattered materials becoming a litter or garbage problem. Bait and containers must also be removed following the hunt. Baits cannot be larger than 200 pounds, putting a limit on how much material can be used. There would be some reduction in the potential effects on water quality as State regulations require baits to be 100 yards farther from water than the special use permits. Baits must also be one-half mile from developed campgrounds and picnic grounds under the State regulation, rather than the 200 yards that had been required in the Forest Service special use permits. This reduces the chance that non-hunting recreationists would encounter a bait. The distance from roads and trails is the same in the State of Wyoming regulations as it has been in the special use permits. Relative to the lifting of the ban on baiting in Wyoming, the Biological Evaluation and Biological Opinion previously done on baiting in Wyoming will be reviewed to determine adequacy under these alternatives. There would be some economic benefits to outfitters and guides and local communities as a result of black bear hunting using baits.

Alternative 2 does not guarantee that Federal interests and resources will always be protected in all States that allow the practice of baiting, and adverse effects are therefore possible. The Forest Service would have little or no opportunity to avoid cumulative impacts, but cumulative impacts are

13

Plfs.' Ex. 1, No. 1:19-cv-00203-CWD, Page 15 of 46

Case 1:19-cv-00203-CWD Document 40-1 Filed 08/11/20 Page 16 of 46

unlikely because baiting is temporary and highly localized. Alternative 3, the proposed policy, provides safeguards in all States allowing baiting. In the absence of sufficiently protective State regulations, the Forest Service will take actions to protect NFS resources. Where the authorized Forest Service officer determines that there would be adverse direct or cumulative effects on NFS resources or users, the officer is required to take appropriate action. This alternative provides the highest degree of protection for the affected environment.

Under Alternative 4, in Wyoming, the continuation of the closure order on all NFS lands would cause no effects, cumulative or otherwise, related to bear baiting. Garbage and litter problems would not develop, water quality would not be affected, non-hunting recreationists would not encounter a bait station. Black bear hunters' recreational opportunity would be adversely affected, and there would be negative economic effects on outfitters and guides, and local communities. There would be no effects on threatened, endangered, or sensitive species.

On NFS lands outside of Wyoming where baiting is permitted by the State, less environmental protection could result without the issuance of a national policy on baiting. The lack of criteria establishing a consistent level of protection for NFS resources and uses means that environmental protection would be totally dependent upon the individual States' regulations. Environmental protection could be uncertain, inconsistent, and unreliable. The Forest Service would have little or no opportunity to avoid cumulative impacts, but cumulative impacts are unlikely because baiting is temporary and highly localized.

14

APPENDIX A

# COMMENT SUMMARY

*As this summary is read, it may seem that some of the same topics appear in more than one category. In most cases, this happens because the particular comment location is triggered by a word such as "bear bait," "garbage," "black bears," etc.*

## RECREATION

### GENERAL COMMENTS (101) [68 total comments]

Many respondents noted that hunters over bait represent a minority of forest users, and they feel it is unfair for such a small group to enjoy "special advantages on land meant to be enjoyed by all."

One respondent noted that the Forest Service advises campers and backpackers to keep food away from bears to avoid habituating them. Another suggested that forest managers should apply the same standards to campers and hikers as are applied to hunters using bait- "I don't see campers being banned because someone left a messy campsite..."

*Response*

> Many activities occur on National Forest System lands that not all people agree with or participate in. Hunting is one of those. There is much legislative history that clearly shows that hunting activities are legitimate uses of public lands and that the State Agencies have the resposibility and authority to authorize hunting and hunting techniques. If bait is authorized and regulated in such a manner that it is consistent with the protection of national forest resources and policy, then it is a legitimate use of public lands. Hunters, like campers, are required to remove materials that could be considered garbage when through with their particular activity. If this does not occur, hunters are in violation of Federal, and in some cases, State regulations. The Forest Service will work with the State agencies to minimize conflicts between bait and other users and where necessary have the authority to close local areas if conflicts become too great and can't be resolved with the State agencies.

### GARBAGE/STRONG ODOR (102) [83 total comments]

All respondents in this category commented that bait stations are unsightly, and that they generate strong odors. Sample comments include "smelly," "disgusting," "offensive," "revolting", and "repulsive." Many of the respondents referred to the "rotting animal carcasses" used as bait.

One respondent commented that "...bait is only odiferous to humans at close range."

*Response*

> Bear bait does have a strong odor, as that is its purpose. Few people other than hunters come into contact with it however and it is only present during a small part of each year. The odor is restricted to localized sites. State regulations do or should prohibit placing baits close to high public use areas such as roads, trails, campgrounds, picnic grounds, and other areas with high public use.

**2**

**DETRIMENTAL TO RECREATION EXPERIENCE (103) [81 total comments]**

Most comments were written by respondents who believe that bear baiting is detrimental to the recreation experience; a few comments present views of the opposite side of the issue.

The majority of the comments mention specific recreational experiences that would be or have been "ruined by bait sites" or "deterred by bait sites." Specific experiences include: hiking, family camping, bird watching, the wilderness experience, and non-hunters and nature lovers in general. Bear baiting was presented as "highly offensive to other users of the forests" and was described as insensitive, disturbing, gruesome, deplorable, and dreadful. The "terrible sight and smell" of rotting bait was a frequent comment in the recreation category.

Next in frequency were comments that the national forests belong to everyone and the non-hunters don't want to be restricted by bear baiting areas. Several writers mentioned that bear baiting causes the "de facto closing" of forests. Almost as frequently mentioned were comments that non-hunters should not have to put up with unsightly, unhealthy, unsportsmanlike methods of killing animals; that the Forest Service has a basis for abolishing the offending use of the forests; and that the joy of the forest experience is being compromised by 7 percent of the population.

A few comments were received in each of the following areas: bear baiting reduces natural habitat to legal garbage dumps; bear baiting is not in the best interest of and is dangerous to other users of the forest because it draws numbers of wild animals to sites where they must compete for food; that baiting impacts the bears and also impacts the public's right to enjoyment of the bears.

The following comments were submitted in defense of bear baiting: baiting stations are visible from a distance and thereby avoidable by other users of the forest; bait stations are not as grotesque as decomposing carcasses of animals that have lost the battle of survival; forests are not closed to other uses during hunting season; and other users are incorrect if they feel the woods are unsafe during hunting season.

*Response*

> The presences of a bait location has the potential to have a detrimental effect on some recreation experiences. It also enhances the recreation experiences for others. The Forest Service will work with the State agencies to minimize the conflicts between various recreation users by regulating the placement of baits and the times they are allowed. The Forests do belong to everyone and the number of people using the Forests for hunting while using bait is very small, not the 7% of the population referred to. Garbage dumps are not created on National Forest System lands as a result of baiting.

**SOURCE OF POLLUTION (REC 104) [39 total comments]**

The single comment stated the "...potential for contamination of nearby water sources is relatively high if and when bait is left to rot."

3

Plfs.' Ex. 1, No. 1:19-cv-00203-CWD, Page 19 of 46

*Response*

Bait is not permitted adjacent to live water on National Forest System lands.

### HEALTH AND SAFETY ISSUES (REC 105) [34 total comments]

The majority of the REC 105 comments mentioned the safety threat which bear baiting represents to humans. Several respondents commented that bear baiting poses a danger to both humans and animals. Those commenting on human safety noted that bear baiting will lead to camp site raids and other conflicts. Some stated that this was due to the bears' conditioning to human food, while others did not elaborate. One respondent, however, commented that "bears that eat at a bait station are considerably less aggressive than bears encountered elsewhere. The result is a safety record (for hunters and public) much higher than other hunting methods."

Two respondents commented that hikers and other forest users, including campers and birdwatchers, may inadvertently "stumble upon" bait stations, potentially endangering themselves. One respondent noted that "many people may avoid visiting national forests when hunting is going on because of safety concerns." Another expressed concern about hunters shooting dogs.

*Response*

The Forest Service is not aware of situations where non hunters have been injured as a result of bait stations. Some people may choose not to visit a Forest during hunting season as a precaution, but many people still do.

## LEGAL ISSUES

### GENERAL COMMENTS (201) [72 total comments]

This category groups comments that are substantive, but are not numerous enough to justify separate categories.

Requests were made for the Forest Service to stop bear baiting in the United States, to make it illegal, to encourage strong legislation, to not relinquish control of hunting practices in the national forests, and to determine whether bear hunting is appropriate at all on public lands and whether it is in the interest of the public. The comment was made that, by the proposed policy, the Forest Service is condoning bear baiting and, rather than take the heat, is passing the buck to the states.

The request was made that the Forest Service not allow their decisions to be made by anti-hunting groups and that they leave game management to the experts. Requests were also made for an extension of the comment period in order to consider alternatives to the proposed policy.

One concern expressed is grizzly bear misidentification-kills over bait. The writer mentions that grizzly bears remain at risk as a result of bear baiting and that to assess the level of risk and to comply with provisions of the Endangered Species Act, the Forest Service must enter into formal consultation with the U.S. Fish and Wildlife Service on this issue.

