Dana M. Johnson, Idaho Bar #8359
Wilderness Watch
P.O. Box 9623
Moscow, Idaho 83843
Tel: (208) 310-7003
danajohnson@wildernesswatch.org

Matthew K. Bishop, *pro hac vice*
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59603
Tel: 406-324-8011
bishop@westernlaw.org

Peter M.K. Frost, *pro hac vice*
Sangye Ince-Johannsen, applicant, *pro hac vice*
Western Environmental Law Center
120 Shelton McMurphey Boulevard, Ste. 340
Eugene, Oregon 97401
frost@westernlaw.org
sangyeij@westernlaw.org
tel: 541-359-3238 / 541-778-6626

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, et al., | Case No. 1:19-cv-00203-CWD |
| Plaintiffs, | **[PROPOSED] AMENDED AND SUPPLEMENTAL COMPLAINT** |
| v. | |
| U.S. FOREST SERVICE, et al., | |
| Defendants. | |

1.       Plaintiffs WildEarth Guardians, Wilderness Watch, Western Watersheds, and Friends of the Clearwater (collectively, "Guardians") hereby respectfully file suit seeking declaratory and injunctive relief. Defendant U.S. Forest Service ("Forest Service") and Defendant U.S. Fish and Wildlife Service ("Fish and Wildlife") have violated and continue to violate Section 7 of the Endangered Species Act ("ESA") by failing to reinitiate and complete consultation to ensure the Forest Service does not jeopardize the continued existence of grizzly bears related to the use of bait to hunt black bears in national forests in Idaho and Wyoming. The Forest Service has also violated and continues to violate Section 7 by making irreversible or irretrievable commitment of resources that have the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate Section 7. The Forest Service has also violated and continues to violate Section 7 by issuing food closure orders that exempt bear baiting in certain national forests. The Forest Service and Fish and Wildlife have also violated Section 7 and the Administrative Procedure Act ("APA") by unlawfully rescinding a biological opinion related to Forest Service regulation of the use of bait in national forests.

Jurisdiction and Venue.

2.       The Court has jurisdiction over certain claims pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(c) & (d), and over other claims because they involve a federal question. 28 U.S.C. § 1331.

3.       On December 19, 2018, Guardians served the Forest Service and Fish and Wildlife with notice of intent to sue under Section 11 of the ESA for failing to reinitiate consultation under Section 7. More than 60 days have elapsed since the Forest Service and Fish and Wildlife received notice.

1

4.      On April 3, 2019, Guardians served the Forest Service and Fish and Wildlife with supplementary notice of intent to sue under Section 11 of the ESA, detailing additional reasons why reinitiation of consultation is required, and notifying them of other potential claims. More than 60 days have elapsed since the Forest Service and Fish and Wildlife received supplementary notice.

5.      On August 6, 2020, Guardians served the Forest Service and Fish and Wildlife with notice of intent under Section 11 of the ESA, notifying them that their rescission of the biological opinion was unlawful. More than 60 days have elapsed since the Forest Service and Fish and Wildlife received that notice.

6.      The relief Guardians seeks is authorized by the ESA, the Declaratory Judgment Act, and the Administrative Procedure Act ("APA"). 16 U.S.C. § 1540; 28 U.S.C. §§ 2201 & 2202; 5 U.S.C. § 706(2)(A) & (D).

7.      Venue is proper in this Court pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e), and acts complained of herein occurred in this district.

8.      Final agency action that is subject to judicial review exists under the APA. 5 U.S.C. § 704; 5 U.S.C. § 551(13).

Parties.

9.      Plaintiff WildEarth Guardians is non-profit conservation group with offices in Santa Fe, New Mexico; Denver, Colorado; Missoula, Montana; Portland, Oregon; and Tucson, Arizona. Guardians' mission is to protect and restore wildlife, wild places, and wild rivers in the West. Its mission encompasses ensuring the long-term survival and recovery of grizzlies bears in the contiguous United States, including in Idaho and Wyoming. Guardians has over 4,500 members.

Many of Guardians' members live in or visit Idaho, or live in or visit Wyoming. Some of Guardians' members are hunters. Guardians' members have been, and continue to be, injured by the Forest Service's allowance of black bear baiting on national forests in Idaho and Wyoming, by the Forest Service's and Fish and Wildlife's failure to reinitiate and complete consultation as to the effects on grizzly bears of black bear baiting, and by the Forest Service's failure to prepare a supplemental environmental analysis of those effects. Guardians' members' injuries are based on professional, educational, inspirational, personal, aesthetic, and recreational interests. The Forest Service and Fish and Wildlife have caused these injuries, and the Court can redress them.

