UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| WILDEARTH GUARDIANS, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. FOREST SERVICE, et. al.,<br><br>Defendants. | Case No. 1:19-cv-00203-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendants' second motion to dismiss Plaintiffs' amended complaint, and Plaintiffs' related motion to file an amended and supplemental complaint. (Dkt. 38, 43.) Defendants United States Forest Service and United States Fish and Wildlife Service maintain that this dispute is now moot, and, consequently, the Court lacks subject matter jurisdiction.

The Court conducted a video hearing on December 17, 2020. After careful consideration of the record, the parties' arguments, and relevant legal authorities, the

**MEMORANDUM DECISION AND ORDER - 1**

Court will deny the motion to dismiss, and grant Plaintiffs' motion to amend and supplement the complaint.

## BACKGROUND

This matter concerns the effect on grizzly bears of the use of bait to hunt black bears in national forests in Idaho and Wyoming. "Baiting" entails placing food, salt, or manufactured scents in a fixed location to attract the wildlife to the hunter, rather than to have the hunter travel through the environment searching for the wildlife. 60 Fed. Reg. 14,720 (Mar. 20, 1995). The practice of placing bait is considered a hunting activity subject to state law and regulations, and the United States Forest Service (USFS) acknowledges the States' traditional role in managing fish and wildlife. *Id.*

Prior to 1993, some forest service units issued "special use permits . . . to regulate baiting" in certain National Forests, even though the USFS determined that "the issuance of special use permits [was] not appropriate" to regulate baiting. *Id.*; *see also* Am. Compl. ¶ 17 (Dkt. 12); 36 C.F.R. § 251.50(c) (exempting "hunting" from the requirements for a special use authorization). On March 23, 1992, the USFS replaced its special use permit regime in Wyoming with a "closure" order that established conditions for bear baiting generally on Forest System lands in Wyoming, and prohibited the practice altogether in specified grizzly bear management areas and within set distances of various amenities, such as open water, residences and roads. *Fund for Animals, Inc. v. Thomas*, 127 F.3d 80, 81 (D.C. Cir. 1997).[1] In response to a lawsuit challenging the regulatory change on the

---

[1] *Fund for Animals* involves the same national policy under consideration here. The parties cited *Fund for Animals* in support of and in opposition to the motion.

**MEMORANDUM DECISION AND ORDER - 2**

ground that the USFS had failed to prepare an EIS as required by NEPA, the USFS agreed to temporarily return to issuing special use permits as part of a settlement agreement, pending a NEPA analysis. *Id.* (*See also* Dkt. 40-7 at 4.)

Per the settlement agreement, the USFS prepared an environmental assessment dated February 19, 1993, (1993 EA),[2] that proposed regulating noncommercial bear baiting on National Forest System lands located in Wyoming through state game regulations via a memorandum of understanding with the Wyoming Game and Fish Commission (the preferred alternative). (Dkt. 40-7.) The 1993 EA considered also four alternative options for regulating bear baiting on Forest System lands in Wyoming, including whether to continue issuing special use permits. (Dkt. 40-7 at 3.)

The USFS requested formal consultation with the United States Fish and Wildlife Service (FWS) under Section 7 of the Endangered Species Act. (Dkt. 40-2 at 1.) On April 1 and 2, 1993, representatives from the Rocky Mountain and Intermountain regions of the USFS signed a Decision Notice and Finding of No Significant Impact (FONSI), implementing a modified version of the preferred alternative, which contained provisions requiring certain practices to be followed vis-à-vis bear baiting in Wyoming. (Dkt. 40-2 at 3.) Thereafter, on April 14, 1993, the FWS issued a Biological Opinion (1993 BiOp) analyzing the preferred alternative as well as the four other alternatives. (Dkt. 40-2.)

In the 1993 BiOp, the FWS concluded that none of the alternatives considered in the 1993 EA were likely to jeopardize the continued existence of the grizzly bear. The

---

[2] The 1993 EA is in the record at Docket 40-7.

**MEMORANDUM DECISION AND ORDER  - 3**

1993 BiOp did, however, set out specific, non-discretionary conditions to avert the remote possibility that a grizzly bear would be taken as a result of black bear baiting. Because of the potential for incidental take, together with the conclusion that the FWS did not anticipate that take would occur, "no incidental take" was authorized. Should any incidental take occur, the 1993 BiOp required the USFS to "reinitiate formal consultation with the [FWS] and provide the circumstances surrounding the take." (Dkt. 40-2 at 7.)

