Jeremy E. Clare, D.C. Bar No. 1015688
Safari Club International
501 2nd Street N.E.
Washington, D.C. 20002
Tel: 202-543-8733
Fax: 202-403-2244
jclare@safariclub.org
*Admitted Pro Hac Vice*

Cherese D. McLain, ISB No. 7911
MSBT Law, Chtd.
7699 West Riverside Drive
Boise, ID 83714
Tel: 208-331-1800
Fax: 208-331-1202
cdm@msbtlaw.com

*Attorneys for Defendant-Intervenor Applicant
Safari Club International*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. FOREST SERVICE, et al., <br><br> Defendants, <br><br> and <br><br> SAFARI CLUB INTERNATIONAL, <br><br> Defendant-Intervenor Applicant. | Case No. 1:19-cv-00203-CWD <br><br><br> **MEMORANDUM IN SUPPORT OF SAFARI CLUB INTERNATIONAL'S MOTION TO INTERVENE** |

I.      INTRODUCTION

Defendant-Intervenor Applicant Safari Club International ("Safari Club") is an organization that promotes and supports hunting and sustainable use conservation. Safari Club seeks to intervene in this case to defend the use of bait for black bear hunting on National Forest lands in Idaho and Wyoming. Safari Club also seeks to defend the Endangered Species Act ("ESA") compliance of the U.S. Forest Service and the U.S. Fish and Wildlife Service (collectively "Federal Defendants") associated with the use of bait for black bear hunting on National Forest lands in Idaho and Wyoming. For the reasons described below, Safari Club is entitled to intervene as of right in this case.

Plaintiffs WildEarth Guardians, Western Watersheds Project, Wilderness Watch, and Friends of the Clearwater (collectively "Plaintiffs") initiated this litigation in an attempt to force Federal Defendants to prohibit the use of bait for black bear hunting within National Forest lands in Idaho and Wyoming. Plaintiffs seek to prevent a practice used by many hunters including Safari Club members to harvest black bears. As explained in the attached declarations submitted by Safari Club members, the harvest of bears over bait is an important tool that enables hunters to carefully assess the size, age, and sex of the bear, and can increase the success of bear harvests to better achieve state wildlife management objectives. In their Amended and Supplemental Complaint, Plaintiffs erroneously claim that hunting black bears over bait increases the risk of hunters accidentally harvesting grizzly bears. As explained by Safari Club members who hunt black bears over bait, the opposite is true. The use of bait enables hunters to

2

distinguish a black bear from a grizzly bear and to avoid the accidental harvest of a member of the wrong bear species.

Hunting of predator species like black bear is an important management tool. Wildlife managers rely on hunters to help keep the predator and prey populations in balance and reduce depredation on prey species like elk and deer.  As explained by Safari Club members in the attached declarations, hunting of black bears over bait is a regulated activity that contributes to the conservation of all species on National Forest lands.

Safari Club seeks to join this action to protect Safari Club members' hunting practices, success, and participation in the sustainable-use management of wildlife. Safari Club also seeks to intervene to represent the interests of its members in the outcome of this case and to assist Federal Defendants in demonstrating the legality and conservation benefits of black bear hunting over bait.  If Plaintiffs succeed in this litigation, Safari Club and its members will be irreparably harmed by a loss of opportunities to hunt, guide, and enjoy outdoor activities.  They will be harmed in their efforts to support the sustainable use management and conservation of bears and other wildlife in Idaho and Wyoming.

Safari Club should be granted intervention as of right because: (1) its motion is timely; (2) it has significant interests in the wildlife and hunting opportunities at risk in this case; (3) the outcome of this case could impair the interests of Safari Club and its members in enjoying and pursuing black bear hunting on National Forest lands in Idaho and Wyoming, promoting the sustainable use of wildlife, and managing and conserving black bears, grizzly bears, and prey species; and (4) Federal Defendants do not

necessarily share Safari Club's interests and cannot adequately represent these interests in this litigation.

Alternatively, Safari Club should be granted permissive intervention. Safari Club's proposed defense of this case and the claim in Plaintiffs' Amended and Supplemental Complaint share questions of law and fact, and Safari Club's participation will not unduly delay this case or prejudice any party.

Finally, if the Court should decide not to grant intervention as of right or by permission on any claim or part of this litigation, Safari Club seeks permission to participate in this suit in an amicus status.

