Dana M. Johnson, Idaho Bar #8359
Wilderness Watch
P.O. Box 9623
Moscow, Idaho 83843
Tel: (208) 310-7003
danajohnson@wildernesswatch.org

Matthew K. Bishop, *pro hac vice*
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
Tel: 406-324-8011
bishop@westernlaw.org

Peter M. K. Frost, *pro hac vice*
Sangye Ince-Johannsen, *pro hac vice*
Western Environmental Law Center
120 Shelton McMurphey Blvd., Suite 310
Eugene, Oregon 97401
frost@westernlaw.org
sangyeij@westernlaw.org
Tel: 541-359-3238 / 541-778-6626

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. FOREST SERVICE, et al., <br><br> Defendants, <br><br> and <br><br> STATE OF WYOMING, et al., <br><br> Defendant-Intervenor Applicants. | Case No. 1:19-cv-00203-CWD <br><br> PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SAFARI CLUB INTERNATIONAL'S MOTION TO INTERVENE, AND STATEMENT OF NON-OPPOSITION TO SAFARI CLUB INTERNATIONAL'S REQUEST FOR AMICUS CURIAE STATUS (Dkt. 66.) |

# INTRODUCTION

Plaintiffs WildEarth Guardians, Wilderness Watch, Western Watersheds Project, and Friends of the Clearwater ("Guardians") hereby respectfully file this memorandum opposing the motion to intervene filed by Safari Club International. (Dkt. 66.)

In this case, Guardians challenges the failure of the U.S. Forest Service and the U.S. Fish and Wildlife Service ("Federal Defendants") to reinitiate and complete consultation under Section 7 of the Endangered Species Act ("ESA") to ensure the Forest Service does not jeopardize the continued existence of grizzly bears related to the use of bait to hunt black bears in national forests in Idaho and Wyoming. (Dkt. 46, 1.) Guardians also challenges certain other actions of the Forest Service, including its decisions to issue food closure orders in certain areas of national forests, but to exempt placement of bait for hunting from such orders. *Id*. Finally, Guardians challenges Federal Defendants' recent rescission of the Biological Opinion concerning the Forest Service rule regarding the use of bait in national forests. *Id*.

Safari Club seeks to intervene as of right and permissively. (Dkt. 66, 2.) The Court should deny the motion to intervene as of right because Safari Club has failed to demonstrate it has a significant protectable interest in the subject of this case, that the disposition of this case may impair Safari Club's ability to protect its asserted interests, or that its asserted interests will not be adequately represented by Federal Defendants and the State of Wyoming and the Idaho Fish and Game Commission ("States").[1] For many of the same reasons, the Court should deny Safari Club's motion for permissive intervention. In the event this Court denies Safari Club intervenor status, Safari Club requests that it be granted amicus status. (Dkt. 66, 2). Guardians does not oppose this request.

---

[1] Neither Guardians nor Federal Defendants oppose the pending motions to intervene of the State of Wyoming or the Idaho Fish and Game Commission. (Dkt. 62 & 65.)

Plaintiffs' Opposition to Safari Club International's Motion to Intervene, Case No. 1:19-cv-00203-CWD

# ARGUMENT

A.  The Court Should Deny Safari Club's Motion to Intervene as of Right.

An applicant to intervene as of right must prove four criteria: (1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). "Failure to satisfy any one of the requirements is fatal to the application." *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Safari Club appears to assert two interests in this case. First, it "seeks to . . . defend the use of bait for black bear hunting on National Forest lands in Idaho and Wyoming." (Dkt. 66-1, 2.) With respect to this asserted interest, Safari Club fails to establish that the first, second, and fourth criteria for intervention as of right are met. The relative merits of the practice of bear baiting are not at issue in this case, nor will the disposition of this case impair or impede Safari Club's ability to protect any interest in the practice of bear baiting. Moreover, the States have made clear they will adequately represent Safari Club's interest in maintaining the status quo of existing bear baiting in national forests in Idaho and Wyoming.

