Jeremy E. Clare, D.C. Bar No. 1015688
Safari Club International
501 2nd Street N.E.
Washington, D.C. 20002
Tel:  202-543-8733
Fax:  202-403-2244
jclare@safariclub.org
*Admitted Pro Hac Vice*

Cherese D. McLain, ISB No. 7911
MSBT Law, Chtd.
7699 West Riverside Drive
Boise, ID 83714
Tel:  208-331-1800
Fax:  208-331-1202
cdm@msbtlaw.com

*Attorneys for Defendant-Intervenor Applicant
Safari Club International*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, et al., | |
| Plaintiffs, | Case No. 1:19-cv-00203-CWD |
| v. | |
| U.S. FOREST SERVICE, et al., | **REPLY IN SUPPORT OF SAFARI CLUB INTERNATIONAL'S MOTION TO INTERVENE [DKT. 66]** |
| Defendants, | |
| and | |
| SAFARI CLUB INTERNATIONAL, | |
| Defendant-Intervenor Applicant. | |

Plaintiffs object to Safari Club International's ("Safari Club") intervention, both as of right and permissively. Dkt. 71, Opp. at 4–14.[1] But Plaintiffs' arguments are not supported by the weight of authority. Safari Club meets the requirements for intervention as of right because Safari Club has a significant protectable interests in this litigation, disposition of the litigation will impair or impede Safari Club's ability to protect its interests, and existing parties may not adequately represent Safari Club's interests. Dkt. 66-1, Safari Club Memo, at 10–14. Moreover, Safari Club meets the requirements for permissive intervention based on the strong and unique interest of Safari Club's members in protecting the use of bait for black bear hunting, which shares common facts with the main issues in this litigation. *Id.* at 15–16. The Court should grant Safari Club intervention, either as of right or permissively.

In the Ninth Circuit, courts construe Federal Rule of Civil Procedure 24(a) "liberally in favor of potential intervenors." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006) (citing *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001)). "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, [courts] often prevent or simplify future litigation involving related issues; at the same time, [courts] allow an additional interested party to express its views before the court." *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) (citation omitted); s*ee also Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 ("In addition to mandating broad construction, [the court's] review is guided primarily by practical considerations, not technical distinctions.") (internal quotation and citations omitted). The Court also must accept

---

[1] Because Plaintiffs did not number the pages of their Opposition—in violation of Dist. Idaho Loc. Civ. R. 5.2(a)—Safari Club refers to the Court's automated filing stamp at the top of each page when citing to the Opposition.

the intervenor-applicant's non-conclusory factual allegations as true. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 819.

**I.      Safari Club has significant protectable interests in the subject matter of this action.**

An intervenor-applicant satisfies the "interest test" if "(1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." *City of Los Angeles*, 288 F.3d at 398. In addition, an intervenor-applicant has "a significantly protectable interest when the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon [the applicant's] legally protectable interests." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 817 (citation omitted).

The four declarations filed in support of Safari Club's motion to intervene demonstrate that Safari Club and its members meet the requirements of the interest test. *See* Goodenow Decl., Dkt. 66-2; Malison Decl., Dkt. 66-3; Veilleux Decl., Dkt. 66-4; Bullock Decl., Dkt. 66-5. Safari Club's members have an interest in the subject matter of this action—their ability to use bait to hunt black bears in National Forests in Wyoming and Idaho—that is legally permitted by the laws of Idaho and Wyoming. Plaintiffs do not and cannot dispute Safari Club's stated interest in the use of bait to hunt black bears. Plaintiffs merely, and erroneously, argue that Safari Club's interests are not "sufficiently related" to this litigation. Opp. at 4–5. Notably, Plaintiffs cite no supportive authority for their assertion that Safari Club's interests are not related enough to Plaintiffs' claims. And Plaintiffs' Amended and Supplemental Complaint ("Complaint") wholly undercuts their argument. Dkt. 56, at ¶ 1.

The second sentence of the Complaint alleges a violation of Section 7 of the Endangered Species Act for failure to complete consultation "related to the use of bait to hunt black bears in national forests in Idaho and Wyoming." *Id.* Numerous times throughout the Complaint,

2

Plaintiffs link their claims to the use of bait to hunt black bears. *E.g.*, *id.* at ¶ 9 ("Guardians' members have been, and continue to be, injured by the Forest Service's allowance of black bear baiting on national forests in Idaho and Wyoming…."); *id.* at ¶¶ 45–68 (discussing data regarding the use of bait for black bear hunting in Idaho and Wyoming and alleged incidents of black bear hunters killing grizzly bears). Most critically, achievement of Plaintiffs' requested relief—which would enjoin Defendant U.S. Forest Service to take action to prohibit the use of bait on national forests in Idaho and Wyoming—would have "direct, immediate, and harmful" effects on Safari Club's and its members' interests. *See id.* at p. 21, ¶ 4. Black bear hunting with bait is not a tangential issue to this litigation. It is the sole reason why Plaintiffs assert their claims. Simply put, if hunters, including Safari Club members, were not using bait to hunt black bears in national forests in Idaho and Wyoming, Plaintiffs would have no reason to bring this case.

