UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. FOREST SERVICE, U.S. FISH AND WILDLIFE SERVICE, <br><br> Defendants. | Case No. 1:19-cv-00203-CWD <br><br> **ORDER** |

# INTRODUCTION

Before the Court are three motions to intervene in this action filed by the State of Wyoming; Idaho Fish and Game Commission (IFG); and Safari Club International. Each movant seeks to intervene on behalf of the Defendants, who have taken no position on the motions. Plaintiffs do not oppose Wyoming's or IFG's motion, provided the Court imposes the condition that any challenge either may make to the Court's subject matter jurisdiction must be asserted at the time of cross-motions for summary judgment. Wyoming and IFG object to the imposition of any condition on their participation. Plaintiffs oppose Safari Club's motion, arguing that Safari Club cannot meet the requirements for either intervention as of right, or permissive intervention. Plaintiffs do not oppose Safari Club's alternative request to participate in this matter as an amicus.

**ORDER - 1**

# BACKGROUND[1]

This matter concerns the effect on grizzly bears of the use of bait to hunt black bears in national forests in Idaho and Wyoming, the only states that currently allow the use of bait to hunt black bears. The practice of placing bait is considered a hunting activity subject to state law and regulations, and the United States Forest Service (USFS) acknowledges the states' traditional role in managing fish and wildlife. On March 14, 1994, the USFS published an interim national policy that adopted, on a national scale, a policy that proposed to leave to the states the responsibility for regulating bear baiting as a hunting practice, subject to federal oversight should it be determined that state regulations governing the practice of bear baiting would not protect resources in an area adequately, or otherwise would conflict with federal laws, such as the Endangered Species Act (ESA).

The USFS prepared a Biological Evaluation in 1995, which in turn referenced an earlier 1993 Biological Opinion (BiOp), concluding that the proposed national policy is not likely to adversely affect the grizzly bear on NFS lands (excluding Wyoming), and that baiting on NFS lands in Wyoming may affect the grizzly bear. The Fish and Wildlife Service concurred. The USFS prepared also an Environmental Assessment concluding that the proposed policy's environmental impacts would be negligible, and that the proposed policy provides safeguards in all states allowing baiting. The USFS later issued a Decision Notice and Finding of No Significant impact on March 15, 1995, adopting the

---

[1] What follows is a condensed summary of the facts in this case. The Court discussed the background facts in great detail in its prior memorandum decision and order. (Dkt. 55.)

ORDER - 2

proposed national baiting policy and concluding that an environmental impact statement was not necessary because USFS's actions "are not a major Federal action, individually or cumulatively, and will not significantly affect the quality of the human environment." The final policy was published on March 20, 1995.

Plaintiffs filed a two-count complaint in this Court on June 5, 2019, against USFS and FWS, which was amended on July 19, 2019. Plaintiffs allege that numerous grizzly bears have been taken due to bear baiting in national forests in Idaho and Wyoming, exceeding the level of permissible incidental take set at zero in the 1993 BiOp, and thereby triggering the duty to reinitiate consultation. Plaintiffs allege also that the 1995 EA is outdated, and significant new information exists requiring its supplementation. The amended complaint seeks to compel supplemental processes under the ESA and NEPA regarding the 1995 USFS bear baiting policy.

In the amended complaint, Plaintiffs contend: (1) both the USFS and FWS have failed to reinitiate consultation under the ESA; and (2) the USFS has failed to supplement its prior NEPA analysis. Defendants filed a motion to dismiss on November 15, 2019. The Court issued a memorandum decision on May 7, 2020, granting in part and denying in part Defendants' motion to dismiss. Count I was allowed to proceed against the FWS based upon the narrow holding that, under the ESA, the duty to reinitiate consultation lies with both the action agency and the consultation agency, such that FWS is a proper defendant. Count II was dismissed in its entirety.

On June 26, 2020, the USFS withdrew its consultation request submitted in conjunction with the 1995 Biological Evaluation. Thereafter, the FWS formally withdrew

ORDER - 3

the 1993 BiOp referenced in the USFS's 1995 Biological Evaluation. Defendants next moved to dismiss Count I of the amended complaint, arguing that Plaintiffs' claim premised upon the alleged failure to reinitiate consultation, which in turn is based upon the incidental take statement in the 1993 BiOp, is moot due to withdrawal of the 1993 BiOp and consultation request. The Court denied the motion to dismiss, finding the claim is not moot. The Court also allowed Plaintiffs to amend the complaint to include factual allegations based upon Defendants' recent withdrawal of the consultation request and biological evaluation, and entered a scheduling order governing further proceedings. The scheduling order included a deadline for the filing of motions to intervene, and anticipated the filing of dispositive motions once the administrative record is lodged and any objections to its contents are resolved.

## DISPOSITION

Rule 24(a) contains the standards for intervention as of right, stating in part:

> Upon timely motion, the court must permit anyone to intervene who: … (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). The United States Court of Appeals for the Ninth Circuit has distilled this rule into a four-part test: (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's

ORDER - 4

ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit. *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001).

