LAWRENCE G. WASDEN
ATTORNEY GENERAL
STATE OF IDAHO
DARRELL G. EARLY
Chief, Natural Resources Division
KATHLEEN E. TREVER
OWEN H. MORONEY
Deputy Attorneys General
600 S. WALNUT STREET
P.O. BOX 25
BOISE, ID 83707
TELEPHONE: (208) 334-3715
FAX: (208) 334-4885
E-Mail:   kathleen.trever@idfg.idaho.gov
          owen.moroney@idafg.idaho.gov

*Attorneys for Idaho Fish and Game Commission*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, et al., | Case No. 1:19-cv-00203-CWD |
| Plaintiffs, | |
| v. | IDAHO FISH AND GAME COMMISSION'S ANSWER |
| U.S. FOREST SERVICE, et al., | |
| Defendants. | |

Using the same headings and numbering of paragraphs as WildEarth Guardians, Wilderness Watch, Western Watersheds, and Friends of the Clearwater's (collectively, "Plaintiffs") Amended and Supplemental Complaint (ECF 56) (Complaint), Defendant-Intervenor Idaho Fish and Game Commission answers the Complaint as follows:

1.      The allegations in paragraph one purport to characterize Plaintiffs' case and contain legal conclusions. Accordingly, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph one.

Jurisdiction and Venue.

2.      The allegations in paragraph two contain legal conclusions. Accordingly, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph two.

3.      The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph three and for this reason denies them. Further, the allegations in paragraph three contain legal conclusions. Accordingly, no response is required. To the extent that any further response is required, the Commission denies the allegations of paragraph three.

4.      The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph four and for this reason denies them. The allegations in paragraph four contain legal conclusions. Accordingly, no response is required. To the extent that any further response is required, the Commission denies the allegations of paragraph four.

5.      The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph five and for this reason denies them. The allegations in paragraph five contain legal conclusions. Accordingly, no response is required. To the extent that any further response is required, the Commission denies the allegations of paragraph five.

6.    The allegations in paragraph six contain legal conclusions. Accordingly, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph six.

7.    The allegations in paragraph seven contain legal conclusions. Accordingly, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph seven.

8.    The allegations in paragraph eight contain legal conclusions. Accordingly, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph eight.

Parties.

9.    The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph nine and for this reason denies them. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph nine.

10.   The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph ten and for this reason denies them. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph ten.

11.   The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph eleven and for this reason denies them. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph eleven.

12.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph twelve and for this reason denies them. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph twelve.

13.     The Commission admits that the U.S. Forest Service is a federal agency within the U.S. Department of Agriculture. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph thirteen.

14.     The Commission admits that the U.S Fish and Wildlife Service is a federal agency within the U.S. Department of the Interior. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph fourteen.

Facts.

15.     The Commission admits that grizzly bears are native to places in the United States, including Idaho. Plaintiffs appear to be citing statements that can be found in a U.S. Fish and Wildlife Service Greater Yellowstone Ecosystem delisting rule from June 30, 2017. *See* 82 FR 30502-01. The the extent that the Plaintiffs' allegations in paragraph fifteen reference this rule, the Commission admits that the rule includes those statements. The rule, however, speaks for itself and is the best evidence of its own content. To the extent that any further response is required, the Commission denies the allegations in paragraph fifteen.

16.     To the extent that the allegations in paragraph sixteen refer to or quote federal register notices, those notices speak for themselves and are the best evidence of their own content. To the extent that the allegations in paragraph sixteen mischaracterize or misquote the contents of the

federal register, the Commission denies these allegations. To the extent that a further response is required, the Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph sixteen and for this reason denies them.

17.     The Commission admits that the 1993 federal recovery plan delineates these six "ecosystems" but denies the implication that these are inherently unique or distinct areas for grizzly bears, and adds that the recovery plan identifies the Selkirk ecosystem is roughly half in the contiguous US and half in adjacent area of Canada. The Commission admits that the population estimates in paragraph seventeen are at or close to population estimates that have applied to these areas recently but that the estimate for the Greater Yellowstone Ecosystem is likely a considerable underestimated because of the conservatism of the population estimator used. To the extent that any further response is required, the Commission denies the allegations in paragraph seventeen.

