Dana M. Johnson, Idaho Bar #8359
Wilderness Watch
P.O. Box 9623
Moscow, Idaho 83843
Tel: (208) 310-7003
danajohnson@wildernesswatch.org

Matthew K. Bishop, *pro hac vice*
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
Tel: 406-324-8011
bishop@westernlaw.org

Peter M.K. Frost, *pro hac vice*
Sangye Ince-Johannsen, *pro hac vice*
Western Environmental Law Center
120 Shelton McMurphey Blvd., Suite 340
Eugene, Oregon 97401
Tel: 541-359-3239; 541-778-6626
frost@westernlaw.org; sangyeij@westernlaw.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, et al., | Case No. 1:19-cv-00203-CWD |
| Plaintiffs, | **PLAINTIFFS' STATEMENT OF ALL MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND INJUNCTIVE RELIEF** |
| v. | |
| U.S. FOREST SERVICE, et al., | |
| Defendants. | |

Pursuant to DIST. IDAHO LOC. CIV. R. 7.1(b)(1), Plaintiffs WildEarth Guardians et al. (Guardians) hereby respectfully files this statement of all material facts in support of their motion for summary judgment and injunctive relief.

1. In 1975, the U.S. Fish and Wildlife Service (FWS) listed grizzly bears in the lower 48 states as threatened with extinction under the Endangered Species Act (ESA). *Amendment Listing the Grizzly Bear of the 48 Conterminous States as a Threatened Species*, 40 Fed. Reg. 31,734 (July 28, 1975).

2. When FWS listed grizzly bears in the lower 48 under the ESA, FWS cited as a reason to list grizzlies that they were "isolated from other populations so that they cannot be reinforced, either genetically or by movement of individual bears." *Id*.

3. The 1982 Grizzly Bear Recovery Plan groups ESA-listed grizzlies into six "recovery ecosystems." Plfs' Ex. A at 31.

4. The 1982 Grizzly Bear Recovery Plan states that to delist the species in the lower 48 states, FWS would need to "[e]stablish recovery of at least three populations in three distinct grizzly bear ecosystems." *Id*. at 11.

5. Since listing, grizzly populations have grown in the Greater Yellowstone Ecosystem (GYE) in northwestern Wyoming, eastern Idaho, and southeastern Montana, and in the Northern Continental Divide Ecosystem (NCDE) in north-central Montana. *Crow Indian Tribe v. United States*, 965 F.3d 662, 672 (9th Cir. 2020).

6. FWS has found that the Bitterroot Ecosystem in central Idaho "has the best potential for grizzly bear recovery," because it "offers excellent potential to support a healthy population of grizzly bears" that would "boost long-term survival and recovery prospects for this species in the

contiguous United States." *Record of Decision Concerning Grizzly Bear Recovery in the Bitterroot Ecosystem*, 65 Fed. Reg. 69,644 (Nov. 17, 2000).

7.   There are no known resident grizzlies in the Bitterroot Ecosystem. Plfs' Ex. B, *Species Status Assessment for the Grizzly Bear (Ursus arctos horribilis) in the Lower-48 States: A Biological Report*, U.S. Fish and Wildlife Serv., at 6 (Jan. 2022).

8.   In 2017, FWS found that "grizzly bears have nearly doubled their occupied range since the early 1980s" in the lower 48 states, primarily onto lands outside of the GYE and NCDE recovery zones. 82 Fed. Reg. at 30,511.

9.   In 2020, FWS published a map depicting the grizzly recovery zones, a larger area surrounding the GYE and NCDE recovery zones denoted as "Estimated current distribution," and a still larger area denoted as "Grizzly bears 'may be present.'" Plfs' Ex. C.

10.   In 2021, FWS published a map to show recovery zones, the estimated current distribution of grizzlies, and documented individual "outliers" from estimated distribution during the years 2011 to 2021. Plfs' Ex. D.

11.   The movement and survival of grizzlies between recovery ecosystems matters in terms of the genetic health of grizzlies within populated ecosystems. 82 Fed. Reg. at 30,535.

12.   The movement and survival of grizzlies between recovery ecosystems matters in terms of any recolonization of unpopulated areas such as the Bitterroot Ecosystem. 65 Fed. Reg. at 69,644.

13.   FWS "recognize[s] the GYE grizzly bear population could be a possible source population to re-colonize the Bitterroot Ecosystem to the west." 82 Fed. Reg. at 30,536.

