Jeremy E. Clare, D.C. Bar No. 1015688
Safari Club International
501 2nd Street N.E.
Washington, D.C. 20002
Tel: 202-543-8733
Fax: 202-403-2244
jclare@safariclub.org
*Admitted Pro Hac Vice*

Cherese D. McLain, ISB No. 7911
MSBT Law, Chtd.
7699 West Riverside Drive
Boise, ID 83714
Tel: 208-331-1800
Fax: 208-331-1202
cdm@msbtlaw.com

*Attorneys for Amicus Curiae*
*Safari Club International*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

WILDEARTH GUARDIANS, et al.,

Plaintiffs,

v.

U.S. FOREST SERVICE, et al.,

Defendants,

and

IDAHO FISH & GAME COMMISSION,

and

STATE OF WYOMING,

Defendant-Intervenors.

Case No. 1:19-cv-00203-CWD

**SAFARI CLUB INTERNATIONAL'S AMICUS CURIAE BRIEF**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii
STATEMENT OF AMICUS CURIAE ........................................................................... 1
ARGUMENT .................................................................................................................. 1
A. Plaintiffs' allegations are unsupported because the use of bait to hunt black bears can benefit black bear conservation. ............................................................... 2
B. The use of bait allows for selective harvest which lowers the risk of accidental take of grizzly bears. .......................................................................................... 6
C. The use of bait to hunt black bears does not result in food-conditioned bears. ... 10
CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**State Statues, Regulations, and Rules**

ALASKA ADMIN. CODE tit. 5, § 92.044 .......... 2
ARK. ADMIN. CODE § 002.001-07.02 .......... 2
ME CODE R. 09-137 Ch. 16, § 16.09 .......... 2
Mich. Wildlife Conservation Order Ch. 3, § 3.205(11) .......... 2
MINN. R. § 6232.3200 .......... 2
MINN. STAT. § 97B.425 .......... 2
N.H. CODE ADMIN. R. FIS. § 307.01 .......... 2
N.H. CODE ADMIN. R. FIS. § 307.02 .......... 2
OKLA. ADMIN. CODE § 800:25-7-67 .......... 2
UTAH ADMIN CODE R. 657-33-14 .......... 2
WIS. ADMIN. CODE § NR 10.07(2m)(d) .......... 2

**Other Authorities**

60 Fed. Reg. 14720 (Mar. 20, 1995) .......... 7

Black Bear Management Plan 1999-2010, Idaho Department of Fish and Game (Dec. 1998) .......... 5

Gunther, K.A. et al., Grizzly Bear-Human Conflicts, Confrontations, and Management Actions in the Greater Yellowstone Ecosystem, 2000 (2001). Pages 64-106 in Yellowstone Grizzly Bear Investigations: Annual Report of the Interagency Grizzly Bear Study Team, 2000. C.C. Schwartz and M.A. Haroldsen, editors. U.S. Geological Survey, Bozeman, Mt. .......... 11

Hristienko & McDonald, Going into the 21st century: a perspective on trends and controversies in the management of the American black bear, Urus 18(1):72-88 (2007) .......... 2, 3, 7, 11

International Association for Bear Research and Management, Hunting as a Tool in Management of American Bear Populations (Mar. 20, 2017) .......... 3, 4

Maine Department of Inland Fisheries and Wildlife, 2017 Big Game Management Plan .......... 4

U.S. Fish and Wildlife Service, Compatibility Determination for Bear Baiting on Kenai National Wildlife Refuge, 2007 .......... 12

Wyoming Black Bear Management Plan (July 20, 2007) .......... 5, 7

Wyoming Game and Fish Commission, 2022 Black Bear Hunting Seasons .......... 5

## STATEMENT OF AMICUS CURIAE

Safari Club International ("Safari Club") is a non-profit organization with approximately 50,000 members and advocates in the U.S. and around the world. Safari Club's missions include the conservation of wildlife, protection of the hunter, and education of the public about hunting and its use as a conservation tool. In advancing its advocacy missions, Safari Club has long been an active supporter of increasing access to and expanding hunting opportunities on federal lands. Safari Club members hunt black bears and other wildlife on National Forest lands in Idaho and Wyoming, and other members depend on hunting for their livelihoods. Safari Club members use bait for black bear hunting on National Forest lands in Idaho and Wyoming. *See* ECFs 16-3, 66-2, 66-3, 66-4, 66-5, and 66-6 (declarations submitted in support of Safari Club's motions to intervene). Safari Club and its members' interests will be harmed if the Court grants Plaintiffs' requested relief, which includes the closure of lands to the use of bait for black bear hunting. ECF 93-1 at 20. Safari Club urges the Court to deny Plaintiffs' motion for summary judgment and grant Federal Defendants' and Defendant-Intervenors' cross-motions for summary judgment.