Comments about the proposed policy were varied: the language allows the authorized officer to make any decision he/she wants; several respondents expressed support for the proposed policy if the reasons for closure are clarified and included in the policy, if the requirement for state involvement in closure

4

decisions is added to the policy, and a provision added that if agreement cannot be reached, the decision defers to the Chief of the Forest Service. Also, the comment was made that Federal closure authority should apply only in cases where the Federal law in question clearly pre-empts State law.

Other suggested additions to the proposed policy include statements that, to the extent that state laws or regulations are violated, hunters be cited for hunting violations and littering under CFRs. Definitions were requested for "resident game," "bait," and "hunting."

More comments about the proposed policy include: concerns about the impact on North American tribes and the lack of reference to them in the policy -- were they not considered or were they assumed to be unaffected?

One respondent mentioned that if the Forest Service adopts the proposed policy, the agency will be liable for human injuries and deaths caused by bears which attack people after becoming habituated to human foods or scents. Another mentioned that it is illegal to chum fish, to spotlight deer, to use salt licks for elk, but is fine to drag garbage into the woods to chum for bears. A few respondents noted the importance of bear baiting issues especially now with the upswing in poaching due to demands in foreign markets.

One respondent suggests that enforcement of restrictions on bear baiting is not practical; he suggests that bear baiting be prohibited, then any control necessary will be from forest users and will be automatic.

Some respondents feel that the bear baiting issue is "just another move" to discredit all hunting. One respondent suggests that if the Forest Service determines bear baiting to not be a proper multiple-use of the forests, then they need to take a long look at the ramifications.

Several respondents said that laws related to bear baiting are in place and are adequate; specific mentions were made of Wyoming, Minnesota, and Arkansas law.

*Response*

There is long standing laws, regulations, policy and Memorandums of Understanding that define the roles of the Forest Service and State Game and Fish Agencies. It is the States responsibility to regulate hunting on National Forest Lands. The Forest Service will take no action as to whether hunting of bears should continue as hunting is the responsibility of the State.

Baiting for black bears is prohibited in nearly all occupied grizzly habitat. Consultation with the Fish and Wildlife Service was entered into in Wyoming and will be reviewed for adequacy based upon the new policy. A Biological Evaluation was prepared for this policy with a finding of, "is not likely to adversely affect any listed or proposed species, or their critical or proposed critical habitats."

The policy was clarified regarding closure orders and States involvement. Normally where agreement between the States and the Forest Service can not be reached, it is raised to the next level in each organization for resolution.

5

Concerns about poaching, habituation, and hunting techniques are discussed in 705 and 707

Enforcement of baiting is the responsibility of the States.

Several of the States have good regulations in place.

### CONSISTENCY WITH NEPA/NFMA (LEG 202) [15 total comments]

The majority of respondents criticized the use of a categorical exclusion, which limits the extent of public involvement in the decision process. They mostly agreed that the proposed action was a "major federal action," "highly controversial" and that "bear baiting does not provide a net public benefit." These were common reasons for supporting a detailed environmental analysis (EA or EIS) described in the category 203 summary.

One respondent states that deferring responsibility for wildlife management and hunting to the states does not constitute a "major federal action" and simply affirms the traditional role of the state wildlife agencies. Some respondents felt that the Forest Service would "eliminate future opportunities for formal public involvement" and not adequately "protect inventoried resources" required by NFMA. One respondent, however, stated that NFMA reaffirms that states retain jurisdiction over fish and wildlife in national forests because it incorporated the Multiple-Use Sustained Yield Act (described in category 205 summary.)

The respondents' overall concern is that deferring responsibility to the States is a significant policy shift and would reduce the level of protection given to black bears, grizzly bears and other wildlife. They feel that the Forest Service is trying to "escape NEPA review" by using a categorical exclusion.

Specific Comments:

* "... deference by the Forest Service to the primary role of the State in wildlife management does not constitute 'major federal action' for purposes of the National Environmental Policy Act. The U.S. Court of Appeals for the Ninth Circuit affirmed on January 3, 1992 (NO. 90-33593)."
* "Regulations require you to consider the 'degree to which the effects on the quality of the human environment are likely to be highly controversial.'"
* "The USFS should also explain how its desire to eliminate future opportunities for formal public involvement on this issue of conceded controversy can be reconciled with either the public participation objectives of NEPA or the National Forest Management Act..."
* "The Forest Service has a legal mandate under the NFMA to protect inventoried resources on lands under its control."
* "Baiting does not prevent or eliminate damage to the environment; baiting is not in harmony with nature; and baiting degrades the environment; and baiting poses health and safety risks to people. The USFS's proposed policy is similarly contrary to NEPA's purpose and policy."

Response

The baiting policy is consistent with the National Forest Management Act (NFMA). The NFMA provides a framework for describing how the National Forest System will be managed within Federal and State laws and regulations. The NFMA, Multiple Use - Sustained Yield Act, Organic Act and other federal laws pertinent to the management of the National Forest System all recognize that the States retain sovereignty over the regulation of wildlife.

The policy incorporates procedures for consulting with the responsible state agencies to ensure that federal interests are protected. The policy also explains the condition under which federal action will be taken.

6

The *Federal Register* notice of the proposed policy on baiting included a preliminary finding that the policy well could be categorically excluded under Section 31.1b(2) of the Forest Service Handbook 1909.15 which excludes from documentation in an environmental assessment or impact statement "rules, regulations, or policies to establish Service-wide administrative procedures, program processes, or instructions." As a result of comments on the proposed policy and further scoping, it was determined that the change of policy on the national forests in Wyoming had people concerned so the environmental effects merited documentation. Accordingly, an environmental assessment was prepared on the baiting policy. A finding of no significant impact (FONSI) was determined based on the disclosure in the environmental assessment. The FONSI explains why the policy does not result in significant impacts upon the human environment and so does not require an environmental impact statement.

### *REQUEST EA OR EIS* (LEG 203) [60 total comments]

The vast majority of respondents requested the Forest Service prepare an EA or EIS to analyze how the proposed action would affect various resources including black bears, grizzly bears and other threatened and endangered species, water quality, recreation experience, and ORV damage. (Some of the comments supporting the adequacy of a categorical exclusion are included in other legal categories (201, 202 and 204).

Most people requested an EIS or "at least an EA"; few specifically stated an EA would be sufficient. Some respondents considered a categorical exclusion adequate (these comments more specifically address NEPA consistency [LEG 202], special use permits [LEG 204], or State vs. Federal jurisdiction [LEG 205]). However, they would form a minority of opinion if included within this category.

Most people cited the need for an EIS due to the wide scope (affecting 11 states in 6 regions), high level of controversy, and "significant impact on wildlife." Many people citing the need for an EA or "at least an EA" focused on the proposal being a "major federal action" and significantly affecting bear and other wildlife populations, water quality and public health.

Some people felt the Forest Service was "sidestepping the issue" (whether bear baiting was an appropriate use of national forest lands) by delegating primary responsibility to the states to regulate bear baiting and issuing a categorical exclusion. This theme and its antithesis are presented by many respondents in category LEG 205 and by one respondent in LEG 202.

Two respondents listed potential impacts that should be considered in an EIS including bear populations, overhunting and poaching, conditioning bears to human foods and odors, threatened, endangered and sensitive species, littering, ORV damage, water quality, and human safety.

*Selected Comments:*

These comments are representative examples or specifically address issues described in the summary.

*   "A nationwide policy on bear baiting is a major federal action which needs the attention of an EIS."
*   "I demand that the Forest Service complete an Environmental Impact Statement on both the ludicrous policy, and the issue of bear baiting on National Forest lands. A categorical exclusion should NOT apply to the policy. At the very least the issue of bear baiting requires an Environmental Assessment."
*   "In making this proposal you have failed to address the appropriateness or desirability of baiting on public lands. You have also failed to evaluate the effects of such a policy on bear populations, other species, and other forest users. An Environmental Impact Statement [EIS] must be provided with regard to these questions."

7

*   "... The Forest Service must prepare an EIS that formally consults with the U.S. Fish and Wildlife Service on the issue of potential harm to endangered or threatened species, as required by the Endangered Species Act."

Response

An Environmental Assessment, Decision Notice, and Finding of no Significant Impact was prepared.

## SPECIAL USE PERMITS (LEG 204) [30 total comments]

The majority of respondents in this category supported the policy rescinding special use permits for individual hunters using bear bait on national forest lands. Some people cited the Federal Land Policy and Management Act (FLPMA) which specifically excludes permits for legal hunting (as regulated by the states).

Other people felt that special use permits "alleviated some of the problems associated with bear baiting" and provided some regulatory oversight for forest managers. Two respondents considered bear baiting as "occupying" national forest lands against the wishes of the majority of forest users. One person cited federal regulations (36 CFR 261.10 and 261.11) which require forest users who engage in "destructive practices" to obtain a special use permit. The cited regulation prohibits destructive practices which includes "leaving refuse, debris, or litter" unless a special use permit is issued. One person stated that rescinding special use permits would bring about the same unanswered problems that existed before the bear baiting permits were issued.