10.     Plaintiff Western Watersheds Project ("Western Watersheds") is a non-profit conservation group headquartered in Idaho, with offices and staff in Idaho, Arizona, California, Montana, Oregon, Wyoming, and Utah. Western Watersheds is dedicated to protecting and conserving the public lands and natural resources of watersheds in the American West. Western Watersheds has over 1,200 members. Some of the Western Watersheds' members are hunters. Western Watersheds' staff and members use grizzly habitat in Idaho and in Wyoming for recreation, scientific study, and aesthetic purposes, and will continue to do so in the future. Western Watersheds' members have been, and continue to be, injured by the Forest Service's allowance of black bear baiting on national forests in Idaho and Wyoming, by the Forest Service's and Fish and Wildlife's failure to reinitiate and complete consultation as to the effects on grizzly bears of black bear baiting, and by the Forest Service's failure to prepare a supplemental environmental analysis of those effects. Western Watersheds' members' injuries are based on professional, educational, inspirational, personal, aesthetic, and recreational interests. The Forest Service and Fish and Wildlife have caused these injuries, and the Court can

redress them.

11.     Plaintiff Wilderness Watch is a non-profit conservation organization headquartered in

Missoula, Montana with offices in Idaho and Minnesota. Wilderness Watch's mission is the

preservation and proper stewardship of lands and rivers in the National Wilderness Preservation

System and the National Wild and Scenic Rivers System, including protecting wildlife and

ecosystems in their natural, untrammeled state. Wilderness Watch has a long history of advocacy

to preserve the wilderness character of wilderness areas within Idaho and Wyoming, including

advocating to ensure wilderness-compatible hunting practices, protecting grizzly bear

populations, and re-establishing grizzly bears in the Selway-Bitterroot Wilderness and Bitterroot

grizzly ecosystem. Wilderness Watch has over 2,000 members, some of whom are hunters, and

many of whom live in or visit Idaho and Wyoming. Wilderness Watch's staff and members

frequent grizzly habitat in Idaho and in Wyoming for recreation, scientific study, and aesthetic

purposes, and will continue to do so in the future. Wilderness Watch's members have been, and

continue to be, injured by the Forest Service's allowance of black bear baiting on national forests

in Idaho and Wyoming, by the Forest Service's and Fish and Wildlife's failure to reinitiate and

complete consultation as to the effects on grizzly bears of black bear baiting, and by the Forest

Service's failure to prepare a supplemental environmental analysis of those effects. Wilderness

Watch's members' injuries are based on professional, educational, inspirational, personal,

aesthetic, and recreational interests. The Forest Service and Fish and Wildlife have caused these

injuries, and the Court can redress them.

12.     Plaintiff Friends of the Clearwater ("Friends") is a non-profit conservation organization

based in Moscow, Idaho. Friends is dedicated to protecting national forests and public lands of

[Proposed] Amended and Supplemental Complaint, No. 1:19-cv-00203-CWD

the Clearwater River Basin and surrounding areas in north-central Idaho. Friends has actively advocated to protect grizzlies through ending bear-baiting by sponsoring free public-education presentations about the grizzly in Idaho, publishing articles about grizzlies and the impacts of bear-baiting in its newsletter, gathering grizzly sightings information from the public agencies in the region, producing letters and reports to agencies about the threat bear-baiting poses to grizzlies, and participating in public-involvement processes that affect grizzlies and their habitat.

13.     Defendant U.S. Forest Service is a federal agency within the U.S. Department of Agriculture. It is required to comply with all federal laws that relate to the national forest system.

14.     Defendant U.S Fish and Wildlife Service is a federal agency within the U.S. Department of the Interior. It is required to comply with the ESA.

Facts.

15.     The grizzly bear (*Ursus arctos horribilis*) is native to the contiguous United States. In the early 1800s, an estimated 50,000 grizzly bears existed in the contiguous United States. In 1922, thirty-seven separate grizzly bear populations existed in the contiguous United States. By 1975, thirty-one of the thirty-seven populations in the contiguous United States had been extirpated.