The new policy, applicable only to Wyoming, was never implemented because the USFS, under threat of further litigation, declared a temporary ban on all bear baiting on Forest System lands in Wyoming while it prepared a comprehensive national baiting policy. *Fund for Animals, Inc. v. Thomas*, 127 F.3d 80, 82 (D.C. Cir. 1997).[3] The 1993 EA and FONSI were rescinded, although the closure orders prohibiting bear baiting on Forest System lands in Wyoming remained effective. (Dkt. 40-4 at 1.) *See also* Use of Bait in Hunting, 59 FR 11765-01 (Mar. 14, 1994).

On March 14, 1994, the USFS published an interim national policy that adopted, on a national scale, the approach proposed for Wyoming in the 1993 policy. *See* 59 Fed. Reg. 11,765 (Mar. 14, 1994); 59 Fed. Reg. 17,758 (Apr. 14, 1994). The interim policy proposed to leave to the states the responsibility for regulating bear baiting as a hunting practice, subject to federal oversight should it be determined that state regulations governing the practice of bear baiting would not protect resources in an area adequately,

---

[3] In 1993, in addition to Wyoming, the states of Alaska, Idaho, Oregon, Maine, Michigan, Minnesota, New Hampshire, Utah, Washington, and Wisconsin authorized baiting as a method of hunting black bears and had regulations controlling the practice. (Dkt. 40-1 at 7.) Currently, only Idaho and Wyoming allow the use of bait to hunt black bears. Am. Compl. ¶ 15. (Dkt. 12.)

**MEMORANDUM DECISION AND ORDER - 4**

or otherwise be in conflict with federal laws, such as the Endangered Species Act (ESA). Use of Bait in Hunting, 59 Fed. Reg. 11,765 (Mar. 14, 1994). If a conflict occurred, or state regulations were determined to be insufficient to protect resources, an authorized USFS officer could close an area to baiting. *Id.*

On March 28, 1994, a suit was filed in the United States District Court for the District of Columbia challenging the interim policy, and the USFS agreed to withdraw it and return to the previous policy which prohibited bear baiting altogether on federal land in Wyoming and left the practice to state regulation elsewhere. Use of Bait in Hunting, 59 FR 17758-02 (Apr. 14, 1994). Accordingly, on April 14, 1994, the USFS issued a notice of withdrawal of the interim policy and a request for public comment on a proposed national policy which generally tracked the interim policy. Use of Bait in Hunting, 59 Fed.Reg. 17,758 (Apr. 14, 1994).

On February 23, 1995, the USFS prepared a Biological Evaluation (1995 BiOp) of the proposed national policy. The 1995 BiOp acknowledged the earlier 1993 BiOp, stating that the 1993 BiOp should "still be a current assessment of effects" from the proposed national policy. (Dkt. 40-3 at 1.) The USFS concluded in the 1995 BiOp that the proposed national policy "will programmatically benefit (is not likely to adversely affect) the bald eagle, gray wolf and grizzly bear on NFS lands (excluding Wyoming)." (Dkt. 40-3 at 2.) In Wyoming, the USFS concluded that the March 1993 BiOp "determined that bear baiting on NFS lands in Wyoming was not likely to adversely effect [sic] the bald eagle and gray wolf, but may affect the grizzly bear." (Dkt. 40-3 at 2.)

**MEMORANDUM DECISION AND ORDER - 5**

The USFS requested that the FWS review the 1993 BiOp in light of the proposed new national policy to determine if the FWS concurred with the USFS that the actions the USFS had taken to protect the grizzly bears were still adequate. (Dkt. 40-4 at 1.) The FWS responded on February 27, 1995: "The proposed National Policy appears to be consistent with our biological opinion of April 14, 1993, and no information has become available to suggest that additional terms and conditions are necessary at this time." (Dkt. 40-5 at 1.)

Thereafter, the FWS stated in a March 14, 1995 Letter of Concurrence: "[W]e concur in your determination that the proposed national policy on baiting is not likely to adversely affect federally listed species." (Dkt. 40-6 at 1.) The USFS then issued an EA (1995 EA) in which it concluded that the environmental consequences of implementing the proposed policy "would be negligible," noting that the proposed policy "provides safeguards in all States allowing baiting."[4] (Dkt. 40-1 at 15, 16.)