## II.   BACKGROUND

### A.   Procedural History and Plaintiffs' Claims

Plaintiffs filed their Complaint on June 5, 2019, an Amended Complaint on July 19, 2019, and an Amended and Supplemental Complaint on January 2, 2021. Dkts. 1, 12, 56. Plaintiffs seek declaratory and injunctive relief, including that the Court "[e]njoin the Forest Service to issue closure orders for the use of bait for hunting in areas of national forests in Idaho and Wyoming where grizzly bears may be present." Am. & Supp. Compl. at 21. Safari Club first moved to intervene in this case on August 23, 2019. Dkt. 16. On September 18, 2019, this court administratively terminated Safari Club's motion to intervene without prejudice, pending resolution of Federal Defendants' first motion to dismiss. Dkt. 27. Following disposition of Federal Defendants' second motion to dismiss, the Court ordered that renewed motions to intervene be filed by February 10, 2021. Dkt. 61.

B.     **Safari Club International**

Safari Club supports and advocates for sustainable use conservation and management of wildlife. Goodenow Decl., Ex. A, ¶ 5. Members of Safari Club hunt black bears and other wildlife on National Forest lands in Idaho and Wyoming, and other members depend on hunting for their livelihoods. As explained in the attached declarations, black bear hunting over bait increases the likelihood of success for Safari Club members' and their ability to determine the size, age, sex, and species of the bear they plan to hunt. Loss of the ability to hunt black bears over bait will diminish the hunting opportunities, enjoyment, and success of Safari Club members. The loss of harvest over bait as a component of black bear hunting will likely reduce the success of these hunts and will undermine the ability of Safari Club members to assist the Idaho and Wyoming game authorities in managing black bears and other wildlife species through regulated sustainable use.

For example, Safari Club member John Malison has hunted black bears over bait on National Forest lands in Idaho in Units 4a and 4 for about 20 years. Malison Decl., Ex. B, ¶ 6. He hunts from ground blinds, and the use of bait helps him to "watch the bears and observe the sows and cubs, size, color and species of the bears that visit the baits." *Id*. at ¶ 10. The opportunity to take time to observe a bear over bait allows Mr. Malison an even better opportunity to "make sure that [he has] a good and accurate shot" than if he were not using bait. *Id*. at ¶ 12. Mr. Malison encountered a grizzly bear while hunting black bears over bait and, due to the use of bait, he "had adequate time to determine that the bear was a grizzly and not a bear that I would want to harvest." *Id*. at

¶ 14.  According to Mr. Malison, the use of bait is helpful in differentiating between species of bears because of the diversity of bears in the area:

> In Northern Idaho, we have bears of many different colors, and at a quick glance, it is not always easy to determine the species of a bear based on its color.  We have black bears that are colored cinnamon, blonde, brown, and black as well as some two-tone bears.  We know that we can encounter grizzly bears as well, and by baiting we have an opportunity to examine the bears and make certain that we only shoot black bears.

*Id.* at ¶ 15.  Because the use of bait improves the hunter's ability to distinguish between bear species and therefore increases the hunter's chance of success, hunters who use bait to harvest black bears contribute to the sustainable use management of Idaho's wildlife:

> Black bear hunting over bait helps us manage Idaho's black bear population.  Without baiting and hunting, the bear population is likely to grow.  Our game populations are dealing with multiple predators including wolves, grizzlies, lions and black bear.  Proper management of our black bear population through hunting prevents big game depredation problems and unwanted human/bear contact issues.  Baiting is an excellent way for hunters to help the Idaho Department of Fish and Game keep the black bear population in check.

*Id*. at ¶ 19.  Mr. Malison has definite plans to hunt black bear over bait in the upcoming bear season. *Id.* at ¶ 18.  If hunting over bait was prohibited on National Forest land, it would hurt his ability to hunt black bears in Idaho, participate in sustainable use management of black bears, and help conserve Idaho's wildlife including grizzly bears and other game species. *Id*. at ¶ 21.

Similarly, Safari Club member Albert Veilleux hunts black bear with bait each year in unit 16A in central Idaho in Nez Perce National Forest.  He intends to do so again in 2021.  Veilleux Decl., Ex. C, ¶¶ 6, 12.  Mr. Veilleux uses bait to hunt because, among other reasons, it "provides opportunities for viewing and selecting mature boars.  Female

bears with cubs and juvenile bars can be carefully observed while larger more mature bears are selected for harvest." *Id.* at ¶ 7; *see also id.* at ¶ 8 (describing how using bait allows for accurate and humane shots). Mr. Veilleux prefers using bait to hunt black bears compared to spot and stalk hunting because it provides a more "controlled setting" without unknown variables that can influence a hunter's ability to make an unobstructed shot. *Id.* at ¶ 9. Although Mr. Veilleux has not encountered a grizzly bear while hunting black bears in Idaho, he "firmly believe[s] that there is far less chance of misidentifying a grizzly bear as a black bear while hunting over bait where unobstructed lanes offer clear visibility of the bears." *Id.* at ¶ 11.