Second, Safari Club "seeks to defend the [ESA] compliance of the [Federal Defendants] associated with the use of bait for black bear hunting on National Forest lands in Idaho and Wyoming." (Dkt. 66-1, 2.) With respect to this interest, Safari Club fails to establish the fourth criterion for intervention as of right. Under Section 7 of the ESA, the Forest Service must ensure that the continued application of the national policy does not jeopardize the continued existence of grizzly bears, and the Fish and Wildlife Service has the role of opining whether jeopardy may exist, and of setting the amount or extent of permissible take of grizzlies to ensure the national policy does not jeopardize them. Federal Defendants are presumed to adequately represent this asserted interest. Safari Club fails to overcome the presumption of adequate representation.

1. Safari Club's Interests in the Use of Bait Generally Fail to Meet its Evidentiary Burden.

    a. Safari Club Fails to Establish a 'Significant Protectable Interest' in the Subject of this Action.

To have a "significant protectable interest" to support intervention as of right, an applicant to intervene must show an interest "protectable under some law," and "a relationship between the legally protected interest and the claims at issue." *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003). Applicants are not entitled to intervene as of right where there is no relationship between the interest asserted and the claims at issue in the case. *Id*. "An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant." *Donnelly*, 159 F.3d at 410.

Here, Safari Club seeks to intervene in order to "defend the use of bait for black bear hunting on National Forest lands in Idaho and Wyoming." (Dkt. 66-1, 2.) Safari Club devotes much of its memorandum in support of its motion—as well as three declarations—to expound this interest, and assert the merits of hunting black bear over bait. (Dkt. 66-3, 66-4, 66-5.) But whether or not Safari Club's asserted interest in using bait to hunt in black bears in national forest in Idaho and Wyoming is "protectable under some law," this interest is not sufficiently related to the claims in this case. Foremost, the subject of this action is not generally what Safari Club asserts: "hunting black bears over bait." (Dkt. 66-1, 10.) The specific subject of this action is whether Federal Defendants violated the procedural requirements of Section 7 of the ESA, by failing to reinitiate and complete consultation on the effects of the Forest Service's national policy as to the regulation of the use of bait in grizzly habitat in national forests, in the light of numerous instances of grizzly bears being shot over bait. (Dkt. 46, 1.) The answer to this question turns on the legal question of whether the Biological Opinion has legal effect, the factual question of whether the Incidental Take Statement has been exceeded, and the mixed question of law and fact of whether the terms and conditions of the Incidental Take Statement

have been complied with. No more and no less. Any pros and cons to the use of bait for black bear hunting is irrelevant to the merits in this case.[2]

In sum, Safari Club's asserted interest in the use of bait for black bear hunting on National Forest Lands in Idaho and Wyoming is not related to the merits of Guardians' claims or protectable with respect to the relief requested, and therefore is not a "significant protectable interest" sufficient to support Safari Club's motion to intervene as of right.

        b.      Safari Club Fails to Establish that the Disposition of this Action May, as a Practical Matter, Impair or Impede its Ability to Protect its Interest.

An applicant to intervene as of right must show that it is "so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest." FED. R. CIV. P. 24(a)(2). Applicants' interests "might not be impaired if they have 'other means' to protect them." *California ex. rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)). For example, where an applicant could fully vindicate its interests in a separate suit, it has other means to protect its interests. *United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002) (affirming denial of individuals' motion to intervene of right in United States' suit against Los Angeles to remedy constitutional violations by its police department because suit would not impair individuals' ability to bring their own suit).

---

[2] If this Court finds for Guardians on the merits, Guardians would ask this Court to "[e]njoin the Forest Service to issue closure orders for the use of bait for hunting in areas of national forests in Idaho and Wyoming where grizzly bears may be present." (Dkt. 46, 24 ¶4.) Even on the narrow question of the whether to grant and how to fashion such an injunction, however, Safari Club's asserted interest in hunting black bear over bait is not relevant or protectable. *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1169, 1177–78 (9th Cir. 2002) (Congress removed the courts' traditional equitable discretion to balance parties' competing interests in ESA cases). In the event this Court disagrees, and finds the other requirements for intervention as of right addressed below are also met, Safari Club could be allowed to intervene as to the issue of relief. *See, e.g., Western Watersheds Project v. U.S. Forest Service*, No. 09-629-E-BLW, 2010 WL 1816254 *2 (D. Idaho May 4, 2010) (granting intervention as of right only as to the relief phase of a case).