Moreover, Safari Club has intervened in numerous cases in which its asserted interest generally was its members' ability to hunt, despite the merits of hunting not being an issue before the court. *E.g.*, *Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. 3:12-cv-08176-SMM, Dkt. 119 (D. Ariz. June 10, 2016) (granting Safari Club intervention as of right in case in which plaintiffs seek ruling under the Resource Conservation and Recovery Act to halt the use of lead ammunition in Kaibab National Forest to protect California condor listed under the Endangered Species Act);[2] *WildEarth Guardians v. Provencio*, No. 3:16-cv-08010-SMM, 2016

---

[2] Although the plaintiffs did not challenge hunting in the national forest directly, the court held that Safari Club's "legally protected interest to hunt generally will be adversely affected if the [p]laintiffs prevail and effectuate a ban of lead ammunition on the [national forest.]" The court found this sufficient to meet both the interest test and the requirement that disposition of the case may affect Safari Club's interest. 3:12-cv-08176-SMM, Dkt. 119, at 4–5. Similarly, if Plaintiffs prevail in this case, Safari Club's interest in the use of bait to hunt black bears on national forests will be adversely affected.

WL 8739201, at **2–3 (D. Ariz. Aug. 11, 2016) (granting Safari Club intervention as of right in case in which plaintiffs alleged Forest Service's Travel Management Plans for Kaibab National Forest violated multiple statutes).  The Court should reject Plaintiffs' baseless assertion that Safari Club's interests are not related to this litigation.

In sum, Safari Club's asserted interests meet the requirement for intervention under Rule 24(a).

### II.  Safari Club is so situated that disposition of this proceeding may, as a practical matter, impair or impede the ability to protect its interests.

After a court finds that intervenor-applicants have a requisite interest in the litigation, they generally "have little difficulty concluding that the disposition of [the] case may, as a practical matter, affect it." *Lockyer*, 450 F.3d at 442 (citing *Sw. Ctr. for Biological Diversity*, 268 F.3d at 882).  As explained above, if Plaintiffs receive their requested relief, Safari Club's interests would be directly and immediately harmed.  The Forest Service would be enjoined to prohibit the use of bait for hunting black bears in national forests in Idaho and Wyoming.  *See* Dkt. 66-1, Safari Club Memo, at 11 (explaining further how Safari Club's interests and its ability to protect those interests ***may*** by impaired or impeded by the disposition of this case).

Plaintiffs suggest that Safari Club's interests will not be harmed if Plaintiffs succeed because Safari Club and its members can "participate in any public process the Forest Service undertakes to respond to a new Biological Opinion." Opp. at 6.  Notwithstanding that Safari Club's ability to protect its interests may be impaired or impeded even under Plaintiffs' theory if the Court enjoins the Forest Service's ability to issue closure orders, the Forest Service has no obligation to involve the public during Section 7(a)(2) consultations.  *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 660 n.6 (2007) (noting that there is no "right to public comment with regard to consultations conducted under § 7(a)(2)…"); *Cooling Water Intake*

4

*Structure Coal. v. U.S. Envtl. Prot. Agency*, 905 F.3d 49, 78 (2d Cir. 2018) ("[N]o procedural infirmity arises in failing to provide notice of or an opportunity to comment on the biological opinion or other determinations by the Services."). The Court should reject Plaintiffs' attempt to rely on a discretionary public process to deny Safari Club an opportunity to protect its and its members' interests in this Court, and instead hold that Safari Club has little difficulty in establishing that its ability to protect its interests may be impaired or impeded in this case.

**III.    The existing parties do not adequately represent Safari Club's interests.**

Despite Plaintiffs' protestations, Safari Club also meets its burden to demonstrate that existing parties ***may*** not adequately represent its and its members' interests. Safari Club's "burden of showing inadequacy is 'minimal,' and [Safari Club] need only show that representation by existing parties 'may be' inadequate. In assessing the adequacy of representation, the focus should be on the 'subject of the action,' not just the particular issues before the court at the time of the motion." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)).[3] The Ninth Circuit has held that "where an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Id.* (internal quotation and citation omitted).