In general, the Court must construe Rule 24(a) liberally in favor of potential intervenors. *Id*. at 818. The Court's evaluation is "guided primarily by practical considerations," not technical distinctions. *Id*. However, "[f]ailure to satisfy any one of the requirements is fatal to the application." *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

To determine whether a party may intervene as of right, the Court must consider also:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*Berg*, 268 F.3d at 822. The movant bears the ultimate burden of demonstrating that the existing parties may not adequately represent its interest. *Id*. To meet this burden, the movant need only show that representation of its interests by existing parties "may be" inadequate. *Id*.

When the party and a proposed intervenor share the same "ultimate objective," however, a presumption of adequacy of representation applies. *Freedom From Religion Foundation, Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011). Such presumption can be rebutted only by "a compelling showing to the contrary." *Id*. An assumption of adequacy

ORDER - 5

also arises when the government is acting on behalf of a constituency that it represents. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). Absent a "very compelling showing to the contrary," it is assumed that the state adequately represents its citizens when the proposed intervenor shares the same interest. *Id*.

Rule 24(b) allows permissive intervention when an applicant has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). "In exercising its discretion the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*. When a proposed intervenor has met those requirements, "[t]he court may also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'" *Perry*, 587 F.3d at 955 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

1. **Wyoming and IFG**

The Court finds both Wyoming and IFG satisfy the requirements of Fed. R. Civ. P. 24(a) for intervention as of right.[2] The motions will therefore be granted.

However, the Court agrees with Plaintiffs, and will not permit the filing of additional, early motions to dismiss challenging the Court's subject matter jurisdiction in

---

[2] The Court finds also that the State of Wyoming and IFG would satisfy the requirements of Fed. R. Civ. P. 24(b) for permissive intervention.

**ORDER - 6**

this matter which would be contrary to the Court's scheduling order.[3] The Court already has entertained two motions challenging the Court's jurisdiction, and determined Plaintiffs have stated a plausible claim for relief under the Endangered Species Act that is not moot in light of Defendants' recent actions. (Dkt. 55.)

In its second Memorandum Decision and Order entered December 23, 2020, the Court made it clear that the question whether there was "agency action" triggering the ESA consultation requirement in the first instance remains unanswered, and that the Court could not determine the answer to that question on a motion to dismiss without the benefit of the administrative record. Further, the Court rejected Defendants' suggestion to stay proceedings and permit supplemental briefing regarding Plaintiffs' allegations concerning Defendants' decision to rescind the consultation documents.

The Court therefore affirms the deadlines set forth in its Scheduling Order, and expects further briefing once the administrative record is lodged and any disputes regarding the record and the need for discovery are resolved. (*See* Scheduling Order, Dkt. 61.) Once the Court establishes a briefing schedule, Wyoming and IFG may raise any jurisdictional challenges at that time.

**2.    Safari Club**

Safari Club is an organization that promotes and supports hunting and sustainable use conservation. Safari Club seeks to intervene in this case to defend the use of bait for

---

[3] The Court ordered Defendants to file the administrative records by April 20, 2021; file objections, if any, to the completeness of the administrative records by May 11, 2021; and meet and confer regarding the need for discovery, with disputes regarding the same to be resolved by the Court. Only after these matters are resolved did the Court contemplate the submission of a proposed schedule for dispositive motions.

**ORDER - 7**

black bear hunting on National Forest lands in Idaho and Wyoming. Safari Club proposes also to defend USFS's and FWS's ESA compliance as it relates to the national policy leaving the regulation black bear baiting on National Forest lands to the states. Safari Club argues that this litigation as an attempt to force Defendants to prohibit bear baiting within National Forest lands in Idaho and Wyoming, which would harm its members who hunt black bears with bait.

Safari Club maintains it should be granted intervention as of right, because it has significant interests in the wildlife conservation and hunting opportunities at risk in this litigation; the outcome of this case could impair the interests of Safari Club and its members in enjoying and pursuing black bear hunting on National Forest lands in Idaho and Wyoming, promoting the sustainable use of wildlife, and managing and conserving black bears, grizzly bears, and prey species; and, Defendants do not necessarily share Safari Club's interests and cannot adequately represent its interests in this litigation. Alternatively, Safari Club argues it should be granted permissive intervention because its proposed defense of bear baiting and Plaintiffs' claims share questions of law and fact.

The Court finds Safari Club does not meet either test for intervention. With respect to intervention as of right, Safari Club has not demonstrated that it has a significantly protectable interest relating to the property or transaction that is the subject of this action. "To determine whether putative intervenors demonstrate the 'significantly protectable' interest necessary for intervention of right in a NEPA case, the operative inquiry should be whether the 'interest is protectable under some law' and whether 'there is a relationship between the legally protected interest and the claims at issue.'"