18.     The Commission admits that the 1993 federal recovery plan identifies the Selway-Bitterroot ecosystem to include two wilderness areas. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the rest of the factual allegations in paragraph eighteen and for this reason denies them.

19.     The Commission admits that Idaho and Wyoming have regulations that authorize the use of bait for black bear hunting. The Commission admits that grizzly bears and black bears occur in the overlapping areas on some national forests in Idaho and Wyoming. To the extent that any further response is required, the Commission denies the allegations in paragraph nineteen.

20.     The allegations in paragraph twenty contain legal conclusions and, accordingly, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph twenty.

IDAHO FISH AND GAME COMMISSION'S ANSWER                                        Page 5

21.     The Commission admits that some black bear hunters who hunt in national forests in both Idaho and Wyoming use bait to hunt black bears and that these baits in Idaho may include the baits that the Plaintiffs mention. The Commission adds that while the allegations in paragraph twenty-one may be true at some times and in some places, the Commission regulates such activities.

22.     The Commission admits that hunters in Idaho were allowed to use bait for hunting black bears in some parts of Idaho through the early 1990s. The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the remaining factual allegations in paragraph twenty-two and for this reason denies them.

23.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of some of factual allegations in paragraph twenty-three and for this reason denies them. To the extent that the allegations in paragraph twenty-three refer to and describe a closure order and related documents, those documents speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the Commission denies the allegations in paragraph twenty-three.

24.     To the extent that the allegations in paragraph twenty-four refer to and describe an environmental assessment and memorandum of understanding (MOU), those documents speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the Commission denies the allegations in paragraph twenty-four.

25.     To the extent that the allegations in paragraph twenty-five refer to and describe a biological evaluation and request for consultation with Defendant U.S. Fish and Wildlife Service, those documents speak for themselves and are the best evidence of their own content.

To the extent that any further response is required, the Commission denies the allegations in paragraph twenty-five.

26.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph twenty-six and for this reason denies them.

27.     To the extent that the allegations in paragraph twenty-seven refer to and describe a biological opinion, that document speaks for itself and is the best evidence of its own content. To the extent that any further response is required, the Commission denies the allegations in paragraph twenty-seven.

28.     To the extent that the allegations in paragraph twenty-eight refer to and describe a biological opinion and an incidental take statement, those documents speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the Commission denies the allegations in paragraph twenty-eight.

29.     To the extent that the allegations in paragraph twenty-nine refer to and describe a MOU and closure order(s), those documents speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the Commission denies the allegations in paragraph twenty-nine.

30.     To the extent that the allegations in paragraph thirty refer to and describe a decision notice, a recession of a decision notice, and closure orders, those documents speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the Commission denies the allegations in paragraph thirty.

31.     To the extent that the allegations in paragraph thirty-one refer to and describe closure orders, those documents speak for themselves and are the best evidence of their own content. To

the extent that any further response is required, the Commission denies the allegations in paragraph thirty-one.

32.     To the extent that the allegations in paragraph thirty-two refer to and describe an interim national policy and environmental assessment, those documents speak for themselves and are best evidence of their own content. To the extent that this paragraph states conclusions of law, no response is required. To the extent that any further response is required, the Commission denies the allegations in paragraph thirty-two.

33.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph thirty-three and for this reason denies them.

34.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph thirty-four and for this reason denies them. Moreover, should any correspondence exist, that correspondence would speak for itself and be the best evidence of its own content.

35.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph thirty-five and for this reason denies them. Moreover, should any correspondence exist, that correspondence would speak for itself and be the best evidence of its own content.

36.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph thirty-six and for this reason denies them. Moreover, should any correspondence exist, that correspondence would speak for itself and be the best evidence of its own content.

37.     The Commission admits the final policy on use of bait while hunting was adopted on

March 20, 1995. 60 FR 14720-02. To the extent that this paragraph states a conclusion of law, no

response is required. To the extent that any further response is required, the Commission denies

the allegations in paragraph thirty-seven.