14.   FWS has noted "the NCDE and [Bitterroot Ecosystem] are less than 5 km (3 mi) apart and multiple verified sightings [of grizzlies] have occurred" between them. Plfs' Ex. B at 55.

15.     FWS has found that "[t]he primary factors affecting grizzly bears at both the individual and ecosystem levels are excessive human-caused mortality and human activity that reduces the quality and quantity of habitats, which increases the potential for human-caused mortality, both directly and indirectly." *Id*. at 7.

16.     FWS has found that hunting over bait "can be a source of mortality (due to mistaken identity killings) and conflicts (due to conditioning to human foods)." *Id*. at 128.

17.     FWS has found that "[m]anagement removal of nuisance bears, particularly food-conditioned bears, has been the second highest cause (31 percent) of human-caused mortalities in the [GYE] from 1992 to 2001." Forest Service Administrative Record (FS AR) 374.

18.     In March 1992, the Forest Service decided to discontinue requiring special use permits for the use of bait in grizzly habitat in national forests in Wyoming, and instead to consider issuing closure orders prohibiting baiting except where allowed. 59 Fed. Reg. at 11,766.

19.     On February 19, 1993, the Forest Service published an Environmental Assessment (EA) on the effect of baiting in national forests in Wyoming. The proposed action and preferred alternative in the EA is to generally "regulate noncommercial bear baiting on National Forest System lands through State Game Regulations." FS AR 56.

20.     On March 25, 1993, the Forest Service published a Biological Evaluation under Section 7(a)(2) of the ESA that considered effects on grizzlies of the preferred alternative in the 1993 EA. FS AR 71–100.

21.     The 1993 Biological Evaluation provides:

> The proposed action and preferred alternative is to discontinue issuing special use permits to authorize bear baiting locations, close all designated Wilderness to bear baiting, beginning in 1994, and through a Memorandum of Understanding with the Wyoming Game and Fish Commission regulate noncommercial black bear baiting on National Forest System lands through Wyoming Game and Fish Commission Trophy Game Regulations (alternative 4). In addition to these Trophy Game Regulations listed below,

> the following mitigation measures are for all alternatives, including the preferred (Alternative 4), until such time as they become State Regulations[.]

FS AR 72.

22. The "mitigation measures" common to all alternatives in the 1993 EA (and conservation measures listed in the Biological Evaluation) included: (1) prohibiting baiting in the GYE recovery zone and (2) outside of the recovery zone, prohibiting baiting where the Forest Service otherwise prohibits "the improper storage of food in grizzly bear habitat." FS AR 57–58.

23. On April 2, 1993, the Forest Service issued a Decision Notice adopting the proposed alternative from the 1993 EA. FS AR 103–15.

24. On April 6, 1993, the Forest Service requested formal consultation with FWS to obtain its opinion as to effects of the proposed actions in the 1993 EA on listed species, including grizzlies. FWS AR 74.

25. On April 14, 1993, FWS issued a Biological Opinion (BiOp). FWS AR 74–83.

26. The BiOp states that "baiting for black bears" that "occurs within the range of the grizzly bear" can result in mortality to grizzlies, if a hunter mistakes a grizzly for a black bear or perceives a grizzly threatens the hunter's safety; FWS AR 77; that grizzlies may become "conditioned" to foods used in baiting, and seek them elsewhere, and become "problem" bears requiring "management actions;" that between 1967 and 1993, five grizzlies were "reported shot" at black bear bait sites in Wyoming. FWS AR 78.

27. The BiOp finds the mitigation measures in the 1993 EA, including "[c]losing the proposed grizzly bear recovery zone and all areas covered by a special order prohibiting improper storage of food in grizzly bear habitat (mitigation measures common to all alternative[s]) will have a beneficial affect [*sic*] on grizzly bears." FWS AR 75.

28. Based on the mitigation measures, FWS found that none of the alternatives in the 1993 EA would jeopardize the continued existence of grizzlies. FWS AR 79.

29. In its BiOp, FWS found a "remaining potential for incidental take of grizzly bears" due to the use of bait to hunt black bears, so it issued an Incidental Take Statement (ITS) that includes mandatory terms it deemed "critical to fulfillment of [the Forest Service's] responsibilities" under Section 7(a)(2) of the ESA. FWS AR 79–80.