## ARGUMENT

Throughout their filings, Plaintiffs either explicitly assert or imply that the use of bait to hunt black bears is detrimental to both grizzly bear and black bear conservation. Plaintiffs provide little to no support for these assertions and assumptions. *See, e.g.* ECF 56, Plfs.' Amended and Supp. Complaint, at ¶¶ 74–82 (the use of bait to hunt black bears has "potential adverse impacts on grizzly bears and black bears"). Plaintiffs are

incorrect. Safari Club provides this amicus brief and the collected evidence to assist the Court in rejecting Plaintiffs' claims.

**A. Plaintiffs' allegations are unsupported because the use of bait to hunt black bears can benefit black bear conservation.**

Plaintiffs' arguments have misled the Court into thinking that Idaho and Wyoming are the only two states among the lower 48 that allow the use of bait to hunt black bears. *See* ECF 93-1 at 9. That is a false statement. Plaintiffs' assertion fails to include the critical qualifier that Idaho and Wyoming are the only two states in the lower 48 and within grizzly bear range that allow the use of bait to hunt black bears.[1] A number of states with black bear populations also permit the use of bait to facilitate harvest, including Arkansas, Maine, Michigan, Minnesota, New Hampshire, Oklahoma, Utah, and Wisconsin. *See* ARK. ADMIN. CODE § 002.001-07.02; ME CODE R. 09-137 Ch. 16, § 16.09; Mich. Wildlife Conservation Order Ch. 3, § 3.205(11);[2] MINN. STAT. § 97B.425 and MINN. R. § 6232.3200; N.H. CODE ADMIN. R. FIS. §§ 307.01, 307.02; OKLA. ADMIN. CODE § 800:25-7-67; UTAH ADMIN CODE R. 657-33-14; WIS. ADMIN. CODE § NR 10.07(2m)(d). Contrary to Plaintiffs' allegation, Idaho and Wyoming are not alone in

[1] Alaska, which has brown (i.e., grizzly) bears, allows the use of bait to hunt black bears and brown bears. ALASKA ADMIN. CODE tit. 5, § 92.044. Most Canadian provinces also allow harvest over bait as a lawful method of take, including those with black and brown/grizzly bear populations. *See* Hristienko & McDonald, Going into the 21st century: a perspective on trends and controversies in the management of the American black bear, Urus 18(1):72-88 (2007), p. 74, *available at* https://www.bearbiology.org/fileadmin/tpl/Downloads/URSUS/Vol_18/U18_1_Hristienko_and_McDonald.pdf (last visited June 22, 2022).

[2] Michigan's Wildlife Conservation Order is available at https://www.michigan.gov/dnr/managing-resources/laws/orders/wildlife-conservation-order (last visited June 21, 2022).

allowing the use of bait to hunt black bears, including on Forest Service and other federal lands. States that permit the use of bait to hunt black bears rely on this traditional method of harvest as a fundamental part of their successful wildlife management programs.

Hunting of predator species like black bear is an important management tool. State wildlife managers rely on hunters to help keep the predator and prey populations in balance, reduce depredation on prey species like elk and deer, and reduce human-wildlife conflicts. For black bear, hunting is particularly important. Since the early 2000s, every state with resident black bears has reported stable or increasing populations. Hristienko & McDonald (2007), pp. 75–76. Where black bear populations have recovered and are expanding, "the paradigm must shift for wildlife agencies … to population management, where controlling population dynamics around chosen management goals (e.g., population size, levels of human-bear conflict, amount of hunting opportunity) is the focus." International Association for Bear Research and Management, Hunting as a Tool in Management of American Bear Populations (Mar. 20, 2017), p. 5 ("IBA paper").[3] Regulated hunting is the only effective and practical way to slow bear population growth or reduce a bear population that is generating unacceptable conflicts. *Id.* at p. 8 ("Where the primary management objective is to slow population growth or limit population size or distribution, then increasing human-caused mortality is the only option. A regulated

[3] The IBA paper is available at https://www.bearbiology.org/wp-content/uploads/2019/05/IBA-Position-Paper_-April-2017_Hunting_in_Bear_Management-Electronic_Format.pdf (last visited June 23, 2022).

and monitored hunt can do this effectively and is typically the most practical and socially acceptable way to achieve this.").