Overall the respondents disagreed whether bear baiting constituted an illegal occupation (in the form of littering) of national forest lands or a legally-sanctioned hunting practice (where legal under state law). Almost all comments defined bear baiting as either litter or a hunting practice, basing their support or opposition of bear baiting permits on that definition.

Specific Comments:

*   "The use of bait for the purpose of taking resident game on National Forest System lands should not be subject to special use authorization, provided it is permissible under state law. To subject the practice to special use authorization is contrary to the Federal Land Policy and Management Act of 1976 (FLPMA) section 302(b) which declares that nothing in FLPMA authorizes the Secretary of Agriculture to require federal permits to hunt on National Forest System lands 43 U.S.C. S1732(b)."
*   "Bear baiters are 'occupying' national forests ... by littering the forests with animal carcasses and other debris..."
*   "The agency regulations prohibit... leaving refuse, debris, or litter in an exposed or unsanitary condition ... unless the individual engaging in such destructive practices obtains a special use permit or authorization. 36 CFR 261.11(b) Baiting simply cannot take place without violation of these regulations and without trampling on the interests which these regulations seek to protect."
*   "According to the USFS, 'the reason for requiring the [special use] permits [for bear baits] was to gain control over the previous indiscriminated placing and leaving of baits on the national forest.' ... [The proposed policy] is completely illogical in light of the agency's original reasons for requiring bear baiters to obtain permits. If baiting is to be allowed on NFS lands -- some form of tight regulatory control must be in place."

Response

The policy states that special use permits shall not be issued for placing baits on National Forest System Lands. Special use permits were issued in lieu of adequate State regulations in Wyoming. State regulations are now in place.

8

### STATE VS. FEDERAL JURISDICTION (LEG 205) [852 total comments]

As noted in the summary, many respondents did not understand the issue. A majority oppose bear baiting in general and "giving state wildlife agencies complete control" over hunting practices in their respective states. A significant minority support the policy in general, but are opposed to the specific language giving the Forest Service authority to close specific areas to bear baiting with or without the state's agreement (noted by flags). A few people expressed opposition toward any continued federal involvement in wildlife management and support complete control by the respective states.

The State agency respondents, whether from States with legal bear baiting or not, nearly unanimously supported the policy with reservations (generally about the closure issue). Many of these letters cite the Federal Land Policy and Management Act (FLPMA) limiting the Forest Service's closure authority on national forest lands.

Many people felt the Forest Service was "abrogating its responsibility" and turning over control to "hunter dominated state agencies". They cite the multiple-use mandate and greater public participation as primary reasons to maintain a high level of federal control over national forest lands. Some people specifically wrote that state wildlife agencies were not receptive to non-hunters and have done a poor job managing bear hunting. One person wrote that "State agencies have a monetary incentive to encourage baiting".

Many other people felt their State wildlife agency was doing a good job managing wildlife in general and regulating bear baiting in particular (especially in Wisconsin). They generally consider that only the State biologist should have the authority to decide whether bear baiting should be allowed.

Some people oppose duplicating regulations within a state while others noted that bears and hunters cross state lines making state regulation inadequate to protect the bears.

A few people cite uneven enforcement due to differing budgets or wildlife agency priorities by the States, especially by adjacent states with different bear bait laws, to mandate a national policy outlawing bear baiting.

The core disagreement again (as discussed in LEG 201 through LEG 207) seems to center on whether bear baiting is a legal hunting method (regulated by the states) or an activity that impacts the ecosystem (regulated by federal laws like NEPA).


*Selected Comments:*

These comments are representative examples or specifically address issues described in the summary.

* "I strongly oppose this bear baiting policy and the national policy that favors control by hunter-dominated state agencies."
* "The State wildlife officials are very competent and trained people. If they allow it, fine. Please do not constrain them."
* "Closure is permissible for reasons of public safety, administration or compliance with provisions of applicable law, but not for reasons of wildlife management. We recognize that the Forest Service may at times need to close a forest to all uses e.g., due to fire, but closures for reasons of fish and wildlife management would be preemptive of authority expressly reserved by Congress to the several States."
* [This policy] "seems to be the most significant issue in which the Forest Service has abdicated its responsibility. The hypocrisy involved is profound. The agency has plainly noted baiting by elk hunters is unethical and within the purview of agency decision-making as it pertains to the wildlife/habitat dichotomy. Bear baiting is not an iota different in context or content. As already

noted the vast majority of impacts from bear baiting are ecological/ecosystem based in context. It is not a State wildlife agency issue in any context as it does not preclude the hunting of bear on national forest lands."

* "Baiting, whether allowed or disallowed, is within the states' authority as a means of hunting wildlife."

* "Using bait for the hunting of black bears is a hunting method. Hunting methods should be controlled by the State Game & Fish Departments."

* "We strongly suggest clarification of justifications for closures, as described in 2643.12, to maintain consistency with the limited closure authority granted the Secretary [of Agriculture] by Congress. Section 302(b) of the Federal Land Policy and Management Act of 1976 establishes limits to closure authorities but does not authorize exclusions of hunting from an area simply because hunting would interfere with Forest Service resource management goals according to H. Rep. No. 94-1724, 60 (1976). Furthermore, the National Forest Management Act, by incorporation and reaffirming the Multiple-Use Sustained-Yield Act of 1960, does not affect the jurisdiction or responsibilities of state wildlife agencies for management of wildlife on national forests."

* "What will happen where existing State laws or regulations do not adequately protect Federal lands? For example, to our knowledge, there are no air, land, or water quality laws or regulations in the Wyoming Environmental Quality Act which regulate, control or limit bear baits."

* "State Fish & Game Dept. has enough problems around here with bear poachings and with motorists running into bears and killing them and don't have the time to worry about bear baiting. Why doesn't the USFS prohibit the practice entirely?"

* "Although baiting on Forest Service lands is illegal by NC law, we are interested in preserving the State's traditional jurisdiction over wildlife management."

* "The proposed policy should not be adopted because it is inappropriate for the States to manage the use and occupancy of NFS lands. ... Clearly, placing baits constitutes a use and occupancy of NFS lands ... proposed bear baiting policy would defer to the States on the question of whether baits should be allowed to be placed on NFS lands. The national forests do not belong to the States; nor do the States 'own' the wildlife which inhabit NFS lands within their State borders.... It is therefore wholly inappropriate to let State wildlife agencies dictate what is and is not acceptable on NFS lands."

*Response*

The policy recognizes that baiting is a hunting method authorized by the States and the regulation of it should be with the States. The policy also recognizes if not properly regulated, it could become a hazard to the public, a pollutant, garbage, or litter and not consistent with public safety, administration, or be in compliance with provisions of applicable law. In these situations, the Forest Service would work with the appropriate States through the process outlined in our Memorandums of Understanding to correct deficiencies. Also working in cooperation with the States, closure orders could be used consistent with requirements of Federal Land Policy and Management Act.

## CHANGES TO PROPOSED POLICY/RULE (LEG 206) [95 total comments]

Many of the respondents were concerned with the language of the proposed policy and some suggested changes to the actual wording or to clarify the meaning of parts of the policy. Since some of the comments were of a legal nature they are included as written.

Comments:

* "Nowhere in the policy is there outlined any recourse by which states that disagree with a decision may appeal to a higher authority/decision-making body than the authorized officer who made the original determination. Such one-sided decision-making authority by individual Forest Service personnel regarding the management of States' resident wildlife is not reflective of the states' 'primary

10

Plfs.' Ex. 1, No. 1:19-cv-00203-CWD, Page 26 of 46

responsibility for protection and management of wildlife populations on National Forest System lands.'"

* 'The Forest Service has not determined if bear baiting is appropriate at all on public lands under the various laws. Instead, the agency has merely assumed baiting is an acceptable use of public lands and that it will continue.'

* 'The proposed language in section 2643.1 and 3643.12 gives too much latitude to local Forest Service personnel to make arbitrary decisions which could usurp the authorities of the several states to professionally manage their wildlife resource.'

* 'Specifically section 2642.1(2) 'State laws and regulations would permit activities that conflict with the land and resource management responsibilities of the Forest Service that are inconsistent with forest plans.'"

* '...section 2643.12(1)...states 'The State laws and regulations on placement of bait are inadequate to protect forest land or other resources or users.'...'

* '...section 2643.12(3) which gives the 'Forest Service authorized officer' the ability to regulate or restrict baiting or take mitigation and/or law enforcement measures if such officer determines that in addition to mandatory causes and regardless of the adequacy of State regulations that based on consideration of the likely impact of baiting on such matters as water quality, public health and sanitation, and the potential for litter, or the potential to threaten the viability of wildlife exist.'

* 'Without specific guidelines in the policy as to whom will make determinations of conflict and on what information those determinations will be made, our agency cannot support the proposed policy. An integral part of the policy should be inclusion of the State wildlife agencies who have regulatory authority over resident wildlife species in the determination of conflict or inconsistencies with wildlife resources. (South Carolina Wildlife & Marine Resource Department letter #1001)'

* 'Many of the respondents believed the proposed policy fails to recognize that baiting is simply incompatible with all other uses of national forest lands and ignores the fact that the State game agencies can not adequately monitor baiting activity or enforce baiting regulations. The history of bear baiting conflicts will continue under the proposed policy.'