16.     In 1975, Fish and Wildlife listed the grizzly bear in the contiguous United States as threatened with extinction under the ESA. 40 Fed. Reg. 31,734 *et seq*. (July 28, 1975). In its listing decision, Fish and Wildlife found that by 1975, grizzly bears in the contiguous United States were then "confined to isolated regions" in Montana, Idaho, and Wyoming. In its listing decision, Fish and Wildlife found that the building of new roads and trails into formerly inaccessible grizzly habitat resulted in making grizzlies "more accessible to legal hunters, illegal poachers, human-bear conflicts, and livestock-bear conflicts."

[Proposed] Amended and Supplemental Complaint, No. 1:19-cv-00203-CWD

17.     Currently, grizzly bears in the contiguous United States are categorized as part of six

ecosystems. These include the Cabinet-Yaak ecosystem, the Northern Cascades ecosystem, the

Northern Continental Divide ecosystem, the Selkirk ecosystem, and the Greater Yellowstone

ecosystem. The estimated population of grizzlies in each ecosystem varies. Currently, an

estimated 50 grizzly bears exist in the Cabinet-Yaak ecosystem. Currently, an estimated 80

grizzlies exist in the Selkirk ecosystem. Currently, an estimated 1,100 grizzlies exist in the

Northern Continental Divide ecosystem. Currently, an estimated 717 grizzlies exist in the

Greater Yellowstone ecosystem. Currently, no grizzlies are estimated to exist in the Bitterroot

ecosystem.

18.     The Bitterroot ecosystem in Idaho is one of the largest contiguous blocks of federal land

in the contiguous United States. The Bitterroot ecosystem includes two wilderness areas. The

Bitterroot ecosystem could support more than 300 grizzly bears. Establishing a population of

grizzly bears in the Bitterroot ecosystem would contribute to conservation and recovery of the

grizzly bear in the contiguous United States. A physical pathway to establishing grizzly bears in

the Bitterroot ecosystem is grizzly bears dispersing from the Northern Continental Divide

ecosystem. A physical pathway to establishing grizzly bears in the Bitterroot ecosystem is

grizzly bears dispersing from the Greater Yellowstone ecosystem.

19.     Within the range of grizzly bears in the contiguous United States, two states allow

hunters to use bait to hunt black bears: Idaho and Wyoming. Grizzly bears and black bears share

habitat in national forests in Idaho. Grizzly bears and black bears share habitat in national forests

in Wyoming.

[Proposed] Amended and Supplemental Complaint, No. 1:19-cv-00203-CWD

20.     The Forest Service has discretion whether to allow use of bait to hunt in national forests. The Forest Service has discretion whether to prohibit use of bait to hunt in national forests. The Forest Service has discretion whether to place conditions on use of bait to hunt in national forests.

21.     Some black bear hunters who hunt in national forests in Idaho or Wyoming use bait to hunt black bears. Some black bear hunters use bait including breads, doughnuts, or dog food mixed with syrup. Some black bear hunters place bait in perforated barrels. Some black bear hunters who use bait pour grease on the ground around the bait site, so black bears will step in the grease and leave scent trails for other black bears to cross and follow to the bait site. Grizzly bears may smell or detect bait used for hunting from a distance of up to 10 miles.

22.     Through the early 1990s, eleven states, including Idaho and Wyoming, authorized hunters to use bait. From the 1960s through 1992, some national forests required both individual hunters and commercial guides who served hunters to obtain a special use permit to use bait. The Bridger-Teton, the Bighorn, and the Shoshone National Forests in Wyoming include grizzly bear habitat. Through 1992, at least these three national forests required hunters and guides to obtain special use permits to use bait, or issued closure orders to prohibit use of bait in certain areas.

23.     In March 1992, the Regional Foresters for the Rocky Mountain and Intermountain Regions decided to discontinue requiring special use permits for non-commercial hunting using bait in national forests in Wyoming. In March 1992, the Regional Foresters for the Rocky Mountain and Intermountain Regions issued a joint closure order prohibiting black bear baiting in national forests in Wyoming except where allowed, and with certain conditions.

[Proposed] Amended and Supplemental Complaint, No. 1:19-cv-00203-CWD

24.     On February 19, 1993, the Forest Service issued an Environmental Assessment ("EA")
under NEPA to evaluate certain effects of the use of bait in national forests. The proposed action
in the 1993 EA is that the Forest Service, through a Memorandum of Understanding ("MOU")
with the Wyoming Game and Fish Commission, would regulate noncommercial bear baiting on
National Forest System lands through State Game Regulations. The 1993 EA requires mitigation
measures for all alternatives. The mitigation measures include no bear baiting in the grizzly bear
recovery zone. The mitigation measure include no bear baiting outside of the grizzly bear
recovery zone where the Forest Service prohibits improper storage of food in grizzly bear
habitat.