On March 15, 1995, the Forest Service issued a "Decision Notice and Finding of No Significant Impact" which adopted the proposed national baiting policy and concluded that "an environmental impact statement is not needed" because its "actions are not a major Federal action, individually or cumulatively, and will not significantly affect the quality of the human environment." *Fund for Animals, Inc. v. Thomas*, 127

---

[4] These safeguards include the ability for an authorized officer to determine on a site specific basis whether the practice of bear baiting should be prohibited or restricted on National Forest lands, and would allow for closure orders to restrict the use of bait in an area. (Dkt. 40-1 at 5, 6, 11.)

MEMORANDUM DECISION AND ORDER - 6

F.3d 80, 82 (D.C. Cir. 1997); *see also* Use of Bait in Hunting, 60 FR 14722 (Mar. 20, 1995). The USFS published the final policy on March 20, 1995, stating:

> Having considered the comments received, the Forest Service is adopting a final policy on the use of bait on National Forest System lands. The policy retains the long-standing reliance on State regulation of baiting resident game. Where State law and regulation permit baiting the practice is permitted on National Forest System lands unless the authorized officer determines on a site specific basis that the practice conflicts with Federal laws or regulations, or forest plan direction, or would adversely affect other forest uses or users.

60 Fed.Reg. at 14,722 (Mar. 20, 1995).

With respect to the protection of grizzly bears, the USFS stated that, "[i]f State regulations are adequate to protect grizzly bears or any other threatened or endangered species, no action is needed by the Forest Service. The final policy will not allow any practices that would endanger any species." Use of Bait in Hunting, 60 Fed.Reg. at 14,722. The policy included reference to management practices to prohibit or eliminate baiting for black bear hunting in certain areas, according to the Interagency [Grizzly Bear] Guidelines. *Id.* The language of the final policy follows:

> **Use of Bait for Resident Game Hunting.** The use of bait for the purpose of taking resident game on National Forest System lands is a hunting practice.
> The practice is prohibited on National Forest System lands where State hunting regulations prohibit its use. Where States permit the use of bait for attracting resident game, this activity is allowed on National Forest System lands, subject to State hunting laws and regulation, unless the authorized officer determines on a site-specific basis that there is a need to prohibit or restrict the practice.

Use of Bait in Hunting, 60 Fed.Reg. at 14,722 (Mar. 20, 1995).

**MEMORANDUM DECISION AND ORDER  - 7**

After publication of the final national policy, on June 21, 1995, several environmental groups challenged the policy, claiming that the USFS: (1) violated the ESA by failing to formally consult with FWS regarding the policy; and (2) violated NEPA by failing to first prepare an EIS. *See Fund for Animals v. Thomas*, 932 F. Supp. 368, 370 (D.D.C. 1996), *aff'd* 127 F.3d 80. On August 8, 1996, the district court granted summary judgment to the USFS, rejecting both claims. *Id*. at 371. The plaintiffs appealed the decision.

On October 17, 1997, the United States Court of Appeals for the D.C. Circuit affirmed the district court's judgment. The court held that, "[t]o the extent that there was an ESA consultation obligation, the Forest Service and FWS fulfilled it by engaging in 'informal consultation.'" *Fund for Animals*, 127 F.3d at 84. The court also found that the national policy was "not a major federal action" for NEPA purposes, such that the Forest Service had "no EIS obligation." *Id*. at 83. The court stated in dicta that, if promulgation of the policy constituted inaction, "there most probably would have been no 'agency action' to trigger the ESA consultation requirement." *Id.* at 84 n.6. But, the question of whether the 1995 policy constituted agency action triggering the ESA's Section 7's consultation requirement was not squarely before the Court.

Plaintiffs filed a complaint in this Court on June 5, 2019, against USFS and FWS, which was amended on July 19, 2019. Plaintiffs allege that numerous grizzly bears have been taken due to hunting black bear using bait in national forests in Idaho and Wyoming, exceeding the level of permissible incidental take set forth in the 1993 BiOp

**MEMORANDUM DECISION AND ORDER  - 8**

and triggering the duty to reinitiate consultation. Plaintiffs allege also that the EA is

outdated, and significant new information exists requiring its supplementation.