Safari Club member Travis Bullock hunts and guides for black bear hunts on National Forest lands in north/central Idaho. Bullock Decl., Ex. D, ¶ 6. Use of bait helps Mr. Bullock and his clients hunt older male bears and allows them to ensure they are not taking sows or cubs. *Id*. at ¶ 7. Use of bait also helps them "to participate in Idaho Department of Fish and Game's management of [the state's] black bear populations" and the conservation of prey species like deer and elk that are impacted by predation from black bears, grizzlies, and other predator species. *Id*. at ¶¶ 10–13. Mr. Bullock has definite plans to hunt black bears over bait on National Forest lands in the future. *Id*. at ¶ 9. Prohibiting the use of bait for black bear hunting would harm Mr. Bullock's personal interests and the hunts of all those he guides, as well as his "ability to help with the management of black bears and the conservation of Idaho's ungulate populations." *Id*. at ¶ 14.

These declarants describe the importance of harvest of black bears over bait to their hunting success, their ability to selectively hunt black bears, and their opportunity to avoid accidental harvest of grizzly bears. The declarations also demonstrate how hunting black bears over bait enables these Safari Club members to participate in the sustainable use management of black bears and the wildlife species on which black bears prey. Unless able to continue harvest black bears over bait, these and other Safari Club members, and Safari Club as an organization, will be harmed in their support for sustainable use management and conservation of wildlife.

### III. ARGUMENT

#### A. Safari Club Should Be Granted Intervention as of Right under Federal Rule of Civil Procedure 24(a)

Safari Club should be entitled to intervene as a matter of right based on Safari Club's and its members' significant interests at risk in this lawsuit and Federal Defendants' inability to adequately represent those interests. Under the Federal Rules of Civil Procedure, the Court must allow intervention by an applicant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

The Ninth Circuit has provided a four-part test for evaluating an applicant's entitlement to intervene as of right:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction

>which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (citation omitted). The Court should "construe Rule 24(a) liberally in favor of potential intervenors." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006). In *Maughan v. Vilsack*, an Idaho federal district court granted a similar motion seeking to defend Safari Club's[1] interests in hunting in a case that challenged wolf removal from National Forest lands. No. 4:14-cv-00007-EJL, 2014 WL 12605649, *2 (D. Idaho July 25, 2014). Just as in *Maughan v. Vilsack*, Safari Club meets all four criteria for intervention as of right under Rule 24(a), and its motion to intervene should be granted.

### 1. The Motion to Intervene Is Timely

Although this lawsuit was initiated in 2019, it is still in the earliest stages. Federal Defendants have not yet filed an Answer to the Amended and Supplemental Complaint or lodged the Administrative Record. Further, Safari Club's motion meets the February 10, 2021 deadline set by the Court for motions to intervene. Dkt. 61. "Timeliness is to be determined from all the circumstances," *NAACP v. New York*, 413 U.S. 345, 366 (1973), and the passage of time alone is not determinative of timeliness, *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). Under the circumstances of this case, this motion is timely.

---

[1] Safari Club was joined by Rocky Mountain Elk Foundation in its motion to intervene.

### 2. Safari Club Has Significant Protectable Interests in the Subject Matter of this Action

Safari Club meets the second criteria for intervention of right by claiming a significant protectable interest in the subject of this action, which is hunting black bears over bait. "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (internal quotation and citation omitted). An applicant satisfies this test by demonstrating an "interest protected by some law and related to the plaintiff's claim." *Ctr. for Biological Diversity v. Kelly*, No. 1:13-cv-00427-EJL, 2014 WL 4104166, *6 (D. Idaho Aug. 15, 2014) (adopting report and recommendation) (finding that association demonstrated sufficient interest in its members' continued access to National Forest for recreational activities, which would likely be reduced if the plaintiffs succeeded, and county sufficiently demonstrated economic interest in users' access to National Forest lands).

Safari Club has met this test by demonstrating its members' interests in continuing to hunt black bears over bait, as legally permitted by the laws of Idaho and Wyoming. The interests of Safari Club members in hunting black bears over bait and the organization's interest in promoting sustainable use conservation through hunting are related to and may be directly impact by the outcome of the litigation.