Even if Safari Club identified a "significant protectable interest" in this case, which is has not, the disposition of this case would not impair Safari Club's ability to protect any interest. If Guardians prevails, and the Court grants relief, generally Federal Defendants would be ordered to reinitiate consultation. 50 C.F.R. § 402.16(a); 16 U.S.C. § 1536(d). The outcome of reinitiated consultation may be a new Biological Opinion concluding that the continued application of the national policy is still not likely to jeopardize the continued existence of grizzly bears, or an opinion that continued application of the national policy is likely to jeopardize grizzly bears. 16 U.S.C. § 1536(a)(2), 1536(b)(3)(A). Either way, Safari Club's interests would be unaffected, because it could participate in any public process the Forest Service undertakes to respond to a new Biological Opinion.[3] In short, Safari Club has failed to establish that this litigation proceeding without it may, as a practical matter, impair or impede its ability to protect its asserted interests in preserving the use of bait in black bear hunting.

   c.  Safari Club Fails to Establish the Existing Parties Will Not Adequately Represent its Interest in Preserving Use of Bait in Hunting.

Because neither Guardians nor Federal Defendants oppose the States' motions to intervene as of right, they are effectively existing parties for purposes of determining whether Safari Club's interests will be adequately represented. To determine whether the existing parties adequately represent an applicant-intervenor's interests, courts consider: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki,* 324 F.3d at 1086. The "most important factor" is "how the [applicant intervenor's] interest compares with the interests of existing parties." *Id*. (citations omitted).

---

[3] As noted above, *supra* n.2, disposition of the relief phase without Safari Club would not, as a practical matter, impair or impede Safari Club's ability to protect its interests, because any interests it has cannot be balanced against doing whatever is necessary to achieve strict compliance with the ESA.

Plaintiffs' Opposition to Safari Club International's Motion to Intervene, Case No. 1:19-cv-00203-CWD

Where a party and the proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation arises, and an applicant to intervene can rebut that presumption only with a "very compelling showing to the contrary." *Id*. (citing *League of United Latin Am. Citizens v. Wilson* (*LULAC*), 131 F.3d 1297, 1305 (9th Cir. 1997)). This is particularly so where, as in this case, the "ultimate objective for both defendant and intervenor-defendants is upholding the validity of" a government action, because "a presumption arises that [the government] defendant is adequately representing intervenor-defendants' interests." *Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006); *California ex rel. Lockyer v. United States*, 450 F.3d 436, 443–44 (9th Cir. 2006) (to rebut this presumption an applicant-intervenor "must demonstrate a likelihood that the government will abandon or concede a potentially meritorious" position).

Here, Safari Club shares the same ultimate objective of Federal Defendants and the States: to preserve the status quo of how the use of bait in national forests is currently regulated. *Compare* (Dkt. 66-1, 8); *with* (Dkt. 63, 7) (State of Wyoming asserts fiscal interests in continued use of bait for hunting black bears in Wyoming); (Dkt. 65-1, 7–8) (Idaho Fish and Game Commission asserts the same with respect to Idaho); (Dkt. 28-1, 1) (Forest Service assertion that its national policy "reaffirms the agency's longstanding policy of leaving the regulation of baiting – whether to prohibit such baiting or regulate it as a hunting activity – to the states in which National Forest System lands are located."). The States make it clear their interest is in continuing state regulation of baiting on Forest Service lands, even when baiting results in deaths to grizzlies. (Dkt. 63, 6–7); (Dkt. 65-1, 3 & 9–10). Federal Defendants apparently share the same objective, even as they admit grizzlies have been killed at bait sites in national forests in Idaho and Wyoming, (Dkt. 69, ¶¶ 47–72), and even though the Court has noted the permissible level of take in the Incidental Take Statement is "zero." (Dkt. 35 at 8.) Nor has the Forest Service taken action to close certain areas to the use of bait when grizzlies are threatened, as it stated it would when it adopted its national policy. 60 Fed. Reg. 14,720, 14,722–23 (Mar. 20, 1995) (requiring a "site-specific restriction or prohibition on baiting" where necessary to reduce risk of grizzly