---

[3] Plaintiffs assert that Safari Club must demonstrate that its interests are not adequately represented by Idaho and Wyoming. Opp. at 6. At the time of filing Safari Club's motion to intervene and this reply, the States are not parties to this litigation. Although Safari Club believes their motions to intervene will be granted, Safari Club's burden is to demonstrate that "***existing***" parties may not adequately represent its interests. Fed. R. Civ. P. 24(a)(2). Thus, Safari Club addresses only the existing parties—Federal Defendants and Plaintiffs. Nevertheless, much of Safari Club's argument regarding the Federal Defendants' potential inability to adequately represent Safari Club's arguments would similarly apply to the States, which are also government entities that may not adequately represent the interests of private parties with a more focused goal in protecting specific harvest opportunities.

Safari Club and the existing parties do not have the same "ultimate objective," and no presumption of adequacy of representation applies. Opp. at 7–11. Safari Club's ultimate objective is to ensure that its members are allowed to use bait when hunting black bears in national forests in Idaho and Wyoming. Likewise, its members' ultimate objective is to use bait as a means of harvest when hunting black bears. On the other hand, Federal Defendants seek to defend the legality of their actions. These objectives are not the same, and Safari Club need not overcome any presumption. *See W. Watersheds Project v. U.S. Fish & Wildlife Serv.*, No. 4:10-cv-00229-BLW, 2011 WL 2690430, at *4 (D. Idaho July 9, 2011) ("On one level, the applicants and the [agency] share an objective: Both seek to affirm the [challenged] decision. But they diverge on their 'ultimate objective,' which is the test the Court must apply. The ultimate objective of the applicants is to prevent, or at least delay as long as possible the effects of the listing; the [agency] simply seeks confirmation of its administrative process. Because they do not share the same ultimate objective, no presumption arises of adequate representation."). Plaintiffs oversimplify the objectives of Safari Club and Federal Defendants—"to preserve the status quo"—and cite no relevant authority that supports their assertion that Safari Club and Federal Defendants have the same ultimate objective. Opp. at 7–8. The Court should reject Plaintiffs' unsupported oversimplification, and instead find that Safari Club does not have the same ultimate objective as Federal Defendants.

Even if the Court finds that Safari Club has the same ultimate objective as Federal Defendants and a presumption applies, Safari Club has rebutted the presumption of adequate representation because Safari Club and Federal Defendants "do not have sufficiently congruent interests." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823 (pointing to differing motivations for intervenor-applicants' and existing parties' shared objective in preserving the challenged

actions as indicative that representation may be inadequate); *see also S. Yuba River Citizens League & Friends of the River v. Nat'l Marine Fisheries Serv.*, No. 06-cv-02845-LKK, 2007 WL 3034887, at *14 (E.D. Cal. Oct. 16, 2007) (holding that "[e]ven where the would-be intervener has the same 'ultimate objective' as some of the parties, intervention may still be appropriate if its interests might diverge from those of the existing parties," and, applying this standard, concluding that the intervenor-applicant's interests will not be adequately represented by the existing parties).

Safari Club and its members have specific interests in hunting black bears over bait, which are interests not shared by the public at large or Federal Defendants who must represent all public interests. *See* Safari Club Memo, at 12–13. Safari Club represents wildlife conservationists and hunters who use bait to hunt black bears to improve their hunting experience and chances of successful harvest. Safari Club also represents business owners whose livelihoods are impacted by their clients' ability to use bait to hunt black bears. Federal Defendants are government regulators who must represent a constituency of diverse interests, including those who disagree with the use of bait to hunt black bears. "The Federal Defendants have a duty to represent the interest of the public, but they have no duty to represent the personal or economic interests of non-federal governmental entities such as [intervenor-applicant]." *W. Watersheds Project v. Zinke*, No. 1:18-cv-00187-REB, 2018 WL 6816048, at *3 (D. Idaho Dec. 27, 2018) (citing *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995)). Because Federal Defendants' interests in representing the public at large "might diverge" from Safari Club's interests, Federal Defendants cannot be expected to adequately

represent Safari Club's interests in this litigation.[4]  Thus, Safari Club has rebutted the presumption, if one applies.