ORDER - 8

*Maughan v. Vilsack*, No. 4:14-CV-0007-EJL, 2014 WL 12605649, at *2 (D. Idaho July 25, 2014) (quoting *Wilderness Society v. USFS*, 630 F.3d 1173, 1180 (9th Cir. 2011)). "A putative intervenor will generally demonstrate a sufficient interest for intervention of right in a NEPA action, as in all cases, if 'it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Id*. (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441(9th Cir. 2006)).

The crux of this case is Plaintiffs' claim that Defendants must reinitiate and complete consultation under Section 7 of the ESA. If formal consultation is necessary, FWS must issue a BiOp summarizing relevant findings and determining whether the proposed (or continued) action is likely to jeopardize the continued existence of the grizzly bear. 16 U.S.C. § 1536(b). Additionally, FWS must specify whether any incidental taking of protected species will occur with implementation of the proposed action, and if so, FWS must publish an incidental take statement. At this juncture, it is not at all clear what effect, if any, reinitiation of consultation would have upon the use of bait to hunt black bears in National Forest lands in Idaho and Wyoming. While eliminating the hunting practice may be Plaintiffs' ultimate objective, Plaintiffs' suit seeks only to compel Defendants to reinitiate consultation, which, if successful, may conceivably result in no change to the current national policy and no corresponding impact upon Safari Club's members.

Second, Safari Club has not established that the disposition of this action may, as a practical matter, impair or impede its ability to protect its interests. Even if the outcome of this lawsuit might later affect Safari Club's interests, its interests may not be impaired

ORDER - 9

if it has other means to protect them. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006). If Plaintiffs prevail, the result would be reinitiation of consultation. 16 U.S.C. § 1536(a)(2), (d). In that case, the outcome will be a new Biological Opinion. 16 U.S.C. § 1536(3). Safari Club would have a full opportunity to participate in any public process the USFS undertakes, and could respond to a new Biological Opinion. In other words, Safari Club could assert its interests during the public comment period associated with ESA and NEPA compliance.

Last, Safari Club has not demonstrated that the existing parties to this action do not adequately represent its interests. In determining whether an existing party adequately represents the applicant intervenor's interests, the Court considers whether: 1) a named party's interests are such that it would make the intervenor's arguments; 2) that party is capable and willing to make such arguments; and 3) the proposed intervenor would offer any necessary element to the proceedings that would be neglected by the named parties. *Maughan v. Vilsack*, No. 4:14-CV-0007-EJL, 2014 WL 12605649, at *2 (D. Idaho July 25, 2014) (citing *County of Fresno v. Andrus*, 622 F.2d 436, 438-39 (9th Cir. 1980)). "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 443 (9th Cir. 2006) (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)).

Here, Defendants have a significant interest in defending their actions taken pursuant to the ESA and NEPA, and preserving the status quo concerning the national policy that defers to the states regarding regulation of bear baiting in national forests.

ORDER - 10

Safari Club articulates that its objective is identical. Nor has Safari Club demonstrated that Defendants are unwilling or incapable of making arguments in their defense. Thus far, Defendants have vigorously participated in this case, even going so far as to take recent actions it argued rendered the lawsuit moot. Safari Club has not demonstrated a likelihood that Defendants will abandon or concede their position with respect to their asserted compliance with Section 7 of the ESA.

The Court declines also to grant Safari Club's motion for permissive intervention. Safari Club has not articulated a defense that shares with the main action a common question of law or fact. Safari Club has, instead, articulated that it advances the voice of hunters who use bait to hunt black bears, and why preserving the practice is beneficial. But this lawsuit raises the narrow question whether Defendants must reinitiate consultation under Section 7 of the ESA, not the merits of the specific hunting practice of bear baiting. Further, as explained above, the Court finds the existing parties will adequately represent Safari Club's interest in preserving the status quo.

Nonetheless, Safari Club does have an indirect interest in this matter. While not sufficient to warrant intervention, its interest is sufficient to merit the filing of an amicus brief in connection with the anticipated summary judgment motions. The Court will therefore deny Safari Club's motion for intervention but will allow it to file amicus briefs. according to the same dispositive motion deadlines that will apply to Defendants.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) State of Wyoming's Motion to Intervene (Dkt. 62) is **GRANTED**.

2) Idaho Fish and Game Commission's Motion to Intervene as Defendant (Dkt. 65) is **GRANTED**.

3) Intervenors' proposed Answers must be filed by April 16, 2021.

4) Safari Club International's Motion to Intervene (Dkt. 66) is **DENIED**.

5) Safari Club International's alternative request to be permitted to participate as an Amicus in connection with dispositive motions is **GRANTED**.

6) Intervenors are subject to the Scheduling Order (Dkt. 61) issued by this Court; Amicus will be subject to the briefing schedule, which is to be determined.

DATED: April 8, 2021

Honorable Candy W. Dale
United States Magistrate Judge