38.     The Commission lacks knowledge or information sufficient to form a belief as to the

truth and accuracy of the factual allegations in paragraph thirty-eight and for this reason denies

them.

39.     To the extent that the allegations in paragraph thirty-nine refer to and describe applicable

Idaho rules and proclamations, those documents speak for themselves and are the best evidence

of their own content. The Commission admits that it prohibits the use of bait to hunt black bears

in certain game management units where grizzly bears are present or may be present. The

Commission admits that it does not prohibit the use of bait to hunt black bears in some game

management units where there have been a few documented grizzly locations. The Commission

admits that it does not prohibit the use of bait to hunt black bears in reference to wilderness

designation and that the use of bait to hunt black bears occurs in designated wilderness in Idaho.

To the extent that any further response is required, the Commission denies the allegations in

paragraph thirty-nine.

40.     To the extent that the allegations in paragraph forty refer to and describe applicable Idaho

rules and proclamations, those documents speak for themselves and are the best evidence of their

own content. The Commission does not interpret the area between the Northern Continental

Divide ecosystem and the Bitterroot ecosystem delineated in the 1993 recovery plan to include

any portion of Idaho and denies allegations as to the use of bait in Idaho on that basis. To the

extent that any further response is required, the Commission denies the allegations in paragraph forty.

41.     The Commission admits the Caribou-Targhee National Forest in Idaho and Wyoming adjoins Yellowstone and Grand Teton National Parks to the south and west. To the extent that the allegations in paragraph forty-one refer to and describe a food closure order, that document speaks for itself and is the best evidence of its own content. The Commission admits grizzly bears inhabit some areas subject to the food closure order. To the extent that any further response is required, the Commission denies the allegations in paragraph forty-one.

42.     The Commission denies the Panhandle National Forest is between the Northern Continental Divide Ecosystem and Selway-Bitterroot ecosystem. To the extent that the allegations in paragraph forty-two refer to and describe a food closure order, that document speaks for itself and is the best evidence of its own content. The Commission admits grizzly bears inhabit some areas subject to the food closure order. To the extent that any further response is required, the Commission denies the allegations in paragraph forty-two.

43.     To the extent that the allegations in paragraph forty-three refer to and describe a food closure order, that document speaks for itself and is the best evidence of its own content. The Commission admits grizzly bears inhabit some areas subject to the food closure order. To the extent that any further response is required, the Commission denies the allegations in paragraph forty-three.

44.     To the extent that the allegations in paragraph forty-four refer to and describe unspecified food closure orders, those document speaks for themselves and are the best evidence of their own content. To the extent that any further response is required, the Commission denies the allegations in paragraph forty-four.

45.     The Commission admits that from 2006 through 2018 statewide reported harvest was 32,343 black bears in Idaho, of which 13,292 were harvested at bait sites, but states these are statewide figures including a broad area in which there is no known grizzly bear occurrence and outside any identified grizzly bear recovery area. The Commission admits hunters take black bears off of bait in the Panhandle and Caribou-Targhee National Forests but states the Commission has closed portions of these forests in identified grizzly bear recovery areas to black bear baiting. In the Idaho Panhandle National Forests, the Commission has closed Game Management Unit 1 (the area north of the Pend Oreille and Clark Fork Rivers) to baiting for black bears as this area encompasses the Selkirk and Cabinet-Yaak Recovery Areas. This closure is approximately 2,500 square miles. In the Caribou-Targhee and Targhee National Forests the Commission prohibits the use of bait in black bear hunting in the roughly 1,000 square-mile area (Game management Unit (GMU) 61 east of Howard Creek, and all of GMUs 62 and 62A) encompassing all of the bear management units in the Greater Yellowstone Recovery Area in Idaho.

46.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph forty-six and for this reason denies them.

47.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph forty-seven and for this reason denies them.

48.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph forty-eight and for this reason denies them.

49.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph forty-nine and for this reason denies them.

50.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty and for this reason denies them.

51.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty-one and for this reason denies them.