30. The mandatory terms in the ITS include: the Forest Service must "[e]liminate the use of processed human, livestock or pet foods, and fruits and vegetables produced for human consumption, as bear baits in any areas regularly used by grizzly bears[;]" and the Forest Service "has a continuing duty to regulate the activity covered by this incidental take statement." *Id.*

31. In its BiOp, FWS found that "[a]lthough there is a remote possibility that a grizzly bear may be taken as a result of black bear baiting on [Forest Service] lands in Wyoming, [FWS] does not anticipate that such take will occur. Therefore, no incidental take is allowed. Should any take occur, the [Forest Service] must reinitiate formal consultation with [FWS] and provide the circumstances surrounding the take." FWS AR 80.

32. On July 29, 1993, the Forest Service rescinded its 1993 EA and Decision Notice, and issued a joint closure order prohibiting bear baiting in national forests in Wyoming pending national direction as to bait. FS AR 130.

33. On July 29, 1993, the regional foresters for the Rocky Mountain and Intermountain Regions of the Forest Service wrote the Chief: "Should the National Policy permit the continuation of black bear baiting, we will re-establish the closure orders related to grizzly bear habitat in accordance with the mitigation measures in the Decision Notice and non-discretionary measures in the Biological Opinion issued by the Fish and Wildlife Service. That part of the

environmental analysis process and Decision Notice that relates to grizzly bear habitat, the Biological Evaluation, and Biological Opinion will be re-instated [*sic*] and considered adequate to protect" grizzlies. *Id*.

34. On February 13, 1995, the Forest Service wrote FWS that it was "in the process of preparing a National Policy on bear baiting[.]" FWS AR 164. The Forest Service wrote: "As a result of the mitigation measures in the [1993] EA and the reasonable and prudent alternatives in the [BiOp], we implemented a closure order prohibiting the use of bait for black bear hunting in the [GYE] recovery zone, in the food restrictions areas on the Wind River Ranger District, Shoshone National Forest, and prohibited hunting of black bears with non-natural baits in grizzly habitat not covered by the other closure orders." *Id*. The Forest Service noted that "[t]he [1993] EA was rescinded but the closure orders are still in effect." *Id*. The Forest Service added that in "accordance with one of the conservation recommendations [in the BiOp], an additional area on the Greybull District, Shoshone National Forest, has been closed since the [BiOp] was issued." *Id*. The Forest Service concluded: "We ask that you review the original [BiOp] in light of this proposed new policy, and the actions we have taken, to determine if you concur that the actions we have taken to protect the grizzly bear are still adequate." *Id*.

35. On February 27, 1995, FWS responded to the Forest Service's letter, noting the Forest Service complied with the BiOp and ITS and closed the GYE recovery zone to baiting, as well as prohibiting use of non-natural baits in other areas grizzlies occupy. FWS AR 165. FWS concluded: "The proposed National Policy appears to be consistent with our biological opinion of April 14, 1993, and no information has become available to suggest that additional terms and conditions are necessary at this time." FWS AR 166.

36. The Forest Service performed notice and comment rulemaking under the Administrative Procedure Act (APA) to adopt a national bait policy. FS AR 151–54.

37. On March 14, 1995, issued an EA under NEPA to consider adopting a national bait policy. FS AR 155–248.

38. When it prepared the 1995 EA, the Forest Service attached the BiOp to it. FS AR 189.

39. When it prepared the 1995 EA, the Forest Service stated that the BiOp will be "re-evaluated" to determine if it is "still applicable under the new policy." *Id*.

40. On March 14, 1995, FWS responded to a letter from the Forest Service "requesting concurrence" with the Forest Service's finding that its "proposed national policy on use of bait during hunting on National Forest Service lands is not likely to adversely effect [*sic*] federally listed species." FWS AR 167.

41. FWS responded by noting the national bait policy required the Forest Service to monitor state baiting regulations, "and to establish administrative closures to baiting where necessary to protect federally listed species." *Id*. FWS referred to other documents "clarifying certain issues," and noted the two agencies' staff had agreed to "revisions to the proposed policy." *Id*. FWS concurred with the Forest Service under Section 7(a)(2) that the policy "is not likely to adversely affect federally listed species," including grizzlies. *Id*.

42. On March 20, 1995, the Forest Service issued a Decision Notice and adopted by rule the national bait policy. FS AR 259–65; FWS AR 175–78.

43. Currently, among the lower 48 states, only Idaho and Wyoming allow the use of bait to hunt black bears. (Dkt. 56 ¶ 19; Dkt. 69 ¶ 19).

44. In June 2019, a grizzly was documented near a bait site during the hunting season in the Kelly Creek drainage of the Nez Perce-Clearwater National Forests in Idaho, within the Bitterroot Ecosystem. Plfs' Ex. E at 2.