The use of bait to hunt black bears is a particularly important management tool for some states because it generally increases the successful harvest rate, which helps states achieve population management objectives. For example, Maine has one of the largest—if not the largest—black bear populations in the lower 48 states. Although hunting bears over bait is only permitted for the first four weeks of a three-month hunting season, the Maine Department of Inland Fisheries and Wildlife reported that 77% of all bears harvested from 2005-2016 in Maine were harvested over bait. Maine Department of Inland Fisheries and Wildlife, 2017 Big Game Management Plan, p. 21.[4] In 2017, the Department established a management goal to slow the growth rate of the black bear population by increasing harvest, including by possibly extending the baiting season and educating the public about the benefits of using bait to hunt black bears. *Id.* at pp. 21–25, 28–30. The use of bait can also assist states in targeting "nuisance" bears during the hunting season and reducing human-bear conflicts. "Particularly where hunters use bait to attract bears, a general hunting season can be biased to some degree towards the same bears who are, at other times of year, most attracted to baits and indifferent to or conditioned to human activity [i.e., "problem" bears]." IBA paper, p. 6.

[4] Maine's 2017 Big Game Management Plan is available at https://www.maine.gov/ifw/docs/18-MDIFW-03-Big-Game-Management.pdf (last visited June 21, 2022).

Wyoming and Idaho also rely on the use of bait as an integral part of their black bear management programs. In Wyoming, 57% of all bears harvested from 1994-2005 were harvested over bait. Wyoming Black Bear Management Plan (July 20, 2007), p. 17.[5] Wyoming's hunting regulations establish female mortality quotas for each hunt area to "limit the harvest of females in recognition of the key role females play in population regulation." *Id.* at p. 2.[6] Notably, harvesting over bait allows for Wyoming's hunters to selectively hunt male bears, and fewer adult females are harvested over bait compared to harvest that does not utilize bait. *Id.* (Table 5). In Idaho, the percentage of bears harvested over bait is slightly lower—approximately 41% of total harvest from 2006-2018[7]—but harvest data likewise demonstrate that fewer females are harvested over bait.[8] Black Bear Management Plan 1999-2010, Idaho Department of Fish and Game (Dec. 1998), p. 27.[9]

---

[5] Wyoming's Black Bear Management Plan is available at https://wgfd.wyo.gov/WGFD/media/content/PDF/Wildlife/Large%20Carnivore/BLKBEAR_MGMTPLAN.pdf (last visited June 23, 2022).

[6] *See also*, Wyoming Game and Fish Commission, 2022 Black Bear Hunting Seasons, pp. 22–24 *available at* https://wgfd.wyo.gov/WGFD/media/content/Final%20Regs/REGULATIONS-CH-3-Brochure.pdf (last visited June 23, 2022) (providing annual female mortality limits).

[7] *See* ECF 74, Idaho's Answer, at ¶ 45.

[8] Large portions of both Idaho and Wyoming are closed to the use of bait to hunt black bears in grizzly bear recovery areas. *See* ECF 99-1, Idaho Memo in Support of Cross-Motion, at 7–8; ECF 100, Wyo. Memo in Support of Cross-Motion, at 9. Logically, the percentages of black bear harvest would be even higher if the use of bait was allowed in all areas where other methods of black bear harvest are allowed.

[9] Idaho's Black Bear Management Plan 1999-2010 is available at https://idfg.idaho.gov/old-web/docs/wildlife/planBlackBear.pdf (last visited June 21, 2022).