Some people were concerned that large areas may be excluded based on the discretion of the forest supervisor. The language "protection of forest resources" allows for a broad interpretation. Exclusion of large areas could impede the ability of the State agency to manage effectively. Others felt what we need to do is close vast areas of USFS lands to any type of human intrusion including recreation and wildlife biological research.

One respondent stated: "I think you should start thinking about complete closure of so-called wilderness areas to any human intrusion and to manage the wilderness areas exclusively as wildlife sanctuaries."

* 'Closure is permissible for reasons of public safety, administration or compliance with provisions of applicable law, but not for reasons of fish and wildlife management, as indicated in FLPMA section 302 (b). We do recognize that the USFS may need at times to close a Forest to all uses (due to fire, etc.) but closing it for fish and wildlife management is not consistent with FLPMA and preempts the authority of the state in this arena.'

* '43 .U.S.C. 1732(b). '...The proposed policy should reflect congressional intent that the closure authority be employed carefully and not for purposes for which authorization was not granted by Congress.'"

* '...we suggest clarification for closures as described in 2643.12 be further refined in order to be consistent with the closure authority granted the Secretary by Congress.'

Several respondents felt it is also important that the language on National Forest Land Closures (2643.12) be clarified to be consistent with the closure authority granted the Secretary of Agriculture.

11

One respondent offered several changes as follows:

* "1...we suggest that the proposal be revised to provide that, in the event state officials do not agree with the Forest Service determination concerning the need for closure or restriction, the matter should be elevated to the Chief for decision.

* "2. The proposed policy should make clear that, determinations by the authorized officer or by the Chief leading to closure orders should be in writing and should set forth the factual basis and the reasons for the determination.

* "3.Recognizing that a substantial element of judgment is involved, the proposed policy should nevertheless specify that closure orders or restrictions should be employed only where necessary to protect national forest resources or users and only to the extent and for the period of time necessary to accomplish the stated purpose.

* "4.The last clause of heading 2643, viz., "especially those [State laws and regulations] addressing hunting, fishing, and trapping as they would apply to occupancy and use of National Forest System lands," should be revised by deleting the words "occupancy and use of..."

* "5....The notion of "inadequacy of state laws to prevent trespass" is not clear to us. We suggest that the reference to trespass be deleted or the concept be clarified.

* "6.The second mandatory cause, inconsistency with the applicable forest plan, should also be clarified to recognize explicitly that Congress has reserved in the states primary authority and responsibility to manage fish and resident wildlife on the national forests.

* "7...we suggest that the mandatory/non-mandatory distinction be discarded and the seventh paragraph deleted. Doing so would avoid confusion and redundancy without affecting the grounds for closure."

Several respondents believed the proposed policy is premature because the USFS has yet to determine whether bear baiting on NFS lands is appropriate or legal. In issuing the proposed policy, the USFS has assumed that bear baiting is an acceptable use of public lands. Yet the agency has provided no rational whatsoever to support this assumption. The USFS must, at the least, explain why its present policy -- which implicitly authorizes bear baiting on NFS lands for the purpose of sport hunting -- differs so radically from the former policy statement and how the concerns described on that former statement will be addressed (or why those concerns can be ignored).

### *Request New Plan or Policy*

Forest Service personal should still regulate this mandate.

Many of the respondents wanted the Forest Service to reconsider this decision, replace it with a more humane plan, or abandon the proposed policy. They suggested all resonable alternatives be considered, including a no-baiting alternative. Some preferred a policy to ban baiting on all national forest lands.

One respondent felt it would be a better idea to continue with an interim national policy of "no baiting" while a national direction is being formulated.
I would also like to see a national policy formed that would place some restrictions and control over hunter dominated state agencies....

Another believed since the agency's April 14, 1994, proposed rule did not solicit comments on whether or not bear baiting should be allowed on NFS lands, we are requesting that a separate rulemaking proceeding be initiated to answer this question. This rule should be completed before the USFS moves to finalize the April 14, 1994 proposed rule on bear baiting.

12

Plfs.' Ex. 1, No. 1:19-cv-00203-CWD, Page 28 of 46

## Ban Bear Baiting

A majority of the respondents believed bear baiting should be banned on all national forest land. Some thought it was illegal and wanted the Forest Service to take steps to end this form of hunting. At least one person suggested a policy to bring all national forest lands into line with the practices in the overwhelming majority of states by prohibiting the environmentally unsound and ethically unacceptable practice of bear baiting.

*   "We strongly urge you to maintain authority over bear-baiting on Federal national forests. Further, we ask that upon maintaining this authority that you phase out bear baiting on all U.S. national forests."
*   "Please keep this issue illegal, in all States."
*   "The Forest Service Has Clear Statutory Authority to Prohibit Bear Baiting on national forests and It Has Offered No Coherent, Legally Supportable Reason For Not Doing So."

Some respondents suggested that given our cross-boundary concerns, new policies on ecosystem management, and our mutual interest in interagency cooperation, we suggest the Forest Service move to prohibit this practice on National Forest System lands except where it is clearly justified by biological data.

One person requested a ban on the use of hounds to hunt bear on public lands. "Hounding is as unethical, unfair, and abhorrent as the use of bait."

## Need to Clarify:

There were several respondents who wanted the language in the policy clarified such as:

*   "The term 'resident game' is not defined. Does this include furbearers, upland birds, rabbits, or does it only apply to what is classified as 'big game'?"
*   "We believe that the definition...of the term 'bait' and 'baiting' leave a great deal of latitude for legal challenge by groups or individuals opposing the practice under any circumstances. For instance, what is a 'bait'? Is it a barrel of pastry, or a single donut? Are processed animal components used as lure by trappers considered bait? Could processed cover scent derived from apples or corn and commonly used by bowhunters be considered 'bait'? We believe it could and would argue that a more precise definition be a part of the proposed regulations. In addition, would the use of those substances be allowed in areas where 'baiting' is prohibited but hunting and trapping allowed? This too should be addressed. Hunting has not been defined. Would baiting of bear for photographic opportunity be allowed in areas where it is illegal to use bait for 'hunting'?"
*   "The use of bait as lure or attractant for the purpose of taking resident game, when permissible under state law or regulation, is hunting within the meaning of 36 C.F.R. s251(c)"
*   "The combining of bait-scents-lures in the term "bait" is inappropriate... The Department would like to see some guidance provided concerning interpretation of the term site-specific." (letter #248 Arizona Fish and Game)

## Special Use Permits

Some of the respondents believed that hunters should be required to obtain special use permits with rules designed to alleviate some of the problems associated with bear baiting.

## Response

The policy has provisions that Forest Service would work with the State agencies if it determines that baiting is in conflict with protection of forest land and resources, is inconsistent with the forest

13

plan, or is in conflict with Federal law. The States would have the opportunity to discuss with the Forest Service whether the conflict is significant or not. If so, the State has the opportunity to resolve it. The Forest Service authorized officer is, in most cases, the regional forester, except in those States where a forest supervisor is authorized to sign the Master Memorandum of Understanding. It is not our intent, nor does the policy provide for individuals in the Forest Service to make decisions affecting States responsibilities without involving the States. The policy does not prohibit States from raising issues that can not be resolved at one level to higher levels.

Ban Bear Baiting

*Response*

While many of the comments requested that the Forest Service ban bear baiting, we have chosen not to do so for the following reasons: 1) we recognize that the States have the primary responsibility for protection and management of wildlife on National Forest System lands, 2) the States establish hunting regulations, including hunting techniques, that apply to National Forest System lands, 3) the States have, or are developing, regulations for bear baiting that adequately protect National Forest lands, resources, and users, 4) baiting is not in conflict with Federal law if done correctly, 5) it can be done without jeopardy to threatened and endangered species, and 6) where problems or conflicts arise, working with the States, corrections can be made or closures issued. This is consistent with laws and regulations governing the role of the States and the Forest Service with regards to management of wildlife.

Need to Clarify

Many of the points raised in this section have been addressed.

Special Use Permits

This was addressed in 204.

## *NO CHANGE TO EXISTING POLICY* (LEG 207) [503 total comments]

Based upon the Content Analysis Team's reading of the comment letters, many of the respondents had not read the Forest Service's Notice of Proposed Policy in the Federal Register (Vol. 59, No. 72, 4/14/94). They were responding to "Action Alerts" issued by various organizations. Consequently, many of the letters were general in content, stating that the practice of using bait to hunt bears should be banned; they did not address the specific details of the proposed policy.

Those respondents who did comment on the proposed policy overwhelmingly stated the Forest Service should follow the advice of State game biologists, and defer to State laws and regulations pertaining to the management of fish and wildlife. One respondent noted that "we support the proposed policy as an elaboration of the existing allocation of authorities between the Forest Service and the States in which the Forest Service manages land resources and habitat and the States manage fish and wildlife and regulate public hunting."