25.     In March 1993, the Forest Service prepared a Biological Evaluation under Section 7(a)(2)
of the ESA to assess whether the proposed alternative in the EA would affect ESA-listed species,
including grizzly bears. On April 6, 1993, the Forest Service requested consultation with
Defendant U.S. Fish and Wildlife Service ("Fish and Wildlife") under ESA Section 7(a)(2) to
obtain its opinion as to the effects of its actions on ESA-listed species.

26.     Between 1967 and 1993, five grizzlies were killed at black bear bait sites in Wyoming.

27.     On April 14, 1993, Fish and Wildlife issued a Biological Opinion related to Forest
Service administration of the placement of baits on Forest Service lands in Wyoming for the
purpose of hunting. In the Biological Opinion, Fish and Wildlife specified conservation
recommendations to minimize or avoid adverse effects of the proposed action on grizzly bears.
Fish and Wildlife recommended the Forest Service consider closing all areas known to be used
regularly by grizzly bears to all black bear baiting. Fish and Wildlife recommended the Forest

8

Service use emergency closure orders to close smaller, more specific areas to baiting when a grizzly bear has been verified in an area otherwise open for baiting.

28.     The Biological Opinion is accompanied by an Incidental Take Statement. The Incidental Take Statement specifies terms and conditions to minimize the potential take of grizzly bears due to baiting on national forests in Wyoming. One condition is to eliminate the use of processed human, livestock, or pet foods, and fruits and vegetables produced for human consumption as bear baits in any areas regularly used by grizzly bears. One condition is to eliminate the requirement that hunters, outfitters, or guides who report a grizzly bear on a legally placed bait remove the bait. The Incidental Take Statement establishes an amount or extent of authorized incidental take. The Incidental Take Statement authorizes no incidental take of grizzly bears due to the use of bait in national forests. The Incidental Take Statement provides that if a single such take occurs, the Forest Service must reinitiate consultation with Fish and Wildlife.

29.     The Forest Service and the State of Wyoming entered into an MOU related to the use of bait in national forests in Wyoming. The Forest Service implemented a closure order prohibiting the use of bait for black bear hunting in the grizzly bear recovery zone. The Forest Service implemented a closure order prohibiting the use of bait in food restriction areas on the Wind River Ranger District, Shoshone National Forest, Wyoming. The Forest Service implemented a closure order prohibiting hunting of black bears with non-natural baits in grizzly habitat in Wyoming not covered by other closure orders.

30.     In April 1993, the Forest Service issued a Decision Notice under NEPA to adopt an alternative from the 1993 EA. Subsequently, the Forest Service rescinded the Decision Notice.

[Proposed] Amended and Supplemental Complaint, No. 1:19-cv-00203-CWD

The Forest Service's rescission of the Decision Notice did not change the effect of the Forest Service's prior closure orders. The Forest Service's prior closure orders remain in effect.

31.     Between 1993 and 1994, the Forest Service closed to baiting an area on the Greybull District, Shoshone National Forest. In March, 1994, the Forest Service issued an order prohibiting the hunting of black bear with the use of any bait within the grizzly bear recovery area. In March, 1994, the Forest Service prohibited the hunting of black bear with the use of bait in areas under a food storage restriction order. In March, 1994, the Forest Service prohibited the use of non-natural baits in any area occupied by grizzly bears and not covered by provisions of the order related to the grizzly bear recovery area and food storage order .

32.     In April 1994, the Forest Service published an interim national policy that generally leaves to states whether to authorize bait in national forests, subject to oversight and regulation by the Forest Service. In March 1995, the Forest Service prepared an EA to consider permanently adopting the national policy.

33.     Staff from Fish and Wildlife and the Forest Service traded or circulated comments on draft revisions to the proposed national policy.

34.     On February 13, 1995, the Forest Service wrote Fish and Wildlife that it was in the process of preparing a national policy on the use of bait in national forests.