The complaint seeks to compel supplemental processes under the ESA and NEPA

regarding the 1995 USFS policy. In the two-count complaint, Plaintiffs contend: (1) both

the USFS and FWS have failed to reinitiate consultation under the ESA; and (2) the

USFS has failed to supplement its prior NEPA analysis.[5]

In their first motion to dismiss, filed on November 15, 2019, Defendants asserted

Count I failed to state a prima facie claim for relief against FWS,[6] because FWS does not

have the authority to reinitiate consultation under the ESA. The USFS asserted Count II

must be dismissed pursuant to *Fund for Animals v. Thomas*, 127 F.3d 80, 83-84 (D.C.

Cir. 1997), which adjudicated whether the USFS policy constituted a "major federal

action" triggering the duty to prepare an EIS under NEPA, concluding that it was not.

Thus, the USFS contended there was no major federal action remaining to occur, and it

had no duty to supplement the EA under NEPA.

The Court issued a memorandum decision on May 7, 2020, granting in part and

denying in part Defendants' motion to dismiss. Count I was allowed to proceed against

the FWS based upon the narrow holding that, under the ESA, the duty to reinitiate

consultation lies with both the action agency and the consultation agency, such that FWS

was a proper defendant. With respect to Count II, the Court relied upon *Fund for*

---

[5] The Complaint and Amended Complaint do not contain material differences with respect to the two claims for relief.
[6] Count I was alleged against both USFS and FWS for failure to reinitiate formal consultation under the ESA. The USFS did not dispute that it was a proper defendant in Count I for purposes of the motion to dismiss.

**MEMORANDUM DECISION AND ORDER - 9**

*Animals*, in which the D.C. circuit court held the USFS complied with NEPA, and found the informal consultation process the USFS undertook under the ESA was adequate. The Court therefore held that, upon approval of the national policy in March of 1995, "[t]here [was]…no ongoing or proposed federal action that require[d] supplementation" of the 1995 EA under NEPA. Consequently, Count II was dismissed in its entirety.

On June 26, 2020, the USFS withdrew its requests for consultation on the proposed 1993 policy regarding bear baiting on Forest Service lands in Wyoming and the 1995 national policy, and requested that the 1993 BiOp, its associated incidental take statement ("ITS"), and the March 14, 1995 Letter of Concurrence concerning the national policy, be withdrawn by the FWS. (Dkt 38-2.) The USFS requested withdrawal on the grounds that: (1) the ESA does not require a BiOp and incidental take statement for an agency action that was not implemented, and which was rescinded in 1993 shortly after it was proposed; and (2) there was no agency action in 1995 for purposes of the ESA, as suggested in *Fund for Animals,* such that informal consultation was not required at the time the national policy was adopted. *Id.*

In response, the FWS agreed that the 1993 BiOp and associated incidental take statement are not operative and are without effect, and that the 1993 BiOp and ITS, together with the March 14, 1995 Letter of Concurrence, should be withdrawn. In a letter dated June 26, 2020, the FWS formally withdrew the 1993 BiOp, the associated ITS, and the 1995 Letter of Concurrence. (Dkt. 38-3 at 2.) The FWS also independently concluded that there was no basis for it to request reinitiation of consultation. (Dkt 38-3 at 3.)

**MEMORANDUM DECISION AND ORDER - 10**

Defendants USFS and FWS move again to dismiss Count I of the amended complaint, this time contending that Plaintiffs' claim premised upon the alleged failure to reinitiate consultation, which in turn is based upon the ITS in the 1993 BiOp, is moot due to its recent withdrawal. In response, Plaintiffs assert that Defendants' rescission of the 1993 BiOp and ITS is unlawful; agency action existed from 1993 to the present, supporting their allegation that Defendants must reinitiate consultation; and they ask the Court to deny the motion to dismiss and order Defendants to produce their administrative records. In conjunction with their opposition, Plaintiffs filed a motion to amend and supplement the complaint, indirectly challenging the Defendants' withdrawal of the 1993 BiOp. (Dkt. 43, 46.)

## LEGAL STANDARDS

Defendants move to dismiss Count I against FWS and USFS pursuant to Fed. R. Civ. P. 12(b)(1), which authorizes the Court to dismiss claims over which it lacks subject matter jurisdiction, and pursuant to Fed. R. Civ. P. 12(b)(6), which allows the Court to dismiss a claim if the complaint fails to state a claim upon which relief can be granted.