### 3. Safari Club Is So Situated that Disposition of this Proceeding May, as a Practical Matter, Impair or Impede the Ability to Protect its Interests

Any success by Plaintiffs in this case will, as a practical matter, impair or impede Safari Club's ability to protect its interests and the interests of its members. "[I]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Lockyer*, 450 F.3d at 442 (quoting Fed. R. Civ. P. 24, advisory comm. note to 1966 amendment). If Plaintiffs prevail here, Safari Club members will not be able to hunt black bears over bait on National Forest lands in Idaho and Wyoming. These members will lose the opportunities on which they currently rely to carefully examine the age, size, sex, and species of bear before harvest, and their ability to take significant periods of time to distinguish black bears from grizzly bears. They will lose a means of participating in the sustainable use management of black bears and the conservation of other wildlife—particularly wildlife that are prey to black bears. Safari Club, as an organization, will lose an important sustainable use strategy that it supports for the management of black bears in general, and on National Forest lands in Idaho and Wyoming specifically. Safari Club has demonstrated that its "interests are situated such that the disposition of this action may, as a practical matter, impair or impede [its] ability to protect [those] interests." *Maughan*, 2014 WL 12605649, at *2; *Ctr. for Biological Diversity*, 2014 WL 4104166, *5, *7 (concluding that applicants demonstrated impairment because additional environmental assessments and potential changes to ESA critical habitat designations would affect their use of land and impose potential economic costs).

11

### 4. The Existing Parties Do Not Adequately Represent the Interests of Safari Club

As the regulatory authorities responsible for making determinations with respect to natural resource use on National Forests, Federal Defendants cannot adequately represent Safari Club's interests in this litigation. Safari Club's burden to show inadequate representation is "minimal." *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (an applicant need only show "that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal"). Three factors bear on whether an existing party will adequately represent an applicant's interests: (1) whether an existing party "will undoubtedly make all of the intervenor's arguments"; (2) whether an existing party "is capable of and willing to make such arguments"; and (3) "whether the intervenor offers a necessary element to the proceedings that would be neglected." *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)). The inadequate representation test is typically met when the existing defendant is a federal agency and the applicant is a private party asserting its personal interests in the action. *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) ("Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public."), *abrogated on other grounds*, *Wilderness Soc'y*, 630 F.3d at 1180.

Here, Safari Club and its members possess specific interests in hunting black bears over bait. Safari Club's members are the very members of the public who engage in the

conduct that Plaintiffs seek to prohibit. The public at large does not necessarily or uniformly share the interests of Safari Club and its members.

Turning to the three factors, Federal Defendants will not and cannot make the same arguments as Safari Club.[2] Despite their obligation to defend their actions or inactions, Federal Defendants must approach this task with the perspective of government regulators who manage National Forest lands and who respond to a constituency composed of those who agree and disagree with the concept of using bait to hunt black bears. Their primary roles are to represent the federal government and the public at large, some of whom are obviously hostile to the very idea that hunters use bait to improve their accuracy, success, and ability to determine which bear to harvest. In contrast, Safari Club represents wildlife conservationists and hunters who personally enjoy hunting for black bears and who prefer to use bait to improve their hunting experiences and success. They are business owners whose livelihoods depend on successful and accurate black bear hunting. Safari Club offers a different perspective to this litigation that would not be present absent its participation. It is doubtful that Federal Defendants would be capable of and willing to make all the same arguments that Safari Club will make in this matter, due to their differing perspectives and mandates.

---

[2] As of the date of this filing the Court has not granted intervention to either the state of Idaho or the state of Wyoming. Even though Safari Club expects the states will be permitted to intervene to represent their own interests as regulators of the hunting activities at issue, they would not be able to adequately represent the interests of those whose activities are regulated. Like Federal Defendants, the state agencies represent a diverse constituency composed of those who support and others who oppose the use of baiting and hunting generally.

Moreover, Safari Club and its members represent a necessary element to the proceedings that would otherwise be neglected—the voice of the hunters, whose use of bait to hunt black bear is the underlying conduct that Plaintiffs seek to prohibit. Federal Defendants cannot offer the same personal experiences and explanations as Safari Club's members offer in their declarations.

Many courts, including Idaho district courts, have recognized that the interests of government agencies and private parties are not necessarily coterminous, and that private parties frequently bring a perspective to the litigation that government agencies do not share, even if the agencies and private parties share the same goal of defending an agency decision. Agencies must represent the interests of all citizens when involved in litigation and decision-making. *See, e.g., Forest Conservation Council,* 66 F.3d at 1499; *Maughan*, 2014 WL 12605649, at *3 (finding that the Federal and State governments could not adequately represent Safari Club's interests even though both parties sought to defend government action). While Federal Defendants are likely to defend their decisions that have been challenged in this litigation, they will continue in their regulatory function regardless of the outcome of this lawsuit. Safari Club and its members, however, will not get off so lightly as their continued hunting of black bears over bait will be adversely impacted if Plaintiffs succeed in their underlying attack on the use of bait as a hunting practice. Safari Club therefore possesses significant interests that will not be heard absent its participation and satisfies the "minimal" burden of demonstrating inadequate participation.