mortality). It is clear Safari Club shares the same ultimate objective in this case as the three government entities: preserve the status quo.

Safari Club fails to address the attendant presumption of adequacy arising with respect to the States and Federal Government, let alone overcome the presumption by "demonstrat[ing] a likelihood" that Federal Defendants or the States "will abandon or concede a potentially meritorious [position]." *Lockyer*, 450 F.3d at 444. Instead, Safari Club states conclusorily that Federal Defendants and the States "would not be able to adequately represent the interests of those whose activities are regulated[,]" because they "represent a diverse constituency composed of those who support and others who oppose the use of baiting and hunting generally." (Dkt. 66-1, 13 n.2). However, even assuming Federal Defendants and the States represent a diverse citizenry, that does not excuse Safari Club from meeting its burden of identifying specific and potentially meritorious positions Federal Defendants and the States are likely to abandon or concede. *Lockyer*, 450 F.3d at 444. Safari Club's sole argument for inadequate representation, taken to its logical conclusion, would mean a special interest group is never adequately represented by state or federal entities. That conclusion is irreconcilable with the cases in which the Ninth Circuit has held that special interest organizations were adequately represented by federal or state agencies with broad mandates. *See, e.g., California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778–79 (9th Cir. 1986) (special public district adequately represented by state agencies in dispute over regional land use plan); *LULAC*, 131 F.3d at 1306 (foundation adequately represented by state officials defending a voter initiative it supported barring social benefits for undocumented immigrants); *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir.1996) (environmental organization adequately represented by federal agencies defending a case brought by timber industry association to compel the release of timber sale contracts).

    2.    Safari Club's Interest in Defending Federal Defendants' Actions under the ESA Does Not Entitle it to Intervene.

The second interest Safari Club asserts is "defend[ing] the [ESA] compliance of the [Federal defendants] associated with the use of bait for black bear hunting on National Forest lands in Idaho and Wyoming." Dkt. 66-1, 2. But again, Safari Club fails to establish that the existing parties—in particular Federal Defendants—will not adequately represent this interest. Like Federal Defendants, Safari Club's ultimate objective with respect to its asserted interest in defending Federal Defendants' compliance with the ESA is to prove their actions are lawful under the ESA and APA. *Compare* (Dkt. 66-1, 2); *with* (Dkt. 69, 15–16.) Safari Club essentially concedes as much: "Federal Defendants are likely to defend their decisions that have been challenged in this litigation[.]" (Dkt. 66-1, 14). Accordingly, the presumption of adequate representation exists also with respect to this asserted interest, *Prete*, 438 F.3d at 957, and Safari Club fails to meet its burden to rebut it.

Further, Safari Club fails to specify any legal argument it intends to raise if allowed to intervene that Federal Defendants or the States are likely to abandon or concede. Safari Club alludes to unspecified arguments Federal Defendants and the States "will not and cannot make," asserting it "doubtful that Federal defendants would be capable of and willing to make all the same arguments that Safari Club will make in this matter, due to their differing perspectives and mandates." Dkt. 66-1, 13. But as the Ninth Circuit has ruled, this is not enough to prove a right to intervene. *Dep't of Fair Employment & Hous. v. Lucent Techs.*, Inc., 642 F.3d 728, 740 (9th Cir. 2011) ("vague speculation falls far short of a 'very compelling showing'" required to rebut the presumption of adequate representation); *Tahoe Reg'l Planning Agency*, 792 F.2d at 779 (it is not enough for applicant-intervenor to assert it would "argue[] its interests more vigorously than existing parties."); *Lockyer*, 450 F.3d at 444 (to overcome presumption of adequate representation, "the proposed intervenor must demonstrate a likelihood that the government will abandon or concede a potentially meritorious reading of the statute."). Indeed, Safari Club's papers suggest it would make the same arguments as the existing parties. As an example, Safari

Club lists the exact same four affirmative defenses the Idaho Fish and Game Commission does. *Compare* (Dkt. 65-2, 20); *with* (Dkt. 66-7, 20.)