Further, Safari Club's and Federal Defendants' differing interests are indicative that Federal Defendants "are not certain to make" the same arguments that Safari Club would make or "do so with the same level of urgency and priority." *W. Watersheds Project*, 2018 WL 6816048, at *3; *see also W. Watersheds Project v. Zinke*, 1:18-cv-00187-REB, 2018 WL 3997259, at *3 (D. Idaho Aug. 21, 2018) ("It is true that the Federal Defendants [and intervenor-applicants] have a fundamental interest in seeing the [challenged action] upheld; but, it cannot be said that the Federal Defendants will 'undoubtedly' make [intervenor-applicants'] arguments for them, and not with the same level of urgency and priority.  While the Federal Defendants will generally defend the Secretary's decision (and decision-making process), only [intervenor-applicants] are uniquely capable of explaining how any potential ruling will affect [their interests].").  Because Safari Club's interests are unique, it and its members will also suffer unique impacts if Plaintiffs succeed and their requested relief is granted.  *Ctr. for Biological Diversity*, 2014 WL 4104166, at *8.  As such, existing parties may not adequately represent Safari Club's interests in this litigation, and Safari Club meets its minimal burden.

Safari Club meets all four requirements for intervention as right.  The Court should thus grant Safari Club's motion.

---

[4] Moreover, the Ninth Circuit has held that an intervenor-applicant need not identify a specific argument that existing parties are unwilling to make.  "[I]t is not [intervenor-applicant's] burden at this stage in the litigation to anticipate the specific differences in trial strategy.  It is sufficient for [intervenor-applicant] to show that, because of the difference in interests, it is likely that Defendants will not advance the same arguments as [intervenor-applicants]." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 824.  Safari Club cannot predict the future regarding what arguments Federal Defendants will make in response to Plaintiffs' allegations, and the Court need not hold that Safari Club must make such predictions.

### IV. In the alternative, the Court should grant Safari Club permissive intervention.

If the Court finds that Safari Club does not meet the requirements for intervention as of right, Safari Club requests the Court grant it permissive intervention pursuant to Rule 24(b). "Permissive intervention under Fed. R. Civ. P. 24(b) requires only that an intervenor's claim or defense share a common question of law or fact with the main action and that the intervention will not 'unduly delay or prejudice the adjudication of the original parties' rights.'" *Ctr. for Biological Diversity*, 2014 WL 4104166, at *9 (quoting Fed. R. Civ. P. 24(b)). Plaintiffs do not assert that Safari Club's potential intervention fails to meet these requirements.[5] Opp. at 12–13. Nor can Plaintiffs deny that Safari Club meets the requirements for permissive intervention pursuant to Rule 24(b). As Safari Club demonstrated, its motion to intervene is timely, its intervention will not unfairly prejudice the parties, and its defenses share common questions of law and fact in common with the main action. Safari Club Memo, at 15–16. Intervention is thus discretionary with the Court. *Ctr. for Biological Diversity*, 2014 WL 4104166, at *9.

Given Safari Club's unique interests in the subject matter of this case and the perspective it can provide the Court, permissive intervention is warranted. *Id.* (finding intervenor-applicants' "unique perspectives" associated with their "varied interests" would aid the Court in resolving the litigation); *WildEarth Guardians*, 2016 WL 8739201, at *3 (finding that "the presence of [Safari Club] in this lawsuit would add to the dialogue of the case and provide the Court … a unique and well-rounded perspective of the issues involved"). Further, Safari Club's unique

---

[5] Rather, Plaintiffs focus instead on some of the factors that the Court may consider in exercising its discretion to grant or deny permissive intervention, including doubling down on their unpersuasive argument that the Court should deny Safari Club intervention because existing parties adequately represent Safari Club's interests. Opp. at 12–13.

9

interests in this litigation are such that Safari Club and its members may be uniquely impacted by the outcome of this litigation, a factor weighing in favor of allowing intervention.

Safari Club meets the requirements for permissive intervention, and the Court should exercise its discretion to grant Safari Club's motion.

## V. Conclusion

As Safari Club meets all criteria for intervention as of right, and the Court should grant its motion. In the alternative, the Court should grant Safari Club permissive intervention. Last, if the Court denies Safari Club intervenor status, Safari Club requests permission to participate as an amicus—an alternative that no party opposes. For the reasons set forth above, Safari Club respectfully requests that the Court grant its motion to intervene.

DATED this 10th day of March 2021.

              Respectfully Submitted,

              /s/ Jeremy Clare
              Jeremy E. Clare, D.C. Bar No. 1015688
              Safari Club International
              501 2nd Street N.E.
              Washington, D.C. 20002
              Tel: 202-543-8733
              Fax: 202-403-2244
              jclare@safariclub.org
              *Admitted Pro Hac Vice*

              Cherese D. McLain, ISB No. 7911
              MSBT Law, Chtd.
              7699 West Riverside Drive
              Boise, ID 83714
              Tel: 208-331-1800
              Fax: 208-331-1202
              cdm@msbtlaw.com

              *Attorneys for Defendant-Intervenor Applicant*
              *Safari Club International*

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 10th day of March 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                 /s/ Jeremy Clare
                                                 Jeremy E. Clare