52.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty-two and for this reason denies them.

53.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty-three and for this reason denies them.

54.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty-four and for this reason denies them.

55.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty-five and for this reason denies them.

56.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty-six and for this reason denies them.

57.     The Commission admits that on or about September 3, 2007, a licensed nonresident guided hunter (from Tennessee) shot and killed a grizzly bear over bait in what was then the Clearwater National Forest in Idaho. The hunter shot the bear near the South Fork of Kelly Creek a short ways above the mouth of Williams Creek. The location is in the Bitterroot Mountains but outside and on the other side of Highway 12 from the federally identified Bitterroot Grizzly Bear Recovery Area (approximately 5,785 square miles).  65 FR 69644-01. The Commission admits that this was the first grizzly bear verified since 1946 in the Bitterroot Mountains in Idaho. To the extent that any allegations in paragraph fifty-seven conflict with the above information, the Commission denies those allegations.

58.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty-eight and for this reason denies them.

59.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph fifty-nine and for this reason denies them.

60.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph sixty and for this reason denies them.

61.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph sixty-one and for this reason denies them.

62.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph sixty-two and for this reason denies them.

63.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph sixty-three and for this reason denies them.

64.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph sixty-four and for this reason denies them.

65.     The Commission admits that a licensed hunter shot and killed a grizzly bear on May 7, 2014, off the Cave Falls Road in the Caribou-Targhee National Forest in Idaho. To avoid misinterpretation of these facts, the Commission states that the bear was not shot over bait and the state of Idaho successfully prosecuted the shooter for unlawful take of grizzly bear under state law. The Commission also states that it has prohibited the use of bait in this area, Game Management Unit 62, since before the 1993 grizzly bear recovery plan. The Commission prohibits the use of bait in black bear hunting in the roughly 1,000 square-mile area (GMU 61 east of Howard Creek, and all of GMUs 62 and 62A) encompassing all of the bear management units in the Greater Yellowstone Recovery Area in Idaho. To the extent that any allegations in paragraph sixty-five conflict with the above information, the Commission denies those allegations.

66.     The Commission admits that on or about September 30, 2015, a licensed hunter shot a grizzly bear near a black bear bait site on private land north of Wallace, Idaho. To avoid misinterpretation, the Commission states that the shooter did not have the appropriate tag to hunt black bear, and that the bait site was not legal under Idaho law on the basis it was within 500 yards from one residence and a half mile of several residences. *See* IDAPA 13.01.17.100.02.c (prohibiting bait sites within one-half (1/2) mile of any dwelling). IDFG cited two individuals for

IDAHO FISH AND GAME COMMISSION'S ANSWER                    Page 14

violations of state law related to this mortality; one was a juvenile and related legal proceedings are sealed. The involved adult pled guilty to unlawful placement of bait because of the site's proximity to homes.

The Commission also states that applying the term "inholding" to the 2015 mortality location leaves an incorrect impression. Although adjacent to national forest lands (Coeur d'Alene portion of the Panhandle National Forest), this shooting occurred on a private parcel on one of several connected, miles-long strands of small acreages with rural housing north of the city of Wallace. These private lands lie along various rivers/creeks patented during bygone mining eras and are accessed by longstanding roads. The Commission also states the bear was not transplanted into the area from the Cabinet-Yaak. Instead, the bear involved in the 2015 mortality was a transplant to the Cabinet-Yaak Ecosystem in Montana from elsewhere in Montana eight weeks before the shooting. The transplanted bear did not stay in the Cabinet-Yaak and wandered south outside the designated recovery area. To the extent that any allegations in paragraph sixty-six conflict with the above information, the Commission denies those allegations.

67.    The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph sixty-seven and for this reason denies them.

68.    The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph sixty-eight and for this reason denies them.

69.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the speculative and vague factual allegations in paragraph sixty-nine and for this reason denies them.