45. Idaho allows bear baiting in game management unit 61 in the Caribou-Targhee National Forest in eastern Idaho. Declaration of Dave Stricklan ¶ 17.

46. A grizzly sow and her cub were documented in game management unit 61 in the Caribou-Targhee National Forest in eastern Idaho. *Id*.

47. On January 29, 2010, in order to "reduce grizzly bear and human encounters and conflicts thereby providing for user safety and the protection of the grizzly bear," the Forest Service issued an "Occupancy and use" order prohibiting food storage within the Teton Basin, Ashton/Island Park, and Dubois Ranger Districts in the Caribou-Targhee National Forest in Idaho, but exempted "[p]ersons in the act of placing black bear baits for the lawful purpose of hunting black bears under state law and regulation." FS AR 1097–98.

48. On June 14, 2016, in part to minimize or reduce conflicts between grizzlies and humans, the Forest Service prohibited food storage or processing in areas of the Shoshone and Bridger-Teton National Forests in Wyoming, but again exempted bait to hunt black bears. FS AR 1326–31; Plfs' Ex. F, Ds' Disc. Responses at 7, #11.

49. On September 11, 2001, in part to minimize or reduce conflicts between grizzly bears and humans, the Forest Service prohibited food storage or processing in areas of the Sandpoint, Bonners Ferry, and Priest Lake Ranger Districts in the Idaho Panhandle National Forests in Idaho, but again exempted bait to hunt black bears. FS AR 1099–1103; Plfs' Ex. F, Ds' Disc. Responses at 6, #8.

50. The Forest Service issued a food closure order but exempted baiting in the Bridger-Teton National Forest in Wyoming. FS AR 1356–62.

51. In the mid-2000s, the National Park Service reinitiated consultation with FWS on effects to grizzlies of a proposed bison and elk management plan in the Tetons. FWS AR 238–67.

52. In 2016, FWS prepared a biological opinion to respond to the National Park Service's request related to a proposed bison and elk management plan in the Tetons. *Id*.

53. In its 2016 biological opinion, FWS noted the existing BiOp for the activity "Bear Baiting (Statewide Programmatic)." FWS AR 251.

54. In its 2016 biological opinion, FWS noted the allowable "Incidental Take (IT) Exempted" due to the "Bear Baiting (Statewide Programmatic)" biological opinion is "0." FWS AR 251.

55. In its 2016 biological opinion, FWS stated the "level of incidental take" allowed in the bait policy BiOp and ITS and other listed biological opinions and incidental take statements formed "the environmental baseline for this [2016] biological opinion." FWS AR 247.

56. On May 8, 2000, a licensed hunter seeking black bears and using bait killed a grizzly bear near Owl Creek in the Shoshone National Forest in Wyoming. (Dkt. 56 ¶ 49; Dkt. 69 ¶ 49; Dkt. 75 ¶ 1.)

57. On May 26, 2003, a licensed hunter seeking black bears and using bait killed a grizzly bear near Middle Fork Owl Creek in the Shoshone National Forest in Wyoming. (Dkt. 56 ¶ 52; Dkt. 69 ¶ 52; Dkt. 75 ¶ 1.)

58. On May 28, 2007, a licensed hunter seeking black bears and using bait killed a grizzly bear on Dutch Joe Creek in the Bridger-Teton National Forest in Wyoming. (Dkt. 56 ¶ 56; Dkt. 69 ¶ 56; Dkt. 75 ¶ 1.)

59.     On September 3, 2007, a licensed hunter seeking black bears and using bait killed a grizzly bear in the North Fork Clearwater watershed, in what was then the Clearwater National Forest and is now the Nez Perce Clearwater National Forest in Idaho. (Dkt. 56 ¶ 57; Dkt. 92 ¶ 57; Dkt. 74 ¶ 57.)

60.     The grizzly in paragraph 59 was the first grizzly verified in the Bitterroot Mountains since 1946. *Id.*

61.     Some reports of grizzly mortalities caused by hunters do not disclose whether bait was present or do not precisely identify locations to determine whether the incident took place in a national forest (Dkt. 56 ¶ 50, Dkt. 75 ¶ 1; Plfs' Ex. G).

62.     The Forest Service and FWS have not reinitiated consultation under Section 7(a)(2) of the ESA on the effects to grizzly bears of the Forest Service's policy on the use of bait in hunting on national forests.

       Dated: May 2, 2022.                Respectfully submitted,

                                                  /s/ Sangye Ince-Johannsen
                                                  Sangye Ince-Johannsen

                                                  Attorney for Plaintiffs