In total, Idaho and Wyoming rely on the use of bait as a valuable method of harvest to achieve their management goals. Safari Club's previously submitted declarations from hunters reflect this fact. *See, e.g.*, ECF 66-5, Bullock Decl., at ¶¶ 10–13 ("Baiting allows [hunters] to target specific bears and to participate in the Idaho Department of Fish and Game's management of our black bear populations. Without baiting, bear hunting in Idaho and overall predator management in the state would be far more difficult.") (further explaining the need for predator management and the use of bait); ECF 66-3, Malison Decl., at ¶ 19 (similar statements regarding the use of bait to help Idaho achieve its conservation objectives). Thus, the use of bait critically assists Idaho and Wyoming meet their black bear management objectives, and closure of even some U.S. Forest Service lands where the use of bait is currently allowed would be detrimental to the states' conservation programs.

**B. The use of bait allows for selective harvest which lowers the risk of accidental take of grizzly bears.**

In addition to being an essential aspect of some states' black bear management programs, the use of bait for black bear hunting enables hunters to carefully assess the size, age, and sex of the bear, and can assist hunters in identifying the species of bear at the bait site. Plaintiffs again oversell their argument. In their summary judgment briefing, Plaintiffs point to two instances since 1995 in which hunters using bait in National Forests have killed grizzly bears as evidence of irreparable harm sufficient to

justify an injunction from the Court.[10] ECF 93-1 at 11. The Forest Service's 1995 National Policy on the use of bait in hunting directly contradicts Plaintiffs' assertion: "[b]aiting actually improves the chance that the hunted species is clearly identified before being shot, and therefore should improve the chances that other species are not shot accidentally." 60 Fed. Reg. 14720, 14722 (Mar. 20, 1995).

The Forest Service is not alone in its conclusion. As discussed above in relation to harvesting male versus female bears, the Wyoming Game & Fish Department found that "because of the potential for greater hunter selectivity with baits, … [it] will continue to allow baiting for black bears in areas where it is currently allowed." Wyoming's Black Bear Management Plan, p. 17. Hristienko & McDonald (2007) also discusses this issue: the use of bait to hunt black bears "is appropriate for settings where visibility is limited and spot and stalk hunting is impractical…. [It] can increase selectivity against females accompanied by cubs…." p. 81.[11] Although Wyoming's management plan and Hristienko & McDonald (2007) discuss selective harvest in the context of distinguishing between male and female black bears, the ability of hunters to also better distinguish between different species of bears at bait sites logically applies the same.

---

[10] Plaintiffs discuss four such instances, but Federal Defendants have since clarified that two of the four did not occur on Forest Service lands, and for one of those two, there is no indication that bait was used. ECF 104-1, Feds' Resp. to Plaintiffs' Statement of Facts, at ¶¶ 56, 57.

[11] *See also, id.* at p. 82 ("hunters in a regulated spring bait hunt can take advantage of sparse vegetation that increases the detectability of cubs and can select against nursing females…."); p. 83 ("Hunting with hounds, like baiting, allows hunters to be selective when deciding whether to kill a bear because typically there is time to assess the sex and relative size of a treed bear.").

The previously submitted declarations from hunters demonstrate that hunters utilize bait sites to distinguish between black and grizzly bears. Mr. John Malison has hunted black bears over bait on National Forest lands in Idaho in Units 4a and 4 for approximately two decades. ECF 66-3, Malison Decl., at ¶ 6. He hunts from ground blinds, and the use of bait helps him to "watch the bears and observe the sows and cubs, size, color and species of the bears that visit the baits." *Id*. at ¶ 10. Mr. Malison encountered a grizzly bear while hunting black bears over bait and, due to the use of bait, he "had adequate time to determine that the bear was a grizzly and not a bear that [he] would want to harvest." *Id*. at ¶ 14. According to Mr. Malison, the use of bait is helpful in differentiating between species of bears because of the diversity of bears in the area:

> In Northern Idaho, we have bears of many different colors, and at a quick glance, it is not always easy to determine the species of a bear based on its color. We have black bears that are colored cinnamon, blonde, brown, and black as well as some two-tone bears. We know that we can encounter grizzly bears as well, and by baiting we have an opportunity to examine the bears and make certain that we only shoot black bears.

*Id.* at ¶ 15.