Another commented that "the Forest Service has long acknowledged the right of the various states in their traditional role of managing fish and wildlife...This is a management policy that works and should be continued."

14

Two respondents stated that the Forest Service should not release control of bear baiting to the states, but did not elaborate on their reasoning.

*Response*

The proposed policy was based on the long standing relationship between the State Game and Fish Agencies and recognizes that States manage fish and wildlife and the Forest Service manages the habitat. It further recognizes that when state regulations are adequate to protect national forest resources, that their regulations prevail. Where they do not, the Forest Service would work with the State agencies to resolve differences. If the differences cannot be resolved, the Forest Service could restrict baiting until such difference can be resolved. The final policy also is based on that primis.

## BLACK BEARS

### GENERAL COMMENTS (BB 301) [6 total comments]

There was no consensus among respondents. Since there were few comments regarding this subject, most are listed below:

* "Here in southwest Oregon, we feel that the situation for bears is getting worse due to the loss of habitat from years of over-logging and increased development...we think the evidence indicates that the local bear population is concentrated in areas where food is available. If the Forest Service has evidence to the contrary, we would appreciate seeing it."
* "The spring bear season, and subsequent use of baits, are a major contributor to the management plan for this species."
* "Declines in black bear populations in certain areas can be attributed to the loss of habitat and the encroachment of man, not as result of regulated hunting."
* "The spring [black] bear season, and subsequent use of baits, are a major contributor to the management plan for this species."

*Response*

The status of the black bear population and the causes for its increase or decline is the responsibility of the State agencies. The role that spring bear hunting plays in the management of the species also rests with the States. If habitat alterations that the Forest Service is responsible for is affecting black bear populations, we would work with the States to find acceptable solutions.

## GRIZZLY BEARS

### GENERAL COMMENTS (GRZ 401) [22 total comments]

Although comments regarding grizzly bears were limited, a number of people stated that they wanted bear baiting banned, especially in states or national forests where grizzly bears still exist.

Another statement that appeared frequently was that grizzly bears are often mistaken for black bears and are in danger of being shot.

**15**

For bow hunters with their close range weapons, bait hunting is the only way to successfully harvest a bear. This lessens the chance of mistakenly taking a grizzly sow with cubs.

One comment went the opposite way and stated that grizzlies are easily identifiable when viewed from close range as would be the case over a bait station. They stated that this affords the hunter a better opportunity to make positive identification as to which species of bear is approaching the bait.

Another comment was made regarding habituated grizzlies becoming "problem bears."

*Specific Comments:*

* "One specific biological issue that greatly concerns the Greater Ecosystem Alliance is the direct and indirect danger of mortality posed to grizzly bear and other at-risk, threatened, and endangered species by the practice of hunting for black bear."
* "Bait hunting results in intentional and incidental grizzly deaths, is incompatible with grizzly bear recovery, and therefore must be banned. This is inconsistent with grizzly bear recovery, and is clearly prohibited by the Endangered Species Act."
* "Bear baiting on the Colville, Okanogan and Idaho Panhandle National Forests is likely to interfere with the native grizzly populations that are having a difficult time recovering - partly from hunting of black bears."
* "Many grizzly bears are shot each year because they have become "problem bears. From the period 1975 to 1993, records show no fewer than 27 management control killings of grizzly bears with the GYEGBRZ. Of the seven management killings that occurred in the Yellowstone Ecosystem from 1984 to 1993, all involved food-conditioned or habituated grizzly bears."

*Response*

The grizzly bear is listed as a threatened species by the Secretary of the Interior. As such, the Forest Service would evaluate whether the States regulations were adequate to protect habitat or would create conditions in that habitat that may affect the grizzly bear. If State regulations were adequate to protect grizzly bears, no action is needed by the Forest Service. If not, the Forest Service would develop a Biological Evaluation and consult with the U.S. Fish and Wildlife Service. This process has been completed in Wyoming and will be re-evaluated to determine if the Biological Assessment and Biological Opinion are still applicable under the new policy. The Assessment and Opinion addressed food conditioning and possible taking of grizzly bears by mistake. The vast majority of occupied grizzly habitat is closed to baiting in Wyoming, Washington, and Idaho.


## OTHER THREATENED OR ENDANGERED SPECIES

**ALL COMMENTS (501-503) [112 total comments]**

A total of 112 comments were received regarding threatened and endangered species. All said virtually the same thing: "Threatened and endangered species - including eagles, wolves and grizzly bears - and other wild animals may be attracted to bait stations and either shot by hunters or conditioned to human food sources." Three referred to "the first wolf known to have roamed wild in New England in over 40 years" being shot over bait in Maine. One respondent stated the Endangered Species Act "requires the Federal government to 'Conserve' (i.e., increase to the point of long-term survivability)" listed species. "A policy allowing bear-baiting in National Forests that are present or potential Grizzly habitat will prevent their recovery." Another mentioned the increased risk from interspecies fighting. Another called for "pursuing formal consultation" and full NEPA compliance "with regard to a sweeping national policy that may have

16

far greater adverse impacts on endangered species. They noted that "the proposed policy provides no assurance...that endangered and threatened species will be protected from adverse impacts associated with bear baiting."

*Response*

The States regulations, and the Federal Agencies Biological Evaluation and consultation process provides for the protection of all threatened and endangered species as it relates to the policy on baiting.

# OTHER WILDLIFE

### GENERAL COMMENTS (WLD 601) [39 total comments]

There were few comments in this category. The largest concern was that other species would be attracted to bait stations only to be shot or otherwise harmed.

It was mentioned a number of times that other non-target species, including pets, could become targets, as they would also frequent bait stations.

Comments supporting the practice of baiting included: "Over population by bears will take its toll on other wildlife as the balance of nature will be offset. Diseases and starvation will take place."

Another favorable comment was: "Black bear baiting commonly takes place in the spring and coincides with birthing of moose, caribou and deer. This has a positive effect on the survival rate of these species since we know that black bears are efficient killers of the newborn offspring of these prey species. The bears immediate nutritional needs are met by the bait, which is a benefit to all concerned."

*Response*

It is possible that wildlife species other than black bears could be attracted to baits. Just because that happens doesn't mean that the species is shot or harmed. The States regulate what species it is legal to hunt using baits. Spring bear baiting and hunting play a role, currently, in the States management of the black bears and the population objectives for the species. There may be some relationship between bear hunting, diseases, starvation, and predation on other species.

### CONDITIONING TO HUMAN FOOD SOURCE (WLD 602) [12 total comments]

Since the comments in this category are few, they are all included below:

* "Baiting practices...will lead to wildlife being conditioned to search for unnatural food sources, thereby increasing the prevalence of campsite raids and other conflicts."
* "[Bear baiting can] threaten other wild animals by attracting them to bait stations - condition them to human food sources..."
* "This will also condition wild animals to a human food source, which leads to campsite raids and the animals will be considered pests."
* "...baiting stations attract and habituate non-target species and turn wild animals into one dependent on humans for food.

**17**

* "The existence of bait stations may also encourage other wild animals, particularly raptors and carnivores, to become conditioned to feeding by humans, with all the associated behavioral implications of this abnormality."
* "It may be harmful to other wild animals who are attracted to the bait because they quickly learn that humans put food out."
* "...the food left for bears will be scavenged by many other species as well, accustoming them to rely on human food sources."

*Response*

Bear baits are temporary features that are removed. They are not a permanent continuing source of food. It is possible that during the time baits are out they are used as part of the food source for some wildlife species. They do not, however, become so conditioned to it that when it is gone, they can't resort to natural foods. Bears are more likely to get conditioned to human foods around campgrounds where food is available for longer periods of time and the bears are not shot at in the process of getting it.

## POPULATION DECIMATION/SPECIES VIABILITY (WLD 603) [6 total comments]

There were five comments in this category, as follows:

* "The danger of other wildlife (including threatened and endangered species) being attracted to the bait and killed at these planned garbage dumps is real..."
* "We need you(r) control and support to keep animals from being hunted to extinction."
* "Bear baiting would draw other animal species to the bait food sources where they would be killed by hunters or become conditioned to these food 'sources.'"
* "Bear hunting also creates peril for other wildlife which may be attracted to baits."
* "The annihilation of our natural wildlife including the defamation of our most prized vistas must be precluded."

*Response*

Baiting will not be permitted under conditions that would jeopardize threatened or endangered species. Hunters are only permitted to kill certain species when using bait. Not everything is killed or annihilated that comes into contact with baits.

# BEAR BAITING

## GENERAL COMMENTS (701) [1037 total comments]

In addition to the categories we broke out, many comments dealt with the subject of bear baiting in general. Some respondents passed on biological facts and opinions regarding bears and baiting. Many gave reasons which could be called philosophical for favoring or opposing bear baiting in general and specifically as Forest Service policy. Some addressed Forest Service policy regarding bear baiting. A number addressed hunting methods and their practicality. And some comments defied categorization.