35.     On February 27, 1995, Fish and Wildlife wrote a response to the Forest Service's February 13, 1995 letter. Fish and Wildlife stated that it had "reviewed the proposed policy and our biological opinion of April 14, 1993, concerning black bear baiting on National Forest Service lands in Wyoming. We believe that the two documents are compatible (I.e., neither document requires actions that are inconsistent with the other document)."

36.     In or around March, 1995, the Forest Service sent an undated letter to Fish and Wildlife related to the use of bait in national forests. On March 14, 1995, Fish and Wildlife wrote a letter in response to the undated Forest Service letter.

37.     On March 20, 1995, the Forest Service adopted the national policy as a rule.

38.     The State of Wyoming prohibits the use of bait to hunt black bears in wilderness areas in national forests. The State of Wyoming prohibits the use of bait to hunt black bears in the primary conservation area for grizzly bears. The primary conservation area for grizzly bears is equivalent to the recovery area for grizzly bears. The State of Wyoming prohibits the use of bait in certain black bear hunt areas. The State of Wyoming does not prohibit the use of bait to hunt black bears in all parts of national forests in Wyoming that grizzlies inhabit. The State of Wyoming does not prohibit the use of bait to hunt black bears in all parts of national forests in Wyoming where grizzlies may be present. The State of Wyoming authorizes the use of bait to hunt black bears in parts of the demographic monitoring area for grizzly bears.

39.     The State of Idaho prohibits use of bait to hunt black bears in certain game management units that grizzly bears inhabit. The State of Idaho prohibits use of bait to hunt black bears in certain game management units where grizzly bears may be present. The State of Idaho does not prohibit use of bait to hunt black bears in certain game management units that grizzly bears may inhabit. The State of Idaho does not prohibit use of bait to hunt black bears in all areas grizzly bears inhabit. The State of Idaho does not prohibit use of bait to hunt black bears in designated wilderness. The use of bait to hunt black bears occurs in designated wilderness in the State of Idaho.

[Proposed] Amended and Supplemental Complaint, No. 1:19-cv-00203-CWD

40.     The State of Idaho authorizes the use of bait to hunt black bears in grizzly bear habitat in national forests between the Greater Yellowstone ecosystem and the Bitterroot ecosystem. The State of Idaho authorizes the use of bait to hunt black bears in grizzly bear habitat in national forests between the Northern Continental Divide ecosystem and the Bitterroot ecosystem.

41.     The Caribou-Targhee National Forest in Idaho and Wyoming adjoins Yellowstone and Grand Teton National Parks to the south and west. In January, 2010, the Caribou-Targhee National Forest issued a food closure order for areas of the forest from March 1 to December 1, annually. The food closure order generally prohibits "[p]ossessing or storing any food or refuse, except as specified in this Order." The food closure order exempts "[p]ersons in the act of placing black bear baits for the lawful purpose of hunting black bears under state law and regulation." Grizzly bears inhabit areas subject to the food closure order.

42.     The Idaho Panhandle National Forest in Idaho includes lands between the Northern Continental Divide ecosystem and the Selway-Bitterroot ecosystem. In September, 2011, the Idaho Panhandle National Forest issued a food closure order for areas in the forest. The food closure order provides that no person shall provide food of any kind to any wildlife species. The food closure order provides that "[p]ersons with a permit specifically authorizing the otherwise prohibited act or omission" are exempt from the order. Grizzly bears inhabit areas subject to the food closure order.

43.     The Bridger-Teton National Forest in Wyoming borders Grand Teton National Park to the southeast. The Shoshone National Forest in Wyoming borders Grand Teton and Yellowstone National Parks to the east. In June, 2016, the Bridger-Teton National Forest in Wyoming, bordering Grand Teton National Park to the southeast, and the Shoshone National Forest,

[Proposed] Amended and Supplemental Complaint, No. 1:19-cv-00203-CWD

bordering Grand Teton and Yellowstone National Parks to the east, in Wyoming issued a food closure order. The food closure order provides that "[a]ll food and refuse must be acceptably stored or acceptably possessed during daylight hours." The food closure order exempts from its provisions "[p]ersons in the act of placing black bear baits for the lawful purpose of hunting black bears under state law and regulation." Grizzly bears inhabit areas subject to the food closure order.

44.     The Forest Service has issued other food closure orders for areas in national forests that may be inhabited by grizzly bears, and has exempted bait for hunting from those orders.