Rule 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. Issues of mootness are properly advanced through a Rule 12(b)(1) motion. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By

contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

The distinction is critical, because Rule 12(b)(1) factual attacks, as opposed to Rule 12(b)(1) facial attacks, permit the Court to "look beyond the complaint...without having to convert the motion into one for summary judgment." *Id.*; *see also White*, 227 F.3d at 1242. Here, Defendants do not argue that Plaintiffs' complaint, standing alone, is insufficient to invoke this Court's subject matter jurisdiction. To the contrary, Defendants contend that factual developments occurring after the filing of the complaint have extinguished this Court's subject matter jurisdiction. Accordingly, the Court may look beyond the Plaintiffs' complaint in determining whether it currently possesses the constitutional authority to adjudicate this dispute, and may consider the June 2020 letters exchanged by the USFS and the FWS. (Dkt. 38-2, 38-3.)

Rule 12(b)(6), in contrast, tests the form and sufficiency of a statement of a claim. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court generally should not consider materials outside the complaint and pleadings. *See*

MEMORANDUM DECISION AND ORDER - 12

*Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). The Court "may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

A court may take judicial notice of a fact that is "not subject to reasonable dispute" in that the fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicially-noticeable documents include the "records of state agencies and other undisputed matters of public record." *Disabled Rights Action Comm. v. Las Vegas Events, Inc*., 375 F.3d 861, 866 n.1 (9th Cir. 2004). Judicial opinions and other court records are properly subject to judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001), *abrogated on other grounds as stated in Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Specifically, the Court may judicially notice the existence of another court's decision—which includes the stated reasoning of the authoring court as well as the date of the decision—and other filings made in the case, but not the facts recited in that decision or other filings. *Id.*

Here, Plaintiffs have attached to their opposition documents upon which the amended complaint and proposed amended and supplemental complaint rely, and which are referenced in the Federal Register and *Fund for Animals*, as noted above. The Court

**MEMORANDUM DECISION AND ORDER - 13**

therefore finds it proper to consider the materials attached to Plaintiffs' opposition to the motion to dismiss.

## ANALYSIS

Mootness is a jurisdictional issue requiring the Court to determine whether a case or controversy exists under Article III of the Constitution. *Maldonado v. Lynch*, 786 F.3d 1155, 1160 (9th Cir. 2015). A case must present a live controversy to resist dismissal for mootness. *Maldonado*, 786 F.3d at 1160. "The party asserting mootness bears the burden of establishing that there is no effective relief that the court can provide*." Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006). The burden to establish mootness is heavy. "[A] case is not moot where *any* effective relief may be granted." *Forest Guardians*, 450 F.3d at 461 (emphasis in original).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc*., 568 U.S. 85, 91 (2013). Thus, a case becomes moot when "changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *Gator.com Corp. v. L.L. Bean, Inc*., 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc).

As such, the critical mootness inquiry is whether "it is impossible for a court to grant any effectual relief" to the prevailing party. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). To this end, the mere cessation of the conduct complained of by Plaintiffs is insufficient to moot their claims as long as "effective relief may still be available to

**MEMORANDUM DECISION AND ORDER - 14**

counteract" the conduct's detrimental effects. *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001).

There are exceptions to the general rule that a court is without subject matter jurisdiction to adjudicate a moot lawsuit. At issue here is the voluntary cessation exception, which provides that a court is not without jurisdiction to adjudicate a dispute by virtue of a defendant's "voluntary cessation of allegedly illegal conduct...unless it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Fikre v. F.B.I.*, 904 F.3d 1033, 1037 (9th Cir. 2018) (internal citations, quotations, and alterations omitted).[7]

Plaintiffs' claim in Count I under the ESA is not moot merely because the USFS purported to withdraw its requests for consultation, and the USFS purported to withdraw or rescind the 1993 BiOp and 1995 Letter of Concurrence. This is because the 1993 BiOp provides a basis for promulgation of the 1995 national policy, and the rule adopting the policy has not been rescinded. As explained above, the USFS prepared a biological evaluation in 1995 which expressly incorporated the opinions expressed in the earlier 1993 BiOp. Evident from the Court's review of the two is that the 1993 BiOp considered the effect on species of a federal policy leaving the regulation of bear baiting to the state of the Wyoming, while the 1995 BiOp considered the effect of a proposed national policy

---

[7] The other exception is for those disputes that are capable of repetition yet evading review, providing that a court is not without jurisdiction to adjudicate a dispute when "the challenged action was ... too short to be fully litigated prior to its cessation or expiration" and "there [is] a reasonable expectation that the same complaining party w[ill] be subjected to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). Neither party invokes this exception.