### B. Safari Club Also Satisfies Rule 24(b) Permissive Intervention Criteria

In the alternative, Safari Club requests permission to intervene under Rule 24(b). "Permissive intervention under Fed. R. Civ. P. 24(b) requires only that an intervenor's claim or defense share a common question of law or fact with the main action and that the intervention will not 'unduly delay or prejudice the adjudication of the original parties' rights.'" *Ctr. for Biological Diversity*, 2014 WL 4104166, at *9 (quoting Fed. R. Civ. P. 24(b)).[3] In *Center for Biological Diversity*, this Court granted permission to intervene where the proposed intervenors represented "unique perspectives" that "would aid the Court in reaching an 'equitable resolution' in this proceeding," and their motions were sufficiently timely and did not prejudice the existing parties. *Id.* Here, permissive intervention is also appropriate, even if the Court denies Safari Club intervention as of right.

As discussed above, Safari Club's motion to intervene is timely, and Safari Club has a significant protectable interest in the subject matter of this action. *See* Parts III.A.1 and III.A.2. Furthermore, intervention will not unfairly prejudice the parties (*e.g.*, Safari Club will abide by all briefing schedules). The severity of potential impacts upon Safari Club weighs strongly in favor of allowing its participation as a party. Safari Club's defenses for Federal Defendant's actions have multiple questions of law and fact in common with the main action. Safari Club expects to argue, *inter alia*, that Federal

---

[3] Permissive intervention is not a substitute for intervention as of right. If the party qualifies for intervention under Rule 24(a), the Court must grant that status. Fed. R. Civ. P. 24(a).

15

Defendants complied with the ESA.  Safari Club may challenge Plaintiffs' assertions that use of bait to harvest black bears increases the risk to grizzly bears, and Safari Club may demonstrate that use of bait actually enhances grizzly bear conservation efforts.  These are likely to be the major issues between Plaintiffs and Federal Defendants.  Intervenors in the Ninth Circuit satisfy the commonality standard by "assert[ing] defenses of the [challenged agency action] directly responsive to the claims of injunction asserted by plaintiffs."  *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002), *abrogated on other grounds*, *Wilderness Soc'y*, 630 F.3d at 1180.

As the declarations of Safari Club's leadership and members demonstrate, Plaintiffs' success will impair or impede Safari Club's ability to support sustainable use conservation and responsible wildlife management, and its members' abilities to continue to enjoy hunting of black bears over bait and to derive recreational and financial benefit from these outdoor recreational activities on National Forest lands in Idaho and Wyoming.  Accordingly, the Court should exercise its discretion to grant permissive intervention to the extent that it denies intervention of right.

    **C.**    **Amicus Status**

If, for any reason, this Court chooses not to grant Safari Club intervenor status for any portion, stage, or claim of this litigation, Safari Club requests that it be granted amicus status for that portion of the case, with the ability to submit amici arguments at each stage of the litigation.

## IV. CONCLUSION

Safari Club meets all criteria for intervention as of right, and the Court should grant intervention as of right. Safari Club also has demonstrated grounds for permissive intervention, and the Court should grant permissive intervention for any aspect of this case for which it does not grant intervention as of right. Last, for any portion of the case for which the Court cannot grant intervenor status, Safari Club requests permission to participate as an amicus. For the reasons set forth above, Safari Club respectfully requests that the Court grant its motion to intervene.

DATED this 10th day of February 2021.

Respectfully Submitted,

/s/ Jeremy Clare
Jeremy E. Clare, D.C. Bar No. 1015688
Safari Club International
501 2nd Street N.E.
Washington, D.C. 20002
Tel:   202-543-8733
Fax:   202-403-2244
jclare@safariclub.org
*Admitted Pro Hac Vice*

Cherese D. McLain, ISB No. 7911
MSBT Law, Chtd.
7699 West Riverside Drive
Boise, ID 83714
Tel:   208-331-1800
Fax:   208-331-1202
cdm@msbtlaw.com

*Attorneys for Defendant-Intervenor Applicant Safari Club International*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of February 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/* Jeremy Clare
Jeremy E. Clare