Having failed to articulate any potentially meritorious arguments that Federal Defendants and the States are likely to abandon or concede, Safari Club likewise fails to show that its (unspecified) arguments are necessary to this litigation. Even assuming Federal Defendants and the States "may not defend" the challenged agency action "in the exact manner that" Safari Club itself would, that does not mean Safari Club offers the requisite "necessary elements to the proceeding." *Prop. 8 Official Proponents*, 587 F.3d at 954 (9th Cir. 2009) (applicant intervenors must demonstrate "necessary elements to the proceeding," not merely different "litigation strategy or tactics") (quoting *Arakaki*, 324 F.3d at 1086). The closest Safari Club gets to positing a "necessary element" is its assertion it offers a "different perspective . . . that would not be present absent its participation," and that it represents a "voice . . . that would otherwise be neglected," namely that "of the hunters, whose use of bait to hunt black bear is the underlying conduct that Plaintiffs seek to prohibit." (Dkt. 66-1, 14.) Setting aside Safari Club's repeated mischaracterization of the nature of this case and the relief Guardians requests, and the fatal vagueness of Safari Club's assertions, these "elements" are not "necessary" to the disposition of Guardians' claims. As the Ninth Circuit has held, an applicant is not entitled to intervene simply because it thinks it may offer "a 'unique perspective' on the validity of" the challenged government action. *LULAC*, 131 F.3d at 1304 n.3.

Safari Club's reliance on *Maughan v. Vilsack* is unavailing. *Contra* (Dkt. 66-1, 9 & 14) (citing *Maughan v. Vilsack*, No. 4:14-cv-00007-EJL, 2014 WL 12605649 (D. Idaho July 25, 2014)). In that case, this Court granted Safari Club's *unopposed* motion to intervene, subject to conditions proposed by the federal defendants and agreed upon by the parties. *Maughan*, 2014 WL 12605649 at *1 & *3. Nor does the Ninth Circuit's decision in *Forest Conservation Council* support Safari Club's motion. *Contra* (Dkt. 66-1, 12 & 14) (citing *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995), *abrogated on other grounds*, *Wilderness Soc.*

*v. U.S. Forest Service*, 630 F.3d 1173, 1180 (9th Cir. 2011)). In that case, Arizona state officials and agencies sought to intervene in a challenge brought by environmental groups seeking to enjoin Forest Service activities in northern goshawk habitat until the agency complied with NEPA and the National Forest Management Act (NFMA). *Forest Conservation Council*, 66 F.3d at 1491–92. In holding that the presumption of adequate representation did not arise, the Ninth Circuit explained that the state's "interests in this action . . . lie not in the procedural requirements of NEPA and NFMA with which the Forest Service must comply, but in the question of whether all forest management activities in Arizona's national forests and other Northern Goshawk habitat should be enjoined pending the Forest Service's compliance. The Forest Service is not charged with a duty to represent these asserted interests in defending against the issuance of an injunction." *Id*. at 1499. Having so held, the Ninth Circuit granted intervention only as to the proceedings addressing the relief requested by plaintiffs. *Id*. Here, Safari Club does assert an interest in defending the ESA compliance associated with the use of bait for black bear hunting—an interest that Federal Defendants are presumed to adequately represent. (Dkt. 66-1, 2.). And, as explained above, Safari Club has failed to overcome the presumption that the States will adequately represent Safari Club's asserted interests in preserving the current regulatory scheme concerning hunting black bear over bait. Moreover, here, unlike in *Forest Conservation Council*, Guardians do not seek a blanket injunction pending a decision on the merits. Consequently, *Forest Conservation Council*—where the presumption of adequate representation did not arise—is inapposite.