70.     The Commission believes that this paragraph refers to the 2018 activities of Augmentation Bear 927. The Commission denies that Augmentation Bear 927 was from the Cabinet Mountains because the bear was a transplanted augmentation bear from the Northern Continental Divide Ecosystem (NCDE) in Montana. As has occurred on several occasions with augmentation bears from the NCDE, the bear wandered. Augmentation Bear 927 did not remain in the Cabinet Mountains in 2018 and travelled south across the Clark Fork River and was reported at a bait site on private land in Idaho. The private parcel where the bait was located was completely surrounded by private land in a rural residential area located southwest of the town of Clark Fork. The Idaho Department of Fish and Game (IDFG) and the United States Fish and Wildlife Service (USFWS) promptly removed the bear from the area of the bait site, and captured and returned the bear to the Cabinet Mountains. Later in 2018, Augmentation Bear 927 returned to the rural residential area southwest of Clark Fork but the Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the statement that the bear returned to the bait site for a second time. To the extent that any further response is required or that the Complaint conflicts with the above facts, the Commission denies the allegations in paragraph seventy.

71.     The Commission admits that IDFG removed two bears in eastern Idaho in 2018, sending one to a zoo in Texas and lethally removing another. The Commission is unaware of any evidence that either bear frequented a bait site. Both bears were documented to having obtained human food around residences or other sources unrelated to bait for black bear hunting. To the

extent that any further response is required, the Commission denies the allegations in paragraph seventy-one.

72.     The allegations in paragraph seventy-two again refer to the travels of Augmentation Bear 927, this time during 2019. Augmentation Bear 927 denned in the Cabinet Mountains during the winter of 2018-2019 and traveled south with his telemetry collar recording his location crossing Highway 12 near Lolo Pass on July 5, 2019. On his way, Augmentation Bear 927 was seen at one or more bait sites in June of 2019 in Kelly Creek but the Commission is unable to confirm if he was seen at three bait sites. IDFG actively monitored the situation and released a press release cautioning black bear hunters that a USFWS radio-collared grizzly was last located in Kelly Creek. While Augmentation Bear 927 briefly traveled into the Selway-Bitterroot, he returned north to the Cabinet Mountains to den during the 2019-2020 winter in the vicinity of his previous den site.

Subsequently Augmentation Bear 927 returned to Montana and in August of 2020 lost its radio collar and the collar was retrieved from Grave Creek south of Eureka, Montana. To the best of the Commission's knowledge, Augmentation Bear 927 has remained in Montana and has not been seen at another bait site in Idaho. To the extent that any further response is required or that the Complaint conflicts with the above facts or the facts in paragraph seventy, the Commission denies the allegations in paragraph seventy-two.

73.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the speculative and vague factual allegations in paragraph seventy-three and for this reason denies them.

74.     The Commission denies the allegations in paragraph seventy-four.

75.     The Commission denies the allegations in paragraph seventy-five.

IDAHO FISH AND GAME COMMISSION'S ANSWER                                    Page 17

76.     The Commission denies the allegations in paragraph seventy-six.

77.     The Commission denies the allegations in paragraph seventy-seven.

78.     The Commission denies the allegations in paragraph seventy-eight.

79.     The Commission denies the allegations in paragraph seventy-nine.

80.     The Commission denies the allegations in paragraph eighty.

81.     The Commission denies the allegations in paragraph eighty-one.

82.     The Commission avers that the allegation that theobromine may be toxic to bears may be true but states that there has not been documentation of such toxicity occurring at a bear bait site in Idaho. Otherwise, the Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the factual allegations in paragraph eighty-two and for this reason denies them.

83.     The Commission denies the allegations in the first sentence of paragraph eighty-three as the term "demographic monitoring area" is used by the Interagency Grizzly Bear Study Team and individual state and federal agencies participating in grizzly bear recovery as specific to the Greater Yellowstone grizzly population. The Commission admits the allegations in the second sentence of paragraph eighty-three. The Commission admits that grizzly bears have been observed or seen in areas outside of the grizzly bear recovery area and grizzly bear demographic monitoring area but notes that a map is not attached to the Amended and Supplemental Complaint (ECF 56). To the extent that any further response is required or that the allegations in paragraph eighty-three conflict with the above facts, the Commission denies the allegations in paragraph eighty-three.