Similarly, Mr. Albert Veilleux hunts black bear with bait each year in Unit 16A in central Idaho in Nez Perce National Forest. ECF 66-4, Veilleux Decl., at ¶ 6. Mr. Veilleux uses bait to hunt because, among other reasons, it "provides opportunities for viewing and selecting mature boars. Female bears with cubs and juvenile bears can be carefully observed while larger more mature bears are selected for harvest." *Id.* at ¶ 7. Mr. Veilleux prefers using bait to hunt black bears compared to spot and stalk hunting because it provides a more "controlled setting" without unknown variables that can

influence a hunter's ability to make an unobstructed shot. *Id.* at ¶ 9. And although Mr. Veilleux had at least up until February 2021 not encountered a grizzly bear while hunting black bears in Idaho, he "firmly believe[s] that there is far less chance of misidentifying a grizzly bear as a black bear while hunting over bait where unobstructed lanes offer clear visibility of the bears." *Id.* at ¶ 11.

Mr. Brent McFarland provides similar support. As of 2019, he had hunted black bear with the use of bait in two National Forests in Idaho for more than 10 years. ECF 16-3, McFarland Decl., at ¶ 8. He has encountered grizzly bears "numerous times" while hunting and twice, because he was able to study the bear over bait, he was able to identify grizzly bears that looked very similar to black bears. *Id.* at ¶¶ 10–12. "Based on [his] actual experience in the field, [he] can confidently state that baiting bears reduces the chance of a hunter accidentally harvesting a grizzly bear." *Id.* at 13. Mr. McFarland concludes that Plaintiffs' success in this lawsuit "will put grizzly bears at greater risk of accidental take because baiting helps hunters to identify the species of bear they are harvesting." *Id.* at ¶ 16.

These on-the-ground, in-the-field experiences support the National Policy's conclusion that the use of bait in National Forests allow hunters to be more selective compared to other forms of hunting and minimize the risk of instances of mistaken identity grizzly bear killings. This Court should reject Plaintiffs' assertions otherwise as largely unsupported.

**C. The use of bait to hunt black bears does not result in food-conditioned bears.**

Finally, Plaintiffs also assert that the use of bait to hunt black bears results in food-conditioned bears. ECF 93-1 at 3. Plaintiffs cite to FS AR 374, a 2003 letter of concurrence from the U.S. Fish and Wildlife Service ("FWS") regarding the expansion of a food storage order, for the proposition that the use of bait creates food-conditioned bears, noting that 31 percent of human-caused mortalities in the Greater Yellowstone Ecosystem ("GYE") were caused by removal of nuisance, food-conditioned bears. *Id.* But neither the letter of concurrence nor the study cited within the letter discuss the use of bait to hunt black bears or claim that baiting results in food-conditioned bears. FS AR 374 (citing Gunther et al. (2001)).[12] The letter of concurrence is specific to a food storage order, which does not implicate the use of bait for hunting in any way. FS AR 373–74. And Gunther et al. (2001) is a review of all causes of grizzly bear mortality in the GYE from 1992-2001. Notably, the use of bait for hunting is not mentioned once in the forty-plus pages of the review. This makes sense, as the use of bait is not permitted within most, if not all, of the GYE.[13] Simply, neither the letter of concurrence nor

[12] Gunther, K.A. et al., Grizzly Bear-Human Conflicts, Confrontations, and Management Actions in the Greater Yellowstone Ecosystem, 2000 (2001). Pages 64-106 in Yellowstone Grizzly Bear Investigations: Annual Report of the Interagency Grizzly Bear Study Team, 2000. C.C. Schwartz and M.A. Haroldsen, editors. U.S. Geological Survey, Bozeman, Mt. *available at* http://npshistory.com/publications/wildlife/igbst/ygbi-ann-rpt/2000.pdf (last visited June 22, 2022).

[13] Neither the use of bait nor hunting generally is permitted within Yellowstone National Park, and both Idaho and Wyoming prohibit the use of bait to hunt black bears in grizzly bear recovery areas. *See* ECF 99-1, Idaho Memo in Support of Cross-Motion, at 7–8; ECF 100, Wyo. Memo in Support of Cross-Motion, at 9.

Gunther et al. (2001) suggest that the use of bait to hunt black bears is creating food-conditioned bears which then leads to human-caused mortalities through management removals.

Hristienko & McDonald (2007), which was co-authored by a FWS employee and biologist, explains the difference between bears that encounter bait used for hunting and food-conditioned (or "habituated") bears.