18

Plfs.' Ex. 1, No. 1:19-cv-00203-CWD, Page 34 of 46

**Biological facts/opinions:**

Two statements summarize comments from a number of respondents on both sides of the baiting issue:
* "Current research indicates that a hunted population is healthier, produces more young, creates more available food for the controlled population, protects habitat reduction and insures less damage to man and his property."
* "Bear baiting decimates black bear populations, threatens endangered species, and harms other wild (and possibly domestic) animals by attracting them to bait stations."

One respondent stated there are more bear in Wyoming than the Wyoming game managers (State and Federal) realize. Another stated baiting "places too much hunting pressure on the bears."

**Specific comments:**
* "Bears and other non-target animals will often travel outside their normal ranges," especially in spring when bears are ravenous after hibernation.
* Bait attracts other species which then fall prey to hunters.
* Baiting is necessary to maintain healthy bear populations at a level "that can be tolerated by the public" (i.e., minimal "bear incidents"), that would avoid "severe depredation problems among...other wildlife populations," and "which would leave more food for the grizzlies."
* Bait provides a food source for other animals and may offer "an added dimension of nutritional value for bears."
* "'Conditioned' animals lose their natural fear of humans" ("become semi-tame") and "become a threat to human safety and subsequently killed."
* Baiting in spring poses a threat to orphaned cubs.

**Philosophical reasons (general):**

Several respondents saw this as a hunting vs. anti-hunting issue. Several expressed concern over the effect the bear baiting issue will have on hunting in general. Some called it "another attempt by the minority of hunters to take over public land for their own...interests." One asked that the decision be based solely on "sound biological research by qualified wildlife biologists." One quoted the Forest Service Intermountain Region rationale for flatly opposing bear baiting four years ago. Other comments:
* Save the bears as our legacy to our children and their children.
* "The Forest is for public use and bear baiting not only serves that purpose but also is a significant game management tool."
* "The use of bait for hunting black bear is bad biology, poor wildlife management, and unsportsmanlike."
* Hunting provides a livelihood for hundreds of thousands and "allowed me and my kids ample hours alone in the woods." The ban would be "one more domino to fall until the only hunters left will be those who poach."
* "America's beleaguered bears and other wildlife are already plagued by habitat loss, poachers, and the intrusion of humans for recreation. There is simply no valid, pressing reason to justify bear baiting."
* "Allowing bear baiting...is not in the best interest of most recreational users of the forests."
* "This will cause many more problems to both humans and bears."
* "There is nothing fair about this practice."

**Philosophical reasons (policy):**

Four comments were received which deal with respondents' philosophy regarding policy:
* "The Forest Service is wrong in classifying baiting as 'hunting.' Baiting does not involve an act of 'pursuit' but is an act of placement."
* "An across-the board prohibition on baiting is the only sensible, environmentally sound, and ethically acceptable course of action for the Forest Service to adopt."
* "The proposed policy on baiting is inconsistent with the Forest Service mission to "care for the land and serve people" and represents an abrogation of the agency's responsibility to manage the forests for the benefit of the majority of the public."

19

*       "The authorization of bear baiting is contrary to the public interest and the public intent."

**Policy:**
One respondent said bear baiting "is well within the jurisdiction of the Forest Service." Another urged the Forest Service to "keep jurisdiction for bear baiting and hounding on national forests and then with only minor exception, install and keep in place a ban on such activity in all forest regions and in some areas completely ban any type of bear hunting." A number of respondents echoed that request. One went on to say a new national policy outlawing bear baiting would give the Forest Service "the opportunity to set a clear precedent for the rest of the country."

One "hunter and trapper" stated that he felt the proposed rule is unconstitutional. A Wyoming Game and Fish Commissioner is "greatly troubled by the way you have handled the bear baiting issue" in Wyoming. He stated his support for bear baiting in national forests and his belief that it is a state's rights issue. Another respondent asked the Forest Service to acknowledge the trend of public opposition to bear baiting and "deal openly with it."

Specific comments related to policy:
*       "The Forest Service has not determined if bear baiting is appropriate at all on public lands under the various laws."
*       "We support the policy set forth in the referenced proposal, provided the reasons for closure set forth at heading 2643.12 are clarified to be consistent with the closure authority granted in the FLPMA."
*       The "non-policy" toward bear baiting now being proposed "will invariably subject the agency to additional compelling legal claims by conservation and animal protection organizations."

**Hunting method practicality:**
Most who addressed this issue stated that baiting is either a practical, effective method or the only effective method to hunt bears, especially in spring and in remote terrain. Several stated that though effective, it is difficult, with no guarantee of success. Two stressed its importance to a bow hunter's chance of success. One said it was important to hunters "like myself who are partially disabled and cannot move about in the woods normally." One called hunting (any method) a "successful and effective game management tool." At least two respondents indicated bear baiting "allows for better game management." One said "baiting will encourage bear killers from other places to come here."

**Miscellaneous comments:**
At least four respondents said baiting causes resource damage as ORVs traverse wet ground in spring to establish bait stations. One stated, "It is reasonable to expect that as a result of the proposed action, more people will bait. Increased baiting will lead to increases in littering problems, more user conflicts, additional ORV damage, and increased bear mortality."

One respondent stated that a "commercial group" moved "very quickly to take advantage of all available game to accommodate a 'rich dude's' need" for a trophy. Another said, "Tourism operators regularly complain about disgusting bait stations." Another said, "The allowance of baiting will facilitate poaching of bears."

Another respondent said bear baiting "is not the type of 'recreation' I want to see on national forest lands. Types of recreation should not be allowed that infringe upon all other users of the forest.

**Comments on state regulations:**
*       "Wisconsin has one of the most restrictive baiting laws in effect in the nation. Our hunters are held to restrictive standards, as to what baits may be used, and as to the quantity of bait used. Strict enforcement has permitted the State to exercise good control in the state of Wisconsin."

*    "Our [Utah] Wildlife Board and agency personnel recognize concern of land management agencies for this practice and we require "written permission from the appropriate landowner or land-managing agency" before we will issue a permit for baiting."

**Suggestions:**
*    "Setting new rules and guidelines such as using a barrel, and removing the remains at the end of the season to restore the site so as not to offend others could be a happy medium."
*    Closing forest roads would make the proposal less controversial, as bait hunters wouldn't walk far to set up stations.
*    "End bear baiting as a recreational hunting/pursuit method. This does not inherently preclude bear management or bear hunting, but does meet a plethora of significant ecological/ecosystem concerns and broad spectrum of cultural values associated with wildlife."

*Response*

Biological facts/opinions

State agencies take many of the points in this section into consideration when establishing seasons and methods of hunting. Many of the points have been addressed in previous responses.

Philosophical reasons (general)

The Forest Service concern with baiting is its relationship to protection of national forest resources. It is not our intent to evaluate the ethical implications of baiting and it is the States responsibility to address the biological implications of using baiting as a hunting method.

Policy

The final policy is not intended to determine if the practice of using bait in hunting is to be allowed on NFS lands, but how the use of bait is to be regulated. The use of bait in hunting, generally, is not contrary to Federal interests. The final policy acknowledges that State fish and wildlife agencies have the primary responsibility for protecting and management of wildlife populations on NFS lands, including adoption of State fish and wildlife laws and regulations affecting the taking of resident game animals.

Hunting Method Practicality

These comments focused on the effectiveness of baiting which is a part of the hunting methods regulated by the State agencies.

Miscellaneous comments

Damage from ORV use is regulated through travel management plans on National Forest System lands. It is not prudent to eliminate activities such as hunting, fishing, and camping to control ORV use. State agencies have objectives for bear populations that may included lowering, raising, or maintain existing mortality rates.

21

**Comments on State Regulations**

> We concur and support the States in the enforcement of their regulations on baiting.

**Suggestions**

> The guidelines suggested are in place in many of the States. The policy provides for working with the States where regulations are not sufficient regarding public safety, administration, or are not consistent with other federal laws. There are views held as strongly that baiting is legitimate as views that is it not.

## *POPULATION DECIMATION/SPECIES VIABILITY* (BAIT 702) [28 total comments]

Many respondents expressed concern about the population decimation of the bear and other species. They believe bear baiting would cause a decline in wildlife populations, including endangered species, by allowing them to be easily and unknowingly over-hunted and that wild animals gather at bait stations and are shot by hunters, by accident or not. It was stated that new technologies in hunting make the kill quick and efficient.

Some felt that baiting would facilitate the poaching of black bear, grizzly bear, and other species. Quick profits for bear parts on the Asian market was a concern.

The possibility of female animals being lured and killed while the young were hidden was discussed. The young would be left to starve, further decimating the population of wild animals of all kinds. The statement of ability to identify the gender of a bear from a tree stand was challenged.

One reason given in favor of baiting was the luring and killing of boars in early spring before the sows with cubs leave the den. This gives the cubs a better chance of survival, since boars are known to kill cubs.

A Minnesota respondent believes that bait hunting in his State has caused no adverse effects.

More studies on the effects of bear baiting on the populations of bear in general were requested.