45.     From 2006 to 2018, hunters killed 32,343 black bears in Idaho. Of these black bears, 13,292 were killed at bait sites. Hunters used bait to take black bears on the Idaho Panhandle National Forest in Idaho. Hunters used bait to take black bears on the Caribou-Targhee National Forest in Idaho.

46.     In 2017, hunters killed 467 black bears in Wyoming. The State of Wyoming allows black bears to be hunted in a fall season. The State of Wyoming allows black bears to be hunted in a spring season. Approximately one-fourth of black bears taken during the fall black bear hunting season in Wyoming are taken using bait. Approximately 80% of the black bears taken during the spring hunting season are taken using bait. Black bears emerging from hibernation are attracted to bait. Hunters have taken black bears using bait in the Shoshone National Forest in Wyoming. Hunters have taken black bears using bait in the Bridger-Teton National Forest in Wyoming.

47.     On May 5, 1996, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear in the Shoshone National Forest near Dubois, Wyoming.

[Proposed] Amended and Supplemental Complaint, No. 1:19-cv-00203-CWD

48.     On May 6, 2000, a licensed hunter seeking black bears shot and killed a grizzly bear near Deer Creek in the Shoshone National Forest in Wyoming.

49.     On May 8, 2000, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear near Owl Creek in the Shoshone National Forest in Wyoming.

50.     On April 24, 2001, a licensed bow hunter seeking black bears and using bait shot and killed a grizzly bear in Rock Springs Canyon in Wyoming.

51.     On June 9, 2002, a licensed hunter seeking black bears shot and killed a grizzly bear in the Leidy Creek drainage in the Bridger-Teton National Forest in Wyoming.

52.     On May 26, 2003, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear near Middle Fork Owl Creek in the Shoshone National Forest in Wyoming.

53.     On May 1, 2004, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear on state lands near Grass Creek in Wyoming.

54.     On May 10, 2004, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear near Sweeney Creek in Elkheart Park on Bureau of Land Management lands in Wyoming.

55.     On May 4, 2006, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear near the South Fork of Owl Creek on private land in Wyoming.

56.     On May 28, 2007, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear on Dutch Joe Creek in the Bridger-Teton National Forest in Wyoming.

57.     On September 3, 2007, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear in the North Fork Clearwater River watershed in what was then the Nez

[Proposed] Amended and Supplemental Complaint, No. 1:19-cv-00203-CWD

Perce National Forest in Idaho. The site of the killing is outside of the grizzly bear recovery area. This was the first grizzly bear that had been verified since 1946 in the Bitterroot ecosystem.

58.     On May 7, 2008, a licensed hunter seeking black bears shot and killed a grizzly bear in the North Fork Shoshone drainage in the Shoshone National Forest in Wyoming.

59.     On May 25, 2008, a licensed hunter seeking black bears shot and killed a grizzly bear near Cliff Creek in the Bridger-Teton National Forest in Wyoming.

60.     On May 27, 2008, a licensed hunter seeking black bears shot and killed a grizzly bear near the Clarks Fork River in the Shoshone National Forest in Wyoming.

61.     On May 24, 2009, a licensed hunter seeking black bears shot and killed a grizzly bear near Newton Creek in the Shoshone National Forest in Wyoming.

62.     On June 14, 2008, a licensed hunter seeking black bears shot and killed a grizzly bear near Reef Creek in the Shoshone National Forest in Wyoming.

63.     On August 26, 2009, a licensed hunter seeking black bears shot and killed a grizzly bear in the Deadman Creek drainage in the Bridger-Teton National Forest in Wyoming.

64.     On May 13, 2010, a licensed hunter seeking black bears shot and killed a grizzly bear on state lands near Grass Creek in Wyoming.

65.     On May 7, 2014, a licensed hunter seeking black bears shot and killed a grizzly bear off Cave Falls Road in the Caribou-Targhee National Forest in Idaho.

66.     On September 30, 2015, a licensed hunter seeking black bears and using bait shot and killed a grizzly bear on private land adjacent to the Idaho Panhandle National Forest in Idaho. The grizzly bear was radio-collared. The grizzly bear had been transplanted into the Cabinet-Yaak ecosystem in northwestern Montana, and had moved into Idaho.

15

[Proposed] Amended and Supplemental Complaint, No. 1:19-cv-00203-CWD

67.     On May 5, 2016, a licensed hunter seeking black bears shot and killed a grizzly bear along Timber Creek in the Caribou-Targhee National Forest in Wyoming.