**MEMORANDUM DECISION AND ORDER - 15**

on species in states other than Wyoming. Also relevant is that the 1995 EA expressly

references both the 1993 and 1995 BiOps as support for the USFS's conclusion that the

national policy provides safeguards in all states that allow bear baiting. (Dkt. 40-1.) And,

there was a clear distinction made between the effects of a national policy related to bear

baiting upon grizzly bears in Wyoming, versus the effects of a national bear baiting

policy upon grizzly bears in other states where bear baiting is allowed.

The cases cited by Defendants for the proposition that this lawsuit is now moot

because the conduct complained of has ceased are inapposite. This is because the 1995

national policy, which in turn is supported by the conclusions reached in the 1993 BiOp

with respect to the effects of such a policy upon grizzly bears in Wyoming, has not been

rescinded. In fact, the conclusions are specifically incorporated in the 1995 BiOp. (Dkt.

40-3 at 1-2.) Consequently, the challenged activity has not voluntarily ceased.

To illustrate, *Sierra Club v. U.S. Fish and Wildlife Serv.*, No. 2:20-cv-13-FtM-

38NPM, 2020 WL 6161488 (M.D. Fla. Oct. 21, 2020), the case relied upon by

Defendants in support of their mootness argument, has no application here. (Dkt. 47.) In

*Sierra Club*, the FWS's authorization pursuant to a categorical exclusion under NEPA to

proceed with a road project, together with the proposal to build an underpass for wildlife

crossing, was withdrawn. The FWS rescinded the BiOp, which contained a finding that

the road project would adversely impact the Florida Panther, and formally terminated the

authorization to continue with the road project such that the Florida Department of

Transportation could not proceed without the preparation of entirely new environmental

**MEMORANDUM DECISION AND ORDER - 16**

analyses. Accordingly, the court dismissed the plaintiffs' challenge to the road project as moot. *Id.*

Here, in contrast, the 1995 national policy, which was formally adopted by rule, is still in effect.[8] And, according to the amended complaint and the proposed amended and supplemental complaint, its provisions are being carried out via food closure orders in areas of the national forest in both Idaho and Wyoming. (*See* Dkt. 46, ¶¶ 41, 42.) Thus, according to Plaintiffs' allegations, the proposed action continues.

For the same reasons, the Court finds Defendants' argument that Plaintiffs have failed to state a claim for failure to reinitiate consultation under the ESA fails. Defendants contend they cannot undertake a mandatory duty to reinitiate consultation when the underlying consultation documents have been withdrawn. Plaintiffs argue in response, and in their supplemental complaint allege, the withdrawal of the 1993 BiOp and 1995 Letter of Concurrence was improper. Plaintiffs assert also that that there was agency action for purposes of the ESA in 1993, which is continuing with the enforcement of the 1995 national policy. Thus, it is not clear to the Court at this time whether the withdrawal of these documents had any effect, given the 1995 national policy has not been rescinded, which in turn is premised upon the 1995 BiOp and the 1995 EA. Both of these underlying documents appear to incorporate by reference the 1993 BiOp. And, neither the 1995 BiOp nor the 1995 EA has been withdrawn.[9]

---

[8] Thus, although not decided here, it is questionable whether the UFS's "rescission" of the 1993 BiOp and 1995 Letter of Concurrence had any legal effect.

[9] The 1995 BiOp actually has the 1993 BiOp as an attachment. (Dkt. 40-3 at 2.) The 1995 EA attaches the March 1995 Letter of Concurrence. And the 1995 EA expressly references the 1993 BiOp previously completed on the practice of baiting in Wyoming. (Dkt. 40-1 at 15.)

The Court finds also that Plaintiffs' proposal to supplement the complaint with the allegations regarding improper rescission of the 1993 BiOp and 1995 Letter of Concurrence are properly considered in connection with Plaintiffs' challenge in Count I under the ESA. Fed. R. Civ. P. 15(d) allows the Court discretion to permit a party to serve a "supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Leave to permit supplemental pleading is favored, although it cannot be used to introduce a "separate, distinct and new case of action." *Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997).