Ultimately, "the real differences between" Federal Defendants, the States, and Safari Club, if there are any, "boil down to strategy calls"—namely, the weight and emphasis each will place on largely the same arguments. This does not establish a right to intervene. *Prop. 8 Official Proponents,* 587 F.3d at 954; *accord LULAC,* 131 F.3d at 1306 (upholding denial of intervention where differences between proposed intervenors and government amounted to "a disagreement over litigation strategy or legal tactics"). Because Safari Club does not address nor meet its

burden of demonstrating that it offers necessary elements to this litigation, its involvement "would be redundant." *Tahoe Reg'l Planning Agency*, 792 F.2d at 779 (affirming denial of intervention).

B.  The Court Should Deny Safari Club's Motion for Permissive Intervention.

Safari Club's motion for permissive intervention is also unwarranted. An applicant for permissive intervention under Rule 24(b) (1)(B) must demonstrate that three threshold requirements are met: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. *Donnelly*, 159 F.3d at 412. If an applicant satisfies those threshold requirements, the district court has discretion to grant or deny permissive intervention, *id.*, and the court may limit intervention to particular issues, *Dep't of Fair Emp. & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (citations omitted). In exercising this discretion, the court should consider factors, including "the nature and extent of the intervenors' interest," "the legal position they seek to advance, and its probable relation to the merits of the case," "whether the intervenors' interests are adequately represented by other parties," "whether intervention will prolong or unduly delay the litigation," and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (quoting *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

The Ninth Circuit has upheld denial of permissive intervention where, as here, the applicant "intervenors' interests are adequately represented by other parties." *Prop. 8 Official Proponents*, 587 F.3d at 955; *accord Tahoe Reg'l Planning Agency*, 792 F.2d at 779. As explained above, the existing parties will adequately represent the Safari Club's interests. The fact that Safari Club has failed to identify any specific legal positions—let alone any that Federal Defendants and the States are likely to abandon or concede—councils further against granting

permissive intervention. *Schwarzenegger*, 630 F.3d at 906 (affirming district court's order denying intervention where applicant intervenors "had no new evidence or arguments to introduce into the case"). And any "different perspective" Safari Club promises to bring representing the "neglected . . . voice of the hunters" will be of no use in developing the narrow factual issues presented in this case: whether the Incidental Take Statement has been exceeded, whether the Forest Service complied with the terms and conditions in the Incidental Take Statement, and what injunctive relief is necessary to achieve strict compliance with the ESA.[4]

For these reasons, the Court should exercise its discretion and deny permissive intervention by the Industries.

C.     Guardians Do Not Oppose Safari Club's Request to Participate as Amicus.

Safari Club has requested that if the Court deny its motion to intervene, it be granted amicus status. Guardians do not oppose this request. Amicus status would be a more appropriate mechanism for Safari Club to assert its position on the merits of hunting bears using bait. *See St. John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*, No. CV 04-87-BLW, 2006 WL 980726 *1 (D. Idaho Apr. 7, 2006) (finding applicant intervenors' interests insufficient to warrant intervention, but granting amicus status); *see also California Dept. of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002) (affirming such an order).

## CONCLUSION

Guardians respectfully requests that the Court deny Safari Club's motion to intervene. In the alternative, if the Court grants Safari Club's motion to intervene, Guardians respectfully requests that the Court require it to share page limits for briefing with the State applicant-intervenors.

---

[4] For much the same reason as noted above, *supra* n.2, if the Court disagrees and finds that Safari Club otherwise meets the requirements for permissive intervention, Safari Club could be allowed to intervene as to the issue of relief only.

Dated: February 24, 2021.            Respectfully submitted,

<u>/s/ Sangye-Ince Johannsen</u>
Sangye Ince-Johannsen, *pro hac vice*
Peter M. K. Frost, *pro hac vice*
Dana M. Johnson, Idaho Bar #8359