84.     The allegations in paragraph eighty-four refer to and describe letters dated June 26, 2020, and those letters speak for themselves and are the best evidence of their own content. To the

extent that any further response is required, the Commission denies the allegations in paragraph eighty-four.

Claims for Relief.

Claim One: Endangered Species Act.

85.     This allegation incorporates by reference all previous paragraphs and, therefore, no further response is required. To the extent that a response is required, the Commission denies the allegations in paragraph eighty-five.

86.     To the extent that the allegations in paragraph eighty-six state conclusions of law, no response is required. To the extent that the allegations in paragraph eighty-six summarize various laws, a biological opinion, and studies, these documents speak for themselves and are the best evidence of their own content. To the extent that a response is required, the Commission denies the allegations in paragraph eighty-six.

87.     To the extent that the allegations in paragraph eighty-seven state conclusions of law, no response is required. To the extent that the allegations in paragraph eighty-seven summarize various laws and an incidental take statement, these documents speak for themselves and are the best evidence of their own content. To the extent that a response is required, the Commission denies the allegations in paragraph eighty-seven.

88.     The Commission lacks knowledge or information sufficient to form a belief as to the truth and accuracy of the allegations in paragraph eighty-eight and for this reason denies them.

89.     To the extent that the allegations in paragraph eighty-nine state conclusions of law, no response is required. To the extent that any response is required, the Commission denies the allegations in paragraph eighty-nine.

90.     To the extent that the allegations in paragraph ninety summarize the Endangered Species Act, the ESA speaks for itself and is the best evidence of its own content. To the extent that the allegations in paragraph ninety state conclusions of law, no response is required. To the extent that a response is required, the Commission denies the allegations in paragraph ninety.

91.     To the extent that the allegations in paragraph ninety-one summarize the ESA, the ESA speaks for itself and is the best evidence of its own content. To the extent that the allegations in paragraph ninety-one state conclusions of law, no response is required. To the extent that a response is required, the Commission denies the allegations in paragraph ninety-one.

Relief Sought.

The final five paragraphs of the Complaint constitute Plaintiffs' request for relief, to which no response is required. To the extent that a response is required, the Commission denies that the Plaintiffs are entitled to any relief.

**General Denial**

Each and every allegation in the Complaint that is not specifically admitted is hereby denied.

**Affirmative Defenses**

The Commission reserves the right to assert additional affirmative defenses at a later date. The Commission asserts that the following defense bar some or all of Plaintiffs' claims:

1.     Plaintiffs fail to state a claim for which relief may be granted.

2.     Plaintiffs fail to demonstrate standing to assert some or all of their claims.

3.     This Court lacks jurisdiction over some or all of Plaintiffs' claims.

4.     Some or all of Plaintiffs' claims are barred by the applicable statute of limitations.

Respectfully submitted this 9th day of April 2021.

HON. LAWRENCE G. WASDEN
Attorney General

DARRELL EARLY
Chief of Natural Resources Division

_/s/ Owen Moroney_
OWEN MORONEY (ISB # 9553)
Deputy Attorney General
600 S. Walnut Street
P.O. Box 25
Boise, ID 83707
owen.moroney@idfg.idaho.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of April, 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic filing:

Matthew K. Bishop
Western Environmental Law Center
bishop@westernlaw.org

Peter Frost
Western Environmental Law Center
frost@westernlaw.org

Dana Johnson
Danajohnsonecf@gmail.com

Sangye Ince-Johannsen
Western Environmental Law Center
sangyeij@westernlaw.org

Robert P. Williams
U.S. Department of Justice
Robert.p.williams@doj.gov

Cherese De'Dominiq McLain
MSBT Law, Chtd
cdm@msbtlaw.com

Jeremy Clare
Safari Club International
jclare@safariclub.org

Travis Jordan
Wyoming Attorney General's Office
travis.jordan@wyo.gov


*/s/ Owen Moroney*
OWEN MORONEY (ISB # 9553)
Deputy Attorney General
600 S. Walnut Street
P.O. Box 25
Boise, ID 83707
owen.moroney@idfg.idaho.gov