> It is important to distinguish between using attractants to lure bears in hunting situations and the deliberate or inadvertent luring of bears in nuisance situations. Baiting for the purpose of hunting typically occurs in forested habitat, removed from direct interaction with humans, and bears in these situations tend to be secretive and wary whereas bears that interact with humans in suburban settings can become habituated and food-conditioned as they learn to associate humans and food without negative consequences. Habituated bears may become increasingly brazen to the point of being aggressive when they learn humans can be intimidated…

Hristienko & McDonald (2007), p. 81; *see id.* (noting that other studies and biologists had made similar findings in Manitoba, Maine, and Minnesota). Thus, bears that are attracted to baits in remote locations, away from humans do not become food-conditioned such that they become nuisance bears and must be removed to prevent human-bear conflict.

Plaintiffs also cite to the January 2022 Species Status Assessment for the Grizzly Bear in the Lower-48 States, but that document provides weak support. It fails to provide any citation for a one-sentence statement that "[h]unting over bait <u>can</u> be a source of … conflicts (due to conditioning to human foods)." ECF 93-1 at 3 (citing Plfs.' Ex. B at p.

128) (emphasis added).[14] The unsupported statement in the Assessment is contradicted by a 2007 "Compatibility Determination for Bear Baiting" prepared by the FWS for the Kenai National Wildlife Refuge:

> Brown bears do frequent bait stations with black bears but there are no recorded incidents of visiting bears necessitating their destruction due to fear for human life or safety. One large male brown bear was shot in self defense by a hunter in recent years on the Refuge when going to a baiting area; however, the hunter had not yet placed any bait and was only exploring his permit area prior to the baiting season when he walked up unknowingly close to a large male brown bear which charged. None of the other recorded 119 brown bear defense of life and property (DLP) shootings reported from 1964 through 2005 within [Game Management Unit] 15 have a known connection to a bait station.

2007 CD for Bear Baiting, p. 5.[15] The FWS concluded that "there is no evidence that a bear that is rewarded at a remote bait station is any more or less likely to become a 'garbage bear.'" *Id.* at 6. In other words, there is no evidence that the use of bait to hunt black bears results in problem or nuisance bears.

Any inference by the Plaintiffs that grizzly bears become problematic, food-conditioned bears due to the use of bait for black bear hunting is scantly supported and contradicted by numerous scientific studies and findings. From the very beginning,

---

[14] Plaintiffs' Exhibit B is excerpts from the January 2022 Species Status Assessment for the Grizzly Bear in the Lower-48 States. Despite quoting from pages 7 and 128, Plaintiffs do not provide those pages in their selected excerpts. The entirety of the Assessment is available at https://ecos.fws.gov/ServCat/DownloadFile/213247 (last visited June 22, 2022).

[15] The U.S. Fish and Wildlife Service's Compatibility Determination for Bear Baiting on Kenai National Wildlife Refuge, 2007 is available at https://data.amerigeoss.org/dataset/kenai-national-wildlife-refuge-compatibility-determination-for-bear-baiting/resource/b497aaf8-420b-4c49-a71e-c3199062add0?view_id=2f7238fb-9fdd-4acd-9640-cee6ba49f880 (last visited June 22, 2022).

Plaintiffs' lawsuit has been based on an incorrect premise; this is another example of mischaracterizing facts to support a baseless request for relief.

**CONCLUSION**

For the foregoing reasons, and the reasons asserted in Federal Defendants' and Defendant-Intervenors' cross-motions for summary judgment, Safari Club respectfully requests that the Court deny Plaintiffs' motion for summary judgment and grant the cross-motions for summary judgment.

DATED this 23rd day of June 2022.

Respectfully Submitted,

*/s/* Jeremy Clare
Jeremy E. Clare, D.C. Bar No. 1015688
Safari Club International
501 2nd Street N.E.
Washington, D.C. 20002
Tel: 202-543-8733
Fax: 202-403-2244
jclare@safariclub.org
*Admitted Pro Hac Vice*

Cherese D. McLain, ISB No. 7911
MSBT Law, Chtd.
7699 West Riverside Drive
Boise, ID 83714
Tel: 208-331-1800
Fax: 208-331-1202
cdm@msbtlaw.com

*Attorneys for Amicus Curiae*
*Safari Club International*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of June 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/* Jeremy Clare
Jeremy E. Clare