*Response*

> Comments in this section refer to hunting, mortality of bears and other wildlife, poaching, hunting of bears for parts for profit, and killing of female bears with cubs. All of these activities fall under State authority and they are aware of the issues. These are not activities that fall under the authorities or responsibility of the Forest Service.

## *DECIMATION OF BLACK BEAR POPULATION* (BAIT 703) [109 total comments]

Many of the respondents believed that bear baiting is unsporting and an extremely efficient hunting practice that could decimate black bear populations and also threaten other animals, including threatened and endangered species, by attracting them to bait stations where they could be killed by hunters. Bear baiting increases the harvest of bears without providing accurate information on how many bears actually occupy the ecosystem.

One person stated "this outrageous practice is certainly not a conservation procedure, but an all out slaughter and decimation of our black bear population."

**Viability of the Species:**

Others believe baiting has a more positive effect on the health and survival of the hunted species than any other hunting method. Baiting also helps supplement bears diets until other natural foods such as wild berries are ripe. The hunting methods an agency uses as conservation tools should be evaluated on value to the species being hunted and not be influenced by political organizations such as the Fund for Animals. The Forest Service must become active in guaranteeing the survival of black bears by ending baiting and hounding on its lands.

The agency must not rely on the States to offer assurances that the bears will not be overhunted because the states do not share the USFS's mandate to maintain a "viable" or "well distributed" population of bears. See 36 CFR S219.19.

Some of the respondents gave examples of bear baiting in their respective States, and while some didn't appreciate the fact that their State allowed this practice, others felt that with good management, the bear population could be controlled: i.e., "...the viability of the black bear in Wyoming is not threatened by the use of baits..."; "the Wisconsin Department of Natural Resources has done an excellent job of controlling the bear population"; studies in Minnesota have shown that feeding or baiting is not detrimental to the black bear population and if anything it helps them survive the harsh winters."

*Response*

The comments expressed here are referring to concerns about decimating black bear populations. This is a State responsibility. All States have black bear management plans that address black bear population objectives and appropriate harvest levels.

Viability of the Species

The focus of these comments is on relationship of hunting to the health of black bear populations. This is a State responsibility, not within the authority of the Forest Service. 36 CFR S219.19 requires that that the Forest Service maintain *habitat* for viable populations. This requires that we assure that habitat is available to support viable populations but does not require we do oversight of State agencies hunting regulations to assure viability of the hunted species. Other laws, such as FLPMA, and existing Memorandums of Understanding make this clear. Hunted populations as well as un-hunted populations of wildlife fluctuate. The States have very good, long standing techniques for assessing the effects of hunting on big game populations and are continually alert to population status. Some States also have research being conducted on black bears to provide additional information.

**GRIZZLY BEAR POPULATION DECIMATION AND SPECIES VIABILITY** (BAIT 704) [13 total comments]

Grizzly bears are sometimes attracted to bait stations and illegally shot by hunters. This may have a significant impact on the grizzly population. There was general agreement that bear baiting should not be allowed in areas where grizzly bears still exist. Bait is a favored technique for poachers and poaching is a serious threat to the grizzly. The Forest Service should provide leadership in insuring that bear baiting does not lead to negative impacts on grizzly bear populations.

Several respondents believed that bear baiting increased the likelihood of forced relocations and grizzly mortality by increasing chances for bear/human conflict.

*Response*

The Forest Service and the States share the concern about baiting for black bears in grizzly habitat. Nearly all of the occupied grizzly habitat has been closed to bear baiting and the small portion that has not has special requirements and education programs for hunters.

### CONDITIONING BEARS AND OTHER ANIMALS TO HUMAN FOOD SOURCES (705) [230 total comments]

A majority of letters received included comments about conditioning bears to human food sources. The practice of baiting may condition bears and other animals to human food, odors and presence, placing humans in jeopardy and resulting in costly relocation of the bear or lethal control measures when the bear is perceived to be a nuisance.

One person felt it was unconscionably wrong to condition bears to human food sources while others believed that "baiting" teaches the bear to fear bait sites and results in loss of habitat.

* "Bear habituation to human food may lessen an animals' natural avoidance of people and this leads to safety problems."
* "The Forest Service and other government agencies wisely discourage the public from feeding bears as this is a dangerous practice which results in the animal becoming conditioned to 'easy' to get food. The Friends of Animals believe the same situation may develop from the bait stations."
* "Since dead livestock is a common bait used in the West, it may condition bears to livestock as an easy food source and increase rural residential and ranching conflicts between humans and bears."

On the opposite side at least one respondent stated that since baits are only used for a month or two during the season, baiting does not make a bear dependent on human food sources or bait stations.

*Response*

While there is some likelihood that baiting could increase animal habituation to human foods by bears that come to bait stations, there is no evidence that it creates the same kind of problems that are experienced when human foods are available for long periods of time. Conditioning of bears to human foods has normally occurred because of campgrounds, garbage dumps, or housing developments in bear habitat where the food is available for long periods of time and little harm comes to the animal in the process of getting it. Bear baits, in comparison, are small quantities of food and placed out for a short duration. Livestock grazing has been going on in bear habitat for a half century or better in areas where bait has been used. While some predation on livestock occurs, it is not likely caused by baiting as much as it is related to the fact that calves or sheep are easy prey for bears.

### REDUCING ERROR IN KILL (BAIT 706) [525 total comments]

Most respondents mentioned being able to identify and avoid shooting lactating females and females in general as an important benefit of bear baiting. On the flip side, the comment was made that it is impossible for a hunter, from a vantage point in a tree, to determine the gender of a bear.

The next most frequently mentioned benefits of bear baiting include: it allows better shot placement; reduces the wounding rate and improves the possibility of a clean kill; and gives hunters the time and

**24**

the view to determine the age of bear-at-bait and the species, thereby avoiding kills of young bear and protected species.

Several respondents mentioned that hunters using short-range weapons -- such as bow and arrow -- must use baiting almost exclusively in order to get close enough to bears to be within effective killing range.

*Response*

> Effectiveness of baiting relating to wounding loss, identification of the animal, its age or sex is information directly related to hunting techniques and is not within the authority or responsibility of the Forest Service but lies with the States to administer.

### SAFETY FOR BEARS (707) [43 total comments]

The respondents felt that a bear that became conditioned to human foods, i.e., bait stations, would lose its natural fear of people and often become a "pest" or threat to human safety and subsequently be killed. Most of the comments were similar to the following:
> "They raid campsites, garbage dumps and rural communities. Then they become 'problems' and are often killed."

The respondents stated bears may travel miles outside their normal ranges, attracted by the smell of bait, or they may raid campsites or homes. This can prove extremely detrimental to the bears and create a situation where the bear is always the loser.

The respondents felt baiting tends to add stress to a bears usually solitary life because it causes adult bears to come into close contact with other bears, a very atypical behavior in the wild which may lead to fights between bears and even death; bear habitat is already fragmented due to roads, summer homes,etc. Baiting only further disturbs and diminishes habitat causing even more stress on this "very stressed" species.

Two comments were received about selling bear body parts.

> "Bears are hunted for their body parts which are used in oriental medicine. Often this hunting is illegal. .."

> "...our country's bear populations are threatened by poachers, whose trade in bear parts is as well-organized, as lucrative, (for them), and as vicious and dangerous as the drug trade ever thought of being. Our bears need protection from poachers and from cowardly hunters who shoot them "like fish in a barrel."

One respondent felt that since State and Federal wildlife agencies do not allow the feeding and shooting of big-game animals other than bears; the same standard of protection should apply to bears. Feeding any animal is a veritable death sentence for that animal.

Another respondent stated biological research shows the deleterious effects of human type food sources on bear populations.

Four (4) respondents were concerned that a spring bear season was permitted at all. The female bear comes out of her den with cubs, she gets killed by hunters at a bait station and her cubs starve to death or get ripped apart by hunting dogs.

25

One person commented he didn't believe preservationist groups like the "Fund for Animals" have the welfare of our bear population in mind simply because the information they rely on is not factual.

*Response*

Comments in this section regarding food habituation have been addressed in 705. The comments regarding selling of bear parts and poaching are activities regulated by the State agencies, not the Forest Service. Allowing the hunting of bears in the spring is controlled and regulated by the State agencies, not the Forest Service.

### HUMAN HEALTH AND SAFETY (BAIT 708) [58 total comments]

Many of the letter writers were concerned about the conflicts between bears and people. Most felt that bears that had been conditioned to human food and smell would lose their natural fear of people and could prove dangerous for humans. This could make the forests unsafe for the thousands of families who enjoy the natural beauty of the forests.

There was general agreement that the practice of bear baiting will have significant adverse affects on the human environment by increasing the conflicts between bears and people.

Respondents felt baiting tends to "lure" bears out of their natural habitat and place them near human activity and they often become pests or a threat to human safety. To allow so many bait hunters to maintain bait stations on public lands is dangerous and irresponsible. Both bears and humans suffer. Baiting may actually make the Forest Service liable should a visitor be attacked or killed in an area where baiting is practiced. They wondered if you value a human life more than a bear?