68.     On September 9, 2016, a licensed hunter using a bow and seeking black bears shot and killed a grizzly bear along the Wind River in the Shoshone National Forest in Wyoming.

69.     These incidents are under-inclusive of grizzly bears shot and killed over black bear bait in national forests in Idaho and Wyoming, because some deaths are not reported.

70.     In 2018, a grizzly bear from the Cabinet Mountains in Montana crossed the Clark Fork River. On September 9, 2018, this grizzly bear was reported at a black bear baiting site on private land in Idaho. Federal and state wildlife agencies removed the grizzly bear and released it into the Cabinet Mountains in Montana. The grizzly bear later returned to the same black bear baiting site. It was reported at the site on September 13, 2018. The grizzly bear then returned to Montana.

71.     In 2018, Idaho Fish and Game removed one grizzly bear in eastern Idaho documented to be attracted to or dependent on human food sources. Separately, in 2018, Idaho Fish and Game killed one grizzly bear in eastern Idaho that had become attracted to or dependent on human food sources.

72.     In June, 2019, a grizzly bear was discovered in the Kelly Creek drainage in the Nez Perce-Clearwater National Forests in Idaho. The grizzly bear was discovered by a licensed hunter who was stocking a black bear bait site with food. The grizzly bear visited at least three black bear baiting sites. The State of Idaho urged licensed black bear hunters to use caution when selecting targets in the area. In July, 2019, the grizzly bear migrated into the Selway-Bitterroot

16

[Proposed] Amended and Supplemental Complaint, No. 1:19-cv-00203-CWD

Wilderness. The bear was seen heading south in the Cayuse Creek drainage. This area is a part of the Bitterroot ecosystem.

73.    Public records of grizzly bear mortalities due to black bear hunting do not always identify precise locations of mortalities. Public records of grizzly bear mortalities due to black bear hunting do not always identify whether each black bear hunter used bait.

74.    Since 1995, new information demonstrates potential adverse impacts on grizzly bears and black bears associated with the use of bait to hunt black bears. The best commercial and scientific data available demonstrate that baiting for black bears can concentrate wildlife, which can spread disease and result in intra- and inter-specific aggression.

75.    Baiting for black bears can change grizzly movement and travel patterns.

76.    Baiting for black bears can influence grizzly denning behavior.

77.    Baiting for black bears can undermine grizzly habitat security.

78.    Baiting for black bears can result in a higher number of female grizzly bear mortality.

79.    Baiting for black bears can negatively affect non-target wildlife species.

80.    Baiting for black bears can create food conditioning in grizzly bears.

81.    Baiting for black bears can habituate grizzly bears to human sources of food and lack of fear of humans, elevating the risk of human-bear conflict.

82.    Black bear bait is or can become potentially toxic to grizzly bears. Some black bear bait candy contains Theobromine, which is toxic to bears, or becomes toxic with spoilage.

83.    The grizzly bear demographic monitoring area for grizzly bears in the contiguous United States is larger geographically than the grizzly bear recovery area. Grizzly bears in the contiguous United States are found on national forest lands in Idaho and Wyoming outside of the

17

grizzly bear demographic monitoring area. Grizzly bears have been observed or seen in areas outside of the grizzly bear recovery area and grizzly bear demographic monitoring area (see attached map).

84.    On June 26, 2020, the Forest Service and Fish and Wildlife traded letters dated the same day and agreed the Forest Service's actions related to bear baiting in national forests in the 1990s did not require consultation under Section 7(a)(2) of the ESA.

Claims for Relief.

Claim One: Endangered Species Act.

85.    Guardians realleges all previous paragraphs.

86.    To comply with Section 7(a)(2) of the ESA, the Forest Service and Fish and Wildlife must reinitiate and complete consultation where discretionary federal involvement or control over the action has been retained or is authorized by law and new information reveals effects of the action that may affect listed species in a manner or to an extent not previously considered. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.16(b). This requirement applies to both formal and informal consultation. *Forest Guardians v. Johanns*, 450 F.3d 455, 458 (9th Cir. 2006). New information exists that reveals effects of the action that may affect grizzly bears in a manner and to an extent not previously considered in the Biological Opinion or subsequent agency analyses. Among other things, published after the Biological Opinion and concurrence show that black bear baiting can cause many harmful effects on grizzly bears. The Forest Service and Fish and Wildlife have unlawfully failed to reinitiate and complete consultation based on this and other new information.