The Court finds Plaintiffs are not attempting to introduce a distinct cause of action. Instead, there is a clear relationship between the USFS's actions in 2020 purporting to withdraw consultation documents and a biological opinion supporting the rationale for the 1995 national policy, adopted by rule, and the Plaintiffs' allegations challenging the policy with respect to Defendants' failure to reinitiate consultation under the ESA. *See Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988) (allowing supplementation of a complaint where there was a clear relationship between the new and original claims).

Considering the Court will deny Defendants' motion to dismiss, supplementation of the complaint will advance the Court's ability to consider complete relief in one action, and to avoid the cost, delay, and waste of a separate action challenging the 2020 decision to rescind the 1993 BiOp and 1995 Letter of Concurrence before it can reach the merits of Plaintiffs' claim under the ESA. Plaintiffs allege the recent developments attempt to circumvent Plaintiffs' allegations that reinitiation of consultation is required

**MEMORANDUM DECISION AND ORDER - 18**

pursuant to the ESA and also the 1993 BiOp, which in turn appears to be one of the legs of the stool supporting the 1995 national policy regarding bear baiting. The Court has determined that resolution of the question of whether the decisions to withdraw the consultation requests, and to rescind the 1993 BiOp and 1995 Letter of Concurrence, were improper is integral to its future determination whether Plaintiffs' allegations concerning reinitiation of consultation under the ESA have merit.

## CONCLUSION

Based upon the discussion above, the Court finds that this case is not moot, and the Court has jurisdiction to proceed. Further, the Court finds, as it did in its prior memorandum decision and order (Dkt. 35), that Plaintiffs have stated a plausible claim for relief, both as alleged in the amended complaint and proposed amended and supplemental complaint. Plaintiffs allege that "agency action" occurred and continues to occur under Section 7(a)(2) of the ESA with respect to implementation of the 1995 national policy, and allege that new information reveals effects of the action that may affect listed species, thereby requiring reinitiation of consultation. Next, the Court, in the exercise of its discretion, will allow Plaintiffs to file their proposed amended and supplemental complaint. The recent actions taken by Defendants are integral to the reinitiation claim asserted under the ESA, and require resolution in conjunction with any future determination.

To be clear, the Court is not deciding the merits of Plaintiffs' claims, and the question whether there was "agency action" triggering the ESA consultation requirement in the first instance remains unanswered. Nor can the Court determine the answer on a

motion to dismiss without the benefit of the administrative record. *See, e.g., Fund for Animals*, 127 F.3d 80 (deciding challenge under the ESA and NEPA on cross-motions for summary judgment). Therefore, the Court is not determining whether the Defendants' actions in 2020 rescinding the consultation documents comport with applicable law.[10]

Last, the Court declines Defendants' suggestion to stay further proceedings and permit supplemental briefing to address the new allegations concerning the decision to rescind the consultation documents. Plaintiffs have not asserted a separate, distinct cause of action premised upon Defendants' decision to withdraw the 1993 BiOp and 1995 Letter of Concurrence. As discussed above, the Court views resolution of the propriety of Defendants' recent actions as integral to resolving Plaintiffs' main contention under the ESA. Further, Defendants have already filed two motions to dismiss. Accordingly, the present stay of proceedings will be terminated; Plaintiffs may file the proposed amended and supplemental complaint; and Defendants will be directed to file an answer and proceed with compiling the administrative records pertinent to the claims asserted in the amended and supplemental complaint.

---

[10] For instance, if the Court finds there was agency action for purposes of the ESA, it may be that Defendants' 2020 decision to rescind the underlying consultation documents on the basis that there was no agency action was improper.

**MEMORANDUM DECISION AND ORDER - 20**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Defendants' Motion to Dismiss (Dkt. 38) is **GRANTED**.

2)      Plaintiffs' Motion to Amend and Supplement Complaint (Dkt. 43) is

**GRANTED.**

3)      The stay of proceedings (Dkt. 37) is **TERMINATED**.

4)      Plaintiffs are to file their amended and supplemental complaint by **January**

**6, 2021**.

5)      The parties are to meet and confer and propose a scheduling order

governing further proceedings in this matter, and submit the same to the

Court by **January 20, 2021**.

DATED: December 23, 2020

Honorable Candy W. Dale
United States Magistrate Judge