Most respondents stated that habituating bears to human food may lead to raids on campsites, homes, and livestock depredation resulting in dangerous conformations with human beings.

There was considerable concern that if bear baiting was not allowed, the bear population would increase causing more encounters with humans because of lack of habitat and range.

Several of the respondents who favored bear baiting felt that baiting was not a safety issue. They had walked in on bait stations many times and had not been threatened by a bear.

*Response*

The Forest Service is not aware of any known human deaths recorded as a result of a non-hunter coming into contact with a bait on National Forest System lands. The Forest Service policy and State regulations recognize human safety as a concern. In most cases State regulations do not allow the placement of baits near campgrounds, trails, and water. Under the final policy, if human safety concerns develop the Forest Service would work with the State agencies to address the issue or would utilize closure orders in localized areas to reduce the hazards.

### GARBAGE/LITTER (BAIT 709) [162 total comments]

Approximately 1/3 of the comments were in opposition to bear baiting, maintaining that it gives credence to legalized garbage dumps which in turn give people the "right" to dispose of unwanted, unsightly garbage in the name of bear baiting. The point also came up a number of times that the bear baiting practice

26

Plfs.' Ex. 1, No. 1:19-cv-00203-CWD, Page 42 of 46

gave people the right to litter where the forest user doing the same thing would be fined and asked to clean up the mess they left!

Only two comments showed any kind of favorable comment toward retaining bear baiting period.

Six respondents stated that the environment is damaged enough without adding this unnecessary aspect to it.

One person stated that we (USFS) should heed the action of the National Parks when they removed open garbage dumps to "untrain" bears to scavenge for discarded human food.

Another statement that seemed to surface a number of times was that the national forest does not belong exclusively to hunters, but to the public in general and these people should have an equal "say" in the use of bear bait in the National Forest System. These people felt that it encouraged hunters to leave their garbage in the woods along with the bear bait.

As an example, "the last thing our forests need are barrels of rotting food left out to attract bears" would be an average statement in this category.

Most comments referred to bear baiting as an unsanitary practice which should be done away with.

*Comments:*

* The Wyoming Game and Fish Commission has promulgated the necessary regulations to address concerns of the Forest Service regarding littering. The commission has also provided in that regulation for the number of baits per square mile which are allowed, distances from water, campgrounds, picnic areas, trails and notification of locations of such bait stations.
* Bait hunting for black bear represents just 1.2% of all hunting in Washington state, and yet these 3,500 hunters generate, by conservative estimate, more than 7,000 piles of rotting food, animal corpses, and garbage on publicly managed land.
* Forest personnel visited a bait station on the Bridger-Teton National Forest in Wyoming, and found 1/3 of a horse stuffed in a barrel. The head was tied to a nearby tree. A non-hunter would be heavily fined for this kind of contamination of a national forest . This is a big problem.
* The USFS must explain how it intends to avoid the "indiscriminate" littering problem encountered with state-regulated baiting in the past. Without such an explanation, the agency's policy can only be considered arbitrary and capricious.
  ...a "Memorandum of Understanding" (MOU) between the USFS and the State will not assure that the previous "indiscriminate littering" problem does not recur because an MOU only represents an agreement and does not assure that funding or personnel will actually be committed by the State to properly manage bear baits.

*Response*

Materials used for baiting are similar to garbage but a bait station is not the same thing as a garbage dump. Bait not properly placed or removed is considered garbage and the hunter placing the material can be prosecuted. Under the final policy the Forest Services would work with the States, if they do not already have regulations, to address the placement and removal of baits to minimize problems with garbage. Other Forest users also create garbage, and they, like a baiter, are required to properly remove or dispose of it.

# ETHICS

## GENERAL COMMENTS (801) [341 total comments]

The overwhelming majority of respondents who specifically addressed the ethics of bear baiting said they found it "unethical," "inhumane," and "unsporting." Reasons ranged from "animals are sentient beings...with a right to live their lives unmolested" to hunters "should have to work for their prey the same as any predator." Some respondents likened the practice to "shooting fish in a barrel." Another reminded that baiting "goes against bear policy which is not to feed bears human food." One comment which reflects the sentiments of over 300 comments is "Bear baiting is unnecessary, cruel, polluting, and exceedingly offensive to the large majority of national forest users."

Some respondents indicated that "bear baiting is not an 'ethics' problem." Others stated that baiting is a traditional, ethical and sportsmanlike hunting method.

### Suggestions:
* Several respondents point out that baiting for other species has been outlawed for ethical reasons and urged the ban be extended to bear baiting.
* One said that the Fish and Wildlife Service used a policy of fair chase and ethical conduct in regulating hunting on national wildlife refuges and urged the Forest Service to do the same.

### Response

It is not within the authority of the Forest Service to regulate hunting methods. People who feel baiting is unethical, inhumane, and unsporting can work with the hunting community and State agencies to express their concerns.


# ECOSYSTEM MANAGEMENT

## GENERAL COMMENTS (EM 901) [16 total comments]

The majority of comments in EM 901 stated that bear baiting has negative implications for ecosystem management. However, most of the comments were general in nature, indicating that bear baiting disrupts the social and ecological balance of the forest environment, and stresses populations of bears. However, a few respondents made more detailed comments. One respondent noted that "[bear baiting] pulls bears from their normal range to sites of increased vulnerability, it causes un-natural congregations of animals, it detrimentally alters bears behavior including intra and interspecific relationships." Another noted that "bear baiting is inconsistent with the USFS's ecosystem management policy... bear baiting is neither biologically sound nor socially acceptable..."

Two respondents stated that bear baiting does not have environmental impacts. One commented that bear baiting does not degrade bear habitat or negatively affect animal populations, acknowledging that such impacts do not occur when the practice is used in a responsible manner.

### Response

Ecosystem management is based on sustainability and recognizing that people are part of the ecosystem. The purpose of the Forest Service is to promote the sustainability of ecosystems and to provide excellent public service through conservation leadership. Our land ethic is to promote the sustainability of ecosystems by ensuring their health, diversity, and productivity. Baiting, where

properly regulate, is not known to affect ecological processes. The final policy clearly reflects the purpose and mission of the Forest Service.

## BIOLOGICAL DIVERSITY (EM 902) [3 total comments]

There was no consensus among the comments. One respondent commented that "there are obviously no biological reasons to further regulate bear baiting." Another stated that "...bear baiting leads to imbalances in national forest ecosystem..." Neither respondent elaborated on their comments.

*Response*

Refer to comments for 901

## ECOLOGICAL PROCESSES (EM 903) [19 total comments]

All respondents noted that bear baiting has negative effects on ecological processes. The majority of the comments were substantive in nature. Two respondents noted that bear baiting can "fragment" bear habitat, forcing bears to congregate/concentrate in smaller areas, resulting in increased stress and/or mortality. Several others addressed the behavioral changes associated with bear baiting, including "altering their patterns of habitat use," and "pulling bears...from normal ranges and feeding patterns." One respondent commented that "[Bear baiting] subjects bears to 'unnatural' congregation patterns, interactions and relationships resulting in additional psychological stress. These impacts are all potentially significant ecological impacts.".

Two respondents stated that such behavorial changes may result in long-term effects to bears.

*Response*

Bear baiting does not fragment habitat. Placing of baits does not alter the habitat as only a small site is used and the habitat is not altered. Baits are distributed throughout large areas where baiting is done on National Forest System Lands so are not likely to "pull" bears out of their ranges or even concentrate a lot of bears in one spot such as the older type garbage dumps did. With baiting being a temporary situation, once the bait is removed it is no longer affecting bear behavior.

# ECONOMICS

## ALL COMMENTS (1001-1003) [45 total comments]

Most of the responses centered around three aspects:
* Hunters put a lot of money into conservation and wildlife management.
* Poachers use baiting as an efficient way to secure bears for parts.
* Tax dollars should not be used to implement a baiting program.

One respondent indicated that in Wyoming black bear hunting directly generates over $2.5 million annually, with nearly 27,000 recreation days spent on it each year. Another respondent stated that "bears kill domestic livestock and hunters should be allowed to bait bears to help control the population." Another said eliminating

29

baiting would eliminate most black bear hunting, with a resulting loss of license fees. Another "can understand the killing of wildlife for subsistence," but not for any other reason except protection of life or property.

**Suggestions:**

* "Have us pay a fee to preserve the animals, to negate the need to generate revenue from hunting licenses to kill them."
* "Close roads! This would give more monies to actually help bear ---what with disappearing habitat an all."
* (Not directly related to the current proposal) "The problem of bear poaching needs to be addressed.

*Response*

It is recognized that hunters put a lot of money into conservation and wildlife management. Tax dollars spent on implementing the policy would be limited to coordination with the States. The Forest Service would not spend money on the direct implementation or administration of the baiting programs as that would be done by the States who are funded out of hunting and fishing licenses. Black bear hunting does generate income to the States and local economies. The determination as to whether to continue to hunt black bears rest with the State agencies and not the Forest Service.