18

87.     To comply with Section 7(a)(2) of the ESA, the Forest Service and Fish and Wildlife

must reinitiate and complete consultation where discretionary federal involvement or control

over the action has been retained or is authorized by law and the amount or extent of taking

specified in the incidental take statement is exceeded. 16 U.S.C. § 1536(a)(2); 50 C.F.R. §

402.16(a). *Forest Guardians v. Johanns*, 450 F.3d 455, 458 (9th Cir. 2006). The amount and

extent of take of grizzly bears specified in the Incidental Take Statement in national forests has

been exceeded. The Forest Service and Fish and Wildlife have unlawfully failed to reinitiate and

complete consultation on this basis.

88.     After the Forest Service received the Biological Opinion, and after the Forest Service

rescinded the 1993 Decision Notice, the Forest Service implemented terms and conditions in the

Incidental Take Statement to minimize potential take of grizzly bears. In the context of

consultation as to the effects of the Forest Service's issuance of the national policy in 1995, Fish

and Wildlife based its response as to jeopardy in part on its assessment in the Biological

Opinion.  In the context of consultation as to the effects of the Forest Service's issuance of the

national policy in 1995, Fish and Wildlife based its response as to the potential for take of grizzly

bears on the continuing efficacy, implementation, and requirements of the terms and conditions

in the Incidental Take Statement. Fish and Wildlife's determination as to the effects on grizzly

bears of the national policy was based on the continuing efficacy and implementation of the

terms and conditions in the Incidental Take Statement.

89.     Federal agency action existed under Section 7(a)(2) of the ESA when the Forest Service

acted in 1993 related to the use of bait in national forests. Federal agency action existed under

Section 7(a)(2) of the ESA when the Forest Service entered into an MOU, and when it

19

implemented closure orders and other measures to prohibit or limit the use of bait in habitat for grizzlies in national forests. Federal agency action existed under Section 7(a)(2) of the ESA when the Forest Service acted in 1995 related to the use of bait in national forests. Federal agency action continues to exist as to implementation and monitoring of the national policy, implementation of closure orders, and effects on grizzly bears. The agencies' actions to seek to rescind the Biological Opinion are unlawful.

90.      After consultation under Section 7(a)(2) of the ESA is complete, the ESA and its implementing regulations provide the mechanism to modify or rescind a Biological Opinion: reinitiating consultation. 50 C.F.R. § 402.16. The Forest Service and Fish and Wildlife violated the ESA by rescinding the Biological Opinion without complying with procedural requirements. Their actions are, among other things, "not in accordance with law," 5 U.S.C. § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C); and/or "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

91.      To comply with Section 7(d) of the ESA, after reinitiating consultation under Section 7(a)(2), the Forest Service shall make no irreversible or irretrievable commitment of resources with respect to the agency action that has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternatives that would avoid violating Section 7(a)(2). 16 U.S.C. § 1536(d). This prohibition is in force during the consultation process and continues until the requirements of Section 7(a)(2) are satisfied. 50 C.F.R. § 402.09. The Forest Service has unlawfully violated Section 7(d) by making irreversible or irretrievable commitments of resources related to black bear baiting that has the effect of foreclosing

20

formulation and implementation of reasonable and prudent alternatives, in the period before the

Forest Service and Fish and Wildlife have completed reinitiated consultation.

Relief Sought.

1.      Declare that the Forest Service and Fish and Wildlife have violated and continue to

violate Section 7(a)(2) of the ESA as alleged;

2.      Vacate the Forest Service and Fish and Wildlife's letters rescinding the Biological

Opinion and Incidental Take Statement;

3.      Order the Forest Service and Fish and Wildlife to reinitiate and complete consultation

under Section 7(a)(2) of the ESA;

4.      Enjoin the Forest Service to issue closure orders for the use of bait for hunting in areas of

national forests in Idaho and Wyoming where grizzly bears may be present.

5.      Grant such other relief that Plaintiffs may subsequently request and this Court deems just

and appropriate.

Date: October 26, 2020.          Respectfully submitted,

/s/ Peter M. K. Frost
Peter M. K. Frost, *pro hac vice*
Dana M. Johnson, ISB #8359
Matthew K. Bishop, *pro hac vice*
Sangye Ince-Johannsen, applicant, *pro hac vice*
Attorneys